# EXHIBIT A

## PROMISSORY NOTE
### (TERM LOAN)

U.S.$12,000,000

October [●], 2008
New York, New York

FOR VALUE RECEIVED, the undersigned, GCL SHIPPING CORP., a Marshall Islands corporation (the "Borrower"), HEREBY PROMISES TO PAY to the order of NATIONAL BANK OF PAKISTAN (the "Lender") the principal sum of Twelve Million United States Dollars (U.S. $12,000,000) or, if less, the aggregate principal amount of the Term Loan (as such term is defined in the Credit Agreement referred to below), in fifty-seven (57) equal consecutive monthly installments and to pay interest on such principal amount on the dates and at the rates specified in such Credit Agreement. All payments due to the Lender hereunder shall be made to the Lender at the place, in the type of money and funds and in the manner specified in such Credit Agreement.

The Borrower hereby waives presentment, demand, protest, notice of dishonor and notice of intent to accelerate.

This Note is the Term Loan Note referred to in, and is subject to and entitled to the benefits of, the Credit Agreement dated as of October 22, 2008 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among (i) the Borrower (ii) the companies described therein as Guarantors, and (iii) the Lender. Reference is made to the Credit Agreement for provisions relating to the repayment and the acceleration of the maturity hereof. This Note is also entitled to the benefits of the Collateral Documents referred to therein.

This Note shall be construed in accordance with and governed by the laws of the State of New York.

GCL SHIPPING CORP.

By: _____
Name:
Title:

# EXHIBIT B

## PROMISSORY NOTE
## (REVOLVING ADVANCES)

U.S.$7,000,000

October [●], 2008
New York, New York

FOR VALUE RECEIVED, the undersigned, GCL SHIPPING CORP., a Marshall Islands corporation (the "Borrower"), HEREBY PROMISES TO PAY to the order of NATIONAL BANK OF PAKISTAN (the "Lender") the principal sum of Seven Million United States Dollars (U.S. $7,000,000) or, if less, the then aggregate unpaid principal amount of all Revolving Advances (as defined in the Credit Agreement referred to below), and to pay interest on such principal amount on the dates and at the rates specified in such Credit Agreement. All payments due to the Lender hereunder shall be made to the Lender at the place, in the type of money and funds and in the manner specified in such Credit Agreement.

The holder hereof is authorized to endorse on the grid attached hereto and forming a part hereof, or on a continuation thereof, appropriate notations evidencing the Revolving Advances (as defined in the Credit Agreement) and the date and amount of each principal payment or repayment with respect thereto.

The Borrower hereby waives presentment, demand, protest, notice of dishonor and notice of intent to accelerate.

This Note is the Revolving Note referred to in, and is subject to and entitled to the benefits of, the Credit Agreement dated as of October 22, 2008 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among (i) the Borrower (ii) the companies described therein as Guarantors, and (iii) the Lender. Reference is made to the Credit Agreement for provisions relating to the repayment and the acceleration of the maturity hereof. This Note is also entitled to the benefits of the Collateral Documents referred to therein.

This Note shall be construed in accordance with and governed by the laws of the State of New York.

GCL SHIPPING CORP.

By: _____
Name:
Title:

# GRID

## PROMISSORY NOTE

| Date | Amount of Advance | Amount of Principal Repaid | Unpaid Principal Amount of Note | Notation Made By |
|------|-------------------|----------------------------|--------------------------------|------------------|
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |

19101833 v3

| Date | Amount of Advance | Amount of Principal Repaid | Unpaid Principal Amount of Note | Notation Made By |
|------|-------------------|----------------------------|--------------------------------|------------------|
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |
|      |                   |                            |                                |                  |

19101833 v3

EXHIBIT C

TERM LOAN

NOTICE OF DRAWDOWN

[●], 2008

National Bank of Pakistan
New York Branch
100 Wall Street
New York, NY 10005

Attention:  General Manager

Ladies and Gentlemen:

The undersigned refers to the Credit Agreement dated as of October 22, 2008 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among (i) GCL Shipping Corp. (ii) the companies described therein as Guarantors, and (iii) National Bank of Pakistan (the "Lender").   Capitalized terms used herein and defined in the Credit Agreement are used herein as so defined.

The undersigned hereby give you irrevocable notice that it hereby requests disbursement of the [first] [second] Tranche of the Term Loan under the Credit Agreement as follows:

(a)      The Business Day of the proposed disbursement of said Tranche is [●].

(b)      The principal amount of said Tranche is $[●].

(c)      The payment instructions for said Tranche are as follows:

[_____]

The undersigned hereby certifies that before and after giving effect to the proposed disbursement of said Tranche, (i) no Default or Event of Default shall have occurred and be continuing or would result therefrom and (ii) all representations and warranties of the undersigned contained in the Credit Agreement shall be true and correct in all material respects *mutatis mutandis* as though such representations and warranties had been made on and as of the date of the disbursement of said Tranche.

Very truly yours,

GCL SHIPPING CORP.

By: _____
Name:
Title:

EXHIBIT D

REVOLVING ADVANCE

NOTICE OF DRAWDOWN

[Date]

National Bank of Pakistan
New York Branch
100 Wall Street
New York, NY 10005

Attention: General Manager

Ladies and Gentlemen:

The undersigned refers to the Credit Agreement dated as of October 22, 2008 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among (i) GCL Shipping Corp. (ii) the companies described therein as Guarantors, and (iii) National Bank of Pakistan (the "Lender"). Capitalized terms used herein and defined in the Credit Agreement are used herein as so defined.

The undersigned hereby give you irrevocable notice that it hereby requests a Revolving Advance under the Credit Agreement as follows:

(a)     The Business Day of the proposed disbursement of said Revolving Advance is [●].

(b)     The proposed Revolving Advance relates to our United Nations Receivable Invoice No. [●], a true and correct copy of which is attached hereto.

(c)     The principal amount of said Revolving Advance is $[●], being eighty-five percent (85%) of the amount of our United Nations Receivable Invoice No. [●].

(d)     The payment instructions for said Revolving Advance are as follows:

[_____]

The undersigned hereby certifies that before and after giving effect to the proposed Revolving Advance, (i) no Default or Event of Default shall have occurred and be continuing or would result therefrom and (ii) all representations and warranties of the undersigned contained in the Credit Agreement shall be true and correct in all material respects *mutatis mutandis* as though such representations and warranties had been made on and as of the date of said Revolving Advance.

Very truly yours,

GCL SHIPPING CORP.


By: _____
Name:
Title:

19101834 v3

EXHIBIT E

LETTER OF CREDIT REQUEST

[Date]

National Bank of Pakistan
New York Branch
100 Wall Street
New York, NY 10005

Attention: General Manager

Ladies and Gentlemen:

The undersigned refers to the Credit Agreement dated as of October 22, 2008 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among (i) GCL Shipping Corp. (ii) the companies described therein as Guarantors, and (iii) National Bank of Pakistan (the "Lender"). Capitalized terms used herein and defined in the Credit Agreement are used herein as so defined.

The undersigned hereby requests that you issue a [Standby][Import] Letter of Credit for the account of the undersigned as follows:

(a)     The Business Day on which the Letter of Credit is to be issued is [●].

(b)     The Stated Amount of the Letter of Credit is to be [●].

(c)     The stated expiration date of the Letter of Credit is to be [●].

(d)     The beneficiary of the requested Letter of Credit is to be [●].

The undersigned hereby certifies that before and after giving effect to the issuance of the proposed Letter of Credit, (i) no Default or Event of Default shall have occurred and be continuing or would result therefrom and (ii) all representations and warranties of the undersigned contained in the Credit Agreement shall be true and correct in all material respects *mutatis mutandis* as though such representations and warranties had been made on and as of the date of said Letter of Credit.

Very truly yours,

GCL SHIPPING CORP.

By: _____
Name:
Title:



# THE COMMONWEALTH OF THE BAHAMAS

# MORTGAGE REGISTRATION FORM

(Page 1 of 2)

| Official Number | IMO Number | Name of Ship | Port of Registry |
|---|---|---|---|
| 725313 | 7504603 | "GLOBAL PROSPERITY" | NASSAU |

| Propulsion and Engine Details | Vessel Dimensions |
|---|---|
| Propulsion: Twin Screw   Motor:<br>Type of Engines: Diesel<br>Total Power:      17222 KW | Length:  150.00 metres<br>Breadth: 26.50 metres<br>Depth:   16.30 metres |

**Particulars of Tonnage**

GROSS TONNAGE: 19605 tons          NET TONNAGE: 6345 tons

WHEREAS (a) there is an Account Current between (1) Global Prosperity LLC, a Marshall Islands limited liability company whose registered office is at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 (hereinafter called the "Mortgagor") and (2) National Bank of Pakistan, through its New York Branch with offices at 100 Wall Street, New York, New York 10005 USA (hereinafter called the "Mortgagee") regulated by (A) a Credit Agreement dated as of October 22, 2008 among (i) GCL Shipping Corp., a Marshall Islands corporation as Borrower, (ii) the Mortgagor and the other companies described therein as Guarantors, and (iii) the Mortgagee, and (B) a Deed of Covenant bearing even date herewith to which document the Mortgagor and the Mortgagee are parties (which said Credit Agreement and Deed of Covenant as the same may from time to time be supplemented and/or amended are hereinafter called the "Credit Agreement" and the "Deed of Covenant" respectively) and WHEREAS the Mortgagor has agreed to execute this Mortgage in favour of the Mortgagee for the purpose of securing payment by the Mortgagor to the Mortgagee of all sums for the time being owing to the Mortgagee in the manner and at the times set forth in the Credit Agreement and the Deed of Covenant and WHEREAS the amount of principal, interest and other moneys due to the Mortgagee at any given time can be ascertained by reference to the Credit Agreement and/or the Deed of Covenant and/or to the books of account (or other accounting records) of the Mortgagee.

Now we (b) Global Prosperity LLC, in consideration of the premises for ourselves and our successors, covenants with the said (c) National Bank of Pakistan and (d) its assigns to pay to him or them or it the sums for the time being due on this security whether by way of principal or interest, at the times and manner aforesaid.   And for the purpose of better securing to the said (c) National Bank of Pakistan the payment of such sums as last aforesaid, we do hereby mortgage to the said (c) National Bank of Pakistan, New York Branch sixty four sixty fourth shares of which we are the Owners in the Ship above particularly described, and in her boats, guns, ammunition, small arms and appurtenances.

