CULLEN AND DYKMAN LLP
~~Proposed Attorneys for Debtors and Debtors-in-Possession~~
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) ~~296-9106~~357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq.  (CD 9703)
Bonnie Pollack, Esq. (BP 3711)

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------
x                                              Chapter 11
In re:

GLOBAL CONTAINER LINES LTD., et al.,

|  | Case ~~No~~Nos.  09-78585 (AST) |
|---|---|
|  | 09-78584 (AST) |
|  | 09-78589 (AST) |
|  | 09-78586 (AST) |
|  | 09-78587 (AST) |
|  | 09-78588 (AST) |
|  | 09-78590 (AST) |

~~Debtor.~~
Debtors.
----------------------------------------------------------
x
~~In re:~~                                      ~~Chapter 11~~

~~SHIPTRADE, INC.,~~                            ~~Case No. 09-78584 (AST~~

————————————————————————— ~~Debtor.~~ —————x

~~In re:~~                                      ~~Chapter 11~~

~~GCL SHIPPING CORP.,~~                         ~~Case No. 09-78589 (AST)~~

————————————————————————— ~~Debtor.~~ —————x

~~In re:~~                                      ~~Chapter 11~~

~~REDSTONE SHIPPING CORP.,~~                    ~~Case No. 09-78586 (AST)~~

~~Debtor.~~

```
------------------------------------------------x
In re:                                      Chapter 11

GILMORE SHIPPING CORP.,,                     Case No. 09-78587 (AST)

                    Debtor.
------------------------------------------------x
```

---------------------------------x In Chapter 11
~~re:~~

~~GLOBAL PROGRESS LLC,~~      ~~Case No. 09-78588 (AST)~~

~~Debtor.~~
-------------------------------x

~~In re:~~      ~~Chapter 11~~

~~GLOBAL PROSPERITY LLC,~~      ~~Case No. 09-78590 (AST)~~

~~Debtor.~~
-------------------------------x

**~~INTERIM~~FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364 AND 507 OF THE BANKRUPTCY CODE AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (2) AUTHORIZING DEBTORS TO OBTAIN POST PETITION FINANCING, (3) GRANTING SENIOR LIENS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) MODIFYING THE AUTOMATIC STAY, (5) GRANTING ADEQUATE PROTECTION, AND (6) ~~SCHEDULING A FINAL HEARING AND~~~~(7)~~ GRANTING RELATED RELIEF**

THIS MATTER came before the Court upon the Motion ("Motion"), filed on November ~~—,~~12, 2009, by Global Container Lines, Ltd. ("Global"), Shiptrade, Inc. ("Shiptrade"), GCL Shipping Corp. ("GCL"), Global Progress LLC ("Progress") and Global Prosperity LLC ("Prosperity"; collectively, the "Debtors"), debtors and debtors-in-possession herein, pursuant to sections 105, 361, 362, 363 and 364 of chapter 11, title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 4001 (the "Bankruptcy Rules"), for an order inter alia:

(1) authorizing the Debtors, pursuant to sections 105, 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014 to obtain post petition loans, advances

and other financial accommodations on an ~~interim~~emergency and permanent basis from National Bank of Pakistan ("Lender"), in accordance with the terms and conditions set forth in the Fifth Amendatory Agreement[1] to the Credit Agreement (as hereafter defined) (the "Fifth Amendatory Agreement"), and in accordance with this Order, secured by security interests and liens upon all of the Collateral as set forth herein;

 (2) authorizing the Debtors to execute, deliver, perform and comply with all provisions of the Fifth Amendatory Agreement dated as of November ~~——,~~13, 2009, Promissory Note (Term Loan) dated November ~~——,~~13, 2009 and Amended and Restated Security Agreement dated November ~~——,~~13, 2009, copies of which ~~is~~are attached as <u>Exhibit A</u> to the Motion;

 (3) granting to the Lender, pursuant to sections 364(c)(l) and 507(b) of the Bankruptcy Code, a super-priority claim in respect of the debtor-in-possession loan, with such claim having priority over any and all administrative expenses in the Debtors' cases, except for the Carve Out Expenses <u>(as hereinafter defined)</u>;

 (4) granting to Lender, pursuant to sections 364(c)(2) and (3) and 364(d) of the Bankruptcy Code, automatically perfected security interests and liens in all of the Collateral (as <u>hereinafter </u>defined ~~herein~~), including, without limitation, all property constituting "cash collateral," as defined in section 363(a) of the Bankruptcy Code ("<u>Cash Collateral</u>"), which security interests and liens shall be senior in priority to all other security interests and liens in the Collateral;

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Fifth Amendatory Agreement.

