UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:

GLOBAL CONTAINER LINES LTD., *et al.*

Debtors. Jointly Administered

-----------------------------------------------------------------x

Chapter 11
Case No. 09-78585
(Jointly Administered with 09-78584
Case Nos. through 09-78590)

**OPPOSITION OF CREDITOR OCEAN CONTAINER LESSORS
SEACASTLE CONTAINER LEASING LLC
AND CONTAINER APPLICATIONS LIMITED
TO DEBTOR-IN-POSSESSION'S PROPOSED
FINAL FINANCING AND CASH COLLATERAL ORDER
(DOCKET NOS. 26, 12, 8 AND RELATED MOTIONS)**

Debtor Global Container Lines ("Global") leased at least 956 ocean containers from Seacastle Container Leasing LLC ("Seacastle") and leased 149 ocean containers from Container Applications Limited ("CAI"). Because of Global's extreme failure to pay amounts due under the respective leased, both Seacastle and CAI terminated their container leases, before Global's October 10, 2009 petition filing, Seacastle, by September 23, 2009 notice (Exhibit A hereto), and CAI by October 9, 2009 notice (Exhibit B hereto), terminated the leases with Global and demanded, pursuant to the leases, that Global immediately cease use of and return Seacastle's and CAI's ocean containers.

The total book value of these containers exceeds $800,000.

Global with that termination had and does not have now any right to use or possess Seacastle's and CAI's ocean containers. Global nevertheless refuses to return any of the containers.[1] At best, Global and other debtors continue to trespass intentionally on Seacastle's

---
[1] This Court should question seriously whether Global - especially with the
(continued...)

and CAI's rights to the containers; at worst Global has converted and stolen the containers.[2]

Global's transportation cannot be done without ocean containers. As Global admitted at the November 13, 2009 emergency hearing, many ocean containers remain in transit on and off of Debtors' vessels, or in the hands of Global's other "critical" or "maritime lien" vendors, which Global proposes to pay to have the containers continue on to complete the Global contracts. Global has refused to release any lessors' containers, maintaining that all are essential and necessary for Global's continued operations.

The premise of Debtors' proposed final order (Docket No. 26 - the "DIP/Cash Collateral Order") is that debtors must have financing to pay entities supposedly "critical" to completing - and being paid on - certain United Nations and other transportation contracts.

---

[1](...continued) proposed order (Docket No. 26 - the "DIP/Cash Collateral Order") has an reasonable chance of Chapter 11 reorganization. Most, if not all money earned by the contracts that Debtor's propose to complete - through the DIP/Cash Collateral Order - will go immediately to pay certain "critical" vendors and to the Bank of Pakistan. None of any consequence will remain to pay any other creditor, including any for the purpose of reorganization.

Debtors' Schedules and related filings are all incomplete (*see* Docket No. 2); Debtors must file those schedules today, however, there is no promise that any, assuming any proper filing, will show prospective contracts or other income, matched against expected post-petition "superprioity" expenses, that will support any reorganization.

In fact, what appears is, an estate which already is administratively insolvent, and will be made more so with any grant of the proposed DIP/Cash Collateral Order.

[2] On November 23, 2009, ten (10) days after this Court's order, during the November 13, 2009 emergency hearing that Global do so, Global finally provided Seacastle and CAI with lists of Seacastle's and CAI's containers' location. Exhibit C hereto, is the list which Global provided, supposedly giving the locations of the Seacastle containers. The lists disclosed that a number of Seacastle and CAI containers were on board debtors' vessels, that more seriously, many were "lost/sold." Others were reported spread across a range of cities (with no specific addresses or contact information given) across Arabia, and East and Southern Africa.

Consequently, Debtors will have through the proposed financing (granting Bank of Pakistan super-priority over all other post-petition, administrative creditors, other than Global's lawyers) paid certain marine terminals, truckers, and seamen aboard debtors' ocean vessels.

