

## AMENDED AND RESTATED PROMISSORY NOTE

**$5,000,000.00**                                                                                                **May 14, 2009**

For value received, **GILMORE SHIPPING CORP.**, a Marshall Islands corporation, having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 (the "*Company*"), hereby promises to pay to the order of **KEYBANK NATIONAL ASSOCIATION**, having an office at 45 Rockefeller Center, New York, New York 10111 (the "*Bank*"), at such office of the Bank or at such other place as the holder hereof may from time to time appoint in writing, in lawful money of the United States of America in immediately available funds, the principal sum of Five Million and 00/100 Dollars ($5,000,000.00) or such lesser amount as may then be the aggregate unpaid principal balance of all loans and other advances made by the Bank to the Company hereunder (each a "*Loan*" and collectively the "*Loans*") as shown on the schedule attached to and made a part of this promissory note (this "*Note*"), together with interest thereon and other amounts as provided in this Note.

The Company promises to pay interest, computed on the basis of a 365 or 366 day year (as the case may be) for actual days elapsed, at said office in like money on the unpaid principal amount of the Note from time to time outstanding at a fluctuating rate per annum equal to the Prime Rate plus one hundred (100) basis points, which rate will change when and as the Prime Rate changes, with such changes in the rate of interest resulting from changes in the Prime Rate taking effect immediately without notice or demand of any kind.

The Company promises, in addition to making payment of the principal of and interest hereon as herein provided to pay to the Bank an exit fee in the amount of $225,000.00 (the "Exit Fee"), payable at the time the balance of all principal hereof becomes due and payable.

The Company promises to pay in full the principal amount hereof together with interest thereon as follows, or earlier as hereinafter provided: Interest shall be due and payable in full in arrears on the first (1st) Day of each of the months of June, 2009 through November, 2009, inclusive, with the first such monthly payment of interest being due June 1, 2009. Commencing December 1, 2009 and on the first Day of each successive month thereafter to and including the first Day of October, 2011, the Company shall pay an amount equal to that required to pay in full the principal hereof and interest hereon at the interest rate in effect on this Note on October 1, 2009 in equal monthly installments over an amortization period of seven (7) years, *provided, however,* that the amount of such payments due in the months of November, 2010 through October, 2011, inclusive, shall be redetermined on the same basis except that the interest rate used in such determination shall be the interest rate in effect on this Note on October 1, 2010, and over an amortization period of six (6) years. Payment of the full remaining unpaid balance of principal and all accrued and unpaid interest, plus the Exit Fee, shall be due and payable in full on November 1, 2011.

The Company further agrees to pay interest on any amount evidenced by this Note not paid when due (or within five days thereafter) at a rate per annum (computed daily) equal to four hundred (400) basis points in excess of the rate otherwise in effect under this Note, plus a late fee

11454679.3

equal to five percent (5%) of the amount of the payment due, and all such interest and late fee shall be payable on demand. In no event shall interest payable hereunder be in excess of the maximum rate of interest permitted under applicable law.

All payments made in connection with this Note shall be in lawful money of the United States of America in immediately available funds without counterclaim or setoff and free and clear of and without any deduction or withholding for, any taxes or other payments. All such payments shall, except as otherwise expressly provided pursuant to any Loan Document, be applied first to the payment of all fees, expenses and other amounts then due to the Bank (excluding principal and interest), then to accrued interest, and the balance on account of outstanding principal; *provided* that after a demand for payment following the occurrence of an Event of Default hereunder, payments will be applied to the obligations of the Company to the Bank as the Bank determines in its sole discretion. The Company hereby expressly authorizes the Bank to record on the attached schedule the amount and date of each Loan, the rate(s) of interest in effect on this Note from time to time and the date and amount of each payment of principal. All such notations shall be presumptive as to the correctness thereof; *provided, however*, the failure of the Bank to make any such notation shall not limit or otherwise affect the obligations of the Company under this Note.

Upon the occurrence of any of the following events (each an "Event of Default"): (a) default by the Company in the payment of any principal of, interest on or the Exit Fee provided for in this Note for more than ten (10) days after the date the same shall become due and payable, whether at maturity, by acceleration, or otherwise; or (b) any representation or warranty made or any financial statement or other information furnished by the Company or any officer or representative of it in connection with the execution and delivery of this Note or any other agreement or instrument executed and delivered by the Company to the Bank at any time, or in any certificate furnished pursuant hereto or thereto shall prove to be false at any time in any material respect; (c) the Company or any endorser, co-maker or guarantor with respect to this Note, shall become involved in financial difficulties as evidenced by: (i) making an assignment for the benefit of creditors or the commencement of any similar debtor relief proceeding, whether judicial or otherwise; (ii) consent to or application for the appointment of a trustee, interim trustee, custodian or receiver for all or a major portion of its property; (iii) the commencement of voluntary or involuntary case involving the Company and/or any of its subsidiaries or affiliates as debtor under title 11, United States Code (Bankruptcy) as from time to time in effect or under any other federal or state insolvency, receivership, composition, debtor relief, reorganization or other similar law; (iv) entry of a final judgment for the payment of money in an amount of $250,000 or more against the Company and the same shall not be discharged within sixty (60) days of its entry, or an appeal or proceeding for review shall not be taken within said time and a stay of execution pending such appeal shall not be obtained; and/or (v) the issuance of any attachment, garnishment, execution, federal tax levy, or other process or seizure against any material portion of the Company's property; (d) any material adverse change, as reasonably determined by Bank, in the business or financial affairs of the Company after the date hereof; and/or (e) any Event of Default, as defined, respectively, in any of the Loan Documents (as hereinafter defined) shall have occurred and be continuing, then, in any such event, this Note, at the Bank's option, shall become due and payable immediately, by acceleration, without notice or demand

