# EXHIBIT M



**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, and in order to induce **KEYBANK NATIONAL ASSOCIATION** ("KEYBANK") to extend credit to **GILMORE SHIPPING CORP.**, a Marshall Islands corporation ("Borrower"), with its principal place of business at 100 Quentin Roosevelt Blvd., Garden City, NY 11530, the undersigned, **SHIPTRADE, INC.**, a New York corporation ("Guarantor"), with its principal place of business at 100 Quentin Roosevelt Blvd., Garden City, NY 11530, hereby absolutely unconditionally and irrevocably guarantees to KEYBANK the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

1.      <u>Definitions</u>:  The following words shall have the following meanings in this Guaranty:

"<u>Guaranty</u>" means this Corporate Guaranty made by Guarantor for the benefit of KEYBANK.

"<u>Loan Documents</u>" means each of the following, including as the same has been or may be amended, restated, supplemented and/or otherwise modified from time to time: (i) *Letter Agreement* dated October 12, 2007 between Borrower and KEYBANK providing for a line of credit as therein described; (ii) *Amended and Restated Promissory Note* dated May___, 2009 in the original principal amount of $5,000,000 issued by Borrower to KEYBANK; (iii) *First Preferred Saint Vincent and the Grenadines Ship Mortgage* on the M/V *Global Precision*, granted by Borrower in favor of KEYBANK dated October 12, 2007, together with a new mortgage on the *Global Precision* that may be executed and delivered in connection with the registration of the *Global Precision* in Panama; (iv) *Guarantee/Global Container Lines Limited and Guarantee/GCL Shipping Corp.*, each dated October 12, 2007 issued by Global Container Lines Limited and GCL Shipping Corp., respectively, to KEYBANK relating to indebtedness of Borrower to KEYBANK; and (v) the other documents, instruments and agreements referred to or provided for in each of the foregoing.

"<u>Obligations</u>" means the obligations of Borrower under the Loan Documents, including, without limitation, the payment when due of all payments (including, without limitation, principal and interest due on the indebtedness) and all other sums currently or hereafter owing by Borrower to KEYBANK thereunder, including costs, expenses and reasonable attorneys fees incurred by KEYBANK in connection therewith.

"<u>Other Guarantor</u>" means any other guarantor of the Obligations.

"<u>Other Guarantees</u>" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the respective meanings given them in the Loan Documents.

2.      <u>Nature of Guaranty</u>.  Guarantor's liability under this Guaranty shall be absolute, primary and direct.  Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations.  KEYBANK shall not be required to pursue any right or remedy it may have against Borrower under the Loan Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Borrower) before enforcing this Guaranty against Guarantor.

3.      <u>Guarantor's Representations and Warranties</u>.    Guarantor warrants and represents to KEYBANK that (a) the execution, delivery and performance of this Guaranty will not result in a breach of,

or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which it is bound; (b) this Guaranty is executed at Borrower's request and not at the request of KEYBANK; (c) Events of Default exist under the Loan Documents and, although KEYBANK has made no commitment to do so, any forbearances on the part of KEYBANK from exercising remedies against Borrower or Borrower's property or otherwise under the Loan Documents will result in a direct or indirect material economic benefit to Guarantor; (d) KEYBANK has made no representation to Guarantor as to the creditworthiness of Borrower; (e) Guarantor has means to and shall keep adequately informed regarding Borrower's financial condition and KEYBANK shall have no obligation to disclose to Guarantor any information regarding Borrower.

**4.** **Guarantor Waivers.** (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Loan Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Borrower into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Borrower to any other person or party; (ii) the death or dissolution of Borrower, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Borrower, Guarantor or any Other Guarantor; (iv) the granting by KEYBANK of any indulgences or extensions to Borrower, Guarantor or any Other Guarantor; (v) the assertion by KEYBANK against Borrower, Guarantor or any Other Guarantor of any of KEYBANK's rights and remedies provided for under the Loan Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Borrower, Guarantor or any Other Guarantor from any Obligations under the Loan Documents, this Guaranty or any Other Guarantees by KEYBANK or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of the Loan Documents, this Guaranty or any Other Guarantees; (viii) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; or (ix) the destruction, sale, modification or alteration of any of the Borrower's property (including, without limitation, property collateralizing the Loan Documents).

