# **EXHIBIT B**

# EXHIBIT B1

**MEMORANDUM**

To:      C. Portlock

From:    C. Furness

Date:    July 15, 2004

Subject: Global Container Line    MGCL10M

Enclosed is **Equipment Service Lease Agreement** dated July 1, 2004 for your review and submission to the above for their signature.

Contract request received on: 07/14/04.
Contract sent on: 07/14/04.

# EQUIPMENT LEASE AGREEMENT

**EQUIPMENT SERVICE LEASE** dated July 1, 2004 ("Lease") between **TRANSAMERICA LEASING INC.,** incorporated under the laws of Delaware, with its principal place of business at 100 Manhattanville Road, Purchase, New York 10577-2135 ("Transamerica") and **GLOBAL CONTAINER LINES, LTD.,** incorporated under the laws of Delaware, with its principal place of business at Garden City Center, 100 Quentin Roosevelt Blvd. (S-401), Garden City, N.Y. 11530 ("Lessee").

NOW, THEREFORE, the parties agree as follows:

1. Lease of Equipment and Term of Lease

Transamerica agrees to lease to Lessee 20', 40'x8'6" and 40'x9'6" dry cargo containers (i) manufactured 1995 and later ("Unit(s)" or "Equipment") currently on hire to Lessee under Transamerica billing codes GCLG5, GCLG5-001, GCLG5-002, and GCLG5-004 and (ii) Units to be taken on hire under this Lease. The term of the Lease shall commence on the first day of the month following the date this Lease is signed and will continue for 12 months thereafter ("Term"). The term "TEU" as used herein means one 20' equivalent Unit, so that one 20' Unit equals one TEU and one 40' Unit equals two TEU's. Lessee will maintain not less than 400 TEU's on hire during the Term ("TEU Commitment").

2. Rent and Other Charges

The rent for the Equipment is $0.95 per day for each 20' Unit, $1.80 per day for each 40'x8'6" Unit, and $2.00 per day for each 40'x9'6" Unit. The rent will commence on the first day of the month following the date this Lease is signed and will continue to and include the day the Equipment is taken off lease pursuant to Paragraphs 6., 7., 8. or 9. hereof. Transamerica will bill Lessee monthly for rent and other charges which will be deemed additional rent. Lessee will pay Transamerica invoices in U.S. currency at the address set forth above or as otherwise directed by Transamerica in full, without deduction for any reason whatsoever. Payment is due within 30 days from date of invoice. Payments overdue will be subject to a service charge equal to the lesser of 2% per month or the highest legal rate. In addition to the payment of rentals, Lessee will pay or reimburse Transamerica for any and all sales and use taxes, value added taxes, personal property taxes, withholding taxes or other direct taxes levied against or based upon the use, storage, operation or possession by Lessee of the Equipment leased hereunder, or levied against or based upon the amount of rentals paid or to be paid hereunder, or any other taxes levied against or based upon this Lease or the execution, filing, recording or performance thereof. The term "direct taxes" as used herein will include all taxes (except taxes which are based upon or measured by Transamerica's net income), charges and fees levied, assessed or charged by any taxing authority.

3. Maintenance and Repair of Equipment While on Lease

Lessee agrees, at its expense, to maintain Equipment at all times during this Lease in good repair and operating condition and in a safe condition pursuant to the International Convention for Safe Containers, free of any and all liens and encumbrances. All repairs made by Lessee will be in accordance with Transamerica standards issued from time to time.

4. Location and Use of Equipment

Lessee will not make or permit any unlawful use or handling of Equipment. Lessee will comply with all loading limitations prescribed by the manufacturer of Equipment and will prevent excessive impact and concentrated loads. Lessee will not, without Transamerica's prior written consent, use Equipment for storage or transportation of corrosive substances, hazardous materials, hazardous wastes, high density poorly secured materials, bulk commodities which may corrode, oxidize, severely dent, puncture, contaminate, stain or damage the interior or exterior of Equipment or could result in injury or damage to subsequent users of Equipment or make any other use of Equipment which could result in such injury or damage. Lessee will not, without Transamerica's prior written consent, make or permit any changes, alterations, or improvements in or to the Equipment or remove therefrom any parts, accessories or attachments. Equipment returned with parts, accessories or

| Transamerica billing code: "MGCL10M" |

attachments missing will continue to be considered as rented Equipment until the missing items are returned or replacement cost is paid or if changes were made to Equipment, until the Equipment has been restored to its condition at time of receipt by Lessee. Lessee will maintain records showing the location of Equipment and will, upon Transamerica's request, promptly advise Transamerica in writing of the location of Equipment.

5. Compliance with Laws

Lessee will, at its own cost and expense, comply with all laws, regulations or orders of federal, state, foreign and local governments or agencies which in any way affect the Equipment or its use, operation or storage thereof. Lessee will exercise such responsibilities as would otherwise be Transamerica's under the International Convention for Safe Containers. Such responsibilities will be carried out in accordance with Transamerica's operational procedures in effect from time to time. Lessee will comply with all requirements of any Customs Convention on Containers, including all obligations of the operator and relating to temporary admission, transport under customs seal, maintenance of records and reporting to governmental and other authorities. Lessee agrees to hold Transamerica harmless from any fines, penalties, forfeitures or seizures which may arise from the violation of any such law, rule, regulation or order.

6. Casualties

If (a) any Unit is lost, stolen, destroyed or, in the opinion of Transamerica, damaged beyond economic repair from any cause whatsoever, (b) title thereto shall be requisitioned or seized by any governmental agency, or (c) title to any Units shall be impaired and Lessee's right of possession lost for a period of 60 days or more as a result of the failure of Lessee to take such steps as may be necessary to protect and preserve the title of Transamerica to such Units in any jurisdiction by recording, registration or otherwise (such occurrences being hereinafter called "Casualty Occurrences") during the Term of this Addendum, then Lessee will, within ten (10) days after it has determined that such Unit has suffered a Casualty Occurrence, fully inform Transamerica in regard thereto. On the last day of the month following the month in which Lessee has informed Transamerica that a Unit has suffered a Casualty Occurrence ("Casualty Payment Date"), Lessee will pay to Transamerica an amount equal to the replacement value of such Unit as determined by Transamerica as of the date of such Casualty Payment Date. Lessee will pay interest at a rate of 2% per month on any replacement values which are not paid when due. Upon the making of such replacement value payment by Lessee in respect to any Unit, the per diem for such Unit will cease to accrue as of the date of such payment, and the Term of this Lease will terminate as to such Unit.

7. Pickup of Equipment

Subject to availability and upon request, Transamerica will make Units available for pickup by Lessee at mutually agreed upon Transamerica depots for mutually agreed upon pickup fees or credits.

8. Return of Equipment

A. During the Term, Lessee may redeliver Units to Bombay and Durban, subject to an aggregate monthly redelivery limitation of 30 Units to Bombay and 20 Units to Durban. Lessee will not be charged a redelivery fee for such Units.

B (1) At the expiration of the Term, there will be a period of 3 months ("Build-Down Period") during which Lessee will redeliver Units on hire to Transamerica in accordance with 8.A. above.

B(2) Transamerica may, upon 30 days' written notice to Lessee, initiate and/or change redelivery locations, fees, credits and/or redelivery limitations in the locations listed in Schedule A.

C. Any Unit remaining on hire to Lessee after the Build-Down Period will be subject to the Transamerica short term per diem rate of U.S.$1.43, $2.70 and $3.00 per 20', 40'x8'6" and 40'x9'6" Unit, respectively. Lessee will redeliver such Unit a Transamerica depot in a mutually agreed upon location and Lessee

| Transamerica billing code: "MGCL10M" |
| --- |

will pay the redelivery fee then prevailing at such location. Nothing contained herein, however, may be construed as giving Lessee the right to retain Units on hire after the expiration of the Build-Down Period. The terms of this Paragraph will survive the termination of this Lease.

D. Equipment will be inspected upon its return, and the Transamerica depot will indicate the condition of Equipment on a Receipt. Equipment should be returned in the same condition as when obtained by Lessee, normal wear excepted. Equipment will be taken off hire on the date of return. Lessee is responsible for all damage to Equipment. If Equipment is damaged, then Lessee or its authorized agent will be notified of the estimated cost thereof. Within 5 days of such notification, Lessee or its authorized agent will either (i) approve such estimate or (ii) participate with Transamerica in a joint examination of the Equipment. If a joint examination is conducted and the parties are unable to agree upon the extent of the necessary repair work, then Transamerica will arrange for inspection by a mutually acceptable surveyor approved by a recognized classification society. The decision of the surveyor will be final and binding. If, within five working days of receiving the notification of damage, repair authorization is not given by Lessee or its authorized agent or a joint examination is not conducted, then Transamerica will be entitled forthwith to proceed with such repair work as in its discretion it deems necessary, at Lessee's expense.

9. Direct Interchange of Units

Lessee may interchange Units to and/or from third parties for an administrative fee of US$50.00 per interchange (if the interchange is processed via TRADEX ONLINE, then the administrative fee will be US$25.00) after receiving the prior consent of the Transamerica Regional Co-Ordination Center or other designated Transamerica location. The supplying party will remain liable and responsible for the Units until Transamerica receives written notification from the receiving party of the interchange. The interchange will be effective upon the date of notification and the receiving party will assume liability and responsibility for the Units. Transamerica must be notified of the interchange within 30 days of the interchange taking place and prior to the return of the Units to Transamerica. Failure to comply with all of the foregoing will subject the supplying party to continuing liability and responsibility for the Units, including but not limited to the per diem rentals therefore.

10. Exclusion of Warranties

Transamerica makes no representations or warranties (i) as to the condition of Equipment, (ii) that Equipment meets the requirements or regulations of any country or other political subdivision within which Lessee may use or operate the Equipment, or (iii) as to Equipment's suitability for any purpose. ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE, ARE HEREBY WAIVED BY LESSEE.

11. Indemnification

Lessee agrees to defend at its own expense, and to indemnify and hold harmless Transamerica, its agents, indemnities and employees, from and against, any and all losses, claims, actions, costs, expenses, fees, damages, fines and liabilities (including reasonable attorneys' fees), however caused and irrespective of whether caused in whole or in part by the negligence of Transamerica, resulting directly or indirectly in any manner from the lease, operation, use, storage or possession of Equipment by Lessee or the performance of this Lease by Lessee.

12. Insurance

Unless waived by Transamerica in writing, Lessee will, at its own expense, maintain the following minimum amounts of insurance, with insurance companies acceptable to Transamerica and will furnish Transamerica with certificates of such insurance. At Transamerica's request, Lessee will furnish Transamerica with copies of each insurance policy with endorsements.

| Transamerica billing code: "MGCL10M" |

A (1).    All Risks Physical Damage Insurance in an amount equal to the value of all Equipment charged to it while on land, afloat, in transit or at rest anywhere in the world, including particular average and general average.  Such insurance will be endorsed (i) with a Loss Payable Clause in favor of Transamerica as respects Transamerica's property and (ii) to name Transamerica as an Additional insured.

A (2).    Comprehensive General Liability Insurance, including Contractual Liability, against claims for bodily injury or death and property damage in an amount not less than U.S. $5,000,000 per occurrence.  Said insurance will be endorsed to name Transamerica as an Additional Insured.

A(3).    Automobile Liability Insurance against claims for bodily injury or death and property damage in an amount not less than U.S. $5,000,000 per occurrence.  Said insurance will be endorsed to name Transamerica as an Additional insured.

B.    The certificates and policies evidencing the insurance required above will contain a clause providing that (i) the policies will be considered primary as against any other valid insurance coverage, and (ii) 30 days' prior written notice must be given to Transamerica if the policies are canceled, materially changed or not renewed.

C.    The maintenance of insurance by Lessee will *not* be deemed or construed to limit Lessee's obligations under this Lease, including, but not limited to, obligations under Paragraph 10 hereof.

13.  Ownership Rights

Equipment will at all times remain the property of Transamerica, and Lessee will not acquire any ownership rights, title or interest of any nature in Equipment by virtue of paying rental or other charges hereunder, or complying with or exercising any of Transamerica's responsibilities under the International Convention for Safe Containers.  The transactions covered by this Lease are transactions of leasing only, and not a sale, conditional or otherwise, and the only right acquired by Lessee hereunder is the right to possess and use Equipment leased hereunder so long, and only so long, as Lessee is not in default hereunder.

14.  Identifying Marks

Unless otherwise agreed in writing, Equipment will have Transamerica serial numbers and other identifying marks affixed which will not be destroyed or altered by Lessee.

15.  Assignment and Sublease

Transamerica may assign all or any part of its right, title or interest under this Lease, including the rent due and to become due.  Lessee will not, without Transamerica's prior written consent, sublease any Equipment or assign or encumber this Lease or any interest therein, in whole or in part, or encumber any Equipment in any manner and any such assignment or purported assignment shall be void and of no effect.

16.  Time is of the Essence

Time is of the essence of this Lease.

17.  Default

If any of the following events occurs and continues:

A.    Lessee fails to pay any sum or sums to be paid hereunder when the same become due; or

B.    Lessee fails to observe or perform any other condition of this Lease in the manner and at the time required herein, and such failure remains unremedied for  five days after written notice thereof to Lessee by Transamerica; or

| Transamerica billing code: "MGCL10M" |
| --- |

C.  Any obligation of Lessee for the payment of money or for the acquisition of assets by lease, conditional sale or similar arrangement, is not paid or refinanced at maturity, whether by acceleration or otherwise, or is declared to be due and payable prior to the stated maturity thereof by reason of default or other violation of the terms of any promissory note or agreement evidencing or governing such obligation; or

D.  Lessee has failed or fails to perform any covenant, condition or obligation contained in any other agreement between Lessor or any affiliate of Lessor and Lessee or any affiliate of Lessee; or

E.  Transamerica becomes aware of any fact which causes it to reasonably deem itself insecure; or

F.  Lessee admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors or becomes insolvent or subject to any voluntary or involuntary proceeding relating to bankruptcy, liquidation, insolvency or reorganization or relief to debtors; or Lessee seeks appointment of a receiver or trustee for it or any substantial part of its assets; or Lessee takes any corporate action to authorize any of the actions set forth above; or

G.  The seizure or nationalization of Lessee or a material part of Lessee's assets by any government or any governmental instrumentality; or

H.  A default by a guarantor under the terms of any instrument pursuant to which a third party is guaranteeing the obligations of Lessee hereunder;

then in any such event:

(i)  Lessee's rights to possession of all Equipment will terminate and Transamerica will have the right to take immediate possession of all Equipment, and any damages occasioned by any taking of possession are hereby specifically waived by Lessee;

(ii)  If Equipment is on lease for a stated term, the entire unpaid balance of the rent for the entire term of the lease will forthwith become due and payable;

(iii)  Transamerica will have the right to rent Equipment or any portion thereof to such persons and under such terms as Transamerica may elect and after deducting all costs and expenses incurred in connection therewith, apply any rent received to the rent due from Lessee to Transamerica hereunder by acceleration or otherwise; and

(iv)  Lessee will pay to Transamerica all reasonable attorneys' fees and expenses Transamerica incurred in enforcing its rights hereunder.

