Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                      Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,          Case Nos. 09-78585 (AST)
                                                          09-78584 (AST)
                                                          09-78589 (AST)
                                                          09-78586 (AST)
                                                          09-78587 (AST)
                                                          09-78588 (AST)
                                                          09-78590 (AST)
                        Debtors.
--------------------------------------------------------x   (Jointly Administered)

## DEBTORS' MOTION FOR ORDER (A) APPROVING PUBLIC SALE OF PROPERTY; (B) APPROVING RETENTION OF BROKER FOR THE PURPOSE OF CONDUCTING THE PUBLIC SALE; (C) APPROVING SALE PROCEDURES; AND (D) GRANTING RELATED RELIEF

TO THE HONORABLE ALAN S. TRUST,
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Global Container Lines Ltd., et al., debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Debtors")[1], by their proposed attorneys Cullen and Dykman LLP, submit this motion for an order (i) authorizing the Debtors to conduct a public sale of certain property free and clear of liens, claims and encumbrances, with such liens, claims

---

[1] The Debtors in these chapter 11 cases are: Global Container Lines Limited, Shiptrade, Inc., GCL Shipping Corp, Redstone Shipping Corp, Gilmore Shipping Corp., Global Progress, LLC and Global Prosperity, LLC.

and encumbrances to attach to the proceeds of the sale; (ii) authorizing the retention of Vogt and Maguire Shipbroking Ltd. (the "Broker"), an internationally recognized ship broker, as broker for the purposes of conducting the public sale; (iii) approving procedures for the public sale, and (iv) granting related relief, and in connection therewith respectfully allege as follows:

## INTRODUCTION

1.      On November 11, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

2.      The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

4.      No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee in these cases.

## BACKGROUND

5.      The Debtors are full service shipping companies and related entities with shipping services operating in North America, the Mediterranean, the Middle East, East, South, and West Africa, the Persian Gulf, India, Pakistan, Mozambique and major Indian Ocean Islands. The Debtors perform an extensive array of services in the shipping industry including many projects with governmental and international organizations and peace-keeping missions. A detailed background of the Debtors' businesses and the reasons for the filing of the bankruptcy cases is

set forth in the Affidavit of Bijan Paksima under Local Bankruptcy Rule 1007-4 submitted on the Petition Date, and is incorporated herein by reference.

6.     One of the Debtors, Gilmore Shipping Corp.("Gilmore"), is a single asset entity which holds title to the M.V. Global Precision, a Roll on/Roll off (RoRo) Vessel of 5,724 metric /5,677 long tons Light Displacement Tons  (the "Ship").  The Ship is presently situated in the United Arab Emirates, anchored off of the Port of Sharjah (the "Port"), which is the main shipping hub port of all of the Debtors.

7.     At present, the Ship is incapacitated and cannot move from its anchorage under its own power.  As such, the Ship is considered a "dead" ship and a hazard to local port traffic.  The Ship became disabled while operating on the high seas due to damage to the main engine and was required to be towed back to the Port.  In that regard, Gilmore is in the process of pursuing a multimillion dollar insurance claim against its Hull and Machinery insurance policy for the damage to the Ship.  The Ship has been sitting idle at Sharjah anchorage since November 20, 2009.  Repairs to the Ship are estimated to  cost $2-3 million and are not economically feasible for the Debtors given their current fiscal situation and the general decline of the worldwide shipping industry.

8.     Key Bank holds a first preferred ship mortgage against the Ship with a claim of approximately $5,195,000.  Key Bank had previously financed the Ship's towage costs to her current position while the Debtors had been funding the operating expenses prior to the Petition Date, including supply of fresh water, provisions, and fuel.  Debtors have requested and Keybank has refused to fund the  repairs or  to pay the crew wages.

