CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)
Bonnie Pollack, Esq. (BP 3711)

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                    Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,      Case Nos. 09-78585 (AST)
                                                    09-78584 (AST)
                                                    09-78589 (AST)
                                                    09-78586 (AST)
                                                    09-78587 (AST)
                                                    09-78588 (AST)
                                                    09-78590 (AST)
                        Debtors.
---------------------------------------------------------x

## RESPONSE TO MOTION OF SEACASTLE CONTAINER LEASING LLC FOR TURNOVER OF PROPERTY

TO THE HONORABLE ALAN S. TRUST, UNITED STATES BANKRUPTCY JUDGE:

Global Container Lines Ltd., et al., Debtors and Debtors-in-Possession in the above-captioned bankruptcy cases (the "Debtors")[1], by their proposed attorneys Cullen and Dykman LLP, submit this response in opposition to the motion of Seacastle Container Leasing LLC ("Seacastle") for turnover of property and respectfully allege as follows:

### INTRODUCTION

1. On November 10, 2009 (the "Petition Date"), the Debtors filed voluntary petitions

---

[1] The Debtors in these cases are: Global Container Lines Ltd., Shiptrade, Inc., GCL Shipping Corp., Redstone Shipping Corp., Gilmore Shipping Corp., Global Progress, LLC and Global Prosperity, LLC.

for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.

2. The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4. No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee in these cases.

## BACKGROUND

5. The Debtors are full service shipping companies and related entities with shipping services operating in North America, the Mediterranean, the Middle East, East, South, and West Africa, the Persian Gulf, India, Pakistan, Mozambique and Major Indian Ocean Islands. The Debtors perform an extensive array of services in the shipping industry including many projects with governmental and international organizations and peace-keeping missions. A detailed background of the Debtors' businesses and the reasons for the filing of the bankruptcy cases is set forth in the Affidavit of Bijan Paksima under Local Bankruptcy Rule 1007-4 submitted on the Petition Date, and is incorporated herein by reference.

6. On or about March 25, 2005, Global Container Lines, Ltd., one of the Debtors herein ("Global" or the "Debtor"), entered into a "Membership and Equipment Leasing Agreement" with Interpool Limited ("Interpool") whereby the Debtor was granted the use of certain containers in exchange for the payment of a monthly charge to Interpool (the

"Membership Agreement"). A copy of the Membership Agreement is annexed hereto as Exhibit "A".

7. On the same day, the Debtor entered into a "Lease Purchase Agreement" with CAI-Interpool, LLC in furtherance of and in conjunction with the Membership Agreement (the "March Lease Purchase Agreement"), providing specific terms for the use of the containers described therein and denoted as Account # 3507 (the "3507 Containers"). A copy of the March Lease Purchase Agreement is annexed hereto as Exhibit "B".

8. The March Lease Purchase Agreement was assigned by CAI-Interpool, LLC to Interpool by Assignment and Assumption Agreement dated April 26, 2005, a copy of which is annexed hereto as Exhibit "C".

9. On May 17, 2005, Interpool filed a UCC Financing Statement covering and allegedly perfecting its lien against the 3507 Containers, a copy of which is annexed hereto as Exhibit "D".

10. Also in furtherance of and in conjunction with the Membership Agreement, CAI-Interpool, LLC and the Debtor entered into an additional Lease Purchase Agreement on December 13, 2005 (the "December Lease Purchase Agreement") providing specific terms for the use of the containers described therein and denoted as Account # 3531 (the "3531 Containers"). A copy of the December Lease Purchase Agreement is annexed hereto as Exhibit "E".

11. The December Lease Purchase Agreement was assigned by CAI-Interpool, LLC to Interpool by Assignment and Assumption Agreement dated January 5, 2006, a copy of which is annexed hereto as Exhibit "F".

12. Upon information and belief, at some point thereafter, the Membership

3

Agreement, the March Lease Purchase Agreement and the December Lease Purchase Agreement (collectively, the "Agreements") were assigned by Interpool to Seacastle.

13. On October 23, 2009, Seacastle filed a UCC Financing Statement covering and allegedly perfecting its lien against both the 3507 Containers and the 3531 Containers, a copy of which is annexed hereto as Exhibit "G".

14. Seacastle has alleged that the Debtor is in default under the Agreements and that through September 14, 2009, the Debtor owes Seacastle the sum of $360,648.00. Seacastle further alleges that it has terminated the Agreements by certain notices provided by Seacastle to the Debtor by letter dated September 23, 2009 and by facsimile dated October 8, 2009.

15. On or about December 7, 2009, Seacastle made the instant motion seeking turnover of the 3507 Containers and the 3531 Containers to Seacastle or, alternatively, for adequate protection. For the reasons set forth below, Seacastle's motion must be denied at this time.

## SEACASTLE'S MOTION SHOULD BE DENIED

16. The premise of Seacastle's motion is that the Agreements are leases of personal property which were terminated by Seacastle prior to the Petition Date and, therefore, the Debtor should be required to turnover the Containers to Seacastle pursuant to the terms of the Agreements.

