CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)
Bonnie Pollack, Esq. (BP 3711)

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                            Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,              Case Nos. 09-78585 (AST)
                                                            09-78584 (AST)
                                                            09-78589 (AST)
                                                            09-78586 (AST)
                                                            09-78587 (AST)
                                                            09-78588 (AST)
                                                            09-78590 (AST)
                    Debtors.
------------------------------------------------------------x

**REPLY TO OBJECTIONS OF CONTAINER LESSORS TO DEBTORS MOTION TO
REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TO THE HONORABLE ALAN S. TRUST,
UNITED STATES BANKRUPTCY JUDGE:

Global Container Lines Ltd., et al., Debtors and Debtors-in-Possession in the above-captioned bankruptcy cases (the "Debtors")[1], by their proposed attorneys Cullen and Dykman LLP, submit this reply in response to the objections of TAL International Container Corp ("TAL") and Textainer Equipment Management U.S. Ltd ("Textainer") to the Debtors' motion to reject certain executory contracts and unexpired leases dated December 7, 2009 (the "Motion"). In further support thereof, the Debtors aver as follows:

---

[1] The Debtors in these cases are: Global Container Lines Ltd., Shiptrade, Inc., GCL Shipping Corp., Redstone Shipping Corp., Gilmore Shipping Corp., Global Progress, LLC and Global Prosperity, LLC.

## INTRODUCTION

1. On November 10, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.

2. The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4. No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee in these cases.

## BACKGROUND

5. On or about December 7, 2009, the Debtors filed the Motion. Pursuant to the Motion, the Debtors are seeking to reject certain container leases because (i) the Debtors have determined in their business judgment that such leases are not necessary to the Debtors' reorganization efforts since the Debtors are reducing the cargo liner side of their business and (ii) the Debtors are seeking to prevent the accumulation of potential administrative expense against the Debtors' estates.

6. On December 18, 2009, TAL filed its objection to the Motion (the "TAL Objection"). Pursuant to the TAL Objection, TAL seeks (i) to compel the Debtors to make payments to foreign terminal and depot owners for any and all pre-petition or post-petition amounts due and owing the owners to enable TAL to recover its containers without opposition

from the owners and (ii) to deny the Debtors the ability to establish a deadline by which TAL must file a rejection claim against the Debtors.[2]

7. On December 18, 2009, Textainer also filed an objection (the "Textainer Objection, and together with the TAL Objection, the "Objections") to the Debtors' motion seeking substantially the same relief sought by TAL in the TAL Objection.

## THE OBJECTIONS SHOULD BE OVERRULED

8. Pursuant to the Objections, TAL and Textainer seek to force the Debtors to make payments of both pre-petition and post-petition costs to foreign depot and terminal owners to facilitate the return of TAL's and Textainer's containers because, otherwise, the relief sought by the Debtors in the Motion would be unfair to TAL and Textainer. Both container lessors also seek further information regarding the location of their containers. In that regard, the Debtors have provided both TAL and Textainer with that information on two separate occasions, including most recently on December 15, 2009 via electronic mail from Debtors counsel to counsel for both TAL and Textainer.

9. As support for the Objections, TAL cites to a case, *In Re Herr*, 61 B.R. 252,254 (Bankr. E.D. Pa 1986) that is completely inapposite to the facts present in the instant matter. In *Herr*, the Court held that a landlord was entitled to an administrative expense claim because the trustee failed to surrender certain real property until several months after court had granted the trustee's motion to reject. *In re Herr*, 61 B.R. at 252. In the instant matter, the Debtors are not seeking to retain the containers subject to TAL's and Textainer's lease agreements after the Court has granted the Motion. Accordingly, unlike the chapter 7 trustee in *Herr*, the Debtors will not be retaining any property of the TAL or Textainer that could be used by those entities

---

[2] The Debtors do not object to establishing the deadline for any party subject to the Motion to file a rejection claim to the earlier of (i) sixty days from the date the Court enters and Order granting the Motion or (ii) the date the Court establishes a general bar date in these cases.

3

justify the payment of an administrative expense against the Debtors estates.

10. More importantly, Section 365 (g) of the Bankruptcy Code provides a remedy for TAL and Textainer in the form of a rejection claim for damages that the may assert against the Debtors based upon their contracts and/or a potential administrative claim against the Debtors if such a claim is warranted. Such damages would include any and all sums TAL and Textainer are entitled to under the terms of their agreements which may include any costs incurred by TAL and Textainer when retrieving their containers.[3] To the extent that such costs are not compensable under their agreements or the terms and provisions of the Bankruptcy Code, then that is the risk which TAL and Textainer agreed to when they voluntarily entered into container leasing agreements with an international shipping company. As the Court correctly noted at the hearing on December 1, 2009,

> "to the extent that there is a risk that some of the containers may be left at ports around the world, as long as that is not an improper act by the debtor, that seems to be a risk that was taken when the contracts were entered into pre-petition. See Exhibit A, Hearing Transcript, December 1, 2009, p. 40, lines 12-16.

11. Moreover, TAL's attempt to include an email from a third party agent, which is double hearsay, to justify its assertion that the Debtors have agreed to pay the storage charges for TAL's containers is disingenuous. The Debtors sought to retrieve all of GCL's containers, not just TALs, from a foreign repair depot but were told by the depot's owner that the Debtors must pay for the storage charges for all of the containers, including TAL's, to obtain possession of GCL's containers. Given that the Debtors do not intend to use TAL's containers in their liner business, they refused to pay the storage charges all of the containers at the depot, including TAL's containers, and those containers remain at that particular the repair depot. Accordingly, TAL's attempt to assert that the Debtors have acknowledged their "obligation" to satisfy all liens

---

[3] The Debtors reserve all of their rights to object to the validity, amount and priority of any rejection damage or administrative claims asserted by either TAL or Textainer against the Debtors' estates.

and claims that impair TAL's containers is simply not true.

12. The Court should recognize that the Objections are simply (i) disguised requests for the payment of super priority administrative expenses by TAL and Textainer which should be denied and/or (ii) TAL's and Textainer's attempt to be relieved of the consequences of their bargains with the Debtors.

13. Based on the foregoing, the Court should overrule the Objections and grant the Motion.

**WHEREFORE,** the Debtor requests that the Court deny the relief sought by TAL and Textainer in the Objections, and grant the Debtor such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
December 21, 2009

                                CULLEN AND DYKMAN LLP
                                Proposed Counsel for Debtors and Debtors in Possession

                                By    /s/ C. Nathan Dee
                                           Matthew G. Roseman (MR1387)
                                           C. Nathan Dee (CD 9703)
                                           100 Quentin Roosevelt Boulevard
                                           Garden City, New York 11530
                                           (516) 296-9106

**EXHIBIT A**

1     Unless there are any prepaid vacation plans I'd be
2 interfering with I'd be inclined to go to December 22nd at two
3 o'clock.
4     This morning I was offering hearings on December
5 31st at 11:00 p.m. and no one bit.
6     [Pause in proceedings.]
7     MR. ROSEMAN: We can do that date, Your Honor.
8     THE COURT: All right. So then December 22nd at
9 2:00 p.m. That will be the adjourned final hearing on the use
10 of cash collateral/DIP financing. December 22nd at 2:00 p.m.
11     Mr. Roseman, if you will prepare a letter with
12 notice to appearance parties, the same parties who were
13 notified of today's hearing shall receive notice of the
14 adjourned hearing to December 22nd at two o'clock and we'll
15 take up the remainder of the issues on the proposed form of
16 final order. I anticipate most of those will be resolved
17 between now and then. There are obviously sophisticated
18 counsel involved the case so throw to me on December 22nd the
19 things that you all cannot agree to. I expect that will be a
20 fairly small universe of issues on the final order. To the
21 extent that the debtor is able to make a decision here in the
22 next week or so on what sets of the containers that it wants
23 to reject leases or agreements on, you can notice that for
24 December 22nd as well. That should be noticed out by December
25 7th. So, really, by Monday to the extent that the debtor has

1  determined which of the containers it no longer needs use of
2  then you can bring on motions to reject those agreements and
3  we'll take those up on December 22nd as well.
4  Similarly, to the extent that the container lessors
5  -- again, I use that expression euphemistically -- believe
6  that they're entitled to some protections beyond
7  administrative claims for the use of their property during the
8  pendency of the case or want stay relief, I can try to take
9  those up -- although we won't have a lot of time that
10 afternoon -- I don't see a basis to grant super priority
11 administrative status to the equipment or container lessors.
12 You have your administrative expense rights.  To the extent
13 that there's a risk that some of the containers may be left in
14 ports around the world, as long as that's not an improper act
15 by the debtor that seems to be a risk that was taken when the
16 contracts were entered into pre-petition and to the extent
17 that there is a remedy available under the Code if that
18 happens improperly, then we'll take it up later in the case,
19 but as far as the use or utilization of the containers in the
20 interim, the container companies are protected by having
21 rights to administrative expense claims.
22          Hopefully, Mr. Roseman, the debtors will be so awash
23 in cash by the next time we see you that these issues will
24 have frittered away but, again, I'll address the remainder of
25 the cash collateral/DIP finance order, we'll take up any lease