UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In re:

GLOBAL CONTAINER LINES LTD., *et al.*,

Debtors.

---

Chapter 11

Case No. 09-78585 (AST)

(Jointly Administered)

**MEMORANDUM OF TAL INTERNATIONAL CONTAINER CORP. IN SUPPORT OF DEBTORS' PAYMENT OF RANSOM CHARGES BY PORTS AND TERMINALS**

TAL International Container Corp. ("TAL"), by and through its undersigned counsel, hereby submits, pursuant to the Court's request, this Memorandum ("Memorandum") in support of that portion of TAL's Objection[1] requiring the Debtors' to pay costs associated with obtaining the release of TAL's Containers from terminal and port operators. In support hereof, TAL respectfully states as follows:

**BACKGROUND**

1. On November 10, 2009, the Debtors filed voluntary petitions for relief in the United States Bankruptcy Court for the Eastern District of New York (the "Court") pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2. By Order dated November 17, 2009, the Debtors' cases are being jointly administered for procedural purposes only (the "Cases").

3. At the December 22nd hearing (the "Hearing") on the Debtors' Omnibus Rejection Motion, the Court, among other things, authorized the rejection of certain container

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in TAL's Objection to the Debtors' Omnibus Container Lease Rejection Motion dated December 18, 2009 [docket no. 64].

leases, including TAL's Lease. The Court also directed the Debtors (and its agents, including its foreign agents where the Containers are located) to cooperate with TAL (and the other container lessors, collectively, the "Lessors") in the recovery and release of its Containers.[2]

4. The Court reserved decision on whether the Debtors should be required to pay those costs associated with the release of TAL's (and the other Lessors') Containers, including amounts that foreign terminal and depot operators are owed *by the Debtors* for the storage of such containers (the "Ransom Costs"). In so doing, the Court offered the parties to submit, not later than January 6, 2010, briefs in support (or against) such relief.

5. For the reasons stated on the record at the Hearing (which TAL incorporates herein by reference), and as further supported by this Memorandum, TAL respectfully requests that the Court direct the Debtor to pay the Ransom Costs associated with the release TAL's property from the depot and terminal operators.

### MEMORANDUM

6. As discussed in its Objection and argued at the Hearing, the Debtors' Omnibus Rejection Motion leaves TAL in a predicament that is inequitable and not supported by the Bankruptcy Code. Specifically, as a result of the Lease rejection, TAL's efforts to recover its Containers have been frustrated because, among other things, foreign terminal and depot operators are holding (and will continue to hold) the Containers hostage unless and until the Ransom Costs are paid, and in these cases, paid by TAL.

7. Based on a review of the Debtors' latest Container location lists submitted to TAL and filed with the Court (the "Lists"), many of the Ransom Costs appear to be significant

---

[2] The parties are currently working on a form of rejection order that reflects the Court's decision at the Hearing and provides certain relief and authority to the Lessors in the recovery of their respective containers.

because the Debtors, in apparent dereliction and disregard of their obligations to TAL under the Lease (and without TAL's knowledge or notice),[3] have failed to pay storage charges to the terminal and depot operators for some time. See Lists, Docket No. 80, Exhibit B (days idle). In fact, such omissions appear to have been ongoing for a few years, and in the case of two of the ports (Beira and Mumbai) for more than four (4) years. Id.

8. Under these circumstances, it is wholly unreasonable to require TAL (or any of the Lessors) to pay Ransom Charges owed by the Debtors as a result of their violation of their obligations. The Bankruptcy Code was not enacted to protect such egregious actions, and while these circumstances are unique (further warranting this relief), at least one bankruptcy court has directed the debtors to pay pre-petition storage costs they owed to that creditor so as to effect the release of the property. See In re Hundley, 2007 WL 1042135 (D. Kan. April 6, 2007) (affirmation of bankruptcy court's actions by the district court).[4]

9. In Hundley, the bank hired a third party (Southwest) to repossess its property (vehicle) given the debtors failure to pay and otherwise comply with the terms of the bank agreement. Southwest repossessed the vehicle on June 2nd and stored it at its facility (at the direction of the bank) until June 29th, when the court directed it to release the vehicle to the debtors for reasons unrelated to this case. Id. at pp. 2-3.

10. At that same hearing, the court also directed the debtors to pay, among other costs, all of the pre-petition storage charges owed to Southwest associated with the release of the

---

[3] Pursuant to the Lease, the Debtors were required, among other things, to pay all depot charges and to indemnify TAL against, among other things, all claims, costs and expenses resulting from the lease, operation, storage or possession of the Containers. See form of Lease attached as Exhibit 1.

[4] A copy of the Hundley case (coincidently decided in Kansas) is attached hereto as Exhibit 2 for the convenience of the Court.

vehicle. Id. at p. 3 ("Because the Bank had to pay Southwest to effect the release of the vehicle, the Court ordered the debtors to pay the storage bill from June 2 to June 10, the date of their filing.") (emphasis added). In fact, the only reason the bankruptcy court did not require the debtors to pay all of the storage costs, including through the date of return of the vehicle (i.e., both pre-petition and post-petition), was as punishment for the bank's willful violation of the automatic stay (a fact not relevant to this case). Id. at 12.

11. Like Hundley, this Court should compel the Debtors to satisfy the storage charges of those terminal and/or depot operators (or similar entities) who refuse to release to TAL its Containers as a result of the Debtors' failure to pay such claims. Such charges are the obligations of the Debtors, and their failure to do so is an unjust result not warranted by the unique facts and circumstances of this case.

## CONCLUSION

12. Accordingly, for the reasons discussed herein and at the Hearing, TAL respectfully requests that this Court (a) require the Debtors' to pay those costs necessary to obtain the release of TAL's Containers from the terminal and port operators, and (b) grant such other and further relief as is just and proper.

Dated: January 6, 2010                         VEDDER PRICE P.C.

                                                  By: */s/ Michael L. Schein*
                                                      Michael L. Schein (MS-0241)
                                                      John E. Bradley (JB-2485)
                                                      1633 Broadway, 47th Floor
                                                      New York, New York 10019
                                                      Tel No. (212) 407-7700
                                                      Fax No. (212) 407-7799

                                                 *Counsel to TAL International Container Corp.*