Lastly, we for ourselves and our successors, covenant with the said (c) National Bank of Pakistan and (d) its assigns that we have the power to mortgage in manner aforesaid the above mentioned shares, and that the same are free from encumbrances (e)

In witness whereof we have executed this instrument this ……….. day of October, 2008

| Seal | Individual/Corporation | Attestation |
|---|---|---|
|  | Global Prosperity LLC<br>name of ~~individual~~/corporation<br><br>per…[●] ……………………………………<br><br>signature as ~~Individual/Director/Secretary/~~<br>~~Officer~~/Attorney-in-fact (h)<br><br>…………………………………………<br>~~signature as Individual/Director/Secretary/~~<br>~~Officer/Attorney-in-fact (h)~~<br><br>…………………………………………<br>in the presence of the witness whose<br>attestation is given opposite | I, (f)…[●]…………………………………………<br><br>of (g) …[●]<br>…………………………………………<br><br>hereby testify that in my presence<br>(i) this Mortgage was signed  by<br>……[●]…………………………………<br>….<br>as ~~Individual/Director/Secretary/Officer/~~<br>Attorney-in-fact (h)<br>~~and~~……………………………………<br>~~as Individual/Director/Secretary/Officer/~~<br>~~Attorney-in-fact (h)~~<br><br>and<br>(ii) ~~the corporate seal~~ (h)/personal seal (h) of<br>the transferor was affixed this…….. day of October, 2008<br><br>Signature of witness …………………………… |

(a) Here state by way of recital that there is an account current between the Mortgagor (describing the company and its address) and the Mortgagee (giving full title, address and description, including all joint mortgages), and describe the nature of the transaction so as to show how the amount of principal and interest due at any given time is to be ascertained, and the manner and time of payment, (b) Name of company, (c) Full name of Mortgagee, (d) "his", "hers" or "its", (e) If any prior encumbrance add "save as appears by the registry of the ship", (f) name of witness, (g) address of witness, (h) delete as applicable.

NOTE: The witness to the execution of the document must be a disinterested party, independent of the body corporate or individual executing it e.g. Notary Public, Consular Officer, Magistrate, Justice of Peace. A director, officer or employee of a transferor which is a body corporate should not be an attesting witness.



# THE COMMONWEALTH OF THE BAHAMAS

# MORTGAGE REGISTRATION FORM

## (Page 2 of 2)

| Official Number | IMO Number | Name of Ship | Port of Registry |
|---|---|---|---|
| 725313 | 7504603 | "GLOBAL PROSPERITY" | NASSAU |

## TRANSFER OF MORTGAGE

I/we, the within mentioned
in consideration of
this day paid to me/us (a)          by ...................................................................................

hereby transfer to it/him/her/them (a)  the benefit of the within-written security.  In witness whereof I/we (a)
have hereto affixed our seal this ......... day of ...............................................................

| Seal | Individual/Corporation | Attestation |
|---|---|---|
|  | name of individual/corporation <br><br> per ..................................... <br><br> signature as Individual/Director/Secretary/ Officer/Attorney-in-fact <br><br> signature as Individual/Director/Secretary/ Officer/Attorney-in-fact <br><br> ............................................... <br><br> in the presence of the witness whose attestation is given opposite | I, (b)........................................... <br> of (c)......................................... <br><br> hereby testify that in my presence <br> (i) this Transfer of mortgage was signed <br> by ............................................. <br> as Individual/Director/Secretary/Officer/ Attorney-in-fact (a) <br> and ........................................... <br> as Individual/Director/Secretary/Officer/ Attorney-in-fact (a) <br><br> and <br> (ii) the corporate seal/personal seal (a) of <br> the transferor was affixed this .......... day of ......................... <br><br> Signature of witness ....................... |

## MEMORANDUM OF DISCHARGE

By individual or Joint Mortgagees

Received the sum of ...................................................................................................
in discharge of this within-written security.  Dated at .......................................... this ............... day of ...............
In witness whereof we have hereto affixed our common seal this ............... day of .........................................

|  | name of individual/corporation <br><br> per ..................................... <br><br> signature as Individual/Director/Secretary/ Officer/Attorney-in-fact <br><br> signature as Individual/Director/Secretary/ Officer/Attorney-in-fact <br><br> in the presence of the witness whose attestation is given opposite | I, (b)........................................... <br> of (c)......................................... <br><br> hereby testify that in my presence <br> (i) this Discharge of mortgage was signed <br> by ............................................. <br> as Individual/Director/Secretary/Officer/ Attorney-in-fact (a) <br> and ........................................... <br> as Individual/Director/Secretary/Officer/ Attorney-in-fact (a) <br><br> and <br> (ii) the corporate seal/personal seal (a) of <br> the mortgagee was affixed this ........... day of ............................... <br><br> Signature of witness ....................... |
|---|---|---|

(a)    delete as appropriate, (b) insert name of witness, (c) insert address of witness

NOTE:  The witness to the execution of the document must be a disinterested party, independent of the body corporate or individual executing it e.g. Notary Public, Consular Officer, Magistrate, Justice of Peace.  A director, officer or employee of a transferor which is a body corporate should not be an attesting witness.

EXHIBIT G

DEED OF COVENANT

[VESSEL NAME]

DEED OF COVENANT (this "Deed of Covenant") made this [●] day of [●], 2008, between GLOBAL [●] LLC, a Marshall Islands limited liability company (the "Shipowner"), having its registered address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH 96960, and NATIONAL BANK OF PAKISTAN, through its New York Branch with an address at 100 Wall Street, New York, New York 10005 USA (together with its successors in trust and assigns (the "Mortgagee").

WHEREAS:

(A)     The Shipowner is the sole owner of the whole of the motor vessel [●] (the "Vessel"), duly registered in the name of the Shipowner under the laws and flag of the Bahamas, Official Number [●], of 19,605 gross tons and 6,345 net tons built in [●] at St. Nazaire, France, with her home port at Nassau, Bahamas, which together with all interest therein and all of the boilers, engines, machinery, masts, spars, boats, anchors, cables, chains, rigging, tackle, capstans, outfit tools, pumps and pumping equipment, apparel, furniture, fittings, equipment, spare parts, and all other appurtenances thereunto appertaining or belonging, whether now owned or hereafter acquired, and also any and all additions, improvements, renewals and replacements hereafter made in or to such vessel or any part thereof, including all items and appurtenances aforesaid (such vessel, together with all of the foregoing, being herein called the "Vessel").

(B)     Pursuant to a Credit Agreement dated as of October 22, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") by and among (i) GCL Shipping Corp., a Marshall Islands corporation as Borrower, (ii) the Shipowner and the other companies described therein as Guarantors and (iii) the Mortgagee, as lender, the Mortgagee agreed to make available to the Borrower credit facilities in an initial aggregate principal amount of up to U.S.$17,500,000 comprised of (i) a medium term loan facility in the amount of $12,000,000, (ii) a revolving short term loan facility in the initial amount of $5,000,000, and (iii) a letter of credit facility in the amount of $500,000, as provided in the Credit Agreement. Except as otherwise defined herein, capitalized terms used herein and defined in the Credit Agreement shall be used herein as so defined.

(C)     The Term Loan is evidenced by a promissory note dated the date hereof of the Borrower payable to the order of the Mortgagee in the principal amount of $12,000,000, and the Revolving Advances are evidenced by a promissory note dated the date hereof of the Borrower payable to the order of the Mortgagee in the principal amount of $7,000,000.

(D)     Pursuant to Article VIII of the Credit Agreement, the Shipowner and the other Guarantors have jointly and severally guaranteed all liabilities of the Borrower now or hereafter existing under the Credit Agreement, the Notes and any other Loan Document, whether for principal, interest, fees, expenses or otherwise due or owing to the Mortgagee.

(E)     Contemporaneously with the execution of this Deed there has been executed and registered by the Shipowner in favor of the Mortgagee a first priority statutory Bahamian ship

mortgage (the "Mortgage") to secure the repayment of the Term Loan Note, the Revolving Note and Unpaid Drawings in respect of Letters of Credit (including the principal of and interest thereon), and the payment of all other such sums that may hereinafter be secured by the Mortgage in accordance with the terms thereof, constituting a first priority mortgage of 64/64ths shares in the Vessel, and the Shipowner has agreed to execute this Deed collateral to the Mortgage and to the security thereby created and to secure the performance and observance of and compliance with all the agreements, covenants and conditions contained herein or in the Credit Agreement, the Notes and the other Loan Documents,.

(F)     This Deed shall be read together with the Credit Agreement, the Notes and the other Loan Documents, but in the case of any inconsistency between this Deed and the Credit Agreement, the Notes or the other Loan Documents, the provisions of the Credit Agreement, the Notes and the other Loan Documents shall prevail, but only to the extent permitted by Bahamian law.

NOW, THIS DEED WITNESSETH AS FOLLOWS:

1.     In consideration of the premises and other good and valuable consideration, the Shipowner hereby covenants with the Mortgagees to pay each and every sum of money that may be or become owing under the terms of the Credit Agreement, the Notes, the Mortgage and any of the other Loan Documents or any of them at the time and in the manner specified therein (all such obligations and other sums hereinafter called the "Indebtedness hereby secured").

2.     By way of security for payment of the Indebtedness hereby secured, the Shipowner does hereby MORTGAGE AND CHARGE to and in favor of the Mortgagee all its interest, present and future, in the Vessel and proceeds thereof (which the Shipowner hereby warrants to be free at the date hereof from any other charges or encumbrances whatsoever).

3.     The Shipowner and the Mortgagees hereby covenant with each other that the security created by this Deed and any of the other Loan Documents to which the Shipowner is a party shall be held by the Mortgagees as continuing security, and:

(a)     that the security so created shall not be satisfied by any intermediate payment of any part of the Indebtedness hereby secured;

(b)     that no failure or delay to enforce or exercise a right under this Deed or the Mortgage shall preclude or estop the Mortgagee from taking any action to enforce or exercise it rights in respect thereof; and

(c)     that the rights of the Mortgagee are only capable of being extinguished, limited or otherwise adversely affected by an express and specific term in a document signed by or on behalf of the Mortgagee.

4.     Upon the Mortgagee being satisfied that the Indebtedness hereby secured has been unconditionally and irrevocably paid and discharged in full, and following a written request therefor from the Shipowner, the Mortgagee will, subject to being indemnified in scope and substance to its satisfaction for the costs and expenses incurred by it in connection therewith, release the security created by the Mortgage and this Deed.

5.     It is hereby covenanted, declared and agreed that the property above described is to be held subject to the further covenants, conditions, terms and uses hereinafter set forth.

The Shipowner covenants and agrees with the Mortgagees as follows:

## ARTICLE I
## COVENANTS OF THE SHIPOWNER

The Shipowner covenants and agrees with the Mortgagee as follows:

Section 1.  The Shipowner will pay or cause to be paid the Indebtedness hereby secured and interest thereon and the Shipowner will observe, perform and comply with each and every one of the covenants, terms and conditions herein and in the Credit Agreement and the other Loan Documents, expressed or implied, on its part to be observed, performed or complied with.  Notwithstanding fluctuations in the value or rate of Dollars in terms of gold or any other currency, all payments hereunder or otherwise in respect of the Indebtedness hereby secured shall be payable in terms of Dollars when due, in Dollars when paid, whether such payment is made before or after the due date.

Section 2.  The Shipowner was duly formed and is now existing as a limited liability company under the laws of the Republic of the Marshall Islands and shall so remain during the life of this Deed; it is duly authorized to mortgage the Vessel; all company actions necessary and required by law for the execution and delivery of the Mortgage and this Deed have been duly and effectively taken; and the Guaranty is and will be the valid and enforceable obligation of the Shipowner in accordance with the terms thereof.

Section 3.  The Shipowner lawfully owns and is lawfully possessed of the Vessel free from any security interest, lien, encumbrance or charge whatsoever, or any commitment to make the Vessel available for charter or sale or use by any governmental authority, other than Permitted Encumbrances (as defined in Section 9 hereof).  The Shipowner will warrant and defend the title to, and the lawful possession of, the Vessel, and every part thereof, for the benefit of the Mortgagee against the claims and demands of all persons whomsoever.

Section 4.  The Shipowner will comply with and satisfy all the applicable provisions of the laws of the Commonwealth of The Bahamas in order to maintain the due registration of the Vessel in the name of the Shipowner thereunder and to establish and maintain (a) the Mortgage as a first priority ship mortgage thereunder upon the Vessel and upon all renewals, improvements and replacements made in or to the same, and (b) this Deed as a first priority assignment of, charge over, and security interest in the Vessel or other property assigned hereunder.

Section 5.  The Shipowner will not cause or permit the Vessel to be operated in any manner contrary to law, will not abandon the Vessel, will not engage in any unlawful trade or violate any law or carry any cargo that will expose the Vessel to penalty, forfeiture or capture, and will not do, or suffer or permit to be done, anything which can or may injuriously affect the registration of the Vessel under the laws and regulations of the Commonwealth of The Bahamas and will at all times keep the Vessel duly registered thereunder.

Section 6.  The Shipowner will pay and discharge when due and payable, from time to time, all taxes, assessments, governmental charges, fines and penalties lawfully imposed on the Vessel or any

19101803 v3

income therefrom, unless the same are being contested in good faith, adequate reserves have been established on the books of the Shipowner with respect thereto and there exists no danger of arrest or forfeiture of the Vessel by reason of the non-payment thereof.

Section 7. None of the Shipowner, any charterer, the Master of the Vessel, or any other person, has or shall have any right, power or authority to create, incur or permit to be placed or imposed or continued upon the Vessel, any lien whatsoever other than Permitted Encumbrances.

Section 8. The Shipowner will place, and at all times and places will retain, a properly certified copy of the Mortgage and this Deed on board the Vessel with her papers and will cause such certified copy and such papers to be exhibited to any and all persons having business therewith which might give rise to any lien thereon other than liens for crew's wages and salvage, and to any representative of the Mortgagee; and will place and keep prominently displayed in the chart room and in the Master's cabin of the Vessel a framed printed notice in plain type of such size that the paragraph of reading matter shall cover a space not less than 6 inches wide by 9 inches high, reading as follows:

NOTICE OF MORTGAGE

> This Vessel is owned by GLOBAL [●] LLC, and is subject to a first priority statutory mortgage and Deed of Covenant collateral thereto in favor of NATIONAL BANK OF PAKISTAN as Mortgagee. Under the terms of said Deed, none of the Shipowner, any charterer, the Master of this Vessel or any other person has any right, power or authority to create, incur or permit to be imposed upon this Vessel any lien whatsoever other than for crew's wages and salvage.

Section 9. Except for (a) the lien of the Mortgage, (b) the lien of this Deed, (c) liens for current crew wages and salvage, (d) liens imposed by any governmental authority for taxes, assessments or charges not yet due (after giving effect to any applicable grace period) or which are being contested in good faith and by appropriate proceedings if adequate reserves with respect thereto are maintained on the books of the Shipowner in accordance with generally accepted accounting principles, (e) liens securing claims which are completely covered by insurance and the deductible applicable thereto, so long as there has not been any action by the lienholder to enforce such lien, (f) liens arising from the supply of goods and/or services to the Vessel in the ordinary course of business, so long as such obligations are not overdue for more than sixty (60) days or are being contested in good faith by appropriate proceedings and there has not been any action by the lienholder to enforce such lien, and (g) the Bareboat Charter dated as of October 7, 2008 (the "Bareboat Charter") between the Shipowner and GCL Shipping Corp., a Marshall Islands corporation, respecting the Vessel and liens arising under the Bareboat Charter entered into in the ordinary course of business (the foregoing items (a) through (g) being "Permitted Encumbrances"), the Shipowner will not create or suffer to be continued any security interest, lien, encumbrance or charge on the Vessel or any income therefrom and in due course and in any event within thirty (30) days after the same becomes due and payable will pay or cause to be discharged or make adequate provision for the payment or discharge of all claims or demands which, if not paid or discharged, might result in the creation of such a security interest, lien, encumbrance or charge and will cause the Vessel to be released or discharged from each such security interest, lien, encumbrance or charge therefor.

Section 10. If a libel, complaint or similar process is filed against the Vessel or if the Vessel is otherwise attached, levied upon, or taken into custody or detained by any proceeding in any court or

4

tribunal or by any government or other authority, the Shipowner will promptly notify the Mortgagee in accordance with Section 33 hereof and within fourteen (14) days will cause the Vessel to be released and all liens thereon other than Permitted Encumbrances to be discharged, and will promptly notify the Mortgagee thereof in the manner aforesaid.

Section 11. The Shipowner will at all times and without cost or expense to the Mortgagee maintain and preserve, or cause to be maintained and preserved, the Vessel in good running order and repair, so that the Vessel shall be, in so far as due diligence can make her so, tight, staunch, strong and well and sufficiently tackled, apparelled, furnished, equipped and in every respect seaworthy and in good operating condition; and will keep the Vessel, or cause her to be kept, in such condition as will entitle her to the highest classification the Classification Society for vessels of the same age and type, and annually will furnish to the Mortgagee, if requested, a certificate by such classification society that such classification is maintained. The Vessel shall, and the Shipowner covenants that it will, at all times comply with all applicable laws, treaties and conventions of the Commonwealth of The Bahamas, and rules and regulations issued thereunder, and shall have on board as and when required thereby valid certificates showing compliance therewith. The Shipowner will cause the Vessel to be drydocked as per class requirements. The Shipowner will not make, or permit to be made, any substantial change in the structure, type and speed of the Vessel or change in any of her rigs, except as may be required by applicable law, regulations promulgated by a regulatory authority having jurisdiction over the Vessel or the Classification Society, without first receiving the written approval thereof by the Mortgagee. The Shipowner will comply or procure compliance with the ISM Code and the ISPS Code, and will furnish to the Mortgagee on demand true and complete copies of the Vessel's Document of Compliance, Safety Management Certificate and such other ISM Code documentation as the Mortgagee may reasonably request in writing.

Section 12. The Shipowner at all times will afford the Mortgagee or its authorized representatives, at their risk and expense, full and complete access to the Vessel for the purpose of inspecting the same and her cargo and papers (provided the Vessel is not thereby delayed).

Section 13. So long as this Mortgage shall remain outstanding, the Shipowner will not transfer or change the flag or port of registry of the Vessel without the written consent of the Mortgagee first had and obtained, which consent shall not be unreasonably withheld, and any such written consent to any one transfer or change of flag or port of registry shall not be construed to be a waiver of this provision with respect to any subsequent proposed transfer or change of flag or port of registry.

Section 14. Except for the Bareboat Charter, the Shipowner will not sell, mortgage, transfer, demise charter, change the management of, or change the port of registry of, the Vessel without the written consent of the Mortgagee first had and obtained, which consent shall not unreasonably be withheld, and any such written consent to any one such sale, mortgage, transfer, demise charter, change of management, or change of registry shall not be construed to be a waiver of this provision with respect to any subsequent proposed sale, mortgage, transfer, demise charter, change of management, or change of registry. Any such sale, mortgage, transfer, demise charter, change of management, or change of registry of the Vessel shall be subject to the provisions of the Mortgage and this Deed and the liens created thereby.

Section 15.(a) The Shipowner will, at its own expense, when and so long as this Mortgage or any of the Indebtedness hereby secured shall be outstanding, insure the Vessel and keep her insured, in lawful money of the United States, for an amount not less than the full commercial value of the Vessel and in no event for an amount, together with the insured value of all other vessels mortgaged to the

Mortgagee as security for the Indebtedness hereby secured, less than one hundred percent (100%) of the aggregate unpaid principal amount of the Term Loan and the Revolving Advances outstanding from time to time. The Vessel shall in no event be insured for an amount less than the agreed valuation as set forth in the applicable marine and war risk policies. Such insurance shall cover marine and war risk perils, on hull and machinery, and shall be maintained in the broadest forms available in the American, British or Norwegian insurance market or such other markets as may be satisfactory to the Mortgagee. The Vessel shall not carry any cargoes nor proceed into any area then excluded by trading warranties under its marine or war risk policies (including protection and indemnity) without obtaining any necessary additional coverage, satisfactory in form and substance, and evidence of which shall be furnished, to the Mortgagee. While the Vessel is laid up or idle, in lieu of the above-mentioned marine and war risk hull insurance and protection and indemnity insurance, the Shipowner will insure the Vessel under forms of policies approved by the Mortgagee insuring the Vessel against the usual risks encountered by like vessels under similar circumstances.

(b) The policy or policies of insurance shall be issued by responsible underwriters acceptable to the Mortgagee, shall contain the conditions, terms, stipulations and insuring covenants satisfactory to the Mortgagee in its reasonable judgment and shall be kept in full force and effect by the Shipowner so long as this Mortgage or the Notes shall be outstanding. All such policies, binders, cover notes and other interim insurance contracts shall be executed and issued in the name of the Shipowner and shall, to the extent that the Mortgagee shall require, provide that loss be payable to the Mortgagee for distribution by it to itself and the Shipowner as their interests may appear. All insurance maintained hereunder shall be primary insurance without right of contribution against any other insurance maintained by the Mortgagee. If required by the Mortgagee, the Mortgagee shall be named as a co-assured on all such policies, cover notes and insurance contracts but without liability of the Mortgagee for premiums or calls, or for the representations and warranties made therein by the Shipowner or any other person. All such cover notes, and if requested by the Mortgagee at any time and from time to time all such policies, binders and other interim insurance contracts, shall be deposited with the Mortgagee. In addition, the Shipowner shall maintain protection and indemnity insurance and coverage which is carried and maintained for properties of a similar character employed under similar conditions of operation by prudent companies engaged in a similar business and in the maximum available amount on commercially reasonable terms against pollution liability, through underwriters or associations acceptable to the Mortgagee and in the maximum amount available with respect to coverage other than pollution liability which is carried and maintained for properties of a similar character employed under similar conditions of operation by prudent companies engaged in a similar business, provided, however, that war risk protection and indemnity insurance shall be in an amount not less than the amount of insurance against total loss. Such insurance policies shall provide for at least fourteen (14) days' prior notice to be given to the Mortgagee by the underwriters or association in the event of the failure of the Shipowner to pay any premium or call which would suspend coverage under the policy or the payment of a claim thereunder. A copy of such insurance shall be furnished to the Mortgagee.

Unless otherwise required by the Mortgagee by notice to the underwriters, although the following insurance is payable to the Mortgagee, (i) any loss under any insurance on the Vessel with respect to protection and indemnity risks may be paid directly to the Shipowner to reimburse it for any loss, damage or expense incurred by it and covered by such insurance or to the person to whom any liability covered by such insurance has been incurred and (ii) in the case of any loss (other than a loss covered by (i) above or by the next paragraph of this Section) under any insurance with respect to the Vessel involving any damage to the Vessel, the underwriters may pay direct for the repair, salvage or other charges involved or, if the Shipowner shall have first fully repaired the damage or paid all of the

salvage or other charges, may pay the Shipowner as reimbursement therefor; provided, however, that if such damage involves a loss in excess of U.S. $500,000, the underwriters shall not make such payment without first obtaining the written consent thereto of the Mortgagee. Any loss covered by this paragraph which is paid to the Mortgagee but which might have been paid, in accordance with the provisions of this paragraph, direct to the Shipowner or others, shall be paid by the Mortgagee to, or as directed by, the Shipowner and all other payments to the Mortgagee of losses covered by this paragraph shall be applied by the Mortgagee as it, in its sole discretion, sees fit.

In the event of an Event of Loss, all insurance payments therefor shall be paid to the Mortgagee. The Shipowner shall not declare or agree with the underwriters that the Vessel is a constructive or compromised, agreed or arranged constructive total loss without the prior written consent of the Mortgagee.

(c) In addition, the Mortgagee shall be entitled from time to time to effect, maintain and renew in its own name all or any of the following in an amount, together with the amount of such coverage in respect of all other vessels mortgaged to the Mortgagee as security for the Indebtedness hereby secured, equal to one hundred percent (100%) of the aggregate unpaid principal amount of the Term Loan and Revolving Advances outstanding from time to time, on such terms, through such insurers and generally in such manner as the Mortgagee may from time to time consider appropriate :

(i)      a mortgagee's interest marine insurance policy in respect of the Vessel (which policy may be issued solely in respect of the Vessel or on a fleet basis in respect of all vessels mortgaged to the Mortgagee as security for the Indebtedness hereby secured), and the Shipowner shall, upon demand, fully indemnify the Mortgagee in respect of all premiums and other expenses which are incurred in connection with or with a view to effecting, maintaining or renewing any such policy; and

(ii)      a mortgagee's interest additional perils policy providing for the indemnification of the Mortgagee against any matter capable of being insured against under a mortgagee's interest additional perils policy, including (without limitation) any possible losses or other consequences of any Environmental Action, and the Shipowner shall, upon demand, fully indemnify the Mortgagee in respect of all premiums and other expenses which are incurred in connection with or with a view to effecting, maintaining or renewing any such insurance.

(d) In the event of an Event of Loss, the Mortgagee shall retain out of the insurance payments received on account of such loss, which shall become the sole property of the Mortgagee, any sum or sums that shall be or become owing to the Mortgagee under the Credit Agreement, the Mortgage, this Deed or the other Loan Documents, whether or not the same be then due and payable, together with accrued interest and the cost, if any, of collecting the insurance, and pay the balance as in Section 27 hereinafter provided.

(e) The Shipowner will furnish the Mortgagee from time to time on request, and in any event at least annually, a detailed report signed by a firm of marine insurance brokers acceptable to the Mortgagee with respect to P & I entry, the hull and machinery and war risk insurance carried and maintained on the Vessel, together with their opinion as to the adequacy thereof and its compliance with the provisions of this Mortgage. At the Shipowner's expense the Shipowner will cause such insurance broker and the club or association providing protection and indemnity insurance referred to in paragraph (b) of this Section 15, to agree to advise the Mortgagee by telefacsimile

confirmed by letter of any expiration, termination, material alteration or cancellation of any policy, any default in the payment of any premium and of any other act or omission on the part of the Shipowner of which it has knowledge and which might invalidate or render unenforceable, in whole or in part, any insurance on the Vessel, and to provide an opportunity of paying any such unpaid premium or call, such right being exercisable by the Mortgagee on a vessel by vessel and not on a fleet basis. In addition, the Shipowner shall promptly provide the Mortgagee with any information which the Mortgagee reasonably requests for the purpose of obtaining or preparing any report from an independent marine insurance consultant as to the adequacy of the insurances effected or proposed to be effected in accordance with this Deed as of the date hereof or in connection with any renewal thereof, and the Shipowner shall upon demand indemnify the Mortgagee in respect of all reasonable fees and other expenses incurred by or for the account of the Mortgagee in connection with any such report; provided the Mortgagee shall be entitled to such indemnity only for one such report during any period of twelve months.

The underwriters or brokers shall furnish the Mortgagee with a letter or letters of undertaking to the effect that:

> (i) they will hold the instruments of insurance, and the benefit of the insurances thereunder, to the order of the Mortgagee in accordance with the terms of the loss payable clause referred to in the relevant Assignment of Insurances for the Vessel; and

> (ii) they will have endorsed on each and every policy as and when the same is issued the loss payable clause and the notice of assignment referred to in the relevant Assignment of Insurances for the Vessel; and

> (iii) they will not set off against any sum recoverable in respect of a claim against the Vessel under the said underwriters or brokers or any other person in respect of any other vessel nor cancel the said insurances by reason of non-payment of such premiums or other amounts.

All policies of insurance required hereby shall provide for not less than 14 days prior written notice to be received by the Mortgagee of the termination or cancellation of the insurance evidenced thereby. All policies of insurance maintained pursuant to this Section 15 for risks covered by insurance other than that provided by a protection and indemnity club or association shall contain provisions waiving underwriters' rights of subrogation thereunder against any assured named in such policy and any assignee of said assured. The Shipowner has assigned to the Mortgagee its rights under the policies of insurance in respect of the Vessel. The Shipowner agrees that, unless the insurances by their terms provide that they cannot cease (by reason of nonrenewal or otherwise) without the Mortgagee being informed and having the right to continue the insurance by paying any premiums not paid by the Shipowner, receipts showing payment of premiums for required insurance and also of demands from the Vessel's protection and indemnity underwriters shall be in the hands of the Mortgagee at least two (2) days before the risk in question commences.

(f) The Shipowner will comply with and satisfy all of the provisions of any applicable law, regulation, proclamation or order concerning financial responsibility for liabilities imposed on the Shipowner or the Vessel with respect to pollution including, without limitation, the U.S. Water Pollution Control Act, as amended by the Water Pollution Control Act Amendment of 1972 and as it may be further amended, the Oil Pollution Act of 1990 as amended from time to time, and the Hazardous Materials Transportation Act as amended from time to time, and will maintain all

certificates or other evidence of financial responsibility as may be required by any such law, regulation, proclamation or order with respect to the trade which the Vessel from time to time is engaged in and the cargoes carried by it.

Section 16. The Shipowner will reimburse the Mortgagee on demand, with interest at a rate per annum (based on a year of 360 days and actual number of days elapsed) equal to the rate per annum required to be paid on the Term Loan pursuant to Section 2.05(b) of the Credit Agreement (the "Default Rate"), for any and all expenditures that the Mortgagee may from time to time make, lay out or expend in providing such protection in respect of insurance, discharge or purchase of liens, taxes, dues, assessments, governmental charges, fines and penalties lawfully imposed, repairs, attorneys' fees and other matters as the Shipowner is obligated herein to provide, but fails to provide. Such obligation of the Shipowner to reimburse the Mortgagee shall be an additional indebtedness due from the Shipowner, secured by the Mortgage and this Deed, and shall be payable by the Shipowner on demand. The Mortgagee, though privileged so to do, shall be under no obligation to the Shipowner to make any such expenditures, nor shall the making thereof relieve the Shipowner of any default in that respect.

ARTICLE II
EVENTS OF DEFAULT AND REMEDIES

Section 17. In case any one or more of the following events, herein termed "Events of Default", shall occur and shall not have been remedied:

(a) Default in the payment of the whole or any part of the Shipowner's obligations under the Guaranty when and as the same shall become due and payable, or default in the payment of any other sum owing by the Shipowner to the Mortgagee within three (3) Business Days after the same shall become due and payable, as in the Credit Agreement and herein provided, whether at maturity, by acceleration or otherwise (after taking into account any applicable grace period); or

(b) Default in the due and punctual observance and performance of any provision of Sections 4, 5, 9, 10, 13, 14, 15 or 16 hereof; or

(c) Default in the due observance or performance of any of the other covenants and conditions herein required to be kept and performed by the Shipowner and continuance of such default for fourteen (14) days after written notice thereof shall have been given to the Shipowner by the Mortgagee; or

(d) An Event of Default under the Credit Agreement shall have occurred and shall not have been remedied;

Then and in each and every such case the security constituted by this Deed and the Mortgage shall become immediately enforceable and, without limitation, the enforcement remedies specified can be exercised irrespective of whether or not the Mortgagee has exercised the right of acceleration under the Credit Agreement or any other Loan Document, and the Mortgagee shall have the right to:

(1) Declare all the then unpaid Indebtedness hereby secured to be due and payable immediately, and upon such declaration the same shall become and be immediately due and payable, and thereafter shall bear interest at a rate per annum (based on a year of 360 days and actual number of days elapsed) equal to the Default

19101803 v3

Rate; provided, however, that no declaration shall be required if an event of default shall have occurred by reason of an actual or deemed entry of an order for relief with respect to any of the Obligors under the Federal Bankruptcy Code of the United States of America, and in such case, the Indebtedness hereby secured shall become immediately due and payable on the occurrence of such event of default without any notice or demand;

(2) Exercise all the rights and remedies in foreclosure and otherwise given to mortgagee by the provisions of the laws of the Commonwealth of The Bahamas or the laws of any other jurisdiction where the Vessel may be found;

(3) Bring suit at law, in equity or in admiralty, as they may be advised, to recover judgment for the Indebtedness hereby secured, and collect the same out of any and all property of the Shipowner whether covered by the Mortgage or this Deed or otherwise;

(4) Take the Vessel, wherever the same may be, without legal process and without being responsible for loss or damage; and the Shipowner or other person in possession forthwith upon demand of the Mortgagee shall surrender to the Mortgagee possession of the Vessel, as demanded by the Mortgagee, and the Mortgagee may, without being responsible for loss or damage, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for their best advantage, accounting only for the net profits, if any, arising from such use and charging upon all receipts from such use or from the sale of the Vessel by court proceedings or pursuant to Subsection (5) next following, all costs, expenses, charges, damages or losses by reason of such use; and if at any time the Mortgagee shall avail itself of the right herein given it to take the Vessel and shall take it, the Mortgagee shall have the right to dock the Vessel for a reasonable time at any dock, pier or other premises of the Shipowner without charge, or to dock it at any other place at the cost and expense of the Shipowner;

(5) Without being responsible for loss or damage, where it has acted reasonably and in good faith, sell the Vessel at any place and at such time as the Mortgagee may specify and in such manner as the Mortgagee may deem advisable free from any claim by the Shipowner in admiralty, in equity, at law or by statute, after first giving notice (in the case of a public sale) of the time and place of sale with a general description of the property in the following manner:

(i)     By publishing such notice for five (5) consecutive days in a daily newspaper of general circulation published in New York City;

(ii)    If the place of sale should not be New York City, then also by publication of a similar notice in a daily newspaper, if any, published at the place of sale; and

(iii)   By sending a similar notice by telefacsimile confirmed by registered mail to the Shipowner at its address hereinafter set forth on or before the day of first publication.

19101803 v3

Section 18. A sale of the Vessel made in pursuance of this Deed, whether under the power of sale hereby granted or any judicial proceedings, shall operate to divest all right, title and interest of any nature whatsoever of the Shipowner therein and thereto, and shall bar the Shipowner, its successors and assigns, and all persons claiming by, through or under them. No purchaser shall be bound to inquire whether notice has been given, or whether any default has occurred, or as to the propriety of the sale, or as to the application of the proceeds thereof. In case of such sale, the Mortgagee, if it is the purchaser, shall be entitled, for the purpose of making settlement or payment for the property purchased to use and apply the unpaid balance of the Indebtedness hereby secured in order that there may be credited against the amount remaining due and unpaid thereon the sums payable out of the net proceeds of such sale to the Mortgagee after allowing for the costs and expense of sale and other charges; and thereupon such purchaser shall be credited, on account of such purchase price, with the net purchase price that shall have been so credited upon the Indebtedness hereby secured. At such sale, the Mortgagee may bid for and purchase such property, and upon compliance with the terms of sale may hold, retain and dispose of such property without further accountability therefor.

Section 19. The Mortgagee is hereby appointed attorney-in-fact of the Shipowner, upon the happening of any Event of Default specified in Section 17, to execute and deliver to any purchaser aforesaid, and is hereby vested with full power and authority to make, in the name and in behalf of the Shipowner, good conveyance of the title to the Vessel so sold. Any person dealing with the Mortgagee or attorney-in-fact shall not be put on enquiry as to whether the power of attorney contained herein has become exercisable. In the event of a sale of the Vessel, the Shipowner will, if and when required by the Mortgagee, execute such form of conveyance of the Vessel as the Mortgagee may direct or approve.

Section 20. The Mortgagee is hereby appointed attorney-in-fact of the Shipowner, upon the happening of any Event of Default specified in Section 17, in the name of the Shipowner to demand, collect, receive, compromise and sue for, so far as may be permitted by law, all freights, hire, earnings, issues, revenues, income and profits of the Vessel, and all amounts due from underwriters under any insurance thereon as payment of losses or as return premiums or otherwise, salvage awards and recoveries, recoveries in general average or otherwise, and all other sums due or to become due at the time of the happening of any Event of Default in respect of the Vessel, or in respect of any insurance thereon from any person whomsoever, and to make, give and execute in the name of the Shipowner acquittances, receipts, releases or other discharges for the same, whether under seal or otherwise, and to endorse and accept in the name of the Shipowner all checks, notes, drafts, warrants, agreements and all other instruments in writing with respect to the foregoing.

Section 21. Whenever any right to enter and take possession of the Vessel accrues to the Mortgagee, it may require the Shipowner to deliver, and the Shipowner shall, on demand at its own cost and expense, deliver to the Mortgagee the Vessel as demanded. If any legal proceedings shall be taken to enforce any right under the Mortgage or this Deed, the Mortgagee shall be entitled as a matter of right to the appointment of a receiver of the Vessel and the freights, hire, earnings, issues, revenues, income and profits due or to become due and arising from the operation thereof.

Section 22. Upon the happening of any Event of Default specified in Section 17, the Shipowner authorizes and empowers the Mortgagee or its appointees or any of them to appear in the name of the Shipowner, its successors and assigns, in any court of any country or nation of the world where a suit is pending against the Vessel because of or on account of any alleged lien against the Vessel from which the Vessel has not been released and to take such proceedings as to them or any of them may seem proper towards the defense of such suit and the purchase or discharge of such lien, and

19101803 v3

all expenditures made or incurred by them or any of them for the purpose of such defense, purchase or discharge shall be a debt due from the Shipowner, its successors and assigns, to the Mortgagee, and shall be secured by the lien of this Mortgage in like manner and extent as if the amount and description thereof were written herein.

Section 23. The Shipowner covenants that upon the happening of any of the Events of Default specified in clause (a) of Section 17, then, upon written demand of the Mortgagee, the Shipowner will pay to the Mortgagee the whole amount payable in respect of the Indebtedness hereby secured; and in case the Shipowner shall fail to pay the same forthwith upon such demand, the Mortgagee shall be entitled to recover judgment for the whole amount so due and unpaid, together with such further amounts as shall be sufficient to cover the reasonable costs and expenses of collection, including a reasonable compensation to the Mortgagee's agents, attorneys and counsel and any necessary advances, expenses and liabilities made or incurred by them hereunder. All moneys collected by the Mortgagee under this Section 23 shall be applied by the Mortgagee in accordance with the provisions of Section 27 hereof.

Section 24. Each and every power and remedy herein given to the Mortgagee shall be cumulative and shall be in addition to every other power and remedy herein given or now or hereafter existing at law, in equity, in admiralty or by statute, and each and every power and remedy whether herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by the Mortgagee in the exercise of any right or power or in the pursuance of any remedy accruing upon any default or Event of Default specified in Section 17 hereof shall impair any such right, power or remedy or be construed to be a waiver of any such default or Event of Default or to be an acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment of or on account of the Indebtedness hereby secured maturing after any default or Event of Default or of any payment on account of any past default be construed to be a waiver of any right to take advantage of any future Event of Default or of any past Event of Default not completely cured thereby.

Section 25. If at any time after an Event of Default and prior to the actual sale of the Vessel by the Mortgagee or prior to any foreclosure proceedings, the Shipowner offers to cure completely all Events of Default and to pay all expenses, advances and damages to the Mortgagee consequent on such Events of Default, with interest at the Default Rate, then the Mortgagee may, but shall have no obligation to, accept such offer and restore the Shipowner to its former position, but such action shall not affect any subsequent Event of Default or impair any rights consequent thereon.

Section 26. In case the Mortgagee shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Mortgagee, then and in every such case the Shipowner and the Mortgagee shall be restored to their former positions and rights hereunder with respect to the property subject or intended to be subject to this Mortgage, and all rights, remedies and powers of the Mortgagee shall continue as if no such proceedings had been taken.

Section 27. The proceeds of the sale of the Vessel, a recovery under the insurances placed on the Vessel in respect of a total loss or constructive total loss, the requisition of title to the Vessel and the net earnings of any charter operation or other use thereof by the Mortgagee under any of the powers

19101803 v3

herein specified pursuant to or under the terms of this Deed or in any proceedings hereunder, the application of which has not elsewhere herein been specifically provided for, shall be applied as follows:

FIRST: To the payment of all expenses and charges, including the expenses of any sale, the expenses of any retaking, attorneys' fees, court costs, and any other expenses or advances made or incurred by the Mortgagee in the protection of its rights or the pursuance of its remedies hereunder, and to provide adequate indemnity against liens claiming priority over or equality with the lien of this Deed and the Mortgage;

SECOND: To the payment of the Indebtedness hereby secured, whether due or not, together with interest thereon;

THIRD: To the payment of any surplus thereafter remaining to the Shipowner or to whomsoever may be entitled thereto.

Section 28. Until the security constituted by this Deed and the Mortgage shall become immediately enforceable pursuant to Section 17, the Shipowner (a) shall be suffered and permitted to retain actual possession and use of the Vessel and (b) shall have the right, from time to time, in its discretion, and without application to the Mortgagee, and without obtaining a release thereof by the Mortgagee, to dispose of, free from the lien hereof, any boilers, engines, machinery, bowsprits, masts, spars, rigging, boats, anchors, cables, chains, tackle, apparel, furniture, fittings or equipment or any other appurtenances to the Vessel that are no longer useful, necessary, profitable or advantageous in the operation of the Vessel, first or simultaneously replacing the same by substitute boilers, engines, machinery, bowsprits, masts, spars, rigging, boats, anchors, chains, cables, tackle, apparel, furniture, fittings, equipment or other appurtenances of substantially equal value to the Shipowner which shall forthwith become subject to the lien of this Deed and the Mortgage.

ARTICLE III
SUNDRY PROVISIONS

Section 29. Conveyancing and Law of Property Act not Applicable. (a) Section 19 of the Conveyancing and Law of Property Act (Chapter 138) Statute laws of The Bahamas (2000 Edition) or the equivalent provisions of any subsequent amending or consolidating act shall not apply to this Deed.

(b) The statutory power of sale under the Mortgage shall be exercisable at any time after the Indebtedness hereby secured shall have become payable without regard to Section 22 of the Conveyancing and Law of Property Act (Chapter 138) Statute laws of The Bahamas (2000 Edition), which section shall not apply to this Deed or any sale made by virtue hereof.

Section 30. All the covenants, promises, stipulations and agreements of the Shipowner in this Deed contained shall bind the Shipowner and its successors and assigns and shall inure to the benefit of the Mortgagee and its successors and assigns. In the event of any assignment or transfer of this Deed, the term "Mortgagee", as used in this Deed, shall be deemed to include any such assignee or transferee. The Shipowner shall not have any rights to assign or transfer its rights or obligations under this Deed without the prior written consent of the Mortgagee.

Section 31.  Wherever and whenever herein any right, power or authority is granted or given to the Mortgagee, such right, power and authority may be exercised in all cases by the Mortgagee or such agent or agents as the Mortgagee may appoint, and the act or acts of such agent or agents when taken shall constitute the act of the Mortgagee hereunder.

Section 32.  If any one or more of the provisions of this Deed should at any time for any reason be declared invalid, void or otherwise inoperative by a competent court of a competent jurisdiction, such declaration or decision shall not affect the validity of any other provision or provisions of this Deed or the validity of this Deed as a whole.

Section 33.  All notices, requests and demands under this Mortgage shall be given in writing or by telefacsimile and shall be delivered, air mailed or telefacsimiled as follows:

> To the Shipowner:
>
> Global [●] LLC
> c/o Shiptrade, Inc.
> 100 Quentin Roosevelt Boulevard
> Garden City, New York  11530
>
> Attention:  Bijan Paksima
> Telefacsimile:  +1516 222 0377
>
> To the Mortgagee:
>
> National Bank of Pakistan
> New York Branch
> 100 Wall Street
> New York, NY  10005
>
> Attention:  General Manager
> Telefacsimile: +1 212 809 4720

Section 34.    Law and Jurisdiction.

(a)    This Deed shall be governed by, and construed in accordance with, the laws of the Commonwealth of The Bahamas.

(b)    The Shipowner hereby irrevocably consents to the service of any and all process in any such suit, action or proceeding by notice of such process to the Shipowner at the address referred to in Section 33 of this Deed.  Nothing in this Section 34(b) shall affect the right of the Mortgagee to serve legal process in any other manner permitted by law or affect the right of the Mortgagee to bring any action or proceeding against the Shipowner or its property in any courts that have appropriate jurisdiction.

[The rest of this page has been left intentionally blank.]

19101803 v3

IN WITNESS WHEREOF, the parties have duly executed this Deed of Covenant on the day and year first above written.

SIGNED and DELIVERED as a Deed     )
for and on behalf of     )
GLOBAL [●] LLC     )
by:     )
in the presence of     )


SIGNED and DELIVERED as a Deed     )
for and on behalf of     )
NATIONAL BANK OF PAKISTAN     )
New York Branch     )
by:     )
in the presence of     )

19101803 v3

Leo Chang/NEWYORK/WFW
10/22/2008 02:42 PM

To    Antoinette Montuori/NEWYORK/WFW@WFW
cc
bcc
Subject    Fw: Global - POAs

plsprint
----- Forwarded by Leo Chang/NEWYORK/WFW on 10/22/2008 02:42 PM -----



Stephan Skoufalos
<stephan.skoufalos@skoufal
os.com>
10/22/2008 02:24 PM

To    'Leo Chang' <LChang@wfw.com>
cc
Subject    FW: Global - POAs

Attached are corrected POAs.

Stephan Skoufalos

**Skoufalos LLC**
**203 325-9010**

**From:** Cristina Sperduti [mailto:cristina.sperduti@skoufalos.com]
**Sent:** Wednesday, October 22, 2008 2:23 PM
**To:** 'Julia Paridis'
**Cc:** 'Stephan Skoufalos'
**Subject:** Global - POAs


**SKOUFALOS** LLC
**Law Firm**
Clearwater House
2187 Atlantic Street, Suite 9
Stamford, CT  06902
**Tel:** (203) 325-9010
**Fax:** (203) 325-9011
**E-Mail:** cristina.sperduti@skoufalos.com

**CONFIDENTIAL:** This message contains information from the law firm of Skoufalos LLC which may be privileged, confidential and exempt from disclosure under applicable law.  If you have received this message in error, please inform us immediately and delete all copies of it from your system.



POA GCL (Oct22'08).doc   POA Global (Oct22'08).doc   POA Progress (Oct22'08).doc   POA Prosperity (Oct22'08).doc



POA Shiptrade (Oct22'08).doc

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENT THAT, GCL SHIPPING CORP., a corporation organized and validly existing under the laws of the Republic of the Marshall Islands (the "Company"), does hereby nominate, constitute and appoint Bijan Paksima, Stephan Skoufalos and Julia Paridis, each acting singly, the Company's true and lawful Attorneys-in-Fact for the Company and in the Company's name, place and stead and on behalf of the Company, with full power of substitution, to do and perform all or any acts, matters, deeds and things which may be required by and to execute, seal and deliver to National Bank of Pakistan ("Lender") all documents, instruments and agreements which may be required by the Lender in connection with that certain credit agreement to be entered into between Lender, on the one part, and the Company as Borrower and Global Container Lines Limited, Shiptrade Inc., Global Prosperity LLC and Global Progress LLC as Guarantors, on the other part (the "Credit Agreement"), pursuant to which the Lender will make available to the Borrower a medium term loan facility in the amount of up to US$12,000,000, a revolving short term loan facility in the amount of up to US$5,000,000, and a letter of credit facility in the amount of up to US$500,000 for a principal amount of up to US$17,500,000 (the "Loan"), including but not limited to:

1.     The Credit Agreement, pursuant to which the Lender will make available to the Borrower the Loan;

2.     A Promissory Note or Notes in favor of the Lender evidencing the Loan;

3.     Assignments in favor of the Lender of the time charter parties dated as of October 22, 2008 entered into between the Company and Global Container Lines Limited (the "Assignment of Time Charters");

4.     Any and all such other documents, instruments, applications, agreements, notices, consents, certificates and papers as may be required by the Lender in connection with the foregoing.

All such documents, instruments, applications, agreements, notices, certificates and papers referred to in paragraphs 1 – 4 above shall contain such terms, conditions and provisions as the Attorneys-in-Fact executing the same shall in his or her absolute discretion approve.

The Company hereby gives and grants to the said Attorneys-in-Fact and to his or her substitute or substitutes full power and authority in the premises, hereby ratifying, allowing and confirming and agreeing to ratify, allow and confirm whatsoever shall lawfully be done in the premises by virtue hereof.

The Company hereby irrevocably and unconditionally undertakes to indemnify each of the Attorneys and his or her or their respective substitute or substitutes against all actions, proceedings, claims, costs, expenses and liabilities of every description arising from the exercise, or the purported exercise, of any of the powers conferred by this Power of Attorney.

IN WITNESS WHEREOF, the Company has executed this Power of Attorney by its duly authorized officer this _____ day of October, 2008.

GCL Shipping Corp.

By: _____
Name: Hormoz Shayegan
Title: Secretary

STATE OF NEW YORK        )
                         : SS.
COUNTY OF NASSAU         )


     BE IT KNOWN that on this ____ day of October, 2008, personally appeared before me Hormoz Shayegan, to me known, who being duly sworn by me did depose and declare that he is the Secretary of GCL Shipping Corp., the Company described in and which executed the foregoing instrument, that the execution of same was duly authorized by the Board of Directors of the Company and that he signed his name thereto by order of the Board of Directors.


_____
Notary Public

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENT THAT, GLOBAL CONTAINER LINES LIMITED, a corporation organized and validly existing under the laws of the State of Delaware (the "Company"), does hereby nominate, constitute and appoint Bijan Paksima, Julia Paridis and Stephan Skoufalos, each acting singly, the Company's true and lawful Attorneys-in-Fact for the Company and in the Company's name, place and stead and on behalf of the Company, with full power of substitution, to do and perform all or any acts, matters, deeds and things which may be required by and to execute, seal and deliver to National Bank of Pakistan ("Lender") all documents, instruments and agreements which may be required by the Lender in connection with that certain credit agreement to be entered into between Lender, on the one part, and the GCL Shipping Corp. as Borrower and the Company, Shiptrade Inc., Global Prosperity LLC and Global Progress LLC as Guarantors, on the other part (the "Credit Agreement"), pursuant to which the Lender will make available to the Borrower a medium term loan facility in the amount of up to US$12,000,000, a revolving short term loan facility in the amount of up to US$5,000,000, and a letter of credit facility in the amount of up to US$500,000 for a principal amount of up to US$17,500,000 (the "Loan"), including but not limited to:

　　　1.　　　The Credit Agreement, pursuant to which the Lender will make available to the Borrower the Loan;

　　　2.　　　Any and all such other documents, instruments, applications, agreements, notices, consents, certificates and papers as may be required by the Lender in connection with the foregoing.

All such documents, instruments, applications, agreements, notices, certificates and papers referred to in paragraphs 1 – 2 above shall contain such terms, conditions and provisions as the Attorney-in-Fact executing the same shall in his or her absolute discretion approve.

The Company hereby gives and grants to the said Attorneys-in-Fact and to each of them and to his or her substitute or substitutes full power and authority in the premises, hereby ratifying, allowing and confirming and agreeing to ratify, allow and confirm whatsoever shall lawfully be done in the premises by virtue hereof.

The Company hereby irrevocably and unconditionally undertakes to indemnify each of the Attorneys and his or her or their respective substitute or substitutes against all actions, proceedings, claims, costs, expenses and liabilities of every description arising from the exercise, or the purported exercise, of any of the powers conferred by this Power of Attorney.

IN WITNESS WHEREOF, the Company has executed this Power of Attorney by its duly authorized officer this _____ day of October, 2008.

Global Container Lines Limited

By:   _____
Name:  Hormoz Shayegan
Title:   Secretary

STATE OF NEW YORK          )
                           : SS.
COUNTY OF NASSAU           )

BE IT KNOWN that on this _____ day of October, 2008, personally appeared before me Hormoz Shayegan to me known, who being duly sworn by me did depose and declare that he is the Secretary of Global Container Lines Limited, the Company described in and which executed the foregoing instrument, that the execution of same was duly authorized by the Board of Directors of the Company and that he signed his name thereto by order of the Board of Directors.

_____
Notary Public

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENT THAT, GLOBAL PROGRESS LLC., a limited liability company organized and validly existing under the laws of the Republic of the Marshall Islands (the "Company"), does hereby nominate, constitute and appoint Bijan Paksima, Stephan Skoufalos and Julia Paridis, each acting singly, the Company's true and lawful Attorneys-in-Fact for the Company and in the Company's name, place and stead and on behalf of the Company, with full power of substitution, to do and perform all or any acts, matters, deeds and things which may be required by and to execute, seal and deliver to National Bank of Pakistan ("Lender") all documents, instruments and agreements which may be required by the Lender in connection with that certain credit agreement to be entered into between Lender, on the one part, and the GCL Shipping Corp. as Borrower and the Company, Global Container Lines Limited, Shiptrade Inc. and Global Prosperity LLC as Guarantors, on the other part (the "Credit Agreement"), pursuant to which the Lender will make available to the Borrower a medium term loan facility in the amount of up to US$12,000,000, a revolving short term loan facility in the amount of up to US$5,000,000, and a letter of credit facility in the amount of up to US$500,000 for a principal amount of up to US$17,500,000 (the "Loan"), including but not limited to:

1. The Credit Agreement, pursuant to which the Lender will make available to the Borrower the Loan;

2. First Priority Statutory Ship Mortgage (the "Mortgage") in favor of the Lender covering the Company's Bahamas flag vessel GLOBAL PROGRESS (the "Vessel");

3. Deed of Covenant collateral to the Mortgage;

4. Assignments in favor of the Lender of the Earnings, Insurances and Bareboat Charter of the Vessel;

5. All oaths, applications, declarations and certificates as may be required for the registration and recording of the Mortgage with the appropriate Bahamas authorities;

6. Any and all such other documents, instruments, applications, agreements, notices, certificates and papers as may be required by the Lender in connection with the foregoing.

All such documents, instruments, applications, agreements, notices, certificates and papers referred to in paragraphs 1 – 6 above shall contain such terms, conditions and provisions as the Attorney-in-Fact executing the same shall in his or her absolute discretion approve.

The Company hereby gives and grants to the said Attorneys-in-Fact and to each of them and to his or her substitute or substitutes full power and authority in the premises, hereby ratifying, allowing and confirming and agreeing to ratify, allow and confirm whatsoever shall lawfully be done in the premises by virtue hereof.

The Company hereby irrevocably and unconditionally undertakes to indemnify each of the Attorneys and his or her or their respective substitute of substitutes against all action, proceedings, claims, costs, expenses and liabilities of every description arising from the exercise, or the purported exercise, of any of the powers conferred by this Power of Attorney.

IN WITNESS WHEREOF, the Company has executed this Power of Attorney by its duly authorized officer this _____ day of October, 2008.

GLOBAL PROGRESS LLC

By:    GCL SHIPPING CORP.


By:    _____
Name: Hormoz Shayegan
Title:    Secretary

STATE OF NEW YORK         )  
                                     : SS.  
COUNTY OF NASSAU        )  

     BE IT KNOWN that on this _____ day of October, 2008, personally appeared before me Hormoz Shayegan to me known, who being duly sworn by me did depose and declare that he is the Secretary of GCL Shipping Corp., the Company described in and which executed the foregoing instrument, that the execution of same was duly authorized by the Board of Directors of the Company and that he signed his name thereto by order of the Board of Directors.

_____  
Notary Public

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENT THAT, GLOBAL PROSPERITY LLC., a limited liability company organized and validly existing under the laws of the Republic of the Marshall Islands (the "Company"), does hereby nominate, constitute and appoint Bijan Paksima, Stephan Skoufalos and Julia Paridis, each acting singly, the Company's true and lawful Attorneys-in-Fact for the Company and in the Company's name, place and stead and on behalf of the Company, with full power of substitution, to do and perform all or any acts, matters, deeds and things which may be required by and to execute, seal and deliver to National Bank of Pakistan ("Lender") all documents, instruments and agreements which may be required by the Lender in connection with that certain credit agreement to be entered into between Lender, on the one part, and GCL Shipping Corp. as Borrower and the Company, Global Container Lines Limited, Shiptrade Inc. and Global Progress LLC as Guarantors, on the other part (the "Credit Agreement"), pursuant to which the Lender will make available to the Borrower a medium term loan facility in the amount of US up to $12,000,000, a revolving short term loan facility in the amount of up to US$5,000,000, and a letter of credit facility in the amount of up to US$500,000 for a principal amount of up to US$17,500,000 (the "Loan"), including but not limited to:

1.    The Credit Agreement, pursuant to which the Lender will make available to the Borrower the Loan;

2.    First Priority Statutory Ship Mortgage (the "Mortgage") in favor of the Lender covering the Company's Bahamas flag vessel GLOBAL PROSPERITY (the "Vessel");

3.    Deed of Covenant collateral to the Mortgage;

4.    Assignments in favor of the Lender of the Earnings, Insurances and Bareboat Charter of the Vessel;

5.    All oaths, applications, declarations and certificates as may be required for the registration and recording of the Mortgage with the appropriate Bahamas authorities;

6.    Any and all such other documents, instruments, applications, agreements, notices, certificates and papers as may be required by the Lender in connection with the foregoing.

All such documents, instruments, applications, agreements, notices, certificates and papers referred to in paragraphs 1 – 6 above shall contain such terms, conditions and provisions as the Attorney-in-Fact executing the same shall in his or her absolute discretion approve.

The Company hereby gives and grants to the said Attorneys-in-Fact and to each of them and to his or her substitute or substitutes full power and authority in the premises, hereby ratifying, allowing and confirming and agreeing to ratify, allow and confirm whatsoever shall lawfully be done in the premises by virtue hereof.

The Company hereby irrevocably and unconditionally undertakes to indemnify each of the Attorneys and his or her or their respective substitute or substitutes against all actions, proceedings, claims, costs, expenses and liabilities of every description arising from the exercise, or the purported exercise, of any of the powers conferred by this Power of Attorney.

IN WITNESS WHEREOF, the Company has executed this Power of Attorney by its duly authorized officer this _____ day of October, 2008.

GLOBAL PROSPERITY LLC

By:     GCL Shipping Corp.


By:     _____
Name:   Hormoz Shayegan
Title:    Secretary

STATE OF NEW YORK        )
                                   : SS.

COUNTY OF NASSAU       )

      BE IT KNOWN that on this ____ day of October, 2008, personally appeared before me Hormoz Shayegan to me known, who being duly sworn by me did depose and declare that he is the Secretary of GCL Shipping Corp., the Company described in and which executed the foregoing instrument, that the execution of same was duly authorized by the Board of Directors of the Company and that he signed his name thereto by order of the Board of Directors.


_____

Notary Public

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENT THAT, SHIPTRADE, INC., a corporation organized and validly existing under the laws of the State of New York (the "Company"), does hereby nominate, constitute and appoint Bijan Paksima, Stephan Skoufalos and Julia Paridis, each acting singly, the Company's true and lawful Attorneys-in-Fact for the Company and in the Company's name, place and stead and on behalf of the Company, to do and perform all or any acts, matters, deeds and things which may be required by and to execute, seal and deliver to National Bank of Pakistan ("Lender") all documents, instruments and agreements which may be required by the Lender in connection with that certain credit agreement to be entered into between Lender, on the one part, and the GCL Shipping Corp. as Borrower and the Company, Global Container Lines Limited, Global Prosperity LLC and Global Progress LLC as Guarantors, on the other part (the "Credit Agreement"), pursuant to which the Lender will make available to the Borrower a medium term loan facility in the amount of up to US$12,000,000, a revolving short term loan facility in the amount of up to US$5,000,000, and a letter of credit facility in the amount of up to US$500,000 for a principal amount of up to US$17,500,000 (the "Loan"), including but not limited to:

1.     The Credit Agreement, pursuant to which the Lender will make available to the Borrower the Loan;

2.     Any and all such other documents, instruments, applications, agreements, notices, certificates and papers as may be required by the Lender in connection with the foregoing.

All such documents, instruments, applications, agreements, notices, certificates and papers referred to in paragraphs 1 – 2 above shall contain such terms, conditions and provisions as the Attorney-in-Fact executing the same shall in his or her absolute discretion approve.

The Company hereby gives and grants to the said Attorneys-in-Fact and to each of them and to his or her substitute or substitutes full power and authority in the premises, hereby ratifying, allowing and confirming and agreeing to ratify, allow and confirm whatsoever shall lawfully be done in the premises by virtue hereof.

The Company hereby irrevocably and unconditionally undertakes to indemnify each of the Attorneys and his or her or their respective substitute or substitutes against all actions,

proceedings, claims, costs, expenses and liabilities of every description arising from the exercise, or the purported exercise, of any of the powers conferred by this Power of Attorney.

IN WITNESS WHEREOF, the Company has executed this Power of Attorney by its duly authorized officer this _____ day of October, 2008.

SHIPTRADE, INC.

By: _____
Name: Hormoz Shayegan
Title:  Secretary

STATE OF NEW YORK )
                        : SS.
COUNTY OF NASSAU )

BE IT KNOWN that on this _____ day of October, 2008, personally appeared before me Hormoz Shayegan to me known, who being duly sworn by me did depose and declare that he is the Secretary of Shiptrade, Inc., the Company described in and which executed the foregoing instrument, that the execution of same was duly authorized by the Board of Directors of the Company and that he signed his name thereto by order of the Board of Directors.

_____
Notary Public

**Dee, Nathan**

| | |
|---|---|
| **From:** | Kazem Paksima [kpaksima@gogcl.com] |
| **Sent:** | Thursday, November 12, 2009 9:53 AM |
| **To:** | Dee, Nathan |
| **Cc:** | Bijan Paksima; Hormoz Shayegan; Ali Paksima |
| **Subject:** | FW: global precision |

The name of the agent for payment of  wages for the crew of Global Precision is:

Gulf Liner Shipping Agencies
Office center,Karama,
P.O.Box 3274
Dubai,UAE
Email: admin@gulsa.com

**From:** Bijan Paksima
**Sent:** Thursday, November 12, 2009 8:36 AM
**To:** Kazem Paksima
**Subject:** FW: global precision

**From:** Dee, Nathan [mailto:NDee@CullenandDykman.com]
**Sent:** Thursday, November 12, 2009 1:38 AM
**To:** Bijan Paksima
**Cc:** Hormoz Shayegan
**Subject:** global precision

Who is the agent and its addresss for the payment of crew wages for Gilmore/Global precision?

C. Nathan Dee, Esq.
Partner
**Cullen and Dykman, LLP**
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Phone No.: 516-357-3817
Fax No.: 516-357-2575
ndee@cullenanddykman.com

# EXHIBIT H

## ASSIGNMENT OF BAREBOAT CHARTER

### [VESSEL NAME]

The undersigned, GLOBAL [●] LLC, a Marshall Islands limited liability company (the "Assignor"), the owner of the Bahamian registered motor vessel [●], Official Number [●] (the "Vessel"), in consideration of One Dollar ($1) lawful money of the United States of America, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has sold, assigned, transferred and set over and by this instrument does sell, assign, transfer and set over, unto NATIONAL BANK OF PAKISTAN (the "Assignee"), and unto the Assignee's successors and assigns, to its and its successors' and assigns' own proper use and benefit, and, as collateral security for its indebtedness to the Assignee now or hereafter existing under the Credit Agreement referred to below, does hereby grant the Assignee a security interest in, all of the Assignor's right, title and interest in and to (i) the Bareboat Charter dated as of October 7, 2008 (as amended or modified from time to time, the "Bareboat Charter") between the Assignor as Owners and GCL Shipping Corp., a Marshall Islands corporation as Charterers (the "Bareboat Charterer"), (ii) all moneys and claims for moneys due and to become due to the Assignor under, and all claims for damages, arising out of the breach of, the Bareboat Charter, and (iii) any proceeds of any of the foregoing.

This Assignment is made pursuant to the Credit Agreement dated as of October 22, 2008 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") by and among (i) the Bareboat Charterer as Borrower, (ii) the Assignor and the other companies described therein as Guarantors, and (iii) the Assignee as Lender.

Upon satisfaction of all indebtedness of the Assignor to the Assignee secured by this Assignment, the Assignee will, at the request and cost of the Assignor, release the collateral assigned hereby and terminate this Assignment.

The Assignor hereby covenants that, upon request of the Assignee following an Event of Default (as such term is defined in the Credit Agreement), the Assignor will direct the Bareboat Charterer to make payment of all of the hire and other moneys due under or arising out of the Bareboat Charter directly to the Assignee for the account of the Assignor at 100 Wall Street, New York, New York 10005 (or any other place designated by the Assignee), and the Assignor will write letters to each of the Assignor's agents and representatives into whose hands or control may come any moneys hereby assigned, informing each such addressee of this Assignment and instructing such addressee to remit promptly to the Assignee all moneys hereby assigned which may come into the addressee's hands or control and to continue to make such remittances until such time as the addressee may receive written notice or instructions to the contrary direct from the Assignee. The Assignor further covenants to exercise its best efforts to cause each such addressee to acknowledge directly to the Assignee receipt of the Assignor's letter of notification and instructions.

The Assignor further covenants that it shall cause the Bareboat Charterer to execute a Consent and Agreement (the "Consent and Agreement") substantially in the form of Schedule 1 hereto upon the execution and delivery of this Assignment.

It is expressly agreed that anything herein contained to the contrary notwithstanding, the Assignor shall remain liable under the Bareboat Charter to perform all the obligations assumed by it

thereunder, and the Assignee shall have no obligation or liability under the Bareboat Charter by reason of or arising out of this Assignment nor shall the Assignee be required or obligated in any manner to perform or to fulfill any obligations of the Assignor under or pursuant to the Bareboat Charter nor to make any payment nor to make any inquiry as to the nature or sufficiency of any payment received by the Assignee nor to present or file any claim, nor to take any other action to collect or enforce the payment of any amounts which may have been assigned to it or to which it may be entitled hereunder at any time or times.

The Assignor agrees that so long as this Assignment is in effect it will not terminate, or consent to the termination of, the Bareboat Charter, withdraw, or consent to the withdrawal of, the Vessel from the service of the Bareboat Charterer, or amend or supplement the Bareboat Charter without first obtaining the written consent of the Assignee therefor. No such amendment or modification of the Bareboat Charter and no consent, waiver or approval with respect thereto shall be valid unless joined in, in writing, by the Assignee. No notice, request or demand under the Bareboat Charter shall be valid as against the Assignee unless and until a copy thereof is furnished to the Assignee.

The Assignor does hereby constitute the Assignee, its successors and assigns, the Assignor's true and lawful attorney, irrevocably, with full power (in the name of the Assignor or otherwise), upon the occurrence and continuance of any Event of Default (as defined in the Credit Agreement), to ask, require, demand, receive, compound and give acquittance for any and all moneys, claims, property and rights hereby assigned, to endorse any checks or other instruments or orders in connection therewith and to file any claims or to take any action or institute any proceedings which the Assignee may deem to be necessary or advisable in the premises. Any action or proceeding brought by the Assignee pursuant to any of the provisions hereof, of the Bareboat Charter or otherwise, and any claim made by the Assignee hereunder or under the Bareboat Charter, may be compromised, withdrawn or otherwise dealt with by the Assignee without any notice to, or approval of, the Assignor.

The powers and authority granted to the Assignee herein have been given for a valuable consideration and are hereby declared to be irrevocable.

The Assignor agrees that at any time and from time to time, upon the written request of the Assignee the Assignor will promptly and duly execute and deliver any and all such further instruments and documents as the Assignee may deem desirable in obtaining the full benefits of this Assignment and of the rights and powers herein granted.

The Assignor does hereby warrant and represent that the Bareboat Charter is in full force and effect and is enforceable in accordance with the terms thereof and the Assignor is not in default thereunder. The Assignor does hereby further warrant and represent that neither the whole nor any part of the right, title and interest hereby assigned are the subject of any present assignment or pledge, and hereby covenants that, without the prior written consent thereto of the Assignee, so long as this Assignment shall remain in effect, the Assignor will not assign or pledge the whole or any part of the right, title and interest hereby assigned to anyone other than the Assignee, its successors or assigns, and the Assignor will not take or omit to take any action, the taking or omission of which might result in any alteration or impairment of said rights or this Assignment.

This Assignment shall be governed by the laws of the State of New York and may not be amended or changed except by an instrument in writing signed by the party against whom enforcement is sought.

2

The Assignor hereby authorizes the Assignee to file Financing Statements (Form UCC-1) and amendments thereto as provided in Article 9 of the Uniform Commercial Code.

IN WITNESS WHEREOF the Assignor has caused this Assignment to be duly executed on this [●] day of October, 2008.

GLOBAL [●] LLC


By: _____
Name:
Title:

19102050 v2

# CONSENT AND AGREEMENT

The undersigned, the Bareboat Charterer under the Bareboat Charter referred to in the foregoing Assignment (the defined terms therein being herein used with the same meaning), in consideration of one dollar ($1.00) lawful money of the United States of America paid by NATIONAL BANK OF PAKISTAN (the "Assignee"), the receipt of which is hereby acknowledged, hereby acknowledges notice of and consents and agrees to the foregoing Assignment and to all of the respective terms thereof and hereby confirms and agrees:

(i)     that the Bareboat Charter is in full force and effect and the Vessel has been accepted by the undersigned under the Bareboat Charter;

(ii)     that upon request of the Assignee following an Event of Default (as such term is defined in the Credit Agreement), the Bareboat Charterer will make, or cause to be made, payment of all of the hire and other moneys due under or arising out of the Bareboat Charter directly to the Assignee for the account of the Assignor at 100 Wall Street, New York, New York 10005 (or any other place designated by the Assignee), until receipt of written notice from the Assignee that all obligations of the Assignor secured by the foregoing Assignment have been paid in full;

(iii)     that any such payment shall not be subject to any right of set-off or defense by reason of counterclaim or otherwise which the undersigned may have against the Assignor and any such payment shall be final and the undersigned will not seek to recover from the Assignee for any reason whatsoever any moneys paid by the undersigned to the Assignee by virtue of the foregoing Assignment and this Consent and Agreement;

(iv)     that so long as the foregoing Assignment is in effect, the undersigned will not amend or supplement the Bareboat Charter without first obtaining the written consent of the Assignee;

(v)     that any claims or liens the undersigned may have against the Vessel shall be and hereby are subordinated to the prior rights of the Assignee under the Mortgage and other Collateral Documents respecting the Vessel; and

(vi)     that the undersigned shall fully co-operate with the Assignee in exercising rights available to the Assignee under the foregoing Assignment.

This Consent and Agreement shall be governed by the laws of the State of New York and may be relied on by the Assignor and the Assignee.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has caused this Consent and Agreement to be duly executed on October [●], 2008.

GCL SHIPPING CORP.

By: _____
Name:
Title:

19102050 v2