(5)     authorizing the Debtors to pay interest, fees, and other expenses described in the Fifth Amendatory Agreement all to the extent provided in the Fifth Amendatory Agreement;

(6)     authorizing the Debtors, pursuant to section 363 of the Bankruptcy Code, to use Cash Collateral of the Lender in connection with the Pre-Petition Obligations and the Pre-Petition-Liens (as such terms are hereinafter defined ~~herein~~);

(7)     granting, pursuant to sections 361 and 363 of the Bankruptcy Code, security interests in and replacements liens on all of Debtors' currently owned or after-acquired property and proceeds thereof, as provided herein, in favor of Lender, to provide adequate protection for Lender's interest in the Pre-Petition Collateral (as hereinafter defined ~~herein~~), which security interests and liens shall be senior in priority to all other security interests and liens in the Collateral; and

(8)     modifying the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Fifth Amendatory Agreement and this Order; and

~~(9)     scheduling a final hearing (the "Final Hearing") to consider the relief requested on the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and~~

Due and appropriate notice of the Motion, the relief requested therein and the time, place, and nature of the ~~interim~~emergency hearing and the final hearing has been provided to each of the following parties pursuant to Bankruptcy Rules 4001(b), (c) and (d) as practicable under the circumstances, whether by telephone, facsimile, overnight courier, electronic mail or by hand delivery: (i) the Office of the United States Trustee, (ii) Lender and the attorneys for Lender, (iii) all entities who have filed a request for service of all pleadings and notices, (iv) all other

creditors known to the Debtors who have an interest in the Cash Collateral, (v) any taxing authorities having a claim against the Debtors, and (vi) the Debtors' twenty (20) largest unsecured creditors (the "Noticed Parties"); and

This Court having entered an Order on November 17, 2009 authorizing emergency relief in accordance with the Motion (the "Emergency Order"); and

The ~~interim~~final hearing having been held by the Court on ~~—,~~December 1, 2009 (the "~~Interim~~Final Hearing"); and

Upon the record made by the Debtors at the ~~Interim~~Final Hearing, including the Motion, and the filings and pleadings in the Debtors' chapter 11 cases, and good and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.    Petitions.  The Debtors, together with two (2) other related entities, Redstone Shipping Corp. and Gilmore Shipping Corp., each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on November ~~[—],~~10, 2009 (the "Petition Date") and each is continuing in the management and possession of its business and property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code and, pursuant to an order of this Court, the Debtors' cases are being jointly administered.

B.    Jurisdiction.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (D), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' cases is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. *Notice*. Under the circumstances, notice of the Motion, the ~~Interim~~Final Hearing and the relief sought thereunder given by the Debtors to the Noticed Parties constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001.

D. *The Debtors' Acknowledgments and Agreements*. Without prejudice to the rights of any other party (but subject to the limitations described below in decretal paragraph 22), the Debtors acknowledge, admit, agree and stipulate that:

(i) *Pre-petition Financing Agreements*. Prior to the commencement of the Debtors' cases, the Lender made loans and advances and provided financial accommodations to the Debtors, pursuant to a Credit Agreement dated as of October 22, 2008 as amended by an Amendatory Agreement dated as of December 23, 2008, a Second Amendatory Agreement dated as of February 23, 2009, a Third Amendatory Agreement dated as of August 5, 2009 and a Fourth Amendatory Agreement dated as of August 26, 2009 (collectively the "Credit Agreement"), under which Lender made available to Debtor GCL Shipping Corp. (the "Borrower") a medium term loan facility in the amount of $12 Million, a revolving short term loan facility in the initial amount of $5 Million, and a letter of credit facility in the amount of $500,000 (the "Pre-Petition Loans"), which Pre-Petition Loans were guaranteed by Debtors Global Container Lines Ltd., Shiptrade Inc., Global Progress LLC and Global Prosperity LLC (the "Guarantors"). Copies of the Pre-Petition Loan and Security Documents are annexed to the Motion as Exhibit B.

(ii) *Pre-Petition Obligations*. As of the Petition Date, (a) the principal amount of the Pre-Petition Loans owed by Debtors to Lender, both absolute and contingent, pursuant to the Credit Agreement is not less than $~~————~~13,777,000 (including

advances under the Credit Agreement of $~~——————~~13,552,000 and outstanding L/C's of $~~—————————)~~225,000) plus all interest accrued and accruing thereon in the amount of $86,634.33 and fees, costs, expenses and other charges accrued and accruing with respect thereto for a total amount of $13,863,634.33 due and owing Lender (collectively, the "Pre-Petition Obligations") as of the Petition Date, (b) the Pre-Petition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the Credit Agreement and, subject only to the provisions of paragraph 22 of this ~~Interim~~Final Order, no portion of the Pre-Petition Obligations is subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or other applicable law, and the Debtors do not possess and shall not assert and hereby waive any claims, counterclaims, setoffs, or defenses of any kind or nature or description which would in any way affect the amount, validity, enforceability and non-avoidability of any of the Pre-Petition Obligations, (c) as of the Petition Date, the Pre-Petition Obligations constitute an allowed claim in each of the Debtors' cases and, to the extent of the value of the Pre-Petition Collateral (as hereinafter defined ~~herein~~) on the Petition Date, an allowed secured claim within the meaning of section 506(a) of the Bankruptcy Code, and (d) the Debtors have no claims or causes of action of any kind against the Lender and have waived and released any right they may have to assert a claim of any kind against the Lender.

(iii) *Pre-Petition Collateral and Liens*. (a) As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Credit Agreement by perfected, valid, enforceable first-priority security interests and liens (the "Pre-Petition Liens") granted by the Debtors to or for the benefit of the Lender upon certain of the Debtors' assets existing

as of the Petition Date and any certain all post-petition proceeds and products thereof (collectively, together with any other property of Debtors' estate in which a security interest or lien has been granted to or for the benefit of Lender prior to the filing of the petition for relief herein, the "Pre-Petition Collateral"), subject only to consensual liens expressly permitted under the Credit Agreement (to the extent such liens are valid, perfected and unavoidable as of the Petition Date, and only so long and to the extent that such encumbrances are and remain senior and outstanding, the "Permitted Encumbrances"); and (b) the Pre-Petition Liens are valid, binding, enforceable and perfected liens, with priority over all other liens except for Permitted Encumbrances and the Carve Out Expenses (as hereinafter defined herein), and are not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable law.

E.    Findings Regarding Post-Petition Financing

(i)    *Post-Petition Financing.* The Debtors have requested from the Lender, and the Lender is willing to extend certain additional loans, advances, and other financial accommodations, subject to (1) entry of this Interim Order and a Final Order (as hereinafter defined herein) in form and substance satisfactory to Lender in its sole discretion, (2) the terms and conditions of the Fifth Amendatory Agreement, and (3) findings by this Court that such financing is essential to the Debtors' estates, that the Lender is acting in good faith in providing such financing, and that the Lender's claims, super-priority claims, security interests and liens and other protections granted pursuant to this Interim Order, the Final Order, and the Fifth Amendatory Agreement will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim

~~Order or the~~ Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

(ii) *Need for Post-petition Financing.* The Debtors do not have sufficient available sources of working capital to pay certain Critical Pre-Petition Liabilities (as defined in the Fifth Amendatory Agreement) and certain other costs to operate their businesses in the ordinary course. The ability to fund such payments is essential to the Debtors' continued viability and maintenance of their relationships with their vendors, suppliers customers and employees. Accordingly, the Debtors have an immediate need to obtain post-petition financing in order to permit the orderly continuation of, and to minimize disruption of, their businesses operations and manage and preserve the assets of their estates as a means of maximizing recovery to all creditors.

(iii) *No Credit Available on More Favorable Terms.* The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, or pursuant to sections 364(a) and (b) of the Bankruptcy Code. Under the circumstances, no other source of financing exists on terms more favorable than those offered by Lender.

(iv) *Business Judgment and Good Faith.* The terms and conditions of this Order and the Fifth Amendatory Agreement have been negotiated in good faith and at arm's length by the parties involved and are fair and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Accordingly, the Court finds that the agreements between the parties as described herein

have been made in "good faith" as that term is used in section 364(e) of the Bankruptcy Code.

(v) *Good Cause*. The additional loans, advances and other financial accommodations by Lender will benefit the Debtors, their estates and their creditors and are necessary to enable the Debtors to continue in their businesses and remain viable entities and thereafter reorganize under chapter 11 of the Bankruptcy Code.

(vi) *Certain Protections and Waivers*. In light of the priming of all liens existing before the Petition Date as provided herein, the use of Cash Collateral and the Carve Out Expenses (as hereinafter defined ~~herein~~), the Lender is entitled to certain protections under section 506(c) of the Bankruptcy Code and to a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code.

(vii) *Immediate Entry*. Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001. No party appearing in the Debtor's Cases has filed or made an objection to the relief sought in the Motion, or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1. <u>Motion Granted</u>. The Motion, as it relates to ~~interim~~final use of cash collateral, ~~interim~~final financing and the ~~interim~~final approval of the Fifth Amendatory Agreement, is granted. This Order shall be referred to as the "~~Interim~~Final Order."

## <u>Authorization and Conditions to Post-Petition Financing</u>

2. <u>Authorization</u>. The Debtors are hereby authorized and empowered to enter into, execute, deliver, perform and comply with all of the terms, conditions and covenants of the Fifth

Amendatory Agreement, and all other agreements documents and instruments executed and or delivered in connection therewith and as all of the same have been heretofore been or may hereafter be amended, modified, supplemented, restated or replaced (collectively, the "DIP Financing Agreements") and this ~~Interim~~<u>Final</u> Order, and to immediately borrow and obtain other financial accommodations from Lender pursuant to the terms of this ~~Interim~~<u>Final</u> Order and the terms and conditions set forth in the DIP Financing Agreements in such amount or amounts as may be made available to Debtors by Lender up to the aggregate amount of ~~approximately $_____ through the date of the Final Hearing (as defined herein) as set forth herein~~<u>$4 Million</u> in accordance with the formulae, terms and conditions set forth in the DIP Financing Agreements and this ~~Interim~~<u>Final</u> Order. No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Financing Agreements with Lender shall be avoidable or recoverable from Lender under sections 542, 544, 547, 548, 549, 550, 553 or any other provision of the Bankruptcy Code.

3. <u>Approval of DIP Financing Agreements</u>. The DIP Financing Agreements are hereby approved and shall be sufficient and conclusive evidence of the borrowing arrangements between Debtors and Lender and of Debtors' assumption and adoption of the terms, conditions and covenants of the DIP Financing Agreements for all purposes, including, without limitation, the payment of all principal, interest, fees and expenses due and payable thereunder, all as more fully set forth in the DIP Financing Agreements, which amounts shall be reasonable but shall not otherwise be subject to approval of this Court. Any and all obligations of the Debtors under the DIP Financing Agreements (the "<u>Post-Petition Obligations</u>"; together with the Pre-Petition Obligations, the "<u>Obligations</u>") constitute legal, valid, binding, and non-avoidable obligations of

the Debtors enforceable in accordance with the terms of the DIP Financing Agreements and this_ ~~Final~~ Order.

4. <u>Use of Proceeds</u>. The Debtors shall use the proceeds of the loans and advances made by Lender to Debtors pursuant the DIP Financing Agreements and this ~~Interim~~<u>Final</u> Order only for those payments authorized by paragraphs 2(e) and 3(a) of the Fifth Amendatory Agreement.

5. <u>Payments</u>. The Debtors are authorized to pay Lender on account of the Obligations pursuant to the terms provided in the DIP Financing Agreements.

6. <u>Lender's Rights</u>. At Lender's discretion, Lender shall have all rights and remedies with respect to Debtors, the Obligations and the Collateral as are set forth in the DIP Financing Agreements and this ~~Interim~~<u>Final</u> Order.

<b><u>Post-Petition Liens and Administrative Priority</u></b>

***Post-Petition Liens***

7. <u>Lien Granting</u>. To secure the prompt payment and performance in full of all of the Obligations, Lender shall have and is hereby granted effective on and after the date of this ~~Interim~~<u>Final</u> Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, continuing, valid, binding, enforceable and automatically perfected post-petition priority security interests and other liens (collectively, the "<u>Post-Petition Liens</u>") in and upon all of the tangible and intangible assets and properties of the Debtors, including, without limitation, all Pre-Petition Collateral, all Cash Collateral, and all other equipment, inventory, documents, accounts, chattel paper, instruments, investment property, letter-of-credit rights, commercial tort claims, insurance claims, supporting obligations and liens, and general intangibles of the Debtors of any nature, whether owned prior to the Petition Date, now owned or

hereinafter acquired, and all proceeds and products thereof except such property subject to the pre-petition liens of parties other than the Lender (collectively, the "Collateral"). The Collateral shall include any avoidance power claims or actions under section 549 of the Bankruptcy Code relating to the post-petition transfers of Collateral and any proceeds thereof, but shall not include the proceeds of any other claims or actions under Chapter 5 of the Bankruptcy Code (the excluded Chapter 5 related proceeds being hereinafter referred to as "Avoidance Recoveries"). In accordance with section 552(c) and 361 of the Bankruptcy Code, as set forth in more detail below, the value of the Collateral in excess of the Obligations secured by the Collateral after application to the Post-Petition Obligations shall constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by the Debtors and the diminution in value of the Collateral existing on the Petition Date.

8.    Lien Priority.  The Post-Petition Liens shall be senior in priority to any and all security interests in, liens on or claims against the Collateral, except for the Carve Out Expenses (as described below). The Post-Petition Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Debtors' cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, in a superseding proceeding upon the conversion of any of the Debtors' cases to a case under chapter 7 of the Bankruptcy Code or upon the dismissal of any of the Debtors' cases.  The Post-Petition Liens shall not be subject to section 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

9.    Post-Petition Lien Perfection.  This InterimFinal Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the Post-Petition Liens granted to Lender as set forth herein and in the DIP Financing Agreements, without the necessity of filing, recording or serving any financing statements, mortgages or other documents which may

otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender in this ~~Interim~~Final Order and the DIP Financing Agreements.  If the Lender shall, in its discretion, elect for any reason to file any such financing statements, mortgages or other documents with respect to such security interests and liens, Debtors are authorized and directed to execute, or cause to be executed, all such financing statements, mortgages or other documents upon Lender's request and the filing, recording or service of such financing statements, mortgages or similar documents shall be deemed to have been made at the time of and on the Petition Date.  The Lender may, in its discretion, file a copy of this ~~Interim~~Final Order in any filing or recording office in any county or other jurisdiction in which Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this ~~Interim~~Final Order in accordance with applicable law.  As set forth in more detail below, the liens granted herein shall be supplemental of, and in addition to, security interests which Lender possesses pursuant to the Fifth Amendatory Agreement and shall secure the Post-Petition Obligations and the diminution in value, if any, of the Collateral, valued and determined as of the Petition Date.

10.    Superpriority Administrative Expenses.  In order to secure the Debtors' payment and performance in full of the Obligations, and in addition to the foregoing, Lender is granted an allowed super-priority administrative claim in accordance with section 364(c)(1) of the Bankruptcy Code having priority in right of payment (subject to the Carve Out Expenses, as hereinafter defined ~~below~~) over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by Debtors and over any and all administrative expenses, priority claims of the kind specified in, or ordered pursuant to, sections 105, 326, 330,

331, 503(b), 506(c), 507(a) and 507(b) of the Bankruptcy Code and over all rights of setoff under the Bankruptcy Code, any rights of recoupment or otherwise (the "Superpriority Claim") .

11.     Section 507(b) Priority.  To the extent that the Post-Petition Liens are insufficient to pay indefeasibly in full all of the Obligations, Lender shall also have the priority in payment afforded by section 507(b) to the extent of any such deficiency.

***Cash Collateral***

12.     Use of Cash Collateral.  Subject to the terms and conditions of this ~~Interim~~Final Order and the DIP Facility Agreements, the Debtors are authorized to use Cash Collateral of the Lender in accordance with the terms of the Budget annexed to the Motion (the "Budget"). Nothing in this ~~Interim~~Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or any Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in the DIP Financing Agreements and by order of this Court.

13.     Adequate Protection Liens.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection for the pre-petition interests of the Lender in the Pre-Petition Collateral on account of the Debtors' use of Cash Collateral and other diminution in value of the Pre-Petition Collateral arising on account of the Debtors' sale, lease or use of the Pre-Petition Collateral, the Debtors hereby grant to the Lender continuing, valid, binding, enforceable and perfected postpetition security interests and replacement liens (the "Adequate Protection Liens") in and on the Collateral.

14.     Perfection of Adequate Protection Liens.   This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other

instrument or document which may otherwise be required under the law of any jurisdiction, or the taking of any other action to validate or perfect the Adequate Protection Liens, to entitle the Lender to the priorities granted herein. The Debtors may execute and the Lender is authorized to file or record financing statements or other instruments to evidence the Adequate Protection Liens, but no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.

15.     <u>Priority of Adequate Protection Liens</u>.  The Adequate Protection Liens shall be subordinate to the Post-Petition Liens and shall be subject to the Carve Out Expenses (as <u>hereinafter</u> defined below), but otherwise shall be first priority, perfected and superior to any other security interest in, lien on or claim against the Collateral.  Except as provided in the previous sentence, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Debtors' cases; and shall be valid and enforceable against any trustee appointed in the Debtors' cases, in a superseding proceeding upon the conversion of any of the Debtors' cases to a case under chapter 7 of the Bankruptcy Code or upon the dismissal of any of the Debtors' cases.  The Adequate Protection Liens shall not be subject to section 551 of the Bankruptcy Code.

16.     <u>Adequate Protection Superpriority Claim</u>.  As further adequate protection for the interests of the Lender in the Pre-Petition Collateral on account of the Debtors' use of Cash Collateral and other diminution in value of the Pre-Petition Collateral arising on account of the Debtors' sale, lease or use of the Pre-Petition Collateral, the Lender is hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered

pursuant to sections 105, 326, 330, 331, 503(a), 503(b), 506(c)(to the extent provided in paragraph 24 herein), 507(a) and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim").  However, the Adequate Protection Superpriority Claim shall be subordinate to the Superpriority Claim, shall be subject to the Carve-Out Expense and shall not extend to Avoidance Recoveries.

*Carve Out Expenses*

17.  Carve Out Expenses.  Upon the occurrence of an Event of Default (as ~~defined hereinhereinafter described~~), the Pre-Petition Liens, the Post-Petition Liens, the Superpriority Claim and the Adequate Protection Superpriority Claim shall be senior and subject only to the right of payment of the following expenses (collectively, the "Carve Out Expenses"):

a.  statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. section 1930(a)(6);

b.  fees payable to the Clerk of this Court; and

c.  subject to the terms and conditions of this ~~Interim~~Final Order, the unpaid and outstanding reasonable fees and expenses actually incurred on or after the Petition Date, and approved by a final order of this Court pursuant to sections 326, 328, 330 or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") by attorneys, accountants and other professionals retained by the Debtors and any Committee(s) under section 327 or 1103(a) of the Bankruptcy Code (collectively, the "Professionals") less the amount of any retainers, if any, then held by each Professionals, in a cumulative, aggregate sum not to exceed $  400,000 (the "Professional Fee Carve Out").  So long as no Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay (i) the fees listed in subparagraphs (a) and (b) above and (ii) compensation and

reimbursement of expenses allowed and payable under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable; provided that the payment of items (a) and (b) of the preceding clause shall not reduce the Professional Fee Carveout.

18.    Excluded Professional Fees.    Notwithstanding anything to the contrary in this ~~Interim~~Final Order, the Professional Fee Carve Out shall not be used to pay any Allowed Professional Fees or any other fees and/or expenses incurred by any Professional in connection with any of the following:    (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief:    (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or any portion thereof, the Pre-Petition Liens and/or the Post-Petition Liens, (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Obligations or any portion thereof, the Pre-Petition Liens and/or the Post-Petition Liens, and/or (iii) preventing, hindering, or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any of the Collateral; (b) a request to use Cash Collateral without the prior written consent of Lender; (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Lender without the prior written consent of Lender; (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against Lender or any of its respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any attempt to recover or avoid any claim or interest from Lender under chapter 5 of the Bankruptcy Code; or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Lender, or which is contrary, in a manner that is

material and adverse to Lender, to any term or condition set forth in or acknowledged by the DIP

Financing Agreements, this ~~Interim Order or the~~ Final Order and which results in an occurrence

of an Event of Default under the DIP Financing Agreements and/or this ~~Interim~~Final Order.

19.     Payment of Carve Out Expenses.  Any payment or reimbursement made either

directly by or on behalf of Lender at any time or by or on behalf of the Debtors on or after the

occurrence of an Event of Default in respect of any Allowed Professional Fees or any other Carve

Out Expenses shall, in either case, permanently reduce the Professional Fee Carve Out on a

dollar-for-dollar basis, unless otherwise agreed to by the Lender and authorized by further order

of this Court.  Payment of any Carve Out Expenses, whether by or on behalf of Lender, shall not

and shall not be deemed to reduce the Obligations and shall not and shall not be deemed to

subordinate any of Lender's liens and security interests in the Collateral or their super-priority

claim status to any junior pre-petition or post-petition lien, interest, or claim in favor of any other

party.  Except as otherwise provided herein with respect to the Professional Fee Carve Out and

the other Carve Out Expenses, Lender shall not be responsible for the direct payment or

reimbursement of any fees or disbursements of any Professionals incurred in connection with the

Chapter 11 Cases under any chapter of the Bankruptcy Code, and nothing herein shall be

construed to obligate Lender in any way, to pay compensation to or to reimburse expenses of any

Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or

reimbursement.

**Default; Rights and Remedies; Relief from Stay**

20.     Events of Default.  The occurrence of ~~an~~ any of the following shall be an Event of

Default under this ~~Interim~~Final Order: (a) failure by any of the Debtors to perform or comply in

any respect with any of the terms, conditions and/or covenants under this ~~Interim~~Final Order, and (b) any "Event of Default" under any of the DIP Financing Agreements.

21. <u>Lender's Rights and Remedies upon Event of Default</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Lender to implement the terms and conditions of the DIP Financing Agreements, including without limitation, to (a) implement the financing arrangement authorized hereby pursuant hereto and the DIP Financing Agreements; (b) take any act to create, validate, evidence, attach or perfect any lien, security interest right or claim in or to the Collateral; (c) assess, charge, collect advances, and deduct payments with respect to the Obligations, including, without limitation, all fees, costs and expenses permitted under the DIP Financing Agreements; and (d) to apply such payments as set forth therein and in the ~~Interim~~Final Order. Without limitation of the foregoing, in the event of the occurrence of an Event of Default, unless such Event of Default is specifically waived in writing by Lender (which waiver shall not be implied from any other action, inaction or acquiescence by Lender), the Lender shall have all rights set forth in the DIP Financing Agreements including that the Debtors' authority to borrow and obtain financial accommodations under this ~~Interim~~Final Order and the DIP Financing Agreements shall cease and all of the Obligations shall become immediately due and payable, and Lender shall have no obligation to lend or advance any additional funds to Debtors, or provide any other financial accommodations to Debtors. Further, upon the occurrence of an Event of Default, the automatic stay of section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified without need for further order or action of the Bankruptcy Court to the extent necessary to permit the Lender to enforce its rights and remedies in respect of the Collateral, including the Pre-Petition Collateral, in accordance with the DIP Financing Agreements or non-bankruptcy

applicable law, provided, however, that the Lender has provided at least three (3) Business Days' notice in writing, served by overnight delivery service or fax upon Debtors, Debtors' counsel, counsel to any statutory committee appointed in the Debtors' cases (each, a "Committee"), a trustee, if one is appointed in the Debtors' cases, and the United States Trustee, and Lender, in its sole discretion, shall be and is hereby authorized to take any and all actions or remedies provided hereunder or under the DIP Financing Agreements which Lender may deem appropriate to proceed against and realize upon the Collateral and any other property of the Debtors' estates upon which has been or may hereafter be granted liens and security interests to obtain repayment of the Obligations.

### Representations, Covenants and Waivers

22. <u>Objections to Pre-Petition Obligations</u>. Any action, claim, or defense (hereinafter, an "<u>Objection</u>") that seeks to object to, challenge, contest, or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind (a) the existence, validity, or amount of the Pre-Petition Obligations, (b) the extent, legality, validity, perfection, or enforceability of the Pre-Petition Liens, or (c) Lender's right to apply post-petition payments and collections against the Pre-Petition Obligations as provided for in this ~~Interim~~Final Order (provided, that, the only grounds for challenging such right is that the Pre-Petition Obligations were not fully secured by the Pre-Petition Collateral as of the Petition Date) shall be filed with the Court (x) by any Committee, and no other party, on or before sixty (60) calendar days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of the order approving the appointment of counsel for such Committee by the United States Trustee, or (y) in the event no Committee is appointed in the Debtors' cases on or before thirty (30) days following the Petition Date, by any party in interest

with requisite standing on or before seventy-five (75) calendar days (or a longer period for cause shown before the expiration of such period) from the date of entry of the Final Order (the "Objection Period"). If any such Objection is timely filed and successfully pursued, nothing in this ~~Interim~~Final Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations and/or the Pre-Petition Liens. If no Objection is timely filed or an Objection is timely filed but denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Pre-Petition Liens shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only to the Permitted Encumbrances and the Carve Out Expenses, and (b) Lender and its agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Credit Agreement and the DIP Financing Agreements and shall not be subject to any further objection or challenge by any party at any time.

23. <u>Debtors' Waivers</u>. At all times during the Debtors' cases and whether or not an Event of Default has occurred, the Debtors irrevocably waive any rights that they may have to seek authority (i) to use Cash Collateral of Lender under section 363 of the Bankruptcy Code, (ii) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Lender, or as may be otherwise expressly permitted pursuant to the DIP Financing Agreements, (iii) to challenge the application of any payments authorized by this ~~Interim~~Final Order as pursuant to section 506(b) of the Bankruptcy Code, (iv) to propose or support a plan of reorganization that does not provide for the indefeasible payment

in full and satisfaction of all Obligations on the effective date of such plan or upon such other terms as is agreed to by the Lender, or (v) to seek relief under the Bankruptcy Code, including without limitation, under section 105, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this ~~Interim~~Final Order and the DIP Financing Agreements or Lender's exercise of such rights or remedies; provided, however, that Lender may otherwise consent in advance in writing to such relief, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender.

24. <u>Section 506(c) Claims</u>. ~~Subject to the entry of a Final Order, no~~No costs or expenses of administration which have or may be incurred in the Debtors' cases at any time during the period between the Petition Date and ~~a~~this Final Order (the "<u>Interim Financing Period</u>") shall be charged against Lender, its claims, or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by Lender.

25. <u>Collateral Rights; Other Protections</u>. Until all of the Obligations shall have been indefensibly paid and satisfied in full, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral. Further, the Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral. No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Lender with respect to proceeds, product, offspring or profits of the Pre-Petition Collateral.

26. <u>Release</u>. Upon the ~~earlier of (a) the entry of a Final Order or (b) upon entry of an Order extending the Interim Financing Period beyond thirty (30) calendar days after the date of this Interim~~entry of this Final Order and subject to paragraph 22 above, in consideration of

Lender making post-petition loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the DIP Financing Agreements and this ~~Interim~~<u>Final</u> Order, Debtors, on behalf of themselves and their successors and assigns, (collectively, the "<u>Releasors</u>"), shall, forever release, discharge and acquit Lender and its officers, directors, agents, attorneys and predecessors-in-interest (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Pre-Petition Obligations, the DIP Financing Agreements and any loans, letter of credit accommodations or other financial accommodations made by Lender to Debtors pursuant to the DIP Financing Agreements. In addition, upon the indefeasible payment in full of all of the Obligations and termination of the rights and obligations arising under the DIP Financing Agreements and this ~~Interim~~<u>Final</u> Order (which payment and termination shall be on terms and conditions acceptable to Lender), Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Financing Agreements and/or this ~~Interim~~<u>Final</u> Order, including without limitation any obligation or responsibility, whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated, to pay or otherwise fund the Carve-Out Expenses.

## <u>Other Rights and Obligations</u>

27. <u>No Modification or Stay of This ~~Interim~~Final Order</u>. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this ~~Interim~~<u>Final</u>

Order, the DIP Financing Agreements, or any term hereunder or thereunder, ~~or~~ (ii) the ~~Debtors'~~ ~~failure to obtain a Final Order, or (iii) the~~ dismissal or conversion of the Debtors' cases (a "Subject Event"), (x) the acts taken by Lender in accordance with this ~~Interim~~Final Order, and (y) the Post-Petition Obligations incurred or arising prior to the Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, and the acts taken by Lender in accordance with this ~~Interim~~Final Order, and the Post-Petition Liens granted to Lender in the Post-Petition Collateral, and all other rights, remedies, privileges, and benefits in favor of the Lender pursuant to this ~~Interim~~Final Order and the DIP Financing Agreements shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this ~~Interim~~Final Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this ~~Interim~~Final Order by this Court or any other tribunal.

28.    Power to Waive Rights: Duties to Third Parties.  Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this ~~Interim~~Final Order in respect of Lender (the "Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Lender Rights.  Any waiver by Lender of any Lender Rights shall not be or constitute a continuing waiver.  A delay or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject the Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert such delay of failure as a defense to any obligation owed by the Debtors to the Lender.

29.     Disposition of Collateral.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender) and an order of this Court.

30.     Reservation of Rights.  Except as may be inconsistent with the provisions of this InterimFinal Order, the terms, conditions and provisions of this InterimFinal Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Agreements, or any other applicable agreement or law, including, without limitation, rights to seek additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction or other form of equitable relief, to oppose any request for use of Cash Collateral or the granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Debtors' estates.

31.     No CERCLA Liability.  In making decisions to make advances to the Debtors under the DIP Financing Agreements, Lender shall not be deemed to be in control of the operations of Debtors or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of Debtors including, without limitation, with respect to the Collateral (as such terms, or any similar terms, are used in this United States Comprehensive, Environmental Response, Compensation and Liability Act, as amended or any similar or other federal or state statute).

32.     Binding Effect. The provisions of this InterimFinal Order shall inure to the benefit of Debtors and Lender and shall be binding upon Debtors and Lender and their respective

successors and assigns including any trustee or any Committee or any other fiduciary appointed in the Debtors' cases as a legal representative of the Debtors or with respect to property of the estates of Debtors, and shall also be binding upon all creditors of Debtors and other parties in interest. The provisions of this ~~Interim~~Final Order and the DIP Financing Agreements, the Post-Petition Obligations, the Superpriority Claim and the Adequate Protection Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of the Lender provided or acknowledged in this ~~Interim~~Final Order, and actions taken pursuant thereto shall be effective immediately upon entry of this ~~Interim~~Final Order, pursuant to Bankruptcy Rules 6004 (h) and 7062, shall continue in full force and effect and shall survive entry of any such other order, including any order which may be entered confirming any plan of reorganization, converting one or more of the cases to any other chapter under the Bankruptcy Code, or dismissing any of the Debtors' cases. Any order dismissing or converting one or more of the Debtors' cases under section 1112 of the Bankruptcy Code shall be deemed to provide, in accordance with section 105 and 348 of the Bankruptcy Code, that (a) the Superpriority Claim, the Adequate Protection Superpriority Claim, the Pre-Petition Liens and the Post-Petition Liens shall continue in full force and effect notwithstanding such dismissal or conversion until the Obligations are paid and satisfied in full and (b) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for purposes of enforcing the Superpriority Claim, the Adequate Protection Superpriority Claim, the Pre-Petition Liens and the Post-Petition Liens.

    33. <u>Limited Effect</u>. To the extent the terms and conditions of the DIP Financing Agreements are in conflict with the terms and conditions of this ~~Interim~~Final Order, the terms and conditions of this ~~Interim~~Final Order shall control.

34.  Nunc Pro Tunc Effect of this Order. This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nun pro tunc* to the Petition Date immediately upon execution thereof.

**~~Final Hearing and Response Dates~~**

~~**35.**  The Debtors shall, on or before _____, _____, 2009 serve by Federal Express or USPS Express Mail copies of the Motion, this Interim Order together with a copy of the proposed Final Order, to (i) the Noticed Parties, and (ii) any other party which has filed a request for special notice with this Court and served such request on Debtors' counsel, since the notice of the Interim Hearing, provided, however, that counsel to the Committee shall be served as soon as practicable after formation and retention and any party requesting notice shall be served as soon as practicable after Debtors' counsel receipt of such request.  Any party in interest objecting to the approval of the proposed Final Order shall file written objections with the United States Bankruptcy Court for the Eastern District of New York as required by the Local Rules of this Court no later than _____, 2009, which objections shall be served so that the same are received on or before 4:30 P.M. on _____, 2009 by the United States Trustee and the following counsel: (a) Counsel to Debtors, Cullen and Dykman LLP, 100 Quentin Roosevelt Blvd., Garden City, New York 11530, Attention: Matthew G. Roseman, Esq. and C. Nathan Dee, Esq., facsimile number (516) 357-2575, and (b) Counsel to Lender, _____.~~

~~36.  The final hearing to approve the proposed Final Order (the "Final Hearing") shall be held on _____, 2009 at _____ .m. before the Honorable _____, United States Bankruptcy Judge.~~

Dated: _____, 2009
        Central Islip, New York

_____
ALAN S. TRUST