The DIP/Cash Collateral Order and supposed "critical" payments, however, egregiously overlooks and discriminates against the most essential element of the transportation to complete the United Nations and other contracts: ocean containers. Without these containers, Global could not complete the contracts - and earn the freights and payments - from which it now proposes to pay, exclusively, other supposed "essential" vendors, use to repay (with super-priority) Bank of Pakistan, and use to pay Global's lawyers.

At the least, Seacastle and CAI are classic - and involuntary - administrative creditors. The problem with the DIP/Cash Collateral Order, however, is that it leaves nothing to pay Seacastle and CAI for the use of their admittedly essential containers, for the return of those containers, or for the payment to Seacastle and CAI for containers which Debtors lose, destroy, or simply fail to return. In the event that Debtors fail to return the containers, Seacastle and CAI will be forced at substantial cost to retrieve the containers from Darfur, Congo and other remote locations. Furthermore (as Global's initial motion has confirmed), many of the Seacastle and CAI units are held in depots and terminals, or are with other transportation providers, which insist on storage and other charges being paid before they will release the containers. The longer the time that passes without Seacastle and CAI being able to recover their containers, the greater these unpaid charges become. The DIP/Cash Collateral Order, leaves nothing for any post-petition payment to Seacastle and CAI, for the value of unreturned and unpaid-for containers, again, all of which were necessary to Global to complete its contracts (and make post-petition money to pay

Bank of Pakistan's super priority financing).

Fundamentally, however, what the DIP/Cash Collateral order would condone, is trespass to and theft of Seacastle's and CAI's containers, converting their value to pay Bank of Pakistan and other supposedly "critical" creditors. Again, Global has no right to use or possess the Seacastle and CAI containers, because Seacastle and CAI terminated their leases pre-petition. This consequently is not a situation of lease assumption or rejection under 11 U.S.C. § 365; there are no leases to assume or reject. Instead, it is a situation that Global and Debtors have at least $800,000 of equipment which does not belong to them, which they refuse to return, and which they insist on continuing possessing and using to earn money to pay other creditors, all of whom - by way of the DIP/Cash Collateral Order - are to be paid with nothing being paid to Seacastle or CAI. What the proposed DIP/Cash Collateral Order does, is force the transfer of at least $800,000 belonging to Seacastle and CAI, with no compensation to them, to pay other creditors.

This is a wrong use of any DIP/Cash Collateral Order. This Court instead should require the following, entering an order providing:

1) That Debtors immediately return to Seacastle and CAI, all containers in Debtors' possession which do not presently contain cargo necessary for the completion of Debtors' contracts;

2) That Seacastle and CAI be granted a super-priority status, over and above Bank of Pakistan and other creditors, for the payment to Seacastle and CAI of the rentals ordinarily due under the now-terminated Seacastle and CAI leases, on a 30 day payment basis for each container presently used to complete Debtors' contracts;

3) That all such containers be returned to Seacastle and CAI within 30 days of the delivery of cargo in those containers, or, that Seacastle and CAI be paid within 60 days of delivery the value of the containers not so returned, also on a super-priority basis.

Seacastle and CAI therefore respectfully request that the Court deny Debtors' motion for the DIP/Cash Collateral Order, or, that the Court enter it only with the modifications as set out immediately above.

Dated: November 27, 2009.

> Respectfully Submitted,
>
> /s/ J. Stephen Simms
> J. Stephen Simms
> Simms Showers LLP
> 20 South Charles Street
> Suite 702
> Baltimore, Maryland 21201
> Telephone 410-783-5795
> Facsimile 410-510-1789
> jssimms@simmsshowers.com
>
> Counsel for Creditors Seacastle Container Leasing LLC ("Seacastle") Container Applications Limited ("CAI")

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2009 I caused the foregoing to be filed on the Court's CM/ECF system for service on all record counsel and the United States Trustee.

> /s/ J. Stephen Simms