and the Bank or its nominee may demand, sue for, collect, receive and hold as like collateral security any or all interest, dividends and income thereon and if the securities are held in the name of the Bank or its nominee, the Bank may, after a demand for payment hereunder, exercise all voting and other rights pertaining thereto as if the Bank were the absolute owner thereof; but the Bank shall not be obligated to demand payment of, protest, or take any steps necessary to preserve any rights in the collateral against prior parties, or to take any action whatsoever in regard to the collateral security or any part thereof, all of which the Company assumes and agrees to do. This Note and all of the aforementioned obligations and Liabilities are also secured by a first priority perfected security interest in the property described in the Mortgage Documents, other Loan Documents and the property described in any pledge or security agreement that the Company has executed or shall execute in favor of the Bank.

4.     Definitions. As used herein:

(a)     "*Assignments*" has the meaning ascribed thereto in the Letter Agreement.

(b)     "*Guarantees*" has the meaning ascribed thereto in the Letter Agreement.

(c)     "*Letter Agreement*" means that certain letter agreement between the Company and the Bank dated as of October 12, 2007 regarding extensions of credit made available by the Bank to the Company, as the same may be amended, modified, supplemented, renewed or replaced from time to time, including pursuant to Amendment No. 1 thereto dated on or about the date hereof.

(d)     "*Liabilities*" shall include all indebtedness and obligations and liabilities of any kind of the Company to the Bank, now or hereafter arising, or that are otherwise payable to the Bank, under this Note, the Letter Agreement, any Guarantees and the other Loan Documents, including, without limitation (a) the due and punctual payment of (i) principal of and premium, if any, and interest (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding) on the Loans, when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations, including fees, commissions, costs, expenses and indemnities, whether primary, secondary, direct, contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of the Company to the Bank, or that are otherwise payable to the Bank, under this Note, the Letter Agreement and the other Loan Documents, and (b) the due and punctual performance of all covenants, agreements, obligations and liabilities of the Company under or pursuant to this Note, the Letter Agreement and the other Loan Documents.

(e)     "*Loan Documents*" means this Note, the Letter Agreement, the Guarantees, the Assignments, the Mortgage Documents and each document, instrument or agreement executed pursuant hereto or thereto or in connection herewith or therewith, together with each other document, instrument or agreement made with or in favor of the Bank.

(f) "*Mortgage Documents*" has the meaning ascribed thereto in the Letter Agreement and includes the Precision First Mortgage.

(g) "*Prime Rate*" means the variable per annum rate of interest so designated from time to time by the Bank as its prime rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer.

5. Miscellaneous.

(a) The Company shall pay on demand (i) all reasonable expenses of the Bank in connection with the preparation, administration, waiver or amendment of this Note or any of the other Loan Documents, and/or (ii) all expenses of the Bank in connection with default or collection of this Note or any of the other Loan Documents or the Bank's exercise, preservation or enforcement of any of its rights, remedies or options hereunder and/or thereunder.

(b) No modification or waiver of any provision of this Note shall be effective unless such modification or waiver shall be in writing and signed by a duly authorized officer of the Bank, and, with respect to any modification, the Company, and the same shall then be effective only for the period and on the conditions and for the specific instances specified in such writing. No failure or delay by the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any rights, power or privilege.

(c) The Company hereby waives presentment, demand for payment, notice of protest, notice of dishonor, and any and all other notices or demands except as otherwise expressly provided for herein.

(d) This Note and the other Loan Documents shall be construed in accordance with and governed by the laws of the State of New York (excluding the laws applicable to conflicts or choice of law). The Company agrees that any suit for the enforcement of this Note or any of the other Loan Documents may be brought in the courts of the State of New York or any federal court sitting therein and consents to the nonexclusive jurisdiction of such court and service of process in any such suit being made upon the Company by mail at the address set forth in the first paragraph of this Note. The Company hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient forum.

(e) The Bank may at any time pledge all or any portion of its rights under this Note and the other Loan Documents to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Bank from its obligations under any of such loan documents.

[remainder of page intentionally left blank]

(f)    THE COMPANY AND THE BANK (BY ACCEPTANCE OF THIS NOTE) MUTUALLY HEREBY KNOWINGLY VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY, AND THE COMPANY WAIVES THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM IN EACH CASE IN RESPECT OF ANY CLAIM BASED ON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND/OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS STATEMENTS OR ACTIONS OF THE BANK RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, THE COMPANY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE COMPANY CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE BANK HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE BANK TO ACCEPT THIS NOTE AND MAKE THE LOANS.

(g)    This Note shall be binding upon and inure to the benefit of the Company, the Bank, all future holders of this Note and their respective successors and assigns, except that the Company may not assign or transfer any of its rights under this Note without the prior written consent of the Bank.

(h)    This Note and the other Loan Documents are intended by the parties as the final, complete and exclusive statement of the transactions evidenced thereby. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superseded by this Note and such other Loan Documents, and no party is relying on any promise, agreement or understanding not set forth in this Note or such other Loan Documents. Neither this Note nor any of such other Loan Documents may be amended or modified except by a written instrument describing such amendment or modification executed by the Company and the Bank.

GILMORE SHIPPING CORP.

By: _____
Name: Bijan Paksima
Title: President

6

## LOAN AND REPAYMENT SCHEDULE
## PROMISSORY NOTE DATED OCTOBER ___, 2007 OF
## GILMORE SHIPPING CORP.

| Date | Amount of Loan | Rate of Interest | Amount of Principal Repayment | Unpaid Principal Balance | Notation Made By |
|------|----------------|------------------|-------------------------------|--------------------------|------------------|
| | | | | | |


**EXHIBIT I**

# FIRST PREFERRED REPUBLIC OF PANAMA SHIP MORTGAGE

## ON THE

## M/V GLOBAL PRECISION

GRANTED BY GILMORE SHIPPING CORP., AS SHIPOWNER

IN FAVOR OF

KEYBANK NATIONAL ASSOCIATION, AS MORTGAGEE

May 14, 2009

# TABLE OF CONTENTS

## ARTICLE I. COVENANTS OF THE SHIPOWNER TO THE MORTGAGEE ........ 3

**Section 1:** Acknowledgment of Debt. .................................................................. 3
**Section 2:** Organization of Shipowner ............................................................... 3
**Section 3:** No Existing Liens. ............................................................................. 3
**Section 4:** Registered Ship Mortgage under the laws of the Republic of Panama ........ 3
**Section 5:** Laws, Treaties and Conventions ...................................................... 4
**Section 6:** Operation of the Vessel .................................................................... 4
**Section 7:** Payment of Taxes, etc. ..................................................................... 4
**Section 8:** No Power To Create Liens ................................................................ 5
**Section 9:** Notice of Mortgage .......................................................................... 5
**Section 10:** Discharge of Liens, Encumbrances, Etc. ....................................... 5
**Section 11:** Libel ................................................................................................. 6
**Section 12:** Vessel Condition ............................................................................. 6
**Section 13:** Provision of Information and Documents. ..................................... 7
**Section 14:** Change of Flag or Documentation ................................................. 8
**Section 15:** Sale or Other Disposition of the Vessel ........................................ 8
**Section 16:** Requisition of Title or Use ............................................................. 8
**Section 17:** Notice of Loss, Requisition or Damage ......................................... 9
**Section 18:** Insurances. ....................................................................................... 9
**Section 19:** Reimbursement for Expenses ........................................................ 12
**Section 20:** Performance of Charter .................................................................. 12
**Section 22:** Financing Statements ..................................................................... 12
**Section 23:** Requisition of Title ......................................................................... 13
**Section 24:** Incorporation by Reference. ........................................................... 13

## ARTICLE II. EVENTS OF DEFAULT AND REMEDIES. ........ 13

**Section 1:** Events of Default .............................................................................. 13
**Section 2:** Sale, etc. ............................................................................................ 14
**Section 3:** Finality of Sale .................................................................................. 15
**Section 4:** Powers and Rights of Mortgagee upon Occurrence of a Demand for Payment or any other Event of Default. ........................................................... 15
**Section 5:** Delivery of Ship. ............................................................................... 16
**Section 6:** Indemnification ................................................................................. 17
**Section 7:** Restoration of Position. ..................................................................... 19
**Section 8:** Application of Proceeds .................................................................... 19
**Section 9:** Cumulative Remedies; No Waiver ................................................... 19
**Section 10:** Cure of Defaults .............................................................................. 20
**Section 11:** Quiet Enjoyment; Replacement of Parts ....................................... 20
**Section 12:** No Waiver of Preferred Status ....................................................... 20
**Section 13:** Governing Law; Submission to Jurisdiction; Venue ..................... 21

## ARTICLE III. SUNDRY PROVISIONS.

<span style="float:right">23</span>

**Section 1:**    Binding on Successors ..................................................................... 23
**Section 2:**    Exercise by Agents ......................................................................... 23
**Section 3:**    Notices ............................................................................................ 23
**Section 4:**    Titles and Section Headings ........................................................... 24
**Section 5:**    Stamp Tax ....................................................................................... 24
**Section 6:**    Protection of Collateral .................................................................. 24
**Section 7:**    Information for Recording .............................................................. 24

Schedule I     Vessel

# FIRST PREFERRED SHIP MORTGAGE

THIS FIRST PREFERRED SHIP MORTGAGE ("*Mortgage*") is made the 14 day of May 2009 between GILMORE SHIPPING CORP., a Marshall Islands corporation (together with its successors and permitted assigns, the "*Shipowner*"), having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960, and KEYBANK NATIONAL ASSOCIATION, a national banking association, having an office at 66 South Pearl Street, Albany, New York 12207 (together with its successors and permitted assigns, the "*Mortgagee*") under that certain Line of Credit Agreement, dated as of October 12, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*Letter Agreement*"), between the Shipowner and the Mortgagee. Capitalized terms used herein, but not otherwise defined herein shall have the meanings assigned to such terms in the Letter Agreement.

WHEREAS:

A.   The Shipowner is the sole owner of the whole of the Vessel (as such term is defined in the Granting Clause of this Mortgage) registered under the Panamanian flag listed and described on Schedule I attached hereto and incorporated by reference herein with the same force and effect as if fully set forth herein, and as the Vessel is further described and defined in the Granting Clause on the following page of this Mortgage.

B.   Pursuant to the terms and conditions of the Letter Agreement, the Mortgagee has made Loans to the Shipowner in an amount not to exceed the Five Million United States Dollars (U.S.$5,000,000.00), which the Shipowner has agreed to repay pursuant to the terms stated in the Letter Agreement and the Note.

C.   The Shipowner has agreed to execute this Mortgage as security for the payment of all moneys from time to time due or owing from the Shipowner to the Mortgagee under or pursuant to the Letter Agreement and the Note, and has duly authorized the execution and delivery of this Mortgage.

D.   This Mortgage is supplemental to the Letter Agreement and to the security thereby created and except as otherwise defined herein, terms defined in the executed Letter Agreement are used herein as defined therein:

NOW, THEREFORE, THIS MORTGAGE WITNESSETH AND IT IS HEREBY AGREED AS FOLLOWS:

In this Mortgage unless the context otherwise requires "*Vessel*" means the ship described in Schedule I, together with all of the boilers, engines, generators, air compressors, cranes, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances thereunto appertaining or belonging, whether now owned or hereafter acquired, whether on board or not, and all additions, improvements,

IN WITNESS WHEREOF, the Shipowner has caused this First Preferred Ship Mortgage on the Vessel to be duly executed the day and year first above written.

**GILMORE SHIPPING CORP.**

By: _____

Name: BIJAN AKSIMA

Title: PRESIDENT

STATE OF NEW YORK )
) ss.
COUNTY OF Nassau )

I, Hormoz Shayegan , Notary Public, duly authorized, admitted and sworn, and practicing in Nassau County, State of New York, DO HEREBY CERTIFY that Bijan Paksima did sign the foregoing Mortgage and that the signature of Bijan Paksima appearing thereon is the true and authentic signature of Bijan Paksima, AND I DO FURTHER CERTIFY that satisfactory and sufficient proof has been produced to me that Bijan Paksima is the PRESIDENT of GILMORE SHIPPING CORP. and duly authorized and empowered by the said corporation to sign and execute the foregoing Mortgage for and on behalf of GILMORE SHIPPING CORP.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my seal of office this 14 day of May 2009.

_____
(Notary Public)

HORMOZ SHAYEGAN
Notary Public, State of New York
No. 01SH6104589
Qualified in Nassau County
Commission Expires May 22, 2012

## ACCEPTANCE OF FIRST MORTGAGE

The undersigned mortgagee, KeyBank National Association, a national banking association organized under the laws of the United States of America, does hereby accept the foregoing first mortgage executed in its favour by Gilmore Shipping Corp., a company incorporated in the Marshall Islands, on the 29th day of April 2009 covering the Republic of Panama flag M/V "GLOBAL PRECISION" and does hereby accept the said mortgage in all respects and agrees to all terms and conditions of the said mortgage.

Dated the 29th day of April 2009.

**KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: Richard B. Saulsbery
Title:     Vice President

STATE OF NEW YORK )
)  ss.
COUNTY OF )

I, _Dana A Brideau_ , Notary Public, duly authorized, admitted and sworn, and practicing in _Rensselaer_ County, State of New York, DO HEREBY CERTIFY that Richard B. Richard B. Saulsbery did sign the foregoing Acceptance of Mortgage and that the signature of Richard B. Saulsbery appearing thereon is the true and authentic signature of Richard B. Saulsbery, AND I DO FURTHER CERTIFY that satisfactory and sufficient proof has been produced to me that Richard B. Saulsbery is a Vice President of KEYBANK NATIONAL ASSOCIATION and duly authorized and empowered by the said corporation to sign and execute the foregoing Acceptance of Mortgage for and on behalf of KEYBANK NATIONAL ASSOCIATION.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my seal of office this 28th day of April, 2009.

NANCY A. SPIDEAU
Notary Public, State of New York
Qualified in Rensselaer County
Commission Expires 11/09/20

_____
(Notary Public)

# EXHIBIT J

## GUARANTEE/GCL SHIPPING CORP.

*90 / 29 S 209 7*

October 12, 2007

FOR VALUE RECEIVED, and in consideration of loans made or to be made or credit otherwise extended or to be extended by KEYBANK NATIONAL ASSOCIATION (the "*Bank*") to or for the account of GILMORE SHIPPING CORP., a Marshall Islands corporation (the "*Borrower*") having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960, from time to time and at any time and for other good and valuable consideration and to induce the Bank, in its discretion, to make or commit to make such loans or extensions of credit and to make or grant such renewals, extensions, releases of collateral or relinquishments of legal rights as the Bank may deem advisable, the undersigned absolutely and unconditionally guarantees to the Bank the prompt payment when due, whether by acceleration or otherwise, of all present or future obligations and liabilities of any and all kinds of the Borrower to the Bank and of all instruments of any nature evidencing or relating to any such obligations and liabilities upon which the Borrower or one or more parties and the Borrower is or may become liable to the Bank, whether incurred by the Borrower as maker, indorser, drawer, acceptor, guarantor, accommodation party, counterparty, purchaser, seller or otherwise, and whether due or to become due, secured or unsecured, absolute or contingent, joint and/or several, and howsoever or whensoever acquired by the Bank (all of which are referred to as the "*Obligations*"), and irrespective of the genuineness, validity, regularity, discharge, release or enforceability of such Obligations, or of any instrument evidencing any of the Obligations or of any collateral therefor or of the existence or extent of such collateral or of the obligations of the undersigned under this guarantee. The Obligations shall include interest accruing thereon before or after the commencement of any insolvency, bankruptcy or reorganization proceeding in respect of the Borrower or any other guarantor of the Obligations whether or not such interest is an allowable claim in any such proceeding and irrespective of the discharge or release of the Borrower or any other guarantor in such proceeding.

The undersigned assents that the Bank may at any time and from time to time, either before or after the maturity thereof, without notice to or further consent of the undersigned, extend the time of payment of, exchange, release, substitute or surrender any collateral for, renew or extend any of, or change the amount of, the Obligations or increase the interest rate thereon, and may also make any agreement with the Borrower or with any other party to or person liable on any of the Obligations or any guarantor of or hypothecator of collateral or other surety for such Obligations or interested therein, for the extension, renewal, payment, compromise, discharge or release thereof, in whole or in part, or for any modification of the terms thereof or of any agreement between the Bank and the Borrower or any such other party or person, without in any way impairing or affecting this guarantee.

The undersigned agrees that this guarantee shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any collateral for the Obligations, or by any failure to exercise, delay in the exercising or waiver of, or forbearance with respect to, any right or remedy available to the Bank with respect to the Obligations.

910728_2

The undersigned acknowledges that it has derived or expects to derive a financial or other benefit from each and every Obligation incurred by the Borrower to the Bank.

The undersigned waives notice of the acceptance of this guarantee and of the making of any such loans or extensions of credit or the incurrence of any Obligation, presentment to or demand of payment from anyone whomsoever liable upon any of the Obligations, protest, notice of presentment, non-payment or protest and notice of any sale or other disposition of collateral security or any default of any sort.

The undersigned agrees to pay on demand all costs and expenses incurred by the Bank incidental to or in any way relating to the enforcement of the Obligations or the obligations of the undersigned hereunder or the protection of the rights of the Bank hereunder or with respect to any of the Obligations, including, but not limited to, reasonable attorneys' fees and expenses, whether or not litigation is commenced.

The Bank shall have a lien on the balances (whether individual or joint) of the undersigned now or hereafter on deposit with or held as custodian by the Bank and the Bank shall have full authority to set off such balances against the liabilities of the undersigned to the Bank under this guarantee, and may at any time, without notice to the extent permitted by law, apply the same to the liabilities of the undersigned to the Bank under this guarantee, whether or not due.

This is a continuing guarantee and shall apply to all Obligations notwithstanding that at any particular time any or all of the Obligations shall have been paid in full. This guarantee shall remain in full force and effect and be binding upon the undersigned, and the undersigned's successors and assigns, until written notice of its revocation shall actually be received by the Bank. No such revocation shall release the undersigned or affect in any manner the rights, remedies, powers, security interests and liens of the Bank under this guarantee with respect to any of the Obligations which shall have been created, contracted, assumed or incurred prior to actual receipt by the Bank of such written notice of revocation and any renewals or extensions thereof or any Obligations which shall have been created, contracted, assumed or incurred after actual receipt of such written notice pursuant to any agreement entered into by the Bank prior to actual receipt of such written notice and any renewals or extensions thereof. Any such revocation by one of the undersigned shall not affect the continuing liabilities hereunder of such of the undersigned as do not give notice of revocation. If any of the present or future Obligations are guaranteed by persons, partnerships, limited liability companies or corporations in addition to the undersigned, the death, release or discharge in whole or in part, or the bankruptcy, liquidation or dissolution of one or more of them, shall not discharge or affect the liabilities of the undersigned under this guarantee.

This guarantee shall continue to be effective, or shall be reinstated, as the case may be, if at any time payment of all or any part of any payment of any of the Obligations is rescinded or must be restored or returned by the Bank whether under any insolvency, bankruptcy, receivership or reorganization proceeding or otherwise.

This guarantee may be assigned by the Bank and its benefits shall inure to the successors, indorsees and assigns of the Bank.

- 2 -

This guarantee is a guarantee of payment and not of collection, and the Bank shall be under no obligation to take any action against the Borrower or any other person liable with respect to any of the Obligations or resort to any collateral security securing any of the Obligations or this guarantee as a condition precedent to the undersigned being obligated to make payment and to perform as agreed herein. The undersigned hereby waives any right to claim or interpose any defense, counterclaim or offset of any nature and description which it may have or which may exist between and among the Bank, the Borrower and/or the undersigned or to seek injunctive relief.

Promptly upon the Bank's request, the undersigned agrees to furnish such information (including financial statements and tax returns of the undersigned) to the Bank and to permit the Bank to inspect and make copies of its books and records, as the Bank shall reasonably request from time to time.

The undersigned authorizes the Bank to date this guarantee and to complete any blank space herein according to the terms upon which this guarantee was given.

Any notice to the Bank shall be effective only upon receipt by the Bank and if directed to KeyBank National Association, 575 Fifth Avenue, 38th Floor, New York, New York 10017 or any other address hereafter specified by written notice from the Bank to the undersigned.

Until such time as the Bank shall have received payment in full in cash in satisfaction of all of the Obligations, the undersigned waives any right to be subrogated to the rights of the Bank with respect to the Obligations, and the undersigned waives any right to and agrees that it will not institute or take any action against the Borrower seeking contribution, reimbursement or indemnification by the Borrower with respect to any payments made by the undersigned to the Bank hereunder.

Every provision of this guarantee is intended to be severable; if any term or provision of this guarantee shall be invalid, illegal or unenforceable for any reason whatsoever, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

No failure on the part of the Bank to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Bank of any right, remedy or power hereunder preclude any other or future exercise thereof or the exercise of any other right, remedy or power.

Each and every right, remedy and power hereby granted to the Bank or allowed it by law or other agreement shall be cumulative and not exclusive of any other right, remedy or power, and may be exercised by the Bank at any time and from time to time.

This guarantee contains the entire agreement and understanding between the Bank and the undersigned with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof. This guarantee may not be amended, and compliance with its terms may not be waived, orally or by course of dealing, but only by a writing signed by an authorized officer of the Bank.

- 3 -

Until cash payment in full of the Obligations, the liability of the undersigned under this guarantee shall not be released.

The undersigned represents and warrants that it is corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation; that the execution, delivery and performance of this guarantee are within its corporate powers and have been duly authorized by all necessary action of its board of directors and shareholders; and that each person executing this guarantee has the authority to execute and deliver this guarantee on its behalf.

THIS GUARANTEE SHALL BE CONSTRUED AND INTERPRETED, AND ALL RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. UNLESS THE CONTEXT OTHERWISE REQUIRES, ALL TERMS USED HEREIN SHALL HAVE THE MEANINGS SPECIFIED IN THE UNIFORM COMMERCIAL CODE (TO THE EXTENT DEFINED THEREIN). THE UNDERSIGNED SUBMITS TO THE JURISDICTION OF STATE AND FEDERAL COURTS LOCATED IN THE CITY AND STATE OF NEW YORK IN PERSONAM AND AGREES THAT ALL ACTIONS AND PROCEEDINGS RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTEE SHALL BE LITIGATED ONLY IN SAID COURTS OR COURTS LOCATED ELSEWHERE AS THE BANK MAY SELECT AND THAT SUCH COURTS ARE CONVENIENT FORUMS. THE UNDERSIGNED WAIVES PERSONAL SERVICE UPON IT AND CONSENTS TO SERVICE OF PROCESS OUT OF SAID COURTS BY MAILING A COPY THEREOF TO IT BY REGISTERED OR CERTIFIED MAIL.

THE UNDERSIGNED AND THE BANK WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS GUARANTEE OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THE OBLIGATIONS.

THE UNDERSIGNED HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR IN ANY WAY IN CONNECTION WITH THIS GUARANTEE MAY BE INSTITUTED OR BROUGHT IN THE COURTS OF THE STATE OF NEW YORK, IN THE COUNTY OF NEW YORK, OR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AS THE BANK MAY ELECT, AND BY EXECUTION AND DELIVERY OF THIS GUARANTEE, THE UNDERSIGNED HEREBY IRREVOCABLY ACCEPTS AND SUBMITS TO, FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE NON-EXCLUSIVE JURISDICTION OF ANY SUCH COURT, AND TO ALL PROCEEDINGS IN SUCH COURTS. THE UNDERSIGNED IRREVOCABLY CONSENTS TO SERVICE OF ANY SUMMONS AND/OR LEGAL PROCESS BY REGISTERED OR CERTIFIED UNITED STATES AIR MAIL, POSTAGE PREPAID, TO THE UNDERSIGNED AT THE ADDRESS SET FORTH BELOW, SUCH METHOD OF SERVICE TO CONSTITUTE, IN EVERY RESPECT, SUFFICIENT AND EFFECTIVE SERVICE OF PROCESS IN ANY SUCH LEGAL ACTION OR PROCEEDING. NOTHING IN THIS GUARANTEE SHALL AFFECT THE RIGHT OF THE BANK TO EFFECT SERVICE OF PROCESS IN ANY

- 4 -

OTHER MANNER PERMITTED BY LAW OR LIMIT THE RIGHT OF THE BANK TO BRING ACTIONS, SUITS OR PROCEEDINGS IN THE COURTS OF ANY OTHER JURISDICTION. THE UNDERSIGNED FURTHER AGREES THAT FINAL JUDGMENT AGAINST IT IN ANY SUCH LEGAL ACTION, SUIT OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION WITHIN OR OUTSIDE THE UNITED STATES OF AMERICA, BY SUIT ON THE JUDGMENT, A CERTIFIED OR EXEMPLIFIED COPY OF WHICH SHALL BE CONCLUSIVE EVIDENCE OF THE FACT AND THE AMOUNT OF THE LIABILITY.

[Signature Page to follow]

IN WITNESS WHEREOF, this guarantee has been executed by the undersigned as of the date first written above.

**GCL SHIPPING CORP.**

By: _____

Name: BIJAN PAKSIMA

Title: PRESIDENT

Address:

c/o Global Container Lines Limited
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

GCL SHIPPING CORP  Guaranty Signature Page

## NEW YORK UNIFORM ACKNOWLEDGMENT
### (Within New York State)

STATE OF NEW YORK )

COUNTY OF N̲A̲S̲S̲A̲U̲ ) ss.:

On the 1̲2̲ day of O̲c̲t̲o̲B̲e̲R̲ in the year 2̲0̲0̲7̲ before me, the undersigned, personally appeared B̲i̲t̲o̲n̲ P̲a̲K̲s̲i̲m̲A̲ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

HORMOZ SHAYEGAN
Notary Public, State of New York
No. 01SH6104589
Qualified in Nassau County
Commission Expires January 26, 2008

## GUARANTEE/GLOBAL CONTAINER LINES LIMITED

*901299 2105*

October 12, 2007

FOR VALUE RECEIVED, and in consideration of loans made or to be made or credit otherwise extended or to be extended by KEYBANK NATIONAL ASSOCIATION (the *"Bank"*) to or for the account of GILMORE SHIPPING CORP., a Marshall Islands corporation (the *"Borrower"*) having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960, from time to time and at any time and for other good and valuable consideration and to induce the Bank, in its discretion, to make or commit to make such loans or extensions of credit and to make or grant such renewals, extensions, releases of collateral or relinquishments of legal rights as the Bank may deem advisable, the undersigned absolutely and unconditionally guarantees to the Bank the prompt payment when due, whether by acceleration or otherwise, of all present or future obligations and liabilities of any and all kinds of the Borrower to the Bank and of all instruments of any nature evidencing or relating to any such obligations and liabilities upon which the Borrower or one or more parties and the Borrower is or may become liable to the Bank, whether incurred by the Borrower as maker, indorser, drawer, acceptor, guarantor, accommodation party, counterparty, purchaser, seller or otherwise, and whether due or to become due, secured or unsecured, absolute or contingent, joint and/or several, and howsoever or whensoever acquired by the Bank (all of which are referred to as the *"Obligations"*), and irrespective of the genuineness, validity, regularity, discharge, release or enforceability of such Obligations, or of any instrument evidencing any of the Obligations or of any collateral therefor or of the existence or extent of such collateral or of the obligations of the undersigned under this guarantee. The Obligations shall include interest accruing thereon before or after the commencement of any insolvency, bankruptcy or reorganization proceeding in respect of the Borrower or any other guarantor of the Obligations whether or not such interest is an allowable claim in any such proceeding and irrespective of the discharge or release of the Borrower or any other guarantor in such proceeding.

The undersigned assents that the Bank may at any time and from time to time, either before or after the maturity thereof, without notice to or further consent of the undersigned, extend the time of payment of, exchange, release, substitute or surrender any collateral for, renew or extend any of, or change the amount of, the Obligations or increase the interest rate thereon, and may also make any agreement with the Borrower or with any other party to or person liable on any of the Obligations or any guarantor of or hypothecator of collateral or other surety for such Obligations or interested therein, for the extension, renewal, payment, compromise, discharge or release thereof, in whole or in part, or for any modification of the terms thereof or of any agreement between the Bank and the Borrower or any such other party or person, without in any way impairing or affecting this guarantee.

The undersigned agrees that this guarantee shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any collateral for the Obligations, or by any failure to exercise, delay in the exercising or waiver of, or forbearance with respect to, any right or remedy available to the Bank with respect to the Obligations.

910721_2

The undersigned acknowledges that it has derived or expects to derive a financial or other benefit from each and every Obligation incurred by the Borrower to the Bank.

The undersigned waives notice of the acceptance of this guarantee and of the making of any such loans or extensions of credit or the incurrence of any Obligation, presentment to or demand of payment from anyone whomsoever liable upon any of the Obligations, protest, notice of presentment, non-payment or protest and notice of any sale or other disposition of collateral security or any default of any sort.

The undersigned agrees to pay on demand all costs and expenses incurred by the Bank incidental to or in any way relating to the enforcement of the Obligations or the obligations of the undersigned hereunder or the protection of the rights of the Bank hereunder or with respect to any of the Obligations, including, but not limited to, reasonable attorneys' fees and expenses, whether or not litigation is commenced.

The Bank shall have a lien on the balances (whether individual or joint) of the undersigned now or hereafter on deposit with or held as custodian by the Bank and the Bank shall have full authority to set off such balances against the liabilities of the undersigned to the Bank under this guarantee, and may at any time, without notice to the extent permitted by law, apply the same to the liabilities of the undersigned to the Bank under this guarantee, whether or not due.

This is a continuing guarantee and shall apply to all Obligations notwithstanding that at any particular time any or all of the Obligations shall have been paid in full. This guarantee shall remain in full force and effect and be binding upon the undersigned, and the undersigned's successors and assigns, until written notice of its revocation shall actually be received by the Bank. No such revocation shall release the undersigned or affect in any manner the rights, remedies, powers, security interests and liens of the Bank under this guarantee with respect to any of the Obligations which shall have been created, contracted, assumed or incurred prior to actual receipt by the Bank of such written notice of revocation and any renewals or extensions thereof or any Obligations which shall have been created, contracted, assumed or incurred after actual receipt of such written notice pursuant to any agreement entered into by the Bank prior to actual receipt of such written notice and any renewals or extensions thereof. Any such revocation by one of the undersigned shall not affect the continuing liabilities hereunder of such of the undersigned as do not give notice of revocation. If any of the present or future Obligations are guaranteed by persons, partnerships, limited liability companies or corporations in addition to the undersigned, the death, release or discharge in whole or in part, or the bankruptcy, liquidation or dissolution of one or more of them, shall not discharge or affect the liabilities of the undersigned under this guarantee.

This guarantee shall continue to be effective, or shall be reinstated, as the case may be, if at any time payment of all or any part of any payment of any of the Obligations is rescinded or must be restored or returned by the Bank whether under any insolvency, bankruptcy, receivership or reorganization proceeding or otherwise.

This guarantee may be assigned by the Bank and its benefits shall inure to the successors, indorsees and assigns of the Bank.

-2-

This guarantee is a guarantee of payment and not of collection, and the Bank shall be under no obligation to take any action against the Borrower or any other person liable with respect to any of the Obligations or resort to any collateral security securing any of the Obligations or this guarantee as a condition precedent to the undersigned being obligated to make payment and to perform as agreed herein. The undersigned hereby waives any right to claim or interpose any defense, counterclaim or offset of any nature and description which it may have or which may exist between and among the Bank, the Borrower and/or the undersigned or to seek injunctive relief.

Promptly upon the Bank's request, the undersigned agrees to furnish such information (including financial statements and tax returns of the undersigned) to the Bank and to permit the Bank to inspect and make copies of its books and records, as the Bank shall reasonably request from time to time.

The undersigned authorizes the Bank to date this guarantee and to complete any blank space herein according to the terms upon which this guarantee was given.

Any notice to the Bank shall be effective only upon receipt by the Bank and if directed to KeyBank National Association, 575 Fifth Avenue, 38th Floor, New York, New York 10017 or any other address hereafter specified by written notice from the Bank to the undersigned.

Until such time as the Bank shall have received payment in full in cash in satisfaction of all of the Obligations, the undersigned waives any right to be subrogated to the rights of the Bank with respect to the Obligations, and the undersigned waives any right to and agrees that it will not institute or take any action against the Borrower seeking contribution, reimbursement or indemnification by the Borrower with respect to any payments made by the undersigned to the Bank hereunder.

Every provision of this guarantee is intended to be severable; if any term or provision of this guarantee shall be invalid, illegal or unenforceable for any reason whatsoever, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

No failure on the part of the Bank to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Bank of any right, remedy or power hereunder preclude any other or future exercise thereof or the exercise of any other right, remedy or power.

Each and every right, remedy and power hereby granted to the Bank or allowed it by law or other agreement shall be cumulative and not exclusive of any other right, remedy or power, and may be exercised by the Bank at any time and from time to time.

This guarantee contains the entire agreement and understanding between the Bank and the undersigned with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof. This guarantee may not be amended, and compliance with its terms may not be waived, orally or by course of dealing, but only by a writing signed by an authorized officer of the Bank.

Until cash payment in full of the Obligations, the liability of the undersigned under this guarantee shall not be released.

The undersigned represents and warrants that it is corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation; that the execution, delivery and performance of this guarantee are within its corporate powers and have been duly authorized by all necessary action of its board of directors and shareholders; and that each person executing this guarantee has the authority to execute and deliver this guarantee on its behalf.

THIS GUARANTEE SHALL BE CONSTRUED AND INTERPRETED, AND ALL RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. UNLESS THE CONTEXT OTHERWISE REQUIRES, ALL TERMS USED HEREIN SHALL HAVE THE MEANINGS SPECIFIED IN THE UNIFORM COMMERCIAL CODE (TO THE EXTENT DEFINED THEREIN). THE UNDERSIGNED SUBMITS TO THE JURISDICTION OF STATE AND FEDERAL COURTS LOCATED IN THE CITY AND STATE OF NEW YORK IN PERSONAM AND AGREES THAT ALL ACTIONS AND PROCEEDINGS RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTEE SHALL BE LITIGATED ONLY IN SAID COURTS OR COURTS LOCATED ELSEWHERE AS THE BANK MAY SELECT AND THAT SUCH COURTS ARE CONVENIENT FORUMS. THE UNDERSIGNED WAIVES PERSONAL SERVICE UPON IT AND CONSENTS TO SERVICE OF PROCESS OUT OF SAID COURTS BY MAILING A COPY THEREOF TO IT BY REGISTERED OR CERTIFIED MAIL.

THE UNDERSIGNED AND THE BANK WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS GUARANTEE OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THE OBLIGATIONS.

THE UNDERSIGNED HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR IN ANY WAY IN CONNECTION WITH THIS GUARANTEE MAY BE INSTITUTED OR BROUGHT IN THE COURTS OF THE STATE OF NEW YORK, IN THE COUNTY OF NEW YORK, OR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AS THE BANK MAY ELECT, AND BY EXECUTION AND DELIVERY OF THIS GUARANTEE, THE UNDERSIGNED HEREBY IRREVOCABLY ACCEPTS AND SUBMITS TO, FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE NON-EXCLUSIVE JURISDICTION OF ANY SUCH COURT, AND TO ALL PROCEEDINGS IN SUCH COURTS. THE UNDERSIGNED IRREVOCABLY CONSENTS TO SERVICE OF ANY SUMMONS AND/OR LEGAL PROCESS BY REGISTERED OR CERTIFIED UNITED STATES AIR MAIL, POSTAGE PREPAID, TO THE UNDERSIGNED AT THE ADDRESS SET FORTH BELOW, SUCH METHOD OF SERVICE TO CONSTITUTE, IN EVERY RESPECT, SUFFICIENT AND EFFECTIVE SERVICE OF PROCESS IN ANY SUCH LEGAL ACTION OR PROCEEDING. NOTHING IN THIS GUARANTEE SHALL AFFECT THE RIGHT OF THE BANK TO EFFECT SERVICE OF PROCESS IN ANY

OTHER MANNER PERMITTED BY LAW OR LIMIT THE RIGHT OF THE BANK TO
BRING ACTIONS, SUITS OR PROCEEDINGS IN THE COURTS OF ANY OTHER
JURISDICTION. THE UNDERSIGNED FURTHER AGREES THAT FINAL
JUDGMENT AGAINST IT IN ANY SUCH LEGAL ACTION, SUIT OR PROCEEDING
SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER
JURISDICTION WITHIN OR OUTSIDE THE UNITED STATES OF AMERICA, BY
SUIT ON THE JUDGMENT, A CERTIFIED OR EXEMPLIFIED COPY OF WHICH
SHALL BE CONCLUSIVE EVIDENCE OF THE FACT AND THE AMOUNT OF THE
LIABILITY.

[Signature Page to follow]

IN WITNESS WHEREOF, this guarantee has been executed by the undersigned as of the date first written above.

**GLOBAL CONTAINER LINES LIMITED**

By: _____

Name: _____KAZEM POURSINA_____

Title: _____PRESIDENT_____

Address:
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

Global Container Lines Limited Guaranty Signature Page

## NEW YORK UNIFORM ACKNOWLEDGMENT
### (Within New York State)

STATE OF NEW YORK    )

COUNTY OF _Nassau_ )  ss.:

   On the _12_ day of _October_ in the year _2007_ before me, the undersigned, personally appeared _Kazem Paksima_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Hormoz Shayegan_
Notary Public

HORMOZ SHAYEGAN
Notary Public, State of New York
No. 01SH6104589
Qualified in Nassau County
Commission Expires January 26, 2008