(b) Guarantor hereby waives notice of and consents to (i) the financing by Borrower of any of the Borrower's property (including, without limitation, property collateralizing the Loan Documents), and to any leasing or other use of such property permitted by KEYBANK (regardless of who any such lessee or user may be); (ii) all of the provisions of the Loan Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder; and (iii) the execution by Borrower of the foregoing documents and of any other agreements, documents and instruments executed by Borrower in connection therewith. Guarantor further waives notice of KEYBANK's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Borrower under the Loan Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Loan Documents or of the terms and conditions of the Loan Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Borrower of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

**5.** **KEYBANK Waiver.** KEYBANK shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by KEYBANK. No delay or omission on the part of KEYBANK in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of KEYBANK to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Loan Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be

enforceable under this Guaranty. No delay or failure by KEYBANK to exercise any right or remedy against Borrower or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of KEYBANK against the Borrower, Guarantor and the Other Guarantors are cumulative. Receipt by KEYBANK of any payments or other sums payable under the Loan Documents with knowledge that Borrower has breached any of the terms, provisions or covenants of the Loan Documents shall not be deemed to be a waiver by KEYBANK of such breach, or a release or relinquishment of any claim for future performance under the Loan Documents or this Guaranty.

6.      **Subordination/Subrogation.** (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Borrower or any other person or entity directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to the Borrower's property (including, without limitation, property collateralizing the Loan Documents), arising from the existence or performance of this Guaranty.

(b) The liability of Guarantor under this Guaranty, and of any Other Guarantors, if any, under Other Guarantees given in favor of KEYBANK in connection with the Loan Documents, shall be joint and several and shall be irrevocable, unconditional and absolute, continuing in full force and effect according to their respective terms, until all of the Obligations hereby guaranteed have been fully satisfied. Guarantor covenants and agrees that any indebtedness of Borrower to Guarantor is hereby subordinated to the obligations of Borrower to KEYBANK, and that after any default under the Loan Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Borrower in trust for KEYBANK to satisfy the obligations of Borrower to KEYBANK and shall forthwith deliver such funds to KEYBANK in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7.      **Assignment**. This Guaranty is assignable by KEYBANK without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of KEYBANK. Any assignee of KEYBANK shall have all of the rights of KEYBANK hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of KEYBANK, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8.      **Severability/Governing Law**. If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of KEYBANK in order to effect the provisions hereof. This Guaranty shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflicts of laws principles of such state. Guarantor agrees to pay upon demand all of KEYBANK's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against KEYBANK or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9.      **Jury Trial Waiver**. GUARANTOR HEREBY WAIVES ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THE LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS

HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE LOAN DOCUMENTS.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the *14th* day of May 2009.

SHIPTRADE, INC.

x _Ali Paksima_

Name: Ali Paksima
Title: President

Federal Tax ID #: _112550149_

11457139.2



EXHIBIT N



C:# 000525723
L#: 000525702
Ls#: 8800551698

# Promissory Note

Funding Date: June 8, 2007

FOR VALUE RECEIVED, **REDSTONE SHIPPING CORP.,** a Delaware corporation ("Maker"), promises to pay to the order of **Key Equipment Finance Inc.** ("Holder"), the sum of Ten Million Dollars ($10,000,000.00) in lawful money of the United States of America (the "Principal"), with interest thereon as hereafter provided ("Interest"), to be paid in the manner set forth herein.

**1. Relationship to Loan and Security Agreement.** This Note is secured by the Loan and Security Agreement dated as of June 8, 2007 (the "Loan Agreement"), and all terms and conditions contained therein are incorporated herein by reference. Capitalized terms used herein without definition shall have the meaning given them in the Loan Agreement. Maker reaffirms all terms, conditions, representations and warranties contained in the Loan Agreement except as they may be modified hereby.

**2. Interest Rate.** Interest on the balance of the Principal outstanding on this Note shall accrue from the Funding Date of this Note and shall be due and payable at a fixed rate of Seven and Ninety-six Hundredths percent (7.96%) per annum (the "Interest Rate"). Interest shall be calculated on the basis of a 360-day year consisting of twelve 30-day months.

**3. Usury; Place of Payment.** (a) At no time shall the Interest Rate or other amounts paid or collected hereunder exceed the highest rate allowed by applicable law for this type of loan. Should Holder ever collect Interest at a rate that exceeds the applicable legal limit, such excess will be credited to the Principal or, if no principal remains outstanding, such excess shall be returned to Maker.

(b) Payment of the Principal and Interest hereunder shall be made to Holder at P.O. Box 1865, Albany, New York 12201-1865, or at such other place as Holder may designate from time to time in writing. Holder reserves the right to require payment on this Note to be made by wired federal funds or other immediately available funds.

**4. Repayment Terms.** The Principal and Interest shall be due and payable in 60 consecutive monthly installments payable in arrears, each in an amount equal to $121,116.34, commencing and payable on the same date which is one month after the Funding Date and on the same day of each month thereafter (each, a "Payment Date"). On the 60th Payment Date, Maker shall pay an amount equal to the sum of (i) the then current monthly installment *plus* (ii) a balloon payment (the "Balloon Payment") equal to $5,978,911.22. In addition, Maker will pay a late payment charge of five percent (5%) of any payment due hereunder that is not paid within ten (10) days after the date due hereunder.

**5. Prep ayment.** Except as specifically provided below, Maker may not prepay, in whole or in part, the Principal outstanding hereunder. Maker may at any time prepay, in whole but not in part, the Principal outstanding hereunder by paying to Holder such outstanding Principal, together with all accrued and unpaid Interest thereon at the Interest Rate in effect on the Funding Date, plus a prepayment premium ("Prepayment Premium") equal to five percent of such outstanding Principal.

**6. Application of Payments.** Prior to Default, each payment received on this Note shall be applied in the following order: (a) all costs of collection, (b) any unpaid late payment charges, (c) any Prepayment Premium, (d) Interest accrued as of the payment date and (e) the balance, if any, to outstanding Principal as of the date received. Upon the occurrence and during the continuance of a Default, any payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Holder in cash or its equivalent, will be applied first to costs of collection and, thereafter, in reduction of the Secured Obligations in such order and manner as Holder may direct in its sole discretion. Maker irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Holder shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Holder's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

**7. Security.** Payment of the Principal and Interest hereunder, and the performance and observance by Maker of all agreements, covenants and provisions contained herein, is secured by a first priority security interest in the Collateral.

**8. General.** Maker represents and warrants that this Note evidences a loan for business or commercial purposes. By executing this Note, Maker confirms (a) having read and understood the provisions hereof and (b) Maker's agreement with all terms and conditions contained herein.

**9. Waivers.** MAKER AND ALL ENDORSERS, SURETIES, AND GUARANTORS HEREOF HEREBY JOINTLY AND SEVERALLY WAIVE PRESENTMENT FOR PAYMENT, DEMAND, NOTICE OF NON-PAYMENT OR DISHONOR, NOTICE OF INTENTION TO ACCELERATE THE MATURITY, NOTICE OF PROTEST AND PROTEST OF THIS NOTE.

**10. Funding Date.** The Funding Date for this Note shall be the date on which Holder disburses funds hereunder. IF THE FUNDING DATE IS LEFT BLANK, OR DOES NOT REFLECT THE ACTUAL DATE HOLDER DISBURSES FUNDS HEREUNDER, MAKER HEREBY AUTHORIZES HOLDER TO FILL IN THE CORRECT DATE AT THE TIME OF DISBURSEMENT.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, Maker, intending to be legally bound, has caused this Note to be duly executed on the day and year first written above,

MAKER:

**REDSTONE SHIPPING CORP.**

X _____

Name: Bijan Paksima
Title: President



**EXHIBIT O**

Document Type: MORTGAGE
Batch Number: 591233
Document ID: 7277221
User ID: SCANNER6
Filed Date/Time: 08-JUN-2007 01:21 PM

Tremaine

C# 000525~~~~ 004
L.#000525702
I.S#
3300551698
FAXED FILED
FAXED

## FIRST PREFERRED MARINE MORTGAGE

USCG VESSEL DOCUMENTATION OFFICE

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF RECORDS OF THIS OFFICE.

DOCUMENTATION OFFICER

NEW DOCUMENT

| | |
|---|---|
| Vessel Name and Official Number: | GLOBAL PATRIOT<br><br>O.N. 989333 |
| Hailing Port | Philadelphia, PA |
| Name and Address of Shipowner: | Redstone Shipping Corp.<br>100 Quentin Roosevelt Blvd.<br>Garden City, NY 11530 |
| Name and Address of Mortgagee: | Key Equipment Finance Inc.<br>66 South Pearl St., 8th Floor<br>Albany, New York 12207 |
| Date of Mortgage: | June 8, 2007 |
| Amount of Mortgage: | $10,000,000.00, as contemplated in Title 46 U.S.C.<br>§ 31321(b)(3) |

THIS FIRST PREFERRED MARINE MORTGAGE (the "Mortgage") to be effective as of June 8, 2007, is made by REDSTONE SHIPPING CORP., a Delaware corporation (hereinafter called "Shipowner"), in favor of KEY EQUIPMENT FINANCE INC. (hereinafter, together with any successors or assigns, the "Mortgagee").

### RECITALS

A.   Shipowner is the sole owner of the whole of the vessel GLOBAL PATRIOT, O.N. 989333, duly documented in the name of Shipowner under the laws and flag of the United States of America.

B.   Shipowner as borrower (the "Borrower"), and Mortgagee as lender (the "Lender") are parties to that certain Loan and Security Agreement dated as of June 8, 2007 (as amended, restated, supplemented or otherwise modified, the "Loan Agreement"), a true and correct copy of the form of which (without schedules or exhibits) is attached hereto as Exhibit A, incorporated herein by this reference (as amended, renewed, or otherwise modified from time to time), pursuant to which the Lender has made a term loan to Borrower in the aggregate principal sum of Ten Million Dollars ($10,000,000.00) on terms and conditions described therein (the "Loan");

C.   The Loan plus accrued and accruing interest thereon and other fees and expenses are evidenced by a promissory note in the original principal amount of Ten Million Dollars ($10,000,000.00) (the "Note") executed by Shipowner, as Borrower, in favor of Mortgagee, a true and complete copy of the form of the Note is attached hereto as Exhibit B, incorporated herein by this reference (as amended, renewed, or otherwise modified from time to time).

SEA 2034251v1 0046569-000633

*FAXED*

IN WITNESS WHEREOF, Shipowner has executed this First Preferred Marine Mortgage as of the date and year first above written.

**SHIPOWNER:**          REDSTONE SHIPPING CORP.

By:_____
Name: Bijan Paksima
Title: President


STATE OF NEW YORK     )
                                          ) ss.
COUNTY OF NASSAU     )

On this _8th_ day of June, 2007, before me, a Notary Public in and for the State of New York, personally appeared BIJAN PAKSIMA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged it as the President of Redstone Shipping Corp., a Delaware corporation, to be the free and voluntary act and deed of said corporation for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year first above written.


_Hormoz Shayegan_
NOTARY PUBLIC in and for the State of New York
My appointment expires _January 26, 2008_

HORMOZ SHAYEGAN
Notary Public, State of New York
No. 01SH6104589.
Qualified in Nassau County
Commission Expires January 26, 2008

**EXHIBITS:**

Exhibit A     Loan and Security Agreement
Exhibit B     Promissory Note


SEA 2034251v1 0045569-000633

23



EXHIBIT P

# LOAN AND SECURITY AGREEMENT

between

# KEY EQUIPMENT FINANCE INC.,

as Lender

and

# REDSTONE SHIPPING CORP.,

as Borrower

dated June 8, 2007

# GLOBAL PATRIOT, O.N. 989333

# TABLE OF CONTENTS

1.  DEFINITIONS; ACCOUNTING; TERMS; GOVERNANCE. .................................... 1
2.  LOAN ................................................................................................ 12
3.  CONDITIONS TO BORROWING ............................................................ 12
4.  PAYMENTS. ....................................................................................... 15
5.  GUARANTY. ....................................................................................... 16
6.  GRANT OF SECURITY INTEREST ...................................................... 17
7.  LEASE AND ASSIGNMENT. ................................................................. 17
8.  TAXES ............................................................................................... 18
9.  LENDER'S RIGHT TO PERFORM FOR BORROWER ........................... 18
10. DELINQUENT PAYMENTS; INTEREST ................................................ 18
11. PERSONAL PROPERTY; LIENS; WARRANTY OF TITLE ..................... 19
12. EVENTS OF DEFAULT; REMEDIES. .................................................... 19
13. NOTICES ........................................................................................... 22
14. GENERAL INDEMNIFICATION ........................................................... 23
15. SEVERABILITY; CAPTIONS .............................................................. 23
16. FINANCIAL REPORTING AND OTHER DATA; FINANCIAL COVENANTS ...... 23
17. REPRESENTATIONS AND WARRANTIES OF BORROWER ................. 24
18. VESSEL. ........................................................................................... 25
19. PERFECTION ................................................................................... 26
20. BLOCKED PERSON .......................................................................... 26
21. VALUE; SOLVENCY .......................................................................... 26
22. MISCELLANEOUS ............................................................................ 26
23. JURY TRIAL WAIVER ....................................................................... 27
24. ENTIRE AGREEMENT ....................................................................... 27
25. EXECUTION IN COUNTERPARTS ..................................................... 27

# LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT (this **"Agreement"** or **"Loan Agreement"**) dated as of June 8, 2007, is made by and between **REDSTONE SHIPPING CORP.**, a Delaware corporation (the **"Borrower"**), and **KEY EQUIPMENT FINANCE INC.**, a Michigan corporation, and its successors and assigns (the **"Lender"**).

**1.    Definitions; Accounting; Terms; Governance.**

      **1.1    Definitions.** Unless the context otherwise requires, as used in this Agreement, the following terms shall have the respective meanings indicated below and shall be equally applicable to both the singular and the plural forms thereof. Capitalized terms not otherwise defined herein shall have the meaning given in the Loan Documents.

      **"Affiliate"** means, with respect to a specified Person, another Person that directly or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified. "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. "Controlling" and "Controlled" have meanings correlative thereto.

      **"Anti-Terror"**, **"Anti-Terrorism Laws"** shall mean any laws relating to terrorism or money laundering, including Executive Order No. 13224, the USA Patriot Act, the Laws comprising or implementing the Bank Secrecy Act, and the laws administered by the United States Treasury Department's Office of Foreign Asset Control (as any of the foregoing laws may from time to time be amended, renewed, extended, or replaced).

      **"Applicable Law"** shall mean all applicable Federal, state, local and foreign laws (including, without limitation, any Environmental Laws and any industrial hygiene and occupational safety or similar laws), ordinances, judgments, decrees, injunctions, writs and orders of any Governmental Authority and rules, regulations, orders, licenses and permits of any Governmental Authority.

      **"Assignments"** means, collectively, the Earnings Assignment and the Assignment of Insurances.

      **"Authorized Signer"** shall mean those officers of Borrower and Guarantors, respectively, set forth on an incumbency certificate delivered by Borrower and Guarantors to Lender, who are authorized and empowered to execute the Loan Documents.

      **"Assignment of Insurances"** means an assignment of vessel insurance policies by Borrower in favor of Lender with respect to the Vessel.

      **"Borrower"** means Redstone Shipping Corp., a Delaware corporation.

      **"Business Day"** means any day that is not a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to remain closed.

IN WITNESS WHEREOF, the parties hereto have executed this Loan and Security Agreement effective as of the date first above written.

Borrower:

**REDSTONE SHIPPING CORP.**

By: _____
Name: Bijan Paksima
Title: President

STATE OF NEW YORK    )
                                ) ss.
COUNTY OF NASSAU    )

On this 8th day of June, 2007, before me, a Notary Public in and for the State of New York, personally appeared BIJAN PAKSIMA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged it as the President of Redstone Shipping Corp., a Delaware corporation, to be the free and voluntary act and deed of said corporation for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year first above written.

_____
NOTARY PUBLIC in and for the State of New York
My appointment expires January 26, 2008

**HORMOZ SHAYEGAN**
**Notary Public, State of New York**
**No. 01SH6104589**
**Qualified in Nassau County**
**Commission Expires January 26, 2008**

IN WITNESS WHEREOF, the parties hereto have executed this Loan and Security Agreement effective as of the date first above written.

Lender:

KEY EQUIPMENT FINANCE INC.

By: _____

Name: Krista Spada
Title:  Regional Business Unit Manager


STATE OF NEW YORK          )
                           ) ss.
COUNTY OF ALBANY           )

On this ⁷ᵗʰ day of June, 2007, before me, a Notary Public in and for the State of New York, personally appeared KRISTA SPADA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged it as the Regional Business Unit Manager of KEY EQUIPMENT FINANCE INC., a Michigan corporation, to be the free and voluntary act and deed of said corporation for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year first above written.

NOTARY PUBLIC in and for the State of New York,
My appointment expires 3/22/2011
Print Name _____

ELIZABETH A. MURPHY
Notary Public, State of New York
Qualified in Rensselaer County
Reg No. 5008642

# EXHIBIT Q



**Corporate Guaranty**
Promissory Note

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, and in order to induce **KEY EQUIPMENT FINANCE INC.** ("KEF") to make loans and extend credit to **REDSTONE SHIPPING CORP.**, a Delaware corporation ("Borrower"), with its principal place of business at 100 Quentin Roosevelt Blvd., Garden City, NY 11530, providing for the financing of certain equipment (the "Equipment") the undersigned, **GLOBAL CONTAINER LINES LIMITED**, a Delaware corporation ("Guarantor"), with its principal place of business at 100 Quentin Roosevelt Blvd., Garden City, NY 11530, hereby absolutely unconditionally and irrevocably guarantees to KEF the full and prompt payment and performance by Borrower of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

1.  **Definitions**: The following words shall have the following meanings in this Guaranty:

    "Guaranty" means this Corporate Guaranty made by Guarantor for the benefit of KEF.

    "Obligations" means the obligations of Borrower under the Loan Documents, including, without limitation, the payment when due of all payments (including, without limitation, principal and interest due on the indebtedness) and all other sums currently or hereafter owing by Borrower to KEF thereunder, including costs, expenses and attorneys fees incurred by KEF in connection therewith.

    "Other Guarantor" means any other guarantor of the Obligations.

    "Other Guarantees" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the meaning given in the Loan and Security Agreement (Fleet Vessels) between KEF as Lender and Borrower as borrower dated as of June 8, 2007.

2.  **Nature of Guaranty**. Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. KEF shall not be required to pursue any right or remedy it may have against Borrower under the Loan Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Borrower) before enforcing this Guaranty against Guarantor.

3.  **Guarantor's Representations and Warranties**. Guarantor warrants and represents to KEF that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which it is bound; (b) this Guaranty is executed at Borrower's request and not at the request of KEF; (c) the proceeds of the loans to be made by KEF to Borrower will result in a direct or indirect material economic benefit to Guarantor; (d) KEF has made no representation to Guarantor as to the creditworthiness of Borrower; (e) Guarantor has means to and shall keep adequately informed regarding Borrower's financial condition and KEF shall have no obligation to disclose to Guarantor any information regarding Borrower.

4.  **Guarantor Waivers**. (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Loan Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Borrower into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Borrower to any other person or party; (ii) the death or dissolution of Borrower, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Borrower, Guarantor or any Other Guarantor; (iv) the granting by KEF of any indulgences or extensions to Borrower, Guarantor or any Other Guarantor; (v) the assertion by KEF against Borrower, Guarantor or any Other Guarantor of any of KEF's rights and remedies provided for under the Loan Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Borrower, Guarantor or any Other Guarantor from any Obligations under the Loan Documents, this Guaranty or any Other Guarantees by KEF or by operation of law or otherwise; (vii) any

invalidity, irregularity, defect or unenforceability of any provision of the Loan Documents, this Guaranty or any Other Guarantees; (viii) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; or (ix) the destruction, sale, modification or alteration of any item of the Equipment.

(b) Guarantor hereby waives notice of and consents to (i) the financing by Borrower of the Equipment, and to any leasing or other use of the Equipment permitted by KEF (regardless of who any such lessee or user may be), (ii) all of the provisions of the Loan Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Borrower of the foregoing documents and of any other agreements, documents and instruments executed by Borrower in connection therewith. Guarantor further waives notice of KEF's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Borrower under the Loan Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Loan Documents or of the terms and conditions of the Loan Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Borrower of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

5.  **KEF Waiver.** KEF shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by KEF. No delay or omission on the part of KEF in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of KEF to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Loan Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure for KEF to exercise any right or remedy against Borrower or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of KEF against the Borrower, Guarantor and the Other Guarantors are cumulative. Receipt by KEF of any payments or other sums payable under the Loan Documents with knowledge that Borrower has breached any of the terms, provisions or covenants of the Loan Documents shall not be deemed to be a waiver by KEF of such breach, or a release or relinquishment of any claim for future performance under the Loan Documents or this Guaranty.

6.  **Subordination/Subrogation.** (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Borrower or any other person or entity directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to the Borrower's property (including, without limitation, property collateralizing the Loan Documents), arising from the existence or performance of this Guaranty.

(b) The liability of Guarantor under this Guaranty, and of any Other Guarantors, if any, under Other Guarantees given in favor of KEF in connection with the Loan Documents, shall be joint and several and shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied. Guarantor covenants and agrees that any indebtedness of Borrower to Guarantor is hereby subordinated to the obligations of Borrower to KEF, and that after any default under the Loan Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Borrower in trust for KEF to satisfy the obligations of Borrower to KEF and shall forthwith deliver such funds to KEF in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7.  **Assignment.** This Guaranty is assignable by KEF without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of KEF. Any assignee of KEF shall have all of the rights of KEF hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of KEF, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8.  **Severability/Governing Law.** If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of KEF in order to effect the provisions hereof. This Guaranty shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflicts of laws principles of such state. Guarantor agrees to pay upon demand all of KEF's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against KEF or the Guarantor concerning any

matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9.　　**Jury Trial Waiver**. GUARANTOR HEREBY WAIVES ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE LOAN DOCUMENTS.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the _8th_ day of June, 2007.

**GLOBAL CONTAINER LINES LIMITED**

X _____

Name: Kazem Paksima

Title: President

Federal Tax ID #: _11 - 302 4523_