The foregoing will *not* be construed to limit any and all other remedies available to Transamerica for a default or breach of this Lease.

18. Waivers

A.  No express or implied waiver by Transamerica of any default hereunder will in any way be construed to be a waiver of any future or subsequent default of Lessee, or a waiver of any rights of Transamerica hereunder, or a modification of any of the terms of this Lease or any extension or enlargement of Lessee's rights hereunder.

B.  If Lessee is owned, directly or indirectly, in whole or in part, by any country or sovereign or is an authority or agency of any country or sovereign, then Lessee hereby waives any and all rights and immunities, including, without limitation, any immunities from prejudgment seizure, arrest or attachment it may have under the Foreign Sovereign Immunities Act of 1976 (28 USC §1602, et seq.) as amended or any similar type statute, law, rule or regulation of any country or sovereign.

Transamerica billing code: "MGCL10M"

19. Liens

Transamerica and Lessee agree that the primary and paramount purpose of the lease of Equipment hereunder is to enable Lessee to offer international ocean carriage of containerized cargo aboard vessels owned, chartered or operated by Lessee and that such leased Equipment is essential and necessary for that service. The parties further agree that this Lease is a maritime contract, that Equipment is furnished by Transamerica to vessels owned, chartered or operated by Lessee for the completion of voyages thereon, and that any Equipment furnished to Lessee hereunder is also furnished to any vessel on which the Equipment is used. Transamerica is expressly relying upon the credit of the vessels, even if final delivery to the vessels is effected by Lessee. Transamerica appoints Lessee as its agent to effect delivery of Equipment to the vessels. Transamerica reserves and Lessee recognizes and grants to Transamerica an express maritime lien against said vessels and their pending freight, to secure all Lessee's obligations to Transamerica under this Lease. In addition, and not in limitation of all other remedies in this Lease, Transamerica may execute its maritime lien on vessels owned, chartered or operated by Lessee by appropriate process in any court of any country having general admiralty and maritime jurisdiction.

20. Financial Reports

Within 45 days after the close of each of the first three quarters of Lessee's fiscal year, Lessee will deliver to Transamerica a copy of Lessee's unaudited balance sheet and statement of income for each such quarter. Within 120 days after the close of Lessee's fiscal year, Lessee will deliver to Transamerica an audited balance sheet and statement of income and retained earnings as of the close of such fiscal year, and the notes thereto.

21. Termination

Unless otherwise agreed in writing, either party may terminate this Lease at any time by serving 30 days' written notice on the other party at the address written above. In the event of termination, Lessee will return all Equipment to mutually agreed upon Transamerica depots or absent such agreement, to the places designated by Transamerica. Lessee will pay to Transamerica the agreed rental for Equipment, and all other conditions of this Lease will continue in effect, until all Equipment has been returned to and accepted by Transamerica. Such termination will not, however, relieve Lessee from any liabilities and obligations incurred under this Lease prior to such return. This right of termination, however, will not apply to any Equipment which Lessee has received pursuant to a written agreement or addendum to this Lease (i) which obligates Lessee to pay rental for a stated period of time, or (ii) which contains a stated term.

22. Jurisdiction

Transamerica and Lessee hereby agree that any claim or controversy, directly or indirectly arising out of or relating to this Lease, may be litigated in the state or federal courts located in the State of New York, USA, and Transamerica and Lessee hereby consent to be subject to the jurisdiction of such courts. Transamerica and Lessee agree that service of process upon the other may be made by mailing a copy (by registered or certified mail) postage prepaid, addressed to the respondent at the address shown above or by telecopier sent to the respondent's telecopier number. If service is by mail, service will be complete seven days after such process has been mailed to the respondent. If service is by telecopier, service will be complete when such process is actually received. Nothing herein will affect the right of either party to serve legal process in any other manner permitted by law or affect the right of either party to bring any action or proceeding against the other party or its property in the courts of any other jurisdiction. This Lease will be governed by the laws of the State of New York, USA

23. Subordination

This Lease is executed by Transamerica in respect of the Equipment and is made subordinate to any chattel, mortgage, pledge, security agreement, conditional sales contract, lease or like agreement applicable to the Equipment to which Transamerica is bound.

| Transamerica billing code: "MGCL10M" |

24. Severability

If, upon judicial interpretation or construction, any provision of this Lease is determined to be prohibited or limited by law, such provision will be ineffective to the extent of such prohibition or limitation, without invalidating the remaining provisions of this Lease. To this end, the provisions of this Lease are severable.

25. Force Majeure

Transamerica will be free from liability for failing to perform hereunder due to acts of God, war, labor difficulties, fire or other causes beyond its control.

26. Consequential Damages

Under no circumstances will Transamerica be liable hereunder for any lost profits or for special, consequential or exemplary damages, even if Transamerica has been advised of the possibility of such damages.

27. Amendments

This Lease constitutes the general conditions between Transamerica and Lessee for the leasing of Equipment. Additional and different conditions may be provided for if the same are in writing and signed by the parties.

28. Effective Date

This Lease will become binding upon the parties upon its acceptance and execution by Transamerica at its office set forth above.

29. Paragraph Headings

The paragraph headings in this Lease are for convenience only and will not be deemed to alter or affect any provision hereof.

30. Grant of Security Interest

A. (i) In order to secure Lessee's obligations to Transamerica under this Lease, Lessee grants to Transamerica a security interest in the Units and all accessories, substitutions and replacements for the Units and all proceeds of the sale or disposition of the Units.

(ii) The security interest granted hereby also covers all obligations and liabilities of Lessee to Transamerica, whether such obligations are direct or indirect, absolute or contingent, due or to become due, now or hereafter arising.

B. Lessee agrees to execute and deliver to Transamerica any and all instruments and documents that may be reasonably necessary to protect Transamerica's interest under this Lease.

C. Transamerica as secured party may (without cost to Lessee) file financing statements without the signature of Lessee, as debtor.

**GLOBAL CONTAINER LINES LTD.**                    **TRANSAMERICA LEASING INC.**

By:_____                         By:_____

Title:_____                       Title:_____

| Transamerica billing code: "MGCL10M" |

Rec#4247
S:\contracts\contain\g\gclxx\gcl10s.doc

**EXHIBIT B2**



THIS LEASE is made this 1st day of April 1999 between:
GE SeaCo Services Ltd, a company organised and existing under the laws of England with offices at Sea Containers House, 20 Upper Ground, London SE1 9PF ("GESC"); and:
SHIPTRADE INC.
a corporation organised and existing under the laws of The Bahamas with offices at 100 Quentin Roosevelt Blvd., Garden City Centre, Garden City, New York 11530, U.S.A. ("the Lessee").
It is hereby agreed as follows:

1.   **Term:** GESC agrees to lease to the Lessee who agrees to hire from GESC up to eight hundred (800) Twenty Foot Equivalent Units (TEU) of 20ft dry freight Containers (BX2), 40ft dry freight Containers (BX4) and 40ft Hi-Cube dry freight Containers (BW4) (the "Containers") identified by the serial numbers listed in Appendix A. The term of the Lease for each Container shall commence on its date of delivery and shall continue for two (2) years and then the Lease shall terminate as to each Container, respectively. Thereafter the Lease shall, unless renegotiated 90 days prior to termination, remain in force until terminated by either party on 90 days notice. Nothing in the Lease gives the Lessee the right to retain any of the Containers beyond the term of the Lease.

2.   **Rent and Payment:** The daily rent for each Container shall be as shown in the table below. Rent shall be due for each Container from and including the day of delivery to the Lessee up to and including the day the Container is returned to GESC in accordance with the terms of the Lease and shall be paid by the Lessee to GESC monthly in arrears.

| Daily Rent (US$) | |
|---|---|
| 20ft Dry Freight Container | US$ 0.90 |
| 40ft Dry Freight Container | US$ 1.75 |
| 40ft Hi-Cube Container | US$ 1.95 |

3.   **Delivery:** GESC shall use all reasonable efforts to deliver the first of the Containers on or about April 1st 1999 and to complete delivery on or about March 31st 2001. The Containers shall be delivered from GESC depots in Bombay, Delhi, Tuticorin, Karachi, Dubai, Durban, Cape Town and Mombasa. Containers shall also be deemed to be delivered hereunder on April 1st 1999 by transfer from Sea Containers Long Term Lease Agreement 000607.

4.   **Return:**

a) During each Calendar month the Lessee shall have the option to return up to 5% of the Containers onhire upon giving 14 days notice to GESC of its intent to return the Containers. Such returns shall be made to GESC depots in Dubai, Bombay or other mutually agreed locations.

b) Upon termination of the Lease, the Lessee shall return the Containers to GESC at GESC's depot in Dubai and Bombay at GESC's option or other mutually agreed locations and shall pay to GESC a Lease Termination Charge equal to fifteen times the last applicable daily rent. In consideration of this charge the rent for each Container shall cease on the day after the day of return of the Container. For any Container remaining on lease after the Lease has terminated the Lessee shall pay to GESC rent at a daily rate as shown in the table below.

| Rent after Lease Expiry (US$) | |
|---|---|
| 20ft Dry Freight Container | US$ 1.05 |
| 40ft Dry Freight Container | US$ 2.00 |
| 40ft Hi-Cube Container | US$ 2.25 |

5.   **Handling Charges:** For each Container delivered to the Lessee or returned to GESC the Lessee shall pay to GESC GESC's prevailing handling charge at the date of delivery and return. No handling out charge shall apply to Containers delivered hereunder by transfer as described in Paragraph 3 above.

# GESEACO

6. **Replacement Value:** The replacement value for each Container damaged beyond economic repair, lost or destroyed shall be as shown in the table below. The replacement value shall be depreciated at *4%* per annum dating from the date of delivery of the Containers from the manufacturer to GESC. The minimum depreciated replacement value shall be 40% of the replacement value described above.

| Replacement Value (US$) | |
| --- | --- |
| 20ft Dry Freight Container | US$ 3,200 |
| 40ft Dry Freight Container | US$ 5,200 |
| 40ft Hi-Cube Container | US$ 5,500 |

US$2,500
US$4,500
US$4,600

7. **General:** GESC's General Trading Terms ("GTT", a copy of which is attached hereto unless previously signed by the Lessee) and GESC's Long Term Lease Terms ("LTLT") are part of the Lease and apply to all Containers. In the event of any conflict between the Lease and the LTLT or the GTT the provisions of the Lease prevail. In the event of any conflict between the LTLT and the GTT the provisions of the LTLT prevail. If the Lessee does not accept any provision of the Lease the Lessee should object within 7 days of receipt of the Lease. If the Lessee fails to object and takes delivery of any Container under the Lease and retains it after receipt of the Lease then the Lease shall be deemed to be accepted by and shall be binding on the Lessee whether or not it is signed.

For: SHIPTRADE,INC.    For:  GE SeaCo Services Ltd.

By: ...........................................  By:  ...........................................

Title: .......................................  Title: ...........................................

Date: .......June 2, 1999.............  Date: ...........................................

# GESeaco

1. **Payment of rent and other charges**

The payment of rent and other charges due under the Lease shall be made (without any deduction, counter-claim or set-off) by telex or telegraphic transfer within 30 days of the date of GESC's invoice.

2. **Delivery**

(i) Receipt or delivery of any Containers or any other act by an agent or employee of, or independent contractor engaged by the Lessee shall be deemed to be the act of the Lessee and be binding on the Lessee.

(ii) If GESC's "SeaCover" plan applies to the Containers, the Lessee will not be permitted to inspect the Containers at delivery. If the Lessee receives a Container which does not meet GESC's "SeaWorthy" standard at delivery the Lessee must notify GESC within five days and return the Container to the delivery depot (or another depot agreed by GESC). If GESC or GESC's local agent agrees the Container was not "SeaWorthy" at delivery the Container will be replaced with equivalent "SeaWorthy" Container. If the Container has not been used, GESC will pay the costs of handling and transport to and from GESC depot.

(iii) If GESC's "SeaCover" plan does not apply to the Containers the completion of the Equipment Interchange Receipt (EIR) on delivery shall be evidence that the Lessee has inspected the Containers and agreed it is in good order apart from any notes on the EIR.

3. **Return**

(i) The Lessee agrees to return each Container to GESC in a serviceable and good operating condition.

(ii) If GESC's "SeaCover" plan applies to the Containers, the Lessee will not be permitted to inspect the Containers at return. Rent for each Container shall end on the day after the date of its return. If a Container is lost, destroyed or stolen the Lessee shall give proof of loss to GESC and pay the replacement value described in the Lease.

(iii) If GESC's "SeaCover" plan does not apply to the Containers, the completion of the EIR on return shall evidence the condition of the Container at the time of its return.

(iv) If a Container is returned to GESC in a damaged or altered condition, the rent shall continue until the day on which the Container has been approved for repair by the Lessee. GESC or GESC's local agent will present a repair estimate to the Lessee's local agent who will be permitted to inspect the damage. If the Lessee's local agent does not, within five working days of the damage notification, inspect the Container and approve the estimated cost of repairs, the Lessee's approval shall be deemed to have been given. GESC or GESC's local agent shall invoice the estimated cost of the repairs to the Lessee's local agent who shall promptly pay all such invoiced amounts.

(v) GESC or GESC's local agent shall in its sole discretion decide whether a Container is so badly damaged that it cannot be repaired. If a Container is damaged or altered and GESC determines that it cannot be repaired, or if it is destroyed, lost or stolen, the Lessee shall give proof of loss to GESC and pay the replacement value described in the Lease.

4. **Jurisdiction**

Unless otherwise specified therein, the Lease shall be governed by the Laws of England as to all matters including but not limited to, validity, construction and performance and the parties hereby submit themselves and their respective successors and assigns to the non-exclusive jurisdiction of the Courts of England for the purpose of any action, suit or other proceeding arising out of, or relating to, the Lease or any of the Containers. The provisions of this Paragraph shall not preclude the bringing or institution of proceedings by GESC in any other jurisdiction.

# GESEACO

## General Trading Terms

### 1. Payment

(i) The Lessee's payment of charges due under the Lease is of the essence. All charges billed by GESC or GESC's agent are due within 30 days of the date of the invoice in the currency and to the party shown on the invoice.

(ii) If the invoice is not paid when due GESC or GESC's agent shall have the right to charge the Lessee interest of 2% compounded per month for each month or part month that the payment remains outstanding.

(iii) If the payment is made in a currency other than the currency of the invoice and (when converted to the currency of the invoice at the exchange rate on the date of payment) the payment falls short of the amount on the invoice the Lessee shall pay the shortfall.

(iv) In the event that any payments due under the Lease are subject to any withholding or other taxes the Lessee shall increase the amount of the payment so that the net amount GESC receives is the amount due.

### 2. Non Return

If any Container is not returned to GESC under the provisions for return after termination of the Lease, the rent payable immediately after termination of the Lease shall be GESC's then prevailing Short Term Lease Tariff Rate for a comparable container and this Tariff Rate shall be payable until the Container is returned. After 30 days notice to the Lessee (or within 5 days of termination for default as described in Paragraph 9) GESC may treat any such Container as lost and Lessee shall pay the replacement value described in the Lease. The Lessee shall continue to pay the new rent as above until the replacement value is paid in full.

### 3. Use and Compliance with Laws

(i) The Lessee shall at its expense comply with all conventions, laws and regulations in force from time to time and pay all duties and other charges which affect the Lease or the Containers. The Lessee shall comply with all customs laws and regulations and pay all duties and other charges when using the Containers in domestic business in any country.

(ii) The Lessee shall comply with the requirements of the Customs Convention on International Transport of Goods Under Cover of TIR Carnets (Geneva, January 15, 1959) and with the Customs Convention on Containers, 1956 and 1972 (as from time to time amended or re-enacted).

(iii) All Containers delivered from GESC's depots and manufacturers shall comply with the regulations of the Convention for Safe Containers (CSC) including plating and markings to ensure re-inspection within the required period of time. The Lessee shall be responsible for the compliance of Containers on lease and for any Container transferred via Direct Interchange.

### 4. General Conditions

(i) GESC shall endeavour to deliver the Containers by the dates agreed for delivery but it is agreed that the Lessee shall not be entitled to terminate the Lease by reason of GESC's failure to deliver by the agreed dates and GESC shall not be liable for any losses, damages, loss of profits or any form of consequential loss caused to the Lessee by late delivery of or defects in any of the Containers.

(ii) Title to the Containers shall remain with GESC and the Lessee shall have quiet possession if the provisions of the Lease are observed. The Lessee shall be responsible and liable for, and shall indemnify and hold GESC harmless against:
a) any failure of the Lessee to comply with the provisions of the Lease;
b) any claim for loss, damage or injury (including personal injury or death, property damage and insurance claims) arising out of the use, possession or ownership of any Container;
c) any forfeiture, seizure, or impounding of, or charge or lien on, any Container.

(iii) Some of the Containers may be owned by a third party and leased to GESC for subleasing. All such subleases including the Lease are subject and subordinate to any such lease and if the third party lease terminates the third party may be entitled to possession of the Containers. However, if the Lessee is not in default and makes all payments to the third party after notice from such third party to do so, the Lessee shall have quiet possession of the Containers. If the Lessee does not pay or some other default occurs, the Lessee may be required to deliver the Containers to such third party.

(iv) The Lessee undertakes to provide GESC with annual audited financial statements and other financial information on request.

### 5. Maintenance, Damage, Loss and Destruction of Containers

(i) The Lessee shall at its own expense maintain the Containers in good condition, repair and working order and make all necessary replacements of parts using parts and workmanship equal to the original condition of the Containers. The Lessee shall be liable for all damage to and loss of any Container until it is returned to GESC in a serviceable and good operating condition. The Lessee shall be liable for all costs and losses to GESC arising out of the Lessee's failure to make repairs, or replace parts necessary to maintain the Containers in good condition. The Lessee shall make no changes or alterations to the Containers, except with the written consent of GESC.

(ii) The Lease shall terminate for any Container which in the sole judgement of GESC is damaged beyond repair, lost or destroyed. Termination shall take effect from the day the Lessee gives proof of loss to GESC and pays the replacement value described in the Lease. If the Lessee does not comply with these conditions the daily rental shall continue to be charged until the above conditions are satisfied.



# GESeaco

### 6. Insurance

(i) The Lessee shall at its sole cost and expense insure and keep insured the Containers with insurers acceptable to GESC, such insurance shall be endorsed with a Loss Payable Clause in favour of GESC and provide the following minimum coverage:

a) Cover against all risk of physical loss or damage, in an amount equal to the replacement value for each and every one of the Containers until redelivered to GESC in accordance with the terms of the Lease.

b) Cover against claims made by third parties covering accidental bodily injury and/or property damage including property in the Container for which the Lessee may be held liable (said cover to include GESC as an additional insured) up to an amount equal to one million U.S. Dollars (US$1,000,000) in respect of each and every claim.

(ii) The Lessee shall provide GESC with a copy of the insurance policy(s) and endorsement(s) under which the Containers and the risks are insured upon the signing of the Lease and from time to time as requested by GESC. In the event of the Lessee's failure to procure, maintain or provide evidence of such insurance GESC shall be entitled to effect insurance on behalf of the Lessee and to immediately recover all costs from the Lessee.

### 7. Taxes and Other Charges

The Lessee shall pay all taxes, (excluding taxes on GESC's net income), charges, duties and fines levied on or in connection with the Containers after delivery until return to GESC.

### 8. Maritime Lien

The Lessee hereby agrees that the Lease of the Containers constitutes the supply of Containers necessary for the operation of vessels owned, chartered or operated by the Lessee and in particular to those vessels listed in the Vessel List attached hereto and that GESC is entitled to a maritime lien against such vessels to secure the Lessee's obligations hereunder. The Lessee hereby grants to GESC such lien and GESC shall be entitled to enforce such lien on vessels owned, operated or chartered by the Lessee in any country where such vessels are found. The Lessee undertakes that on each occasion it takes delivery of a Container it does so as an authorised agent of and on behalf of a vessel or vessels. Any Container supplied by the Lessee to a vessel shall be deemed by the parties to have been furnished specifically to such vessel.

### 9. Default

Each of the following events shall constitute a "Default": (i) failure of Lessee to pay any sum due hereunder within 30 days of the date such payment is due, (ii) failure of Lessee to perform any other obligations under the Lease or any other lease or agreement between Lessee and GESC or between the Lessee and Sea Containers Ltd. and/or their respective subsidiaries and affiliated entities, (iii) Lessee shall be dissolved or liquidated or cease doing business as a going concern, become insolvent, become the subject of any proceeding under any bankruptcy code or any similar law of any relevant nation, make an assignment for the benefit of creditors, admit in writing its inability to pay its debts as they become due, or a receiver, trustee or liquidator is appointed for Lessee or for any part of Lessee's assets, (iv) the sale, transfer or disposal by Lessee of substantially all of its assets, or the merger or consolidation of Lessee with any other entity or (v) Lessee or any material portion of its assets shall be seized or nationalised by any governmental entity.

### 10. Remedies

If a Default occurs, GESC may, in its sole discretion, exercise any of the following remedies without notice to or demand upon Lessee: (i) declare the Lease in default, (ii) without releasing Lessee from any obligations, terminate the Lease or any other lease or agreement from Lessee any amounts due under the Lease along with any rent to be due in the future, (iv) take possession of any Container without demand or notice or any court order or legal process, and free of any claims of Lessee (v) inspect the books and records of Lessee and (vi) exercise all remedies available under applicable law. Upon termination of the Lease, Lessee shall return the Containers to GESC as GESC shall direct. If Lessee fails to promptly return the Containers, but in any event not later than 90 days after Lessee receives directions from GESC, Lessee shall pay to GESC the replacement value specified in the Lease of such Containers. Lessee shall continue to pay rent for the Container until the earlier of the date when (a) the Container is returned, or (b) the replacement value and other sums due under the Lease are paid. If GESC retakes possession of any Container, GESC is authorised to take possession of any property in, on or attached to such Container that is not GESC's, without liability for its care or safekeeping, to be placed in storage at Lessee's risk and expense. Termination of the Lease shall not relieve Lessee of any obligations hereunder and Lessee shall remain liable for damages and for all costs incurred on account of the Default, including reasonable attorney's fees. These remedies are cumulative and are in addition to any other remedies of GESC. No delay or failure by GESC to exercise any right or remedy shall impair such right or remedy, or be construed as a waiver of or acquiescence in any later Default.

### 11. Force Majeure.

The Lessee's obligations under the Lease are absolute and shall not be affected by any circumstance or event beyond the Lessee's control of whatever nature including but not limited to Acts of God or Force Majeure.

# GESEACO

**12. Service of Process and Notices**

Any writ or other originating process shall be deemed duly served 5 days after posting if sent by registered post to the Lessee at the Lessee's address described in the first paragraph of the Lease or as designated in writing to the other party in accordance with the appointment of Agent for Service form attached hereto. All notices shall be in writing and shall be given by facsimile, telex, airmail, e-mail or in person to the other party at its address described in the Lease, or as designated. Notice may also be given by or to GESC at GE SeaCo Services Ltd, Sea Containers House, 20 Upper Ground, London SE1 9PF, England, or any other address designated by GESC. Notice by mail shall be deemed to be given 5 days after posting, notice by facsimile, telex, e-mail or in person shall be deemed to be received on transmission.

**13. Assignment**

GESC may grant a security interest in the Lease or the Containers and may assign all or part of its rights, title or interest, including all or part of the rent due or to become due. The Lessee shall not sell, assign, encumber or sublease any of the Containers or its rights or interests under the Lease nor permit any lien, encumbrance or security interest to exist against any of the Containers without GESC's prior written consent.

**14. Miscellaneous**

(i) If any of the provisions of the Lease shall be declared invalid or unenforceable all other provisions shall remain in full force and effect.

(ii) The Lessee hereby waives any and all existing set-offs and counter claims against the rental charges or payments due under the Lease.

(iii) The terms set out herein or in the Lease constitute the entire Agreement between the parties and cannot be changed or terminated orally.

(iv) Except where indicated otherwise, the term "Lease" shall be deemed to include these General Trading Terms and, as applicable, the Short Term Lease, Rate Agreement, Long Term Lease or Master Lease and the Lease Terms incorporating all schedules and appendices.

(v) ALL CONTAINERS ARE LEASED AS IS. NO CONDITION OR WARRANTY HAS BEEN OR IS GIVEN BY GESC IN RELATION TO ANY CONTAINER, ITS DESCRIPTION, ITS QUALITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE AND ALL CONDITIONS AND WARRANTIES IN RELATION THERETO WHETHER EXPRESS OR IMPLIED, ARISING UNDER STATUTE OR AT COMMON LAW, COLLATERAL THERETO OR OTHERWISE, ARE HEREBY EXCLUDED. GESC SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, OR CONSEQUENTIAL LOSS OR DAMAGE (WHETHER FOR LOSS OF PROFIT OR OTHERWISE), COSTS, EXPENSES OR OTHER CLAIM FOR COMPENSATION WHATSOEVER WHICH ARISE OUT OF OR IN CONNECTION WITH THE LEASING OF THE CONTAINERS OR THEIR USE BY THE LESSEE.

(vi) To the extent that the Lessee may be entitled to claim for itself or its assets or revenues, sovereign immunity from suit or proceedings, from the jurisdiction of any court, or from execution of a judgement or the exercise of any remedies by GESC, the Lessee hereby irrevocably waives such sovereign immunity (including without limitation any and all rights it may have under the US Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602-1611, and any immunity the Lessee may possess from pre-judgement seizure, arrest or attachment) and accepts that the entry into and performance of the Lease is of a commercial nature.

(vii) GESC shall not be responsible for any failure on its part to perform its obligations hereunder to the extent that such failure is prevented in whole or in part by the occurrence of any act or event beyond its control, including but not limited to Acts of God, demands or requirements of any government or regulatory body, riots, war, fire, weather, floods, insurrection, earthquakes, embargoes, blockades, strikes or labour disputes.

**15. Jurisdiction**

Unless otherwise specified therein, the Lease shall be governed by the Laws of England as to all matters including but not limited to, validity, construction and performance and the parties hereby submit themselves and their respective successors and assigns to the non-exclusive jurisdiction of the Courts of England for the purpose of any action, suit or other proceeding arising out of, or relating to, the Lease or any of the Containers. The provisions of this Paragraph shall not preclude the bringing or institution of proceedings by GESC in any other jurisdiction.

| For: | SHIPTRADE INC. | For: | GE SeaCo Services Ltd. |
|---|---|---|---|
| By: | | By: | |
| Title: | *President* | Title: | *Manager* |
| Date: | *June 4 99* | Date: | *June 14 99* |



**INTERCONTINENTAL CONTAINER
TRANSPORT COORDINATION N.V.**
Elisabethlaan 156 · B-2600 Berchem
Tel. 03 / 286.70.70 · Fax 03 / 286.70.80

**Shiptrade Inc
C/o Global Shipping
100 Quentin Roosevelt Boulevard
Garden City, NY 11530, USA**

**Att: Mr. Ed Garcia**

Antwerp, June 21st 1999.

Dear Sirs,

Re: Short Term Lease Agreement N° S 54902 dd 180699

Please find herewith enclosed two copies of:
- Above short term lease agreement N° S 54902
- Appendix "B"
- General Trading Terms

May we kindly ask you to sign the original copy and to return it to this office at your earliest convenience. The copy may be retained for your files.

For what's concerning the GTT, please sign both copies, and after countersignature by GeSeaco London, one countersigned copy will be returned for your files.

Any container on hire at 180699 and any container supplied thereafter under the terms of lease agreement N° S54902 shall be covered by lease agreement N° S 54902 which shall be deemed to be in force and effect nothwithstanding any lack of signature by either party.

Thanking you in anticipation, we remain, Dear Sir,

Yours faithfully,

I.C.T.C. N.V.
Myriam Kempen

# GE SeaCo Services Ltd

Date 18th June 1999                    Short Term Lease No S54902

This Agreement (the 'Lease') made between, GE SeaCo Services Ltd, of Sea Containers House, 20 Upper Ground, London, SE1 9PF, England, (GESC') and

| | |
|---|---|
| Shiptrade Inc | ICTC NV |
| c/o Global Shipping | Elisabethlaan, 156 |
| 100 Quentin Roosevelt Boulevard | B-2600 Antwerpen-Berchem |
| Garden City, NY 11530, USA | BELGIUM |
| Attn Mr. Ed Garcia | |

          (the 'Lessee')                    (as GESC's agent)

The Lessee agrees to lease from GESC and GESC agrees to lease to the Lessee up to 50 containers of type BX2  20' Box (the 'Containers') identified by the serial numbers listed in Appendix A to be attached hereto.

**A Duration of Lease** This Lease shall remain in force until September 16th 1999, whereupon GESC shall have the right to terminate this Lease or review the provisions of Paragraphs C and E hereof. Any amendments thereto to take effect from the date of GESC's notice to the Lessee.

**B Delivery** The Lessee shall take delivery of the Containers from the locations shown below with the applicable delivery charges (Credits)

MOMBASA                    US$    0.00

The Lessee shall take delivery of the Containers during the period June 18th 1999 through September 18th 1999.

**C Return** The Lessee shall return the Containers to the GESC depots shown below with the applicable Return Charges (Credits).

BOMBAY                    US$    0.00

**D Handling Charges**  For each Container delivered or returned the Lessee shall pay to GESC US$ 0.00 on delivery and US$ 0.00 on return.

**E Rent** For each Container delivered the Lessee shall pay US$ 0.00 per day for the first 30 days and US$ 0.90 per day thereafter.
Minimum Rental Period 0 days per Container.

**H Replacement Values** The replacement value for each Container damaged beyond economic repair, lost or destroyed pursuant to Paragraph 5(ii) of GESC's General Trading Terms shall be US$ 3200.00 per Container.
**J SeaCover SCR D20150** The terms applicable are as described in Appendix B

For each Container the Lessee shall pay a daily STSCR charge of US$ 0.00
This SCR Agreement shall terminate on September 30th 1999.

**K Miscellaneous Provisions** (i) For any Container returned to a GESC depot not shown in Paragraph C above the Lessee shall pay to GESC the then prevailing return charge for that depot, such charge being specified in GESC's then current Depot Status Schedule.(ii) GESC's General Trading Terms (a copy of which is attached hereto unless previously signed by the Lessee) and GESC's Short Term Lease Terms are part of the Lease and apply to all Containers. In the event of any conflict between the Lease and the Short Term Lease Terms or the General Trading Terms the provisions of the Lease prevail. If the Lessee does not accept any provision of the Lease the Lessee should object within 7 days of receipt of the Lease. If the Lessee fails to object and takes delivery of any Container under the Lease and retains it after receipt of the Lease then the Lease shall be deemed to be accepted by and shall be binding on the Lessee whether or not it is signed.

For:Shiptrade Inc _____        For: GE SeaCo Services Ltd_____

By: _____             By: _____ **I.C.T.C. N.V.**

Date:_____ 19 ____            Date:_____ Elisabethlaan 156
                                               B-2600  BERCHEM

# GE SeaCo    SHORT TERM LEASE TERMS    STL No S54902

## 1.    Payment of rent and other charges

The Payment of rent and other charges due under the Lease shall be made (without any deduction, counter-claim or set-off) by telex or telegraphic transfer within 30 days of the date of GESC's invoice.

## 2.    Delivery

(i)    Receipt or delivery of any Container or any other act by an agent, employee or independent contractor engaged by the Lessee shall be deemed to be the act of the Lessee and shall be binding on the Lessee.

(ii)    If GESC's "Seacover" plan applies to the Containers, the Lessee will not be permitted to inspect the Containers at delivery. If the Lessee receives Containers which do not reach the GESC's "SeaWorthy" standard at delivery, the Lessee must notify GESC within five days and return the Containers to the delivery depot (or another depot agreed by GESC). If GESC or GESC's local agent agrees that the Container was not "SeaWorthy" at delivery the Container will be replaced with an equivalent "SeaWorthy" Container. If the Container has not been used, GESC will pay the costs of handling and transport to and from GESC's depot.

(iii)    If GESC's "SeaCover" plan does not apply to the Containers the completion of the Equipment Interchange Receipt (EIR) on delivery shall be evidence that the Lessee has inspected the Container and agreed it is in good order apart from any notes on the EIR.

## 3.    Return

(i)    The Lessee agrees to return each Container to GESC in as good a condition as it was received, with the exception of normal ware.

(ii)    If GESC's "SeaCover" plan applies to the Containers, the Lessee will not be permitted to inspect the Containers at Return. Rent for each Container shall end on the day after the date of its return. If a Container is lost, destroyed or stolen the Lessee shall give proof of loss to GESC and pay the replacement value described in the Lease.

(iii)    If GESC's "SeaCover" plan does not apply to the Containers, the completion of the EIR on return shall evidence the condition of the Container at the time of its return.

(iv)    If a Container is returned to GESC in a damaged or altered condition, the rent shall continue until the day on which the Container has been approved for repair by the Lessee. GESC or GESC's local agent will present a repair estimate to the Lessee's local agent who will be permitted to inspect the damage. If the Lessee's local agent does not, within five working days of the damage notification, inspect the Container and approve the estimated cost of repairs, the Lessee's approval shall be deemed to have been given. GESC or GESC's local agent shall invoice the estimated cost of the repairs to the Lessee's local agent who shall promptly pay all costs.

(v)    GESC or GESC's local agent shall in its sole discretion decide whether a Container is so badly damaged that it cannot be repaired. If Container is damaged or altered and GESC determines that it cannot be repaired, or if it is destroyed, lost or stolen, the Lessee shall give proof of loss to GESC and pay the replacement value described in the Lease.

(vi)    The payment of any Termination Charge specified in the Lease shall cause the rent for each Container returned to cease on the day after the day of return.

## 4.    Jurisdiction

Unless otherwise specified therein, the Lease shall be governed by the Laws of England as to all matters including but not limited to, validity, construction and performance and the parties hereby submit themselves and their respective successors and assigns to the non-exclusive jurisdiction of the Courts of England for the purpose of any action, suit or other proceeding arising out of, or relating to, the Lease or any of the Containers. The provisions of this Paragraph shall not preclude the bringing or institution of proceedings by GESC in any other jurisdiction.

# GESC SHORT TERM LEASE
## Appendix B

STL No.S54902

## SeaCover Agreement No. D20150

The Lessee agrees to enter into this SeaCover Agreement (SCR Agreement) which shall be part of the Lease and it is hereby agreed that with effect from the date of delivery of any Container delivered under the terms of the Lease the following shall apply:

## Article 1 : Repair Cost Responsibility

In consideration of the Lessee's payment to GESC of the charges set out in the Lease GESC agrees to relieve the Lessee of the cost of repair to the extent set out therein and on the terms set out below:

## Article 2 : Scope

GESC agrees to relieve the Lessee of the cost of the repair of accidental damage to any of the Containers leased under the terms of the Lease discovered on the proper return of the Containers up to and including US$ 150.00

Except that it is expressly understood and agreed that GESC will not be liable for missing parts, or the actual loss of any Container, or any costs in excess of the amount specified above, or any amount where the cost of the damage is recovered by the Lessee from any Insurer or third party.

## Article 3 : Return of Damaged Containers

(i)     The Lessee shall return any damaged Containers to GESC pursuant to the terms of the Lease at the locations allowed for return in the Lease. The cost of the return of damaged Containers, including handling charges, shall be borne by the Lessee.

(ii)    Notwithstanding the provisions of Paragraph 3(ii) of GESC's Short Term Lease Terms in the event that the estimated cost for any Container returned exceeds the amount set out in Article 2 above, the Lessee shall be permitted to inspect the Container.

## Article 4 : Duration

This SCR Agreement shall terminate upon the date specified in Paragraph J of the Lease. In the absence of any such specified date, this SCR Agreement shall remain in force for the agreed duration of the Lease. Thereafter GESC shall be under no obligation to extend the period of this SCR Agreement but in the event that any extension is agreed to by GESC, GESC reserves the right to alter or amend any of the terms hereof including any SCR charges specified in Paragraph J of the Lease.

## Article 5 : Transfer of Containers

If any Container becomes subject to the Lease by transfer from any other lease or agreement between GESC and the Lessee or by transfer from another lessee of GESC, GESC's proval of such transfer shall in part be dependent upon payment by the Lessee of 180 times the daily SCR charge set out in Paragraph J hereof and any lump sum charge payable at the time of delivery and the daily charge for each day thereafter and thereupon such Container shall become subject to this SCR Agreement.

For:  __Shiptrade Inc_____          For:  __GE Seaco Services Ltd_____

By:   _____          By:   _____

Date: _____          Date: _____

I.C.T.C. N.V.
Elisabethlaan 156
B-2600  BERCHEM

STSCR/DF/LMT

# GE SeaCo      GENERAL TRADING TERMS

1.    **Payment**

(i) All charges billed by GESC or GESC's agent are due within 30 days of the date of the invoice in the currency and to the party shown on the invoice.

(ii) If the invoice is not paid when due GESC or GESC's agent shall have the right to charge the Lessee interest of 2% compounded per month for each month or part thereof that the payment remains outstanding.

(iii) If the payment is made in a currency other than the currency of the invoice and (when converted to the currency of the invoice at the rate of exchange on the date of payment) the payment falls short of the amount on the invoice the Lessee shall pay the shortfall.

(iv) In the event that any payments due under the Lease are subject to any withholding or other taxes the Lessee shall increase the amount of the payment so that the net amount GESC receives is the amount due.

2.   **Non Return**

If any Container is not returned to GESC under the provisions for return after termination of the Lease, the rent payable immediately after the termination of the Lease shall be GESC's then prevailing Short Term Lease Tariff Rate for a comparable container and their Tariff Rate shall be payable until the Container is returned. After 30 days notice to the Lessee (or within 5 days of termination for default as described in Paragraph 9) GESC may treat any such Container as lost and the Lessee shall pay the replacement value described in the Lease. The Lessee shall continue to pay the new rent as above until the replacement value is paid in full.

3.   **Use and Compliance with Laws**

(i) Lessee shall at its expense comply with all conventions, laws and regulations in force from time to time and pay all duties and other charges which affect the Lease or the Containers. The Lessee shall comply with all customs laws and regulations and pay all duties and other charges when using the Containers in domestic business in any country.

(ii) The Lessee will comply with the requirements of the Customs Convention on International Transport of Goods Under Cover of TIR Carnets (Geneva, January 15, 1959) and with the Customs Convention on Containers, 1956 and 1972 (as from time to time amended or re-enacted).

(iii) All Containers delivered from GESC's depots and manufacturers shall comply with the regulations of the Convention for Safe Containers (CSC) including plating and markings to ensure re-inspection within the required period of time. The Lessee shall be responsible for the compliance of Containers on lease and for any Container transferred via Direct Interchange.

4.   **General Conditions**

(i) GESC shall endeavour to deliver the Containers by the dates agreed for delivery but it is agreed that the Lessee shall not be entitled to terminate the Lease by reason of GESC's failure to deliver by the agreed dates and GESC shall not be liable for any losses, damages, loss of profits or any form of consequential loss caused to the Lessee by late delivery of or defects in any of the Containers.

(ii) Title to the Containers shall remain with GESC and the Lessee shall have quiet possession if the provisions of the Lease are observed. The Lessee shall be responsible and liable for, and shall indemnify and hold GESC harmless against:
a) any failure of the Lessee to comply with the provisions of the Lease
b) any claim for loss, damage or injury (including personal injury or death, property damage and insurance claims) arising out of the use, possession or ownership of any Container.
c) any forfeiture, seizure, or impounding of, or charge or lien on, any Container.

(iii) Some of the Containers may be owned by a third party and leased to GESC for subleasing. If the third party lease terminates the third party may be entitled to possession of the Container. However, if the Lessee is not in default and makes all payments to the third party after notice from such third party to do so, the Lessee shall have quiet possession of the Containers.

(iv) At the request of GESC the Lessee undertakes to provide GESC with annual audited financial statements and other financial information.

5.   **Maintenance, Damage, Loss and Destruction of Containers**

(i) The Lessee at its own expense shall maintain the Containers in good condition, repair and working order and make all necessary replacements of parts using parts and workmanship equal to the original condition of the Containers. The Lessee shall be liable for all damage to and loss of any Container until it is returned to GESC in a serviceable and good operating condition. The Lessee shall be liable for all costs and losses to GESC arising out of the Lessee's failure to make repairs, or replace parts necessary to maintain the Containers in good condition. The Lessee shall make no changes or alterations to the Containers, except with written consent of GESC.

(ii) The Lease shall terminate for any Container which in the sole judgment of GESC is damaged beyond repair, lost or destroyed. Termination shall take effect from the day the Lessee gives proof of loss to GESC and pays the replacement value described in the Lease. If the Lessee does not comply with these conditions the daily rental shall continue to be charged until the above conditions are satisfied.

6.   **Insurance**

(i) The Lessee shall at its sole cost and expense insure and keep insured the Containers with insurers acceptable to GESC, such insurance shall be endorsed with a Loss Payable Clause in favour of GESC and provide the following minimum coverage:

a) Cover against all risk of physical loss or damage, in an amount equal to the replacement value for each and every one of the Containers until redelivered to GESC in accordance with the terms of the Lease.

b) Cover against claims made by third parties covering accidental bodily injury and/or property damage including property in the Container for which the Lessee may be held liable (said cover to include GESC as an additional insured) up to an amount equal to one million U.S Dollars (US$1,000,000) in respect of each and every claim.

(ii) The Lessee shall provide GESC with a copy of the insurance policy(s) and endorsement(s) under which the Containers and the risks are insured upon the signing of the Lease and from time to time as requested by GESC. In the event of the Lessee's failure to procure, maintain or provide evidence of such insurance GESC shall be entitled to effect insurance on behalf of the Lessee and to immediately recover all costs from the Lessee.

### 7. Taxes and Other Charges

The Lessee shall pay all taxes, (excluding taxes on GESC's net income), charges, duties and fines levied on or in connection with the Containers after delivery until return to GESC.

### 8. Maritime Lien

The Lessee hereby agrees that the Lease of the Containers constitutes the supply of Containers necessary for the operation of vessels owned, charted or operated by the Lessee and in particular to those vessels listed in the Vessel List attached hereto and that GESC is entitled to a maritime lien against such vessels to secure the Lessee's obligations hereunder, the Lessee hereby grants to GESC such lien and GESC shall be entitled to enforce such lien on vessels owned, operated or chartered by the Lessee in any country where such vessels are found. The Lessee undertakes that on each occasion it takes delivery of a Container it does so as an authorised agent of and on behalf of a vessel or vessels. Any Container supplied by the Lessee to a vessel shall be deemed by the parties to have been furnished specifically to such vessel.

### 9. Default

Each of the following events shall constitute a "Default": (i) failure of Lessee to pay any sum due hereunder within 30 days of the date such payment is due, (ii) failure of Lessee to perform any other obligations under the Lease or any other lease or agreement between Lessee and GESC' or between the Lessee and Sea Containers Ltd and/or their respective subsidiaries and affiliated entities, (iii) Lessee shall be dissolved or liquidated or cease doing business as a going concern, become insolvent, become the subject of any proceeding under any bankruptcy code or any similar law of any relevant nation, make an assignment for the benefit of creditors, admit in writing its inability to pay its debts as they become due, or a receiver, trustee or liquidator is appointed for Lessee or for any part of Lessee's assets, (iv) the sale, transfer or disposal by Lessee of substantially all of its assets, or the merger or consolidation of Lessee with any other entity or (v) Lessee or any material portion of its assets shall be seized or nationalised by any governmental entity.

### 10. Remedies

If a default occurs, GESC may, in its sole discretion, exercise any of the following remedies without notice to or demand upon Lessee: (i) declare the Lease in default, (ii) without releasing Lessee from any obligations, terminate the Lease in whole or in part, (iii) recover from Lessee any amounts due under the Lease along with any rent to be due in the future, (iv) take possession of any Container without demand or notice or any court order or legal process, and free of any claims of Lessee (v) inspect the books and records of Lessee and (vi) exercise all remedies available under applicable law. Upon termination of the Lease, Lessee shall return the Containers to GESC as GESC shall direct. If Lessee fails to promptly return the Containers, but in any event not later than 90 days after Lessee receives directions from GESC, Lessee shall pay to GESC the replacement value specified in the Lease of such Containers. Lessee shall continue to pay rent for the Container until the earlier of the date when (a) the Container is returned, or (b) the replacement value and other sums due under the Lease are paid. If GESC retakes possession of any Container. GESC is authorised to take possession of any property in, on or attached to such Container that is not GESC's, without liability for its care or safekeeping, to be placed in storage at Lessee's risk and expense. Termination of the Lease shall not relieve Lessee of any obligations hereunder and Lessee shall remain liable for damages and for all costs incurred on account of the Default, including reasonable attorney's fees. These remedies are cumulative and are in addition to any remedies of GESC. No delay or failure by GESC to exercise any right or remedy shall impair such right or remedy, or be construed as a waiver of or acquiescence in any later default.

### 11. Force Majeure

The Lessee's obligations under the Lease are absolute and shall not be affected by any circumstance or event beyond the Lessee's control of whatever nature including but not limited to Acts of God or Force Majeure.

### 12. Service of Process and Notices

Any writ or other originating process shall be deemed duly served 5 days after posting if sent by registered post to the Lessee at the Lessee's address described in the first paragraph of the Lease or as designated in writing to the other party in accordance with the appointment of Agent for Service form attached hereto. All notices shall be in writing and shall be given by facsimile, telex, air-mailed, e-mailed or in person to the other party at its address described in the Lease, or as designated. Notice may also be given by or to GESC at GE SeaCo Services Ltd, Sea Containers House, 20 Upper Ground, London SE1 9PF, England, or any other address designated by GESC. Notice by mail shall be deemed to be given 5 days after posting, notice by facsimile, telex, e-mail or in person shall be deemed to be received on transmission.

### 13. Assignment

GESC may grant a security interest in the Lease or the Containers and may assign all or any part of its rights, title or interest, including all or part of the rent due or to become due. The Lessee shall not sell, assign, encumber or sublease any of the Containers or its rights or interests under the Lease nor permit any lien, encumbrance or security to exist against any of the Containers without GESC's prior written consent.

### 14. Miscellaneous

(i) If any of the provisions of the Lease shall be declared invalid or unenforceable all other provisions shall remain in full force and effect.
(ii) The Lessee hereby waives any and all existing set-offs and counter claims against the rental charges or payments due under the Lease.
(iii) The terms set out herein or in the Lease constitute the entire Agreement between the parties and cannot be changed or terminated orally.
(iv) Except where indicated otherwise, the term "Lease" shall be deemed to include these General Trading Terms and, as applicable, the Short Term Lease, Rate Agreement, Long Term Lease or Master Lease and the Lease Terms incorporating all schedules and appendices.

(v) ALL CONTAINERS ARE LEASED AS IS. NO CONDITION OR WARRANTY HAS BEEN OR IS GIVEN BY GESC IN RELATION TO ANY CONTAINER, ITS DESCRIPTION, ITS QUALITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE AND ALL CONDITIONS AND WARRANTIES IN RELATION THERETO WHETHER EXPRESS OR IMPLIED, ARISING UNDER STATUTE OR COMMON LAW, COLLATERAL THERETO OR OTHERWISE, ARE HEREBY EXCLUDED. GESC SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, OR CONSEQUENTIAL LOSS OR DAMAGE (WHETHER FOR LOSS OF PROFIT OR OTHERWISE), COSTS, EXPENSES OR OTHER CLAIM FOR COMPENSATION WHATSOEVER WHICH ARISE OUT OF OR IN CONNECTION WITH THE LEASING OF THE CONTAINERS OR THEIR USE BY THE LESSEE.

(vi) To the extent that the Lessee may be entitled to claim for itself or its assets or revenues, sovereign immunity from suit or proceedings, from the jurisdiction of any court, or from execution of a judgement or the exercise of any remedies by GESC, the Lessee hereby irrevocably waives such sovereign immunity (including without limitation any and all rights it may have under the U.S Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602 - 1611, and any immunity Lessee may posses from pre-judgement seizure, arrest or attachment) and accepts that the entry into and performance of the Lease is of a commercial nature.

(vii) GESC shall not be responsible for any failure on its part to perform its obligations hereunder to the extent that such failure is prevented in whole or in part by the occurrence of any act or event beyond its control, including but not limited to Acts of God, demands or requirements of any government or regulatory body, riots, war, fire weather, floods, insurrection, earthquakes, embargoes, blockades, strikes or labour disputes.

15.     Jurisdiction

Unless otherwise specified therein, the Lease shall be governed by the Laws of England as to all matters including but not limited to, validity, construction and performance and the parties hereby submit themselves and their respective successors and assigns to the non-exclusive jurisdiction of the Courts of England for the purpose of any action, suit or other proceeding arising out of, or relating to, the Lease or any of the Containers. The provisions of this Paragraph shall not produce the bringing or institution of proceedings by GESC in any other jurisdiction.

For: Shiptrade Inc                              For: GE Seaco Services Ltd

Of:                                             Of:




By:                                             By:
Title:                                          Title:

Dated:                                          Dated:

# **EXHIBIT B3**



# ORIGINAL

## SCHEDULE 1 - LEASE SCHEDULE NUMBER NAML3211
## TO LEASE AGREEMENT DATED AS OF THE 22ND DAY OF APRIL 1992

### TERM LEASE



received
5/26/2000

**(A) CONTAINERS:**

This Schedule 1 covers the following types of Containers with the following charges, replacement values and minimum quantities (if applicable):

| Container Type | Original Replacement Value (US $) | Daily Rental Charge (US $) | Daily or Lump-sum DPP Charge (US $) | Excess Return Charge (US $) | Post Build-Down Rental Charge (US $) | Minimum Qty |
|---|---|---|---|---|---|---|
| 40' Hi-Cube Dry Freight | 4100 | 1.50 | N/A | N/A | N/A | 200 |

**(B) BUILD-UP AND BUILD-DOWN PERIOD:**

The Build-up Period, if applicable, shall be from the 1st day of February 2000 to the 30th day of April 2000.

The Build-down Period, if applicable, shall be from the 1st day of May 2003 to the 31st day of July 2003.

**(C) TERM:**

The term of this Schedule 1 to the Lease shall be effective from the 1st day of May 2000 and shall continue until the 30th day of April 2003 or until satisfactory re-delivery of all Containers, as defined in Section 5 of the Lease, whichever occurs later, except that all claims and liabilities respecting each such Container arising out of acts and omissions occurring during the Term shall survive any termination of this Lease.

Upon termination of this Schedule 1 to the Lease, Lessee shall continue to be invoiced for all charges as agreed herein until all Containers have been re-delivered or until the end of the Build-down Period, whichever is earlier. Containers remaining On-hire beyond the Build-down Period will be charged a post build-down Rental Charge as specified above, which does not include DPP coverage.

Each Container to be leased for a minimum period of three (3) years (the "Minimum Term").

(D) RETURN LOCATIONS AND LIMITATIONS:

At any Lessor's depot as per Schedule 3 of this agreement , subject to the maximum return quantities as per Schedule 3. All returns in excess of those specified or to locations not specified in Schedule 3 will be liable to an excess return fee as specified above.

The Lessee is obligated to give the Lessor notice of its intention to re-deliver any of the Containers On-hire to the Lessee.

(E) MINIMUM CONTAINER COMMITMENT:

If applicable, the minimum quantity of On-hire Containers, for each type of Container on lease, during the Minimum Term shall be the greater of those quantities shown in Section (A) above or the number of Containers actually on lease on the last day of the Build-up Period.

(F) INSURANCE:

Lessee shall maintain insurance policies providing coverage in the following minimum amounts:

Comprehensive General Liability Insurance, including Contractual Liability, against claims for bodily injury or death and property damage in an amount not less than US $1,000,000 per occurrence; and

All Risks Physical Damage Insurance in an amount equal to the value of the Containers On-hire to Lessee.

The Lessee agrees to provide the Lessor with copies of insurance documents more particularly described in Section 13 of the Lease, and to observe the provisions whereby the policy(ies) note the interest of the Lessor and any other parties designated by Lessor. The Lessee agrees to immediately advise the Lessor should the related insurance arrangements change.

(G) REPLACEMENT VALUE:

The Replacement Value of each Container shall be equal to the Original Replacement Value, as shown in Section (A) above, depreciated at a rate of five percent (5%) per annum from date of manufacture. In no event will the Replacement Value be less than sixty percent (60%) of the Original Replacement Value.

(H) BILLING:

(i) During Build-up and Build-down Periods, Lessor shall invoice Lessee monthly in arrears on the basis of actual Container usage.

(ii) During the Minimum Term, Lessor shall invoice Lessee monthly in ~~advance~~ for the minimum quantity specified herein whether or not such Containers are actually on lease.

## SCHEDULE 1 - LEASE SCHEDULE NUMBER NAML3211
## TO LEASE AGREEMENT DATED AS OF THE 22ND DAY OF APRIL 1992

(I)    OTHER:

Any and all references to Lessee's name as set forth in the Terms and Conditions and all relating lease schedules by and between Lessee and Lessor shall be amended to "Global Container Lines Ltd.".

Lessee shall remit to Lessor additional charges as follows:

(i) USD 20.00 for the production / application of decals
(ii) USD 100.00 for the removal of markings / decals at end of lease term.

LESSOR:
TEXTAINER EQUIPMENT
MANAGEMENT (U.S.) LIMITED
650 CALIFORNIA STREET, 16TH FLOOR
SAN FRANCISCO, CA 94108

LESSEE:
GLOBAL CONTAINER LINES
LTD.
100 QUENTIN ROOSEVELT BLVD.
GARDEN CITY, NY 11530

BY: _Ann Ruggeri_

TITLE: _VP Admin_

DATE: _7 4.00_

BY: _Shaw_

TITLE: _President_

DATE: _March 6. 200_

CONTAINER DAMAGE PROTECTION PLAN

The Lessor shall *not* provide Container Damage Protection Plan coverage under the terms of this Lease.

LESSOR:
**TEXTAINER EQUIPMENT
MANAGEMENT (U.S.) LIMITED**
650 CALIFORNIA STREET, 16TH FLOOR
SAN FRANCISCO, CA 94108

LESSEE:
**GLOBAL CONTAINER LINES
LTD.**
100 QUENTIN ROOSEVELT BLVD.
GARDEN CITY, NY 11530

BY: _Anne Ruggero_

TITLE: _VP Admin_

DATE: _7. 4. 00_

BY: _J. Shea_

TITLE: _President_

DATE: _March 06. 200_

## SCHEDULE 3 - LEASE SCHEDULE NUMBER NAML3211
### TO LEASE AGREEMENT DATED AS OF THE 22ND DAY OF APRIL 1992

### INTERCHANGE/LOCATION CHARGE SCHEDULE

Lessor reserves the right to modify this Schedule upon thirty (30) days written notice to Lessee and subject to Lessees approval. Additional locations and/or quantities may be offered by Lessor or requested by Lessee based upon local market conditions.

Handling in charges to be invoiced centrally by Lessor to Lessee shall be at the prevailing charge(s) at the time of container redelivery.

Monthy return allowances of Containers shall be agreed upon by Lessor and Lessee upon the expiration of this Agreement.

Delivery/Return Locations:   Mumbai and/or Dubai.

LESSOR:
TEXTAINER EQUIPMENT
MANAGEMENT (U.S.) LIMITED
650 CALIFORNIA STREET, 16TH FLOOR
SAN FRANCISCO, CA 94108

LESSEE:
GLOBAL CONTAINER LINES
LTD.
100 QUENTIN ROOSEVELT BLVD.
GARDEN CITY, NY 11530

BY: _Paul Ruggero_

TITLE: _VP Admin_

DATE: _7.4.02_

BY: _____

TITLE: _President_

DATE: _March 06 2002_

# **EXHIBIT B4**

## Kazem Paksima

**n:**     Amanda Gatzke [amanda@capps.com]
**Sent:**     Monday, November 09, 2009 4:09 PM
**To:**     Ali David Paksima; Bijan Paksima; Kazem Paksima
**Cc:**     kay@capps.com; Joe Padgette; vgarcia@capps.com
**Subject:**     GCL DEFAULT letter

**Importance:**     High

**Attachments:**     GCOL_DEFAULT_001_1.pdf



GCOL_DEFAULT_
01_1.pdf (172 KB.

>Dear Sirs, I sincerely regret that it has come to this, but further to
>my last message sent Thursday November 5th 2009, please note the
>attached letter announcing CAI's termination of the master lease
>contract with Global Container Line.
>
You are kindly requested to confirm receipt of this letter and hoping that
we can resolve the return of CAI's equipment and settlement of account as
quickly as possible.


Sincerely

--
Amanda Gatzke
Director, Marketing
CAI International, Inc
New Jersey office
Tel: (973) 377-9103
Fax: (973) 377-9319
amanda@capps.com
www.capps.com



November 9, 2009

GLOBAL CONTAINER LINES LTD.
100 Quentin Roosevelt Blvd., 4th Floor
Garden City, NY 11530-4843
U.S.A.

Attn: President and Chief Operating Officer

Re: <u>Termination for Default of Master Lease Agreement between Container Applications Limited, as Lessor ("CAI"), and GLOBAL CONTAINER LINES LTD. ("Lessee")</u>

Gentlemen:

CAI hereby formally declares with immediate effect the default of the Master Lease Agreement dated February 1, 2008 (GCOL-100) (the "Agreement") by and between CAI and Lessee, due to Lessee's material breach of the Agreement.

According to CAI's records, the Lessee currently has in its possession a total of 149 containers (113 x 20' dry vans, 5 x 40' dry vans and 31 x 40' high cubes) (the "Containers" or individually, "Container") supplied under the Agreement. A listing of the container serial numbers for the Agreement is attached hereto as Exhibit ONE (1 page).

As of the date hereof, the Lessee is no longer in lawful possession and/or control of the Containers with the consent of CAI, and is hereby directed to <u>promptly redeliver</u> all of the Containers to CAI at any of the redelivery locations listed in the Agreement. Additionally, CAI may be willing to accept redelivery of the Containers from the Lessee and beyond the limitations listed in the Agreement and at additional depot locations not appearing in the redelivery terms of the Agreement subject to prior written consent from CAI.

To the extent that the Lessee fails to or is unable to redeliver all of the Containers in accordance with CAI's demand, the Lessee will be liable to CAI for the Casualty Value of each unreturned Container, as set forth in the Agreement. For the purpose of mitigating its damages arising from the Lessee's breach of the Agreement, CAI will make reasonable efforts, at the Lessee's expense, to repossess any outstanding Containers, and will expect the full cooperation of the Lessee in so doing.

Please immediately supply to us by return fax and/or e-mail, a detailed listing of the current locations (including all contact information) and status of each of the Containers leased under the Agreement or that is in Lessee's possession, and confirm that you will continue to send to us an update of the specific location status of all unreturned Containers on a weekly basis.

In order to effect orderly wind down of all lease-related obligations, CAI hereby demands the immediate payment of all leasing charges and interest charges, which currently totals $36,277.80 USD as listed below.

| Invoice | Date | Invoice amount |
|---------|------|----------------|
| 91482-100 | 03/31/09 | $4,560.10 |
| 92250-100 | 04/30/09 | $4,413.00 |
| 93011-100 | 05/31/09 | $4,574.60 |
| 93759-100 | 06/30/09 | $4,378.60 |
| 94512-100 | 07/31/09 | $4,417.50 |
| 95270-100 | 08/31/09 | $4,417.50 |
| M23047 A | 09/09/09 | $211.43 |
| 96035-100 | 09/30/09 | $4,303.60 |
| M23216 | 10/15/09 | $265.21 |
| 96801-100 | 10/31/09 | $4,392.50 |
| M23329 | 11/09/09 | $343.76 |
| **TOTAL** | | **$36,277.80** |

Charges for the month of November are accruing and will become due and payable immediately upon issuance of the invoice at the month end. In addition, the Lessee remains liable to CAI for additional drop-off charges, repair costs, interest on overdue payments, total loss payments, recovery costs, default damages and other charges owed to CAI under the terms of the Agreement. Rental charges on the Containers will continue to accrue on each of the Containers until they are redelivered to CAI in leasable condition, repaired, or payment of the Casualty Value(s) for any unreturned units is made to CAI. For this reason, CAI urgently requires the Lessee's ongoing cooperation in remitting prompt payments and expediting the repair approval process upon return of the Containers.

CAI must also advise that further remedies are available against the Lessee in accordance with the terms of the Agreement such as charges for unreturned Containers and other applicable charges. Nevertheless, in order to mitigate expenses for all parties, we urge your immediate cooperation with our headquarters, field offices and agency network in effecting an orderly and speedy wind down of the Agreement and the return of all of the Containers.

Sincerely,

Victor Garcia
Chief Financial Officer
Container Applications Limited

GLOBAL CONTAINER LINES LTD.
CONTAINER APPLICATIONS LIMITED

EXHIBIT ONE
149 CONTAINERS AGREEMENT NUMBER GCOL-100

| | | | |
|---|---|---|---|
| CAXU208052 | CAXU294892 | CAXU615366 | CAXU477756 |
| CAXU216118 | CAXU295855 | CAXU615865 | CAXU703701 |
| CAXU217582 | CAXU296271 | CAXU616809 | INNU520736 |
| CAXU218717 | CAXU296352 | CAXU616937 | INNU521874 |
| CAXU219989 | CAXU297256 | CAXU617135 | CAXU483423 |
| CAXU226584 | CAXU299380 | CAXU617460 | CAXU493108 |
| CAXU234070 | CAXU600160 | CAXU618027 | CAXU493117 |
| CAXU234190 | CAXU600367 | CAXU618070 | CAXU499795 |
| CAXU235080 | CAXU601163 | CAXU621511 | CAXU900929 |
| CAXU241049 | CAXU601243 | CAXU621981 | CAXU903951 |
| CAXU241812 | CAXU602201 | CAXU622307 | CAXU904044 |
| CAXU248644 | CAXU602218 | CAXU623138 | CAXU936158 |
| CAXU249192 | CAXU602673 | CAXU623223 | CAXU936177 |
| CAXU251925 | CAXU603230 | CAXU650718 | CAXU936516 |
| CAXU252793 | CAXU603693 | CAXU651645 | CAXU937500 |
| CAXU255582 | CAXU605393 | CAXU652577 | CAXU953765 |
| CAXU255844 | CAXU605574 | CAXU652892 | CAXU954515 |
| CAXU256759 | CAXU605919 | CAXU653217 | CAXU954614 |
| CAXU257665 | CAXU606230 | CAXU663985 | CAXU955678 |
| CAXU281275 | CAXU606298 | CAXU669363 | CAXU956456 |
| CAXU281532 | CAXU607596 | CAXU669452 | CAXU960842 |
| CAXU281537 | CAXU608058 | CAXU674272 | CAXU963501 |
| CAXU281574 | CAXU609072 | CAXU677387 | CAXU963766 |
| CAXU281713 | CAXU609248 | CAXU681286 | CAXU966009 |
| CAXU281997 | CAXU609742 | CAXU681404 | CAXU966351 |
| CAXU282107 | CAXU609908 | CAXU684769 | CAXU968239 |
| CAXU282207 | CAXU609988 | INBU300361 | CAXU968310 |
| CAXU282605 | CAXU610137 | INBU317626 | CAXU977395 |
| CAXU285225 | CAXU610506 | INBU337721 | CAXU977607 |
| CAXU286428 | CAXU611426 | INBU347503 | CAXU978234 |
| CAXU288074 | CAXU612366 | INBU347570 | CAXU978809 |
| CAXU288437 | CAXU612387 | INBU347852 | CAXU980569 |
| CAXU290009 | CAXU612405 | INBU349837 | CAXU984950 |
| CAXU291118 | CAXU613518 | INBU349877 | INKU279596 |
| CAXU292151 | CAXU614982 | INBU350019 | INKU282611 |
| CAXU292159 | CAXU615109 | INBU350069 | |
| CAXU293591 | CAXU615200 | INBU382643 | |
| CAXU293630 | CAXU615253 | CAXU426377 | |



## GLOBAL CONTAINER LINES LTD.
## CONTAINER APPLICATIONS LIMITED
## MASTER LEASE AGREEMENT

(CONTRACT NUMBER : GCOL-100)

This is a Master Lease Agreement dated February 1, 2008 between Global Container Lines, Ltd., 100 Quentin Roosevelt Blvd., 4th Floor, Garden City, NY 11530-4843, U.S.A. ("Lessee") and Container Applications Limited, Suite 102, Corporate Centre, Bush Hill, Bay Street, St. Michael, Barbados, West Indies ("Lessor").

### 1) SCOPE OF AGREEMENT

This Agreement covers the leasing of Lessor 20' x 8' x 8'6" and 40' x 8' x 8'6" steel dry freight containers and 40' x 8' x 9'6" steel high cube containers which conform to the standards set forth by ISO, TIR, CSC, and TCT (hereinafter referred to individually and collectively as "containers"), on the terms and conditions set forth below.

### 2) TERM

This Agreement shall be effective as of February 1, 2008, and shall continue for a minimum term of twelve months. Thereafter, this Agreement shall be deemed automatically extended until such time as either party gives the other party at least 60 days prior written notice of its intention to terminate this Agreement.

### 3) CONTAINER SUPPLY PROVISIONS

a) Commencing February, 2008 and continuing through the term of this Agreement, Lessor agrees to lease containers to Lessee on an as available basis at any Lessor depot or manufacturer's location.

b) All containers on lease to Lessee currently billed under Lessor's customer code GCOL-100 shall transfer to and become subject to the terms and conditions of this Agreement as of February 1, 2008.

c) Execution by Lessor or its agent and Lessee or Lessee's agent of Lessor's Equipment Condition Reports with respect to each container leased hereunder shall constitute conclusive proof of delivery of such containers to Lessee, of redelivery of such containers to Lessor, and of the physical condition of the containers at the time of each such interchange.

### 4) CONTAINER REDELIVERY PROVISIONS

a) No container leased hereunder may be redelivered until it has been on lease for 30 days. Thereafter, Lessor agrees to accept redelivery of containers from Lessee

1

at the Lessor depots with the monthly quantity limitations and with the drop-off charges shown in Exhibit B attached hereto.

b) The monthly redelivery limits set forth in Exhibit B cannot be accumulated from month to month. Containers may be redelivered to depot locations or in numbers other than those shown in Exhibit B, provided that such locations, quantities and applicable drop-off charges are mutually agreed upon in writing by Lessor and Lessee before redelivery of any such containers.

c) Exhibit B is subject to amendment by Lessor with 60 days prior written notice to Lessee.

## 5) RENTAL CHARGES

a) During the term of this Agreement, Lessee shall pay to Lessor a daily rental charge in US dollars for each container leased hereunder as follows:

| Equipment Type | Daily Rental Charge |
|---|---|
| 20' dry van containers | US$0.80 |
| 40' dry van containers | 0.80 |
| 40' high cube containers | 1.50 |

b) Lessee agrees to pay a minimum of 30 days rental charges for each container. Free days, if any, shall be included in calculating the number of days on lease.

## 6) HANDLING CHARGES / DIRECT INTERCHANGES

a) Lessee shall pay Lessor a handling-out charge and a handling-in charge of US$35.00 for each container covered under the terms of this Agreement. Such charges shall be invoiced by Lessor directly to Lessee in accordance with Section 8, and are intended to cover the cost of standard lift-on or lift-off a truck, container inspection, and preparation of an Equipment Condition Report. Any additional costs assessed for lifting the containers on or off any conveyance other than truck, including, but not limited to, barge or rail, will be for the account of Lessee.

b) Lessor agrees that Lessee may directly interchange Lessor containers to or from another Lessor lessee, provided Lessee obtains prior written approval from Lessor. Upon receiving such approval, Lessee shall pay Lessor a direct interchange fee of US$30.00 for each container directly interchanged to Lessee and US$30.00 for each container directly interchanged from Lessee to another approved Lessor lessee.

## 7) LEASING PROCEDURE

The terms and conditions set forth on Exhibit A are hereby incorporated into this Agreement and shall apply to all containers leased under this Agreement. In the event of any conflict between the terms set forth in Exhibit A and the terms of this Agreement, the latter shall prevail.

## 8) INVOICING PROCEDURE

a) Charges for all containers leased by Lessee under this Agreement will be invoiced monthly in US dollars to the following address:

2

Global Container Lines, Ltd.
100 Quentin Roosevelt Blvd., 4th Floor
Garden City, NY 11530-4843
U.S.A.

b) Lessee agrees to pay all Lessor invoices in full within 30 days of invoice date. If any items on the invoices are disputed, Lessee will forward a list and explanation of the disputed items to Lessor's San Francisco office with payment in full. In turn, Lessor will undertake to reconcile these disputes within 60 days of receipt by either issuing credit or providing verification of correct billing or combination thereof. So long as Lessor acknowledges the dispute and is attempting in good faith to reconcile the disputed items, Lessee agrees not to withhold any money due Lessor which relates to such disputed items.

## 9) MAINTENANCE

Lessee shall at its own expense at all times maintain each container in good, safe and efficient working order and keep it fully and properly repaired.

## 10) DAMAGE PROCEDURE

Upon redelivery of a container to Lessor's authorized depot, if Lessor's Equipment Condition Report, executed by Lessor (or Lessor's local agent) and Lessee (or Lessee's local agent), shows the container to be in damaged condition, the following procedure will apply: If the container is found to be damaged, as defined by the Institute of International Container Lessors standards prevailing at the time of redelivery, Lessor or its authorized depot will issue a repair estimate to the Lessee. Lessee shall have 10 working days from the date of redelivery (the "Authorization Period") to authorize the depot to proceed with said repairs as shown on the repair estimate for Lessee's account. If authorization is received within the Authorization Period, the container shall be retroactively off-hired on its redelivery date. If authorization is not received within the Authorization Period, Lessor reserves the right to continue daily rental charges through the date upon which the depot receives authorization to proceed with repairs as estimated for the Lessee's account. Lessee or its local agent agrees to pay all repair charges as billed by Lessor or its authorized depot within 30 days of the date of the invoice therefor.

## 11) TOTAL LOSS

a) In the event a container is lost, stolen, destroyed, or damaged beyond structural or economic repair so as to be rendered incapable of return to Lessor (an "Actual Total Loss"), Lessee shall give notice in writing to Lessor of such Actual Total Loss specifying the container number and providing proof of loss satisfactory to Lessor. Provided Lessee is in compliance with its obligations under this Agreement at the time notice of Actual Total Loss is received by Lessor, Lessor shall thereupon issue an invoice to Lessee for the Depreciated Casualty Value ("DCV") (as set forth in Subsection 11c) of the Actual Total Loss container. Provided that payment of the DCV is made to Lessor within 30 days of the invoice date, daily rental charges will retroactively terminate on the date of Lessor's receipt of such written notice. If payment is not received as aforesaid, daily rental charges shall continue to accrue until payment of the DCV is

3

received by Lessor. Upon receipt of such payment accompanied by an appropriate request by Lessee, title to the Actual Total Loss container will be transferred to Lessee. Any taxes, duties or charges which become payable by virtue of the transfer of title to Lessee shall be for Lessee's account.

b) If Lessee has redelivered a container to Lessor, and Lessee has received a damage estimate in accordance with Section 10, Lessee may, within the Authorization Period, authorize repairs in accordance with the estimate or request that Lessor supply details of the DCV for such container. If Lessor determines that the extent of the damage so warrants (a "Constructive Total Loss"), and provided Lessee is in compliance with its obligations under this Agreement at the time Lessee's request for information on the DCV is received by Lessor, Lessor will furnish the DCV for such container, and Lessee shall have the option to pay either the estimated damages or the DCV. If Lessee elects the latter, Lessee shall give notice to Lessor of its election to declare Constructive Total Loss within 7 calendar days of receipt of the details of the DCV and Lessor will issue an invoice for the DCV of such Constructive Total Loss container. Provided that payment of the DCV is received by Lessor within 30 days of the date of invoice therefor, daily rental charges shall terminate on the date of redelivery of the Constructive Total Loss container. If payment is not received as aforesaid, daily rental charges shall continue to accrue until payment is received by Lessor. Unless otherwise elected by Lessor, title to the Constructive Total Loss container will remain with Lessor.

c) In calculating the DCV, the Casualty Value (as set forth below) of the container is depreciated down to a value not less than 50% of the Casualty Value. The depreciation is calculated on a straight line basis using a 15 year life span for the container with a 15% residual value.

| Container Type | Casualty Value |
|---|---|
| 20' dry van containers | US$2,300.00 |
| 40' dry van containers | US$3,500.00 |
| 40' high cube containers | US$3,900.00 |

d) Notwithstanding the provisions of Subsections 11a and b, if Lessee is in default of its obligations under this Agreement, unless and until such default(s) has/have been cured in a timely manner or has/have been waived in writing by Lessor, Lessee shall be obligated to Lessor for the full Casualty Value of all Actual Total Loss containers under Subsection 11a, and shall be liable to Lessor, in Lessee's option, for either estimated repair costs or full Casualty Value of Constructive Total Loss containers under Subsection 11b.

## 12) INSURANCE

Without prejudice to any other obligations of Lessee under this Agreement, Lessee shall, at its own expense, obtain and continuously maintain in effect while any containers remain on lease to Lessee, insurance policies adequately insuring the containers against all risks of loss or damage, cargo damage and liability to third parties. All such insurance shall be underwritten by reputable underwriters and shall name Lessor as an additional insured and loss payee thereunder as its interests may appear. Lessee agrees to indemnify and hold Lessor harmless from and against all

4

liability to third parties, damage to and/or replacement costs of and/or losses and expenses (including, without limitation, expenses in prosecuting or defending any claim or suit) with respect to the containers, and any and all exclusions, deductibles and coinsurance obligations under the policies required to be provided by Lessee under this Section.

## 13) EXCLUSION OF WARRANTIES AND INDEMNITY

a) THE CONTAINERS ARE LEASED AS IS. PROVIDED THAT LESSEE COMPLIES FULLY WITH ITS OBLIGATIONS UNDER THIS AGREEMENT, LESSOR WARRANTS THAT LESSEE SHALL HAVE QUIET POSSESSION OF THE CONTAINERS. SAVE AS AFORESAID, NO REPRESENTATIONS OR WARRANTIES WHATSOEVER OF ANY KIND HAVE BEEN GIVEN BY LESSOR IN RELATION TO THE CONTAINERS, AND ALL REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS OR IMPLIED, WHETHER IN RELATION TO THE FITNESS OF THE CONTAINERS FOR ANY PARTICULAR PURPOSE OR COUNTRY, OR WHETHER IN RELATION TO MERCHANTABILITY OR AS TO DESCRIPTION, STATE, QUALITY, OR CONDITION OF THE CONTAINERS AT DELIVERY OR AT ANY OTHER TIME ARE HEREBY WAIVED, EXCLUDED AND EXTINGUISHED.

b) Lessee shall indemnify and hold Lessor harmless from all liability, damage, cost or expense, including, without limitation, expenses in prosecuting or defending any claim or suit such as attorney's fees, court costs and other expenses arising out of (i) any failure of Lessee to comply with its obligations under this Agreement; (ii) any claim, whether private or governmental, for personal injury or death, or for loss of or damage to person, property, cargo or vessels arising out of or incident to the ownership, selection, possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery, or return of the containers, and (iii) the containers and any forfeiture, seizure, or impounding of, or charge or lien thereon, and any loss thereof or damage thereto. Each party undertakes promptly to give notice to the other of claims against it or action against it with respect thereto, and Lessee agrees not to settle any action without the consent of Lessor. Lessee agrees to assume, on behalf of Lessor, the defense of any action or proceeding which may be brought by any third party against Lessor and to pay all costs and expenses of whatever nature in connection therewith, and to pay on behalf of Lessor the amount of any judgment or award that may be entered against Lessor with respect thereto.

## 14) EXPIRATION

Commencing the first day of the sixth month after the date specified by the terminating party in the notice delivered pursuant to Section 2 of this Agreement, the daily rental charge for each container then on lease under this Agreement shall increase as follows:

| | |
|---|---|
| 20' dry van containers | US$1.55 |
| 40' dry van containers | US$1.55 |
| 40' high cube containers | US$2.25 |

5

Except in regard to daily rental charges, all other terms and conditions of this Agreement shall continue with respect to all containers on lease to Lessee on the date of expiration until all such containers are redelivered to Lessor.

Please indicate your acceptance and agreement to the foregoing by signing and returning three originals of this Agreement to Lessor. Upon Lessor's receipt and execution of said originals, the Agreement shall constitute a binding agreement between Lessor and Lessee, and one original will be promptly returned for your files.

GLOBAL CONTAINER LINES, LTD.    CONTAINER APPLICATIONS LIMITED

By:_____  By:_____

Title:_____  Title:_____

Date:_____  Date:_____

6

**1.   DELIVERY OF EQUIPMENT**
By execution of each ECR with respect to each item of equipment delivered to Lessee under this Agreement, Lessee conclusively acknowledges receipt thereof in good and leasable condition. Lessee agrees to return such equipment to Lessor in as good condition as received from Lessor, normal wear and deterioration excepted, and to execute Lessor's ECR upon redelivery to Lessor identifying and acknowledging any changes in the condition of the equipment while on lease to Lessee. Any changes in the equipment which could have been prevented by normal maintenance shall not constitute normal wear and deterioration and shall be deemed to be damage.

**2.   RENTAL AND OTHER CHARGES**
a.   Lessee agrees to pay rental charges for the equipment in the amount(s) set forth in this Agreement from the day such equipment is delivered and/or interchanged to Lessee until the day such equipment is returned to Lessor. However, if the equipment is not returned in good condition, Lessee agrees to pay for the cost of any necessary repairs together with rental charges through the date such repairs are approved by Lessee. Further, in the event no fixed lease term is specified for the equipment, Lessor may, upon written notice to Lessee, (i) prospectively adjust the initial rental charges to Lessor's then current average lease rate for such equipment on or after the 18 month anniversary of the lease out date of such equipment, or (ii) require that Lessee redeliver the equipment within 30 days of such notice in accordance with the redelivery provisions set forth herein. In the event a fixed lease term is specified for the equipment, Lessor may (unless otherwise provided elsewhere in this Agreement), upon written notice to Lessee (i) prospectively adjust the rental charges for such equipment to Lessor's then current average spot lease rate for such equipment on or after the 6 month anniversary of the expiration of the fixed term, or (ii) require that Lessee redeliver the equipment within 30 days of such notice in accordance with the redelivery provisions set forth herein.
b.   Lessee shall return all equipment to Lessor's terminal at the point(s) of termination designated herein or, if no point(s) of termination have been so specified, to the locations specified in writing by the Lessor to Lessee. Furthermore, upon such redelivery, Lessee agrees to pay Lessor the applicable equipment drop-off charge(s) shown herein, or, if no such charges are specified herein, the applicable drop-off charges contained in Lessor's current drop-off charge schedule. Lessor may close any redelivery location(s) specified herein or reduce the monthly redelivery limits specified for any such depot location(s) with immediate effect by giving written notice thereof to Lessee if such closure(s) or quantity reduction(s) is/are due to circumstances beyond Lessor's control, including, but not limited to, changes in applicable law and/or natural disasters.
c.   All service charges incurred in transferring the equipment including, but not limited to, handling charges, transportation charges and chassis use fees, and all service charges imposed by any bank or other organization in connection with payment of monies due to Lessor, shall be for the account of Lessee.
d.   Unless otherwise indicated herein, all payments due to Lessor shall be payable in United States Dollars and shall be paid to Lessor within fifteen (15) days of the date of Lessor's invoice(s), at the address for Lessor shown herein. In the event Lessor's invoice(s) is/are not paid when due, Lessor may, without prejudice to any other remedy it may have, charge, as additional rental, a service charge at the rate of the lesser of eighteen (18) percent per annum or the maximum amount permitted by applicable law, until the balance is paid in full.
e.   It is expressly understood and agreed that (i) equipment furnished to Lessee hereunder is necessary to and leased for use aboard vessels owned, operated, chartered and/or managed by Lessee for ocean transportation of goods and for land transportation incidental thereto, (ii) equipment furnished to Lessee hereunder is made available not only on the credit of the Lessee but also on the credit of such vessels as aforesaid, and (iii) to the extent permitted by law, Lessor has and may assert maritime liens against such vessels for any breach of Lessee's obligations to Lessor with respect to such equipment as set forth in this Agreement.

**3.   RISK OF LOSS AND DAMAGE**
Lessee is liable to Lessor for all damage to or loss or destruction of the equipment subsequent to its delivery to Lessee and prior to its return to Lessor except that caused by normal wear and deterioration. Normal wear and deterioration shall not include damage caused by forklifts or other handling equipment.
a.   DAMAGE. In the event Lessee fails to repair damage to the equipment prior to returning it to Lessor, Lessor or its authorized depot will present a repair estimate to Lessee or Lessee's local agent for approval. Lessee shall be liable to Lessor for the cost of such repairs and for rental charges for the equipment which shall continue until the day on which Lessee or its authorized agent approves the repairs as set forth in the estimate. Lessee will, at Lessor's request, make payment of repair costs directly to the appropriate repair depot and pay any and all storage charges incurred as a result of Lessee's failure to approve repairs on a timely basis.
b.   LOSS OR TOTAL DAMAGE. In the event of loss, theft or destruction of the equipment (an "Event of Loss") or damage thereto which Lessor, in its sole discretion, shall determine is not structurally or economically repairable (an "Event of Constructive Loss"), rental charges for the affected equipment shall terminate (1) upon receipt by Lessor of written notice from Lessee of an Event of Loss, or (2) upon issuance by Lessor of a written notice to Lessee of an Event of Constructive Loss, provided in either event that payment of the Casualty Value for a like item of equipment (as set forth herein or in Lessor's then current Casualty Value Schedule) is made to Lessor within 30 days of such notice. If payment is not made within such 30 days, rental charges shall continue unabated until payment of the Casualty Value is received by Lessor. General payments by Lessee shall not be applied to charges for the Casualty Value of equipment unless so specified by Lessee. Further, if any equipment is subject to an Event of Loss or Event of Constructive Loss prior to the expiration of any fixed term specified for such equipment, Lessor shall have the right but not the obligation to supply a like item of equipment to Lessee, whereupon Lessee agrees either (1) to lease such substitute equipment, or (2) if Lessee elects not to lease the substitute equipment, to pay Lessor any shortfall between the historic rental charges for the original item of equipment and the contractual rental charges for said fixed term.

**4.   OPERATION, MAINTENANCE AND REPAIR**
a.   Lessee shall use the equipment properly and shall, at its sole cost and expense, maintain the equipment in good repair and safe operating condition. Such maintenance shall include but not be limited to the replacement of all badly worn or broken parts with new parts of equivalent design and material, as well as the abrasive cleaning, priming and top coating of all corroded areas on a routine, as needed basis. Lessee shall be liable for any repairs wrongly made or incompatible with the standards set forth in the Repair Manuals issued from time to time by the Institute of International Container Lessors. Lessee shall be responsible for all cleaning and decontamination costs with respect to equipment contaminated by cargo or otherwise and for removal of all debris and shoring from any containers leased hereunder prior to their return to Lessor. Lessee shall be liable for all costs and losses to Lessor arising out of Lessee's failure to repair or maintain the equipment in good condition. If the foregoing obligations are performed by Lessor, all expenses relating thereto will be for the account of Lessee.
b.   Lessee shall use the equipment in accordance with good operating practices and so as to comply with all loading limitations, handling procedures and operating instructions prescribed by the manufacturer(s) thereof and by Lessor, including, but not limited to, current Regulations and Recommendations of the International Organization of Standardization and applicable local regulations, and shall prevent usage which may damage or shorten the life of the equipment such as excessive impact and unbalanced loading. Lessee shall not use the equipment for storage or transportation of goods which could damage the equipment including, without limitation, unprotected corrosive substances, poorly secured materials or bulk commodities which may corrode, oxidize, severely dent, puncture, contaminate, stain or damage the equipment.
c.   Container(s) supplied hereunder shall be used solely in international trade unless the use thereof in domestic transportation of goods is expressly permitted elsewhere in this Agreement.
d.   Receipt or delivery of equipment or any other act by an agent or employee of, or independent contractor engaged by, Lessee shall be deemed to be the act of Lessee and shall be binding upon Lessee.
e.   Lessor's equipment is identified by appropriate lettering and numbering, which Lessee agrees not to change or obliterate. Notwithstanding the foregoing, at the written request of Lessor, Lessee shall change or supplement such marks as Lessor shall request. Lessee may, however, add other markings as may be required, provided that such additional markings will be removed and the surface of the equipment shall be in the same condition as prior to the addition of such markings when the equipment is redelivered to Lessor. If Lessee fails to remove such additional markings, Lessor shall remove such markings at Lessee's cost.
f.   Lessee shall be responsible for the cost of removal of any intentional or unintentional amendments, alterations, or modifications made to the equipment and for returning the equipment to the same condition in which it was originally received by Lessee.
g.   Lessee shall at its expense comply with all laws, regulations and orders which in any way affect the equipment or its use, operation or storage. Lessor shall have no responsibility for compliance with any such laws, regulations or orders, including, without limitation, all such laws, regulations or orders as may relate to customs, transportation, handling, safety and labor regulation.
h.   Lessee shall at its expense comply with all rules and practices of ports, depots, storage areas and transportation companies consistent with the other requirements of this Section 4.
i.   Lessor shall deliver containers to Lessee which fully comply with the rules and standards of the International Convention for Safe Containers ("CSC"). Such containers shall have affixed CSC plates or CSC plates with an ACEP (Approved Continuous Examination Program) mark. It shall be the obligation of Lessee to comply with the CSC in all respects and Lessee shall have and exercise Lessor's responsibilities under the CSC including, without limitation, placing (design-type approval to be obtained and plates to be provided by Lessor), maintenance, examination, re-examination and marking of each container. Such examination or re-examination shall be performed in accordance with the Rules and Regulations for the Safety Approval of Cargo Containers of the United States Department of Transportation. Lessee shall also comply with the Customs Conventions on Containers, 1956 and 1972, including, without limitation, all obligations of the operator relating to temporary admission, transport of goods under customs seal, maintenance of records and reporting to governmental authorities.

**5.   DEFAULT, REMEDIES UPON DEFAULT**
a.   Should Lessee (i) default in the timely payment of any sum due to Lessor with respect to the equipment, or (ii) default in the performance of its other obligations with respect to the equipment hereunder or under any other lease contract(s) made between Lessor and Lessee, or (iii) suffer any distress, execution or other legal process which has the effect of a levy on any of the equipment leased hereunder or thereunder, or (iv) cease doing business as a going concern, become insolvent, commit an act of bankruptcy, or become the subject of any proceeding under any applicable Bankruptcy Act, or (v) be seized or nationalized or should any of Lessee's assets be seized by a government or government instrumentality; then Lessor may without notice and without relieving Lessee of its obligations hereunder, terminate the leasing of the equipment, invoke the default provisions hereof and/or of any other leases made between Lessor and Lessee, declare the balance of all rental accrued and to be accrued hereunder and thereunder to be due and payable, demand and retake possession of the equipment and all other equipment leased by Lessor to Lessee free of any claims of Lessee, assert maritime or other liens against Lessee's property wherever it may be found, and exercise any other right or remedy available to Lessor under applicable law. In the event Lessor terminates the leasing of equipment or invokes the aforesaid default remedies, Lessee shall no longer be in possession of Lessor's equipment with Lessor's consent, and the rental payable therefor shall immediately increase to the spot lease rates charged by Lessor for like type equipment at the time of default. Lessee shall immediately notify Lessor of the exact location of the equipment. If Lessee fails to redeliver such equipment to Lessor within twenty days of Lessor's demand for redelivery, Lessor may retake possession of any or all of its equipment in the possession of Lessee, and for such purpose may enter upon any premises belonging to or in the occupation or control of Lessee. LESSEE HEREBY WAIVES ANY AND ALL RIGHTS TO A JUDICIAL HEARING PRIOR TO LESSOR'S REPOSSESSION OF THE EQUIPMENT.

7

b.   Lessee shall continue to pay rental charges for equipment until (i) the equipment is returned to Lessor in as good condition as received, normal wear and deterioration excepted, or (ii) the equipment is repaired and fit for subsequent rental, or (iii) settlement for the equipment is made. In the event Lessor retakes possession of all or any part of the equipment, Lessee authorizes Lessor to take possession of any property in, on, or attached to such equipment which is not the property of Lessor, and without liability for its care or safekeeping, to place such property in storage at the risk and expense of Lessee. Lessee further agrees to pay Lessor upon demand the Casualty Value of any equipment which has not been returned within the foregoing twenty day period. Upon such return or repossession of the equipment, Lessee will pay immediately to Lessor, as liquidated damages for loss of a bargain, which the parties agree are fair and reasonable under the circumstances existing at the time this Agreement is entered into, and not as a penalty, and in lieu of any further payments of rent for the equipment, the following: (aa) all rent and other amounts due for such equipment as of such date of return or repossession, (bb) an additional payment of three month's rent for the equipment to compensate Lessor for the reasonable estimate of the time and expense required to locate a new Lessee for the equipment (the "Remarketing Period"), (cc) an amount equal to the present value of the difference between the total remaining rental payments for the unexpired minimum lease term, if any, (commencing at the end of the Remarketing Period) and the fair market rent for the same period discounted at a rate per annum equal to the discount rate for 13-week Treasury Bills as of the date on which the equipment is returned or repossessed (as such rate is reported in the Money Rates column in the Wall Street Journal), and (dd) any and all incidental damages suffered by Lessor as a result of Lessee's default, less any expenses saved by Lessor in consequence of the default.

c.   Without in any way limiting the obligations of Lessee hereunder, Lessee hereby irrevocably appoints Lessor as the agent and attorney-in-fact of Lessee, with full power and authority at any time that Lessee is obligated to deliver possession of any equipment to Lessor, to demand and take possession of such equipment in the name and on behalf of Lessee from whomsoever shall be at the time in possession of such equipment.

d.   Lessee hereby irrevocably waives any immunity from jurisdiction to which it might otherwise be entitled (including but not limited to any immunity afforded to Lessee by the United States Foreign Sovereign Immunities Act or any similar legislation, rules or regulations of any other countries having applicability to Lessee) in any action arising out of or relating to the equipment or to this Agreement which may be instituted in any court or arbitration proceedings in or outside of the United States of America. Lessee further irrevocably waives any immunity from the execution or enforcement of any judgment obtained in any legal action or arbitration proceeding worldwide.

e.   Termination of the leasing of the equipment as a result of Lessee's default shall not relieve Lessee of any liabilities or obligations to Lessor accrued prior to such default and Lessee shall in any event remain fully liable for reasonable damages as provided by law, and for all costs and expenses incurred by Lessor on account of such default including all costs of recovering equipment, legal costs and reasonable attorney's fees. Nothing in this paragraph shall be construed to waive any remedy or relief available to Lessor hereunder, in equity, in admiralty, or at law upon the occurrence of any event set forth in this section.

f.   Any forbearance by Lessor to enforce its rights hereunder in the event of a default by Lessee shall not constitute a waiver of Lessor's rights, nor shall said forbearance waive Lessor's rights with respect to any other failure by Lessee to comply strictly with its obligations to Lessor.

6.   LIMITATION OF WARRANTIES

a.   THE EQUIPMENT IS LEASED AS IS. PROVIDED THAT LESSEE COMPLIES FULLY WITH ITS OBLIGATIONS UNDER THIS AGREEMENT, LESSOR WARRANTS THAT LESSEE SHALL HAVE QUIET POSSESSION OF THE EQUIPMENT. SAVE AS AFORESAID NO REPRESENTATIONS OR WARRANTIES WHATSOEVER OF ANY KIND HAVE BEEN OR ARE GIVEN BY LESSOR IN RELATION TO THE EQUIPMENT, AND ALL REPRESENTATIONS AND WARRANTIES WHETHER EXPRESS OR IMPLIED, WHETHER IN RELATION TO THE FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE OR COUNTRY, OR WHETHER IN RELATION TO MERCHANTABILITY OR AS TO DESCRIPTION, STATE, QUALITY, OR CONDITION OF THE EQUIPMENT AT DELIVERY OR AT ANY OTHER TIME ARE HEREBY WAIVED, EXCLUDED AND EXTINGUISHED.

b.   LESSEE'S OBLIGATIONS UNDER THIS AGREEMENT ARE ABSOLUTE AND SHALL NOT BE AFFECTED BY ANY CIRCUMSTANCE OR EVENT BEYOND LESSEE'S CONTROL OF WHATEVER NATURE.

c.   Lessee will not suffer to be created, nor permit to be continued, nor fail to discharge, any lien or encumbrance incurred by Lessee or its agents against the equipment covered hereunder, nor shall Lessee or its agents procure any document of title which might at any time encumber the owner's title to or infringe upon Lessor's possessory rights to the equipment at expiration or earlier termination of the leasing thereof to the Lessee.

7.   NOTICES

All billings, payments and written notices from either party to the other shall be given to the addresses shown herein, to Lessee's local agent, or to such other address as may be designated in writing by either party from time to time and shall be deemed to have been received upon delivery to the party to whom they are directed.

8.   TAXES, FEES AND FINES

a.   Lessee shall pay all taxes (other than taxes on Lessor's net income) and charges levied on the equipment or in connection with the use, storage, operation or possession by Lessee of the equipment or against or based upon the amount of rentals paid or to be paid with respect thereto, or any other taxes levied against or based upon the leasing thereof to Lessee or subsequent to delivery to Lessee, including, without limitation, withholdings of any nature, property, sales, use and excise taxes, duties, customs tariffs and impositions of federal, state, foreign and local governments and agencies. Taxes, duties, charges etc. levied on the equipment due solely to the ownership thereof shall be for Lessor's account unless such taxes are assessed because of the presence of the equipment in a taxing jurisdiction as a result of Lessee's use of the equipment.

b.   Lessee shall pay all charges incurred in ports, depots, storage areas or otherwise arising out of the use of the equipment.

c.   Lessee is not entitled to claim any investment tax credits or depreciation deductions or any other tax benefits normally associated with ownership of any of the equipment covered hereunder. Lessee hereby warrants that it will not claim any such investment tax credits, depreciation deductions or other such tax benefits.

9.   INDEMNITY

a.   Lessee shall indemnify and hold Lessor harmless from all liability, damage, cost and expenses (including, without limitation, expenses in prosecuting or defending any claim or suit such as attorney's fees, court costs and other expenses) arising out of (i) any failure of Lessee to comply with its obligations hereunder, (ii) any claim whether private or governmental, for personal injury or death, and for loss of or damage to person, property, cargo or vessels arising out of or incident to the ownership, selection, possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery or return of the equipment, and (iii) the equipment and any loss of or damage thereto, or any forfeiture, seizure, or impounding of, or charge or lien on the equipment. Each party undertakes promptly to give notice to the other of such claims against it or actions against it, and Lessee against such shall not to settle any action without the consent of Lessor.

b.   Lessee shall maintain third party liability insurance, cargo damage insurance, and all risk property loss and damage insurance (including General Average) with respect to all equipment covered hereunder. All such insurance shall be written by reputable underwriters and shall be in amounts and on terms which are satisfactory to Lessor. Lessee shall deliver certificates of insurance to Lessor evidencing the aforesaid coverages and naming Lessor as an additional insured and loss payee thereunder as its interests may appear.

10.   SUBLEASING, DIRECT INTERCHANGING AND ASSIGNMENT

a.   LESSEE SHALL NOT HAVE THE RIGHT TO ASSIGN THIS AGREEMENT OR TO ASSIGN, SUBLET, RENT, DIRECTLY INTERCHANGE OR OTHERWISE HIRE OUT OR PART WITH POSSESSION OF THE EQUIPMENT TO ANY OTHER PARTY (OTHER THAN TO THE CARE OF CONNECTING CARRIERS IN THE NORMAL COURSE OF LESSEE'S BUSINESS) WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR AND SUCH CONSENT OF LESSOR, IF GIVEN, SHALL NOT OPERATE TO RELIEVE LESSEE OF ANY OF ITS OBLIGATIONS HEREUNDER.

b.   Lessor may delegate, assign, pledge or encumber in whole or in part this Agreement, the equipment leased hereunder, and/or the rentals and other charges due with respect thereto. Lessee agrees to pay in full rentals and other charges as accrued to Lessor's assignee, regardless of any defenses, counterclaims or set-offs which Lessee might have against Lessor.

11.   GENERAL

a.   This agreement is binding upon the parties, their permitted successors and assigns and shall be construed and interpreted in accordance with the laws of the United States of America and, except where inconsistent therewith, with the laws of the State of California. With respect to any claim or controversy arising out of or relating to this agreement, the parties consent to the jurisdiction of the State and Federal Courts located in San Francisco, California, U.S.A.

b.   The paragraph headings in this agreement are for convenience only and shall not be deemed to alter or affect any provision hereof.

c.   The equipment furnished hereunder is provided to Lessee under a net lease contract. Lessee waives any and all existing and future defenses, set-offs, or counterclaims against rental charges or payments due to Lessor with respect to the equipment, irrespective of the rights which Lessee may have against Lessor or any other party.

d.   Lessee agrees to supply on request from Lessor, equipment tracking reports produced in the regular course of Lessee's business showing the location of all equipment on lease to Lessee from Lessor.

e.   Lessee agrees to supply audited financial statements on request to Lessor and Lessor agrees to keep such statements confidential.

f.   This Agreement contains the entire agreement between the parties that no market here here and may be amended, modified or changed only by an additional agreement in writing executed by the parties hereto. If Lessee fails, however, to give to Lessor written objection to its contents within seven (7) days after this Agreement is received or if Lessee takes possession of any of the equipment provided hereunder and retains it after receipt of this Agreement then this Agreement shall be effective and binding upon Lessee whether or not signed.

g.   Any action by Lessee against Lessor for any default by Lessor under this Agreement, including breach of warranty or indemnity, shall be commenced within one (1) year after any such cause of action accrues.

h.   LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR MAY SELL, ASSIGN, OR OTHERWISE TRANSFER, ALL OR ANY PART OF ITS RIGHT, TITLE AND INTEREST IN THE EQUIPMENT AND THIS LEASE TO A THIRD PARTY AND ACCORDINGLY LESSOR MAY BE AN AGENT OF, OR OTHERWISE ACTING ON BEHALF OF, SUCH THIRD PARTY WITH RESPECT TO THIS LEASE.

i.   Lessor is the owner of the equipment, or manager of the equipment on behalf of various third party owners, leased hereunder at all times during the term of this agreement. For precautionary purposes, and to the extent that this agreement may be construed as a secured financing transaction, Lessee hereby grants to Lessor a first priority security interest in the equipment, accessions, additions, and appurtenances thereto. Lessee agrees promptly to execute and deliver any documents presented to Lessee by Lessor from time to time (including, but not limited to UCC financing statements, UCC continuation statements, and, if applicable, documents required by foreign jurisdictions) for the purpose of protecting Lessor's and/or any third party owner's or lender's title to and/or interest in the equipment supplied under this agreement. All costs incurred in filing the documents as aforesaid shall be paid by Lessor.

CAI International, Inc.
CON-GEN (Rev. 1/08)

8