9.     In addition, as long as the Ship is in her current position/status, its crew members must remain with the Ship so that it is manned.  The crew is entitled to food, water, provision

and wages while onboard the Ship and the Ship requires diesel fuel for basic operations. Furthermore, upon the Ship's return to Port, the crew demanded payment of all of their outstanding wages. All claims of the crew for wages constitute maritime liens which are senior in priority to Key Bank. Key Bank will not agree to pay these costs either. Thus, the Debtors have no funds to repair, move or provide fuel to the Ship (at considerable cost), to pay the crew's wages and to supply the crew with provisions and waterl.[2]

10.     The Debtors are in the process of selling certain heavy fuel stored on board in bunkers to generate funds to partially pay the crew's wages. It is the Debtors' position that the fuel does not constitute Keybank's collateral and its proceeds should be used to pay the crew's wages. The Debtors have been able to convince their agents to advance payment for partial crew wages in the amount of approximately $110,000. The Debtors have also supplied fresh water, provision and fuel at a cost to the Debtors in the amount of an additional $25,000 which funds were paid from the Debtors operating capital and not from their DIP facility. The Court should recognize that absent the Debtors' efforts to realize cash from the sale of the bunker fuel to pay the crew wages, a state of actual mutiny existed upon the Ship. Those events made it difficult if not impossible to have the insurance surveyors come onboard the Ship to inspect the main engine for damage in order to preserve the Debtors' insurance claim. Finally, without payment of the crew wages, the Debtors may not  be unable to gain access to the ship for potential buyers to conduct inspections of the vessel prior to making an offer for its purchase.

11.     Moreover, the Port anchorage is very busy and the Port representatives require timely removal of the Ship since its present condition is a hazard to the other ships therein. Given that all of these events are occurring in the Debtors' main hub port, and for the

---

[2] The Court recently approved DIP financing from The Bank of Pakistan. However, that financing specifically provided that no expenses of Gilmore could be paid from the funding since Gilmore is not a participant in those loans.

continuation of the Debtors' future business operations at the Port and in the local market (which includes Dubai), it is imperative that the Ship be sold and moved immediately by the purchaser.

12.     Since the Debtors cannot fund the removal of the Ship, repairs or full payments to the crew, in order to protect the future business of the Debtors' in the Port, maintain Port relations, pay the crew and maximize the value of the Ship, is essential that the Debtors be able to immediately sell the Ship (the "Public Sale") to a purchaser who will have the Ship removed from the Port and thereafter sell it for scrap, which is the most valuable use of the Ship in this market.

13.     Accordingly, pursuant to this motion, the Debtors request an Order of the Court (i) authorizing the Debtors to conduct a Public Sale of the Ship pursuant to the terms and conditions set forth herein free and clear of liens, claims and encumbrances; (ii) authorizing the retention of the Broker for the purpose of conducting the Public Sale; (iii) approving the sale procedures described herein; and (iv) granting related relief.

**RELIEF REQUESTED**

**A.      The Public Sale Should Be Approved Under Section 363(b)(1) of the Bankruptcy Code**

14.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course may be by private sale or public sale.

15.     The majority of courts have applied a business judgment test, requiring that a "sound business reason" exist to support the Debtors' request to sell estate property other than in the ordinary course of business. See, e.g., In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Allegheny Int'l, Inc., 117 B.R. 171, 176-77 (W.D. Pa. 1990); In re Stroud Ford, Inc.,

163 B.R. 730, 732 (Bankr. M.D. Pa. 1993). The Courts further require that the Debtors' use of the property be proposed in good faith. In re Abbots Dairies, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); Lionel, Id.; Allegheny, Id.

16.     Good and sufficient cause exists to approve the Public Sale. The Debtors submit that a public sale is in the best interest of the estates because it will enable the Debtors to realize optimal value for the Ship in the most time efficient manner and reduce any additional costs on the Ship. If the Public Sale is not approved, not only will the estates lose the scrap value of the Ship, but it will irreparably damage relations with the crew, Port officials and the local market, all of whom are essential to continued operations. The Debtors therefore submit that the business judgment test is satisfied and that cause exists to approve the Public Sale of the Ship under Section 363(b)(1) of the Bankruptcy Code.

**B.      Retention of Broker**

17.     In order to conduct the Public Sale, it is necessary for the Debtors to retain a specialized ship broker. To that end, the Debtors have obtained proposals from several different brokers to perform the services required. The proposal made by the Broker, an internationally renowned ship broker, was the best offer received and the Debtors believe that it is in the best interest of their estates to retain the Broker for the purposes of locating possible purchasers for the Ship and conducting the Public Sale.

18.     The Broker, a well respected and internationally known ship broker, is based in London, England and has many years experience in the sale, purchase, and charter of vessels. In the past, the Broker has sold several vessels on behalf of the Debtors. Accordingly, the Broker has a significant amount of experience in the business of marketing and selling vessels in general and also possesses knowledge of the Debtors' vessels in particular through their past business

dealings. The Debtors intend to compensate the Broker through the payment of a flat commission of 1.5 percent from the gross proceeds of the sale of the Ship. As set forth in the affidavit of Charlotte Vogt, marketing director for the Broker, annexed hereto as Exhibit "1", the Broker has no interest adverse to the estate and is disinterested within the meaning of Section 101(14) of the Bankruptcy Code.

19.     The Debtors believe that the Broker is well-qualified to locate purchasers for the Ship and conduct a successful Public Sale, and that the compensation sought by the Broker is fair and reasonable. Given the necessity for the services of the Broker and the immediate need to sell the Ship, the Debtor believe that the retention of the Broker is necessary, warranted and in the best interests of the estate, and should therefore be approved by the Court.

20.     Given the urgency of the immediate situation and need to expedite the sale process, the Debtors have begun their marketing efforts for the Ship. At the Debtors request, the Broker has circulated the Ship's details to over 758 owners, demolition cash buyers and brokers to publicize the Public Sale. As of the date of this Motion, the Debtors have already received 9 offers to purchase the Ship and 11 parties scheduled inspections of the vessel at the Port. A list of the interested buyers and other parties who have contacted the Debtors regarding the potential sale is attached hereto as Exhibit 2.

**C.      Approval of Sale Procedures**

21.     The Debtors also request that the Court authorize the following sale procedures in connection with the sale of the Ship:

> a.      The Public Sale will be conducted by the Broker with appropriate opportunity for submissions of bids by telephone or other means agreed to by the Broker, the Debtors and prospective bidders;

b.  The Ship will be sold on an "as is, where is and how is" basis, without any representation or warranty of any kind by the Debtors;

c.  On the day of the Public Sale, the successful bidder for the Ship shall tender to the Broker by wire transfer, bank or certified check a deposit in the amount equal to at least 10% of the purchase price of the Ship (the "Deposit") to be held in an escrow account jointly set up by the Buyers and Sellers;

d.  The balance of the purchase price shall be paid to the Seller's nominated bank account by the successful bidder by wire transfer, bank or certified check within two (2) business days following the Public Sale, at which time the successful purchaser shall also execute any bill of sale or other documents traditionally used to transfer title to a ship as requested by the Debtors and the Broker;

e.  In the event the highest bidder fails to close on the purchase within two (2) business days of the Public Sale, the Debtors may sell to the second highest bidder without further order of the Court and any Deposit made by the highest bidder shall be forfeited to the Debtor's estate;

f.  The successful purchaser will be responsible for the removal of the Ship from the Port anchorage.

g.  The sale of the Ship at the Public Sale shall be final and shall not be subject to further bankruptcy court approval;

h.     The Broker may elect to conduct the Public Sale by sealed bid or open bid, and the highest and best offer shall be determined by the Broker in consultation with the Debtors' principals and counsel.

i.     The Debtor and the Broker shall establish such other terms and conditions of sale at the Public Sale as deemed necessary to the orderly and efficient sale of the Ship and any such additional conditions shall be announced by the Broker prior to the commencement of the Public Sale.

22.     The Debtors intend, through the Broker, to provide notice of the Public Sale to the parties most likely to have an interest in the acquiring the Ship. The Broker has been in the business of selling shipping vessels of this nature for many years and is fully familiar with the entities which would likely be interested in acquiring the Ship. The sale procedures provide a reasonable means of ensuring a fair sale process and that the Ship will be sold for the highest and best offer available. Accordingly, the Debtors request that the Court approve the bidding procedures set forth herein.

**D.     Sale Free and Clear of Liens, Claims and Encumbrances**

23.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtors also request authority to sell the Ship free and clear of all liens, claims and encumbrances with any and all such liens, claims and encumbrances to attach to the proceeds of the sale of the Ship.

24.     Section 363(f) of the Bankruptcy Code permits the sale of assets free and clear of liens, claim and encumbrances with any such liens, claims and encumbrances attaching to the proceeds of the sale. Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

25.     As set forth above, Key Bank has a first preferred ship mortgage lien against the Ship in the amount of $5,195,000. In addition, the Ship's crew, and certain other suppliers of goods and service to the Ship while anchored in the Port, will have super-priority maritime liens, against the Ship that will be senior to Key Bank's lien. The Debtors intend to pay the maritime liens from the proceeds of the sale; otherwise, the port authorities in Sharjah may not release the vessel from its anchorage for transport to a graving yard where the Ship will be scrapped. Thus, the proceeds of sale would be distributed first to the Broker for its commissions, then to pay the crew's maritime liens and other maritime liens, then if Keybank agrees, to reimburse the Debtors for certain costs incurred after the ship was disabled at sea and in making this motion and finally to Key Bank. Absent an agreement with Keybank as to an allocation of the sale proceeds to reimburse the Debtors for the costs they have incurred to date preserving Keybank's collateral, the Debtors reserve their rights pursuant to Section 506(c) of the Bankruptcy Code to assert a lien or claim against the proceeds of the sale of the Ship and to offset and or recover any pre-petitions amounts paid by the Debtors against any sums owed to Keybank at a later date.

26.     As set forth above, the Ship's crew has not been paid in full nor have provisions been made for food and water for the crew since it returned to Port.[3] In order to prevent a mutiny by the crew, it is necessary for the Debtors to pay the wages and pay for the crew's

---

[3] As set forth above, the Debtors were able to negotiate the sale of a portion of the fuel in the Ship's bunkers since last Thursday, December 3, 2009. The sale proceeds were used to pay for food and water and provide partial payment of the crew's wages.

provisions prior to a closing of the sale and to make arrangements for their repatriation home. Accordingly, the Debtors also seek an order providing that in the event that the Debtors are required to pay the amounts that would otherwise constitute maritime liens of the crew prior to the closing of the Public Sale, that the Debtor be subrogated to the crew members for such amounts and be repaid such amounts from the proceeds of the Public Sale prior to payment to Key Bank upon its first preferred ship mortgage.

**E.    Additional Relief**

27.    Section 363(m) of the Bankruptcy Code provides that the "reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased the property in good faith...." 11 U.S.C. §363(m).

28.    The sale contemplated herein will occur as the result of a public sale after solicitation of bids and an opportunity for competitive bidding. Accordingly, the Debtors request that the Court determine the successful purchaser at the sale to be acting in good faith and entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

29.    Finally, due to the exigent circumstances for the relief sought herein, the Debtors request that the Court waive the ten (10) day stay provisions of Bankruptcy Rule 6004(h).

**REQUEST FOR ENTRY OF ORDER TO SHOW CAUSE**

30.    As set forth above, it is imperative that the sale of the Ship be approved on an expedited basis. The crew has been entitled to payment of wages and provisions of food and water since arriving in Port and there are no other economic means necessary to provide for the

full payment of the crew absent a sale of the Ship. It is in the best interests of all parties to expedite the sale to avoid an uprising of the crew while in Port.

31.　Additionally, the Port representatives require that the Ship be immediately moved since it is a hazard to other ships in the Port. In order to maintain political and business relations with the Port and the local market, which is essential to all of the Debtors' ongoing and future operations, it is necessary to move the Ship from the Port as quickly as possible and the only way to do so is to sell the Ship.

32.　Finally, an expedited sale of the Ship will maximize the value of the Ship to the Debtors' estates.

33.　Accordingly, the Debtors request that the Court sign the annexed Order to Show Cause submitted herewith, scheduling an expedited hearing on this motion.

## NOTICE

34.　Copies of this Motion and the request for Order to Show Cause have been served on the United States Trustee, counsel to Key Bank and Gilmore's twenty largest creditors. Pursuant to Rule 2002(a)(2), if the Order to Show Cause is entered, it is the Debtors' intention to serve the motion and the signed Order to Show Cause upon all of the Debtor's top twenty largest creditors and all parties who have filed a notice of appearance and request for service of pleadings in these cases. The Debtors request that the Court find its proposed notice and service of the motion to be good and sufficient service given the exigent circumstances set forth herein.

## CONCLUSION

35.　Based on the foregoing, it is respectfully submitted that cause exists to authorize the Debtor to conduct a Public Sale of the Ship on an expedited basis, to approve the bidding procedures set forth herein and to approve the retention of the Broker for the purpose of

conducting the Public Sale. Absent the relief requested herein on an expedited basis, the Debtors' relationship with the Port representatives and the local market will be negatively affected, the crew will likely mutiny and possible further damage may be done to the Ship. The Debtors will also lose the opportunity to obtain value for the Ship which it otherwise cannot obtain while the Ship sits idle in Port.

36.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request that the Court grant the relief set forth herein, together with such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        December ___, 2009

                                CULLEN AND DYKMAN LLP
                                Proposed Counsel to the Debtors

                                By_____
                                    Matthew G. Roseman (MR1387)
                                    C. Nathan Dee (CD 9703)
                                    100 Quentin Roosevelt Boulevard
                                    Garden City, New York 11530
                                    (516) 357-3700

# EXHIBIT A

# **EXHIBIT 1**



Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                        Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,    Case Nos. 09-78585 (AST)
                                                    09-78584 (AST)
                                                    09-78589 (AST)
                                                    09-78586 (AST)
                                                    09-78587 (AST)
                                                    09-78588 (AST)
                                                    09-78590 (AST)
                        Debtors.
------------------------------------------------------    (Jointly Administered)
x

## AFFIDAVIT OF CHARLOTTE VOGT IN SUPPORT
## OF RETENTION OF SHIP BROKER

Charlotte Vogt, being duly sworn, deposes and says:

1.      I am the Managing Director of Vogt and Maguire Shipbroking Ltd. ("Vogt"), a ship broker with offices at 20 St. Dunstan's Hill, London, EC3R 8HL.

2.      I make this affidavit in support of the retention of Vogt as ship broker in connection with the sale of the M.V. Global Precision, owned by Gilmore Shipping Corp., one of the Debtors herein pursuant to the Debtors' sale motion dated December 8, 2009 (the "Motion").

3.      I understand that Gilmore was formed on June 24, 2005 as a Marshall Island's corporation. It is wholly owned by GCL Shipping Corp which is also a debtor in these proceedings.

Gilmore was formed as a single asset entity whose sole asset is the M.V. Global Precision (the "Ship"). The Ship is a Roll On/Roll Off (Ro/Ro) Vessel with an LDT of 5769 mtons/5677 long tons. Unfortunately, the Ship suffered severe damage to its main engine during one of its voyages which has rendered the vessel inoperable. The Ship is currently anchored in Sharja, UAE and is considered a "dead" ship because it cannot operate under its own power. As such, the Ship is a hazard to navigation in the Debtors main hub port. Given the current state of the worldwide shipping market, the Ship's highest value will be realized through a public sale of the vessel for scrap because the cost to repair or replace the crankshaft is not economically viable given the current glut of ships on the market.

4.       As part of Vogt's duties as broker, Vogt shall use its expertise and international business contacts to market the vessel to potential purchasers including owners, demolition cash buyers and other brokers to help publicize the sale. Vogt and Debtors shall also coordinate all efforts by buyers to inspect the Ship in the Port and maintain a database of all offers received by the Debtors for the Ship and of all parties who conduct inspections of the Vessel. Vogt, with input from the Debtors principals and their professionals, shall conduct the Public Sale of the Ship and consult the Debtors regarding the highest and best offers received by Vogt for the vessel. Given the urgency of the immediate situation and need to expedite the sale process, the Debtors have previously requested that Vogt begin its marketing efforts prior to approval of its retention by the Court. In that regard, Vogt has already circulated to over 758 owners, demolition cash buyers and brokers to publicize the Public Sale. As of the date of this affidavit, the Debtors have already received 8 offers to purchase the Ship and 9 parties scheduled inspections of the vessel at the Port. A list of the interested buyers and other parties who have contacted the Debtors regarding the potential sale is attached to the heteto as Exhibit A"..

5. As compensation for Vogt's services, Vogt has agreed to accept a flat fee commission of 1.5 percent based on the gross proceeds of the sale.

6. I hereby state that an associated company, Vogt & Maguire Ltd has in the normal course of its business as port agents provided services to Global Container Lines Ltd.

7. Vogt does not represent, nor is it represented by, any other authorized professional specifically in connection with this case.


**England & Wales**
**City of London**

Charlotte Vogt

Subscribed and sworn to before me at London, England, this 10th day of December 2009.

Notary Public London, England
(Nigel P. Ready)
(My commission expires with Life)

3

# Exhibit A

In relation to affidavit of Charlotte Vogt in support of retention of shipbroker.

Interested buyers and other parties regarding the potential sale of the **Global Precision**:

- Vickie Navigation (BVI) Ltd or nominee

- Delta Navigation Co. Gujarat or nominee

- Professional Ship Management

- Nominee of G.M.S.

- Star Matrix Ltd or nominee

- NKD Maritime (BVI) Ltd or nominee

- Dynamic Diesels and Co or nominee

- Global Shiptrade PVT or nominee

- Can Pak Marie / Gravity Shipping (Parent Company - Crest) or nominee

- Western Overseas Inc USA or nominee

- Professional Ship Management PVT Ltd or nominee

- Seawind Shipping Inc Panama or nominee

- Bounty Shipping or nominee

- Exim Inc or nominee

- Swedish Management SA or nominee

- Shasta Shipping Ltd or nominee

**EXHIBIT 2**

# Sale of M/V GLOBAL PRECISION AT SHARJAH ANCHORAGE LIGHT DISPLACEMENT WEIGHT 5,677 LONG TONS (5,768 METRIC TONS)

| Serial | Lead Broker | Total Commission | Offered US Dlrs | Waived Inspection | Requested Inspection | Company | On Behalf of | Name of the persons | Contact Number | Date | Time | Tugboat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Vogt | 5 pct | * | | Sharjah | Crest / Kempak Marine Mr. Asif Khan | EBM Shipbroking Limited London | Mr. Altaf Hussain Capt. Ali Rizvi | 050-8460248 00 92 333 213 9156 | 08.12.2009 | 0830 hrs | Sharjah Port |
| 2 | Vogt | 5 pct | | | Sharjah | Global Marketing Systems, Dubai | Gravity Shipping Ltd./Malta | Mr. Antonious Tsichlakis Capt. Mohammed Ansari | 055-415 2612 04-4230720 | 08.12.2009 | 1030 hrs | Sharjah Port |
| 3 | Vogt | 5 pct | | | Sharjah | Ruby Int'l Trading FZCO Dubai | Western Overseas Inc. U.S.A. | Mr. S. M. Bhat | 050-6859027 | 08.12.2009 | 1300 hrs | Sharjah Port |
| 4 | Vogt | 5 pct | | | Sharjah | Mr. Altaf Hussain | | | 055-3045663 | 08.12.2009 | 1500 hrs | Sharjah Port |
| 5 | Vogt | 5 pct | | | Sharjah | Compass Shipping | GSM | Mr. P. Mohammed | 050-4610420 | 09.12.2009 | | |
| 6 | Vogt | 5 pct | | | Sharjah | Exim | | | | | | |
| 7 | Vogt | 5 pct | | | Sharjah | Delta Nav | | | | | | |
| 8 | Vogt | 5 Pct | | | | NKD | | | | | | |
| 9 | Vogt | 5 pct | | | | Global Shiptrade | | | | | | |
| 10 | Vogt | 5 pct | | | | Professional Ship Management | | | | | | |
| 11 | Vogt | 5 Pct | | | | Seawind Shipping, Panama | Mr. Shital Bhayani Mr. Alex Petros Pappas | | | | | |
| 12 | Vogt | 5 Pct | | | | Shasta | | | | | | |
| 13 | Vogt | 4 Pct | | | Sharjah | Star Matrix | | | | | | |
| 14 | Vogt | 4 Pct | | | Divry China | Unknown Chinese Buyer | | | | | | |

* Retention of Vogt as Debtors Broker is subject to the court approval.