17. Seacastle's motion is flawed for two reasons. First, it is arguable as to whether the notices of termination were proper under the Agreements. Article 17 of the Membership Agreement, which is incorporated into both the March Lease Purchase Agreement and the December Lease Purchase Agreement, provides that any notice required to be given under the Agreement must be in writing and must be made either "by hand delivery, by mail, or by telex.

Such mail shall in all cases be registered or certified mail." The two notices of default provided to the Debtor were neither by hand delivery, registered or certified mail or telex, and it is therefore questionable as to whether there has been a proper termination of the Agreements. See, Dune Deck Owners Corp. v. Mylene Liggett, et al., 34 A.D.3d 523, 825 N.Y.S.2d 95 (2d Dept. 2006). If the Agreements have not been properly terminated, Seacastle is not entitled to the relief it seeks in its instant motion.

18. More importantly, however, Seacastle's motion is premised on the assumption that the Agreements at issue are actually leases as opposed to a disguised sale subject to a security interest. If the Agreements are, indeed, leases, and if Seacastle gave proper notice of termination prior to the Petition Date, arguably Seacastle has a basis for its instant motion. However, in the event that the Agreements in question are determined to be disguised sales, there could be no "lease termination" and therefore no grounds for turnover of the Containers. Seacastle would merely have a security interest in the Containers, to the extent such security interests are valid, and Seacastle's motion must necessarily be denied.

19. The Debtor indeed believes that the Agreements in question are _not_ true leases. Simultaneously with the filing of this objection, the Debtor has filed an adversary proceeding against Seacastle for declaratory judgment as to the nature of the Agreements as well as to avoid Seacastle's security interest in the 3531 Containers, on the grounds that the transfer of the security interest therein constituted a preferential transfer. A copy of the adversary proceeding Complaint without exhibits is annexed hereto as Exhibit "H".

20. The Debtor's grounds for its position regarding the true nature of the Agreements are included in the Complaint and are incorporated herein by reference. Based on the facts set forth in the annexed Complaint, the Debtor believes that, based on the "Bright-Line" test of

5

section 1-201(37) of the Uniform Commercial Code, the Agreements created a security interest as a matter of law since (a) the Debtor is required to pay Seacastle for the right to possession and use of the Containers for the entire term of the Agreements, which requirement is not subject to termination by the Debtor, and (b) at the expiration of the term of the Agreements, the Debtor has the option to purchase the Containers for a price of $1.00 per Container, which constitutes nominal additional consideration and is less than fair market value. Thus, at the time the Agreements were entered into, Seacastle did not retain a meaningful residual interest in the Containers and, as a matter of law, the Agreements created a security interest, not a lease of property. See, e.g., In re Worldcom, Inc., 339 B.R. 56 (Bankr. S.D.N.Y. 2006); In re Jeffrey Owen, 221 B.R. 56 (Bankr. N.D.N.Y. 1998).

21. In addition to satisfying the "Bright-Line" test, the Debtor believes that the Agreements are also disguised sales based on the "facts of the case". The consideration to purchase the Containers at the end of the term of the Agreements is nominal, Seacastle did not retain any meaningful residual interest in the Containers under the Agreements, the Debtor assumed all the burdens of ownership of the Containers under the Agreements, the Debtor is required to maintain the Containers at its own cost and expense, the Debtor is responsible for all taxes based on possession and use of the Containers and is liable for all loss and damage to the Containers, and the Debtor is required to secure and maintain insurance for the Containers. Finally, Seacastle disclaimed all warranties with respect to the Containers. Therefore, the Debtor submits that the Agreements constitute a security interest based on the "facts of the case" in addition to under the "Bright-Line" test of the Uniform Commercial Code. Id.

22. Accordingly, the Debtor believes that until such time as the Court determines the underlying issues in the adversary proceeding, the Court is unable to rule on the relief sought by

Seacastle in the motion. If the Court ultimately determines that the Agreements are disguised sales, Seacastle would not be entitled to the relief it seeks, and would only be entitled to adequate protection of whatever security interest the Court determines to validly exist. Thus, the Debtors submits that Seacastle's motion must be adjourned until such time as such a determination is made in the adversary proceeding.

23. Seacastle is not prejudiced by an adjournment of its motion. First, the Debtor is more than willing to fast track the adversary proceeding so that the relief can be determined on an expedited basis. Moreover, until that time, Seacastle's alleged liens are more than adequately protected. Seacastle in its motion admits that the value of the Containers at issue exceeds $800,000.00 and that only $360,000.00 is owed by the Debtor under the Agreements. Thus, Seacastle is more than adequately protected by the roughly $440,000.00 equity cushion (more than 100%), by Seacastle's own admission.

24. Based on the foregoing, the Court should deny or adjourn the instant motion pending a determination of the adversary proceeding, and should deem Seacastle adequately protected by the $440,000.00 equity cushion in the Containers.

WHEREFORE, the Debtor requests that the Court deny the relief sought by Seacastle, and grant the Debtor such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
December 18, 2009

    CULLEN AND DYKMAN LLP
    Proposed Counsel for Debtors and Debtors in Possession

    By    /s/ Matthew G. Roseman
           Matthew G. Roseman (MR1387)
           C. Nathan Dee (CD 9703)
           100 Quentin Roosevelt Boulevard
           Garden City, New York 11530
           (516) 296-9106