

TAL International Container Corporation
100 Manhattanville Road
Purchase, NY 10577-2135
Telephone 914 251-9000
Fax 914 697-2720

# MASTER LEASE AGREEMENT
(GENERAL TERMS & CONDITIONS)

This Lease is entered into by and between **TAL INTERNATIONAL CONTAINER CORPORATION**, incorporated under the laws of Delaware, with its principal place of business at 100 Manhattanville Road, Purchase, New York 10577-2135, U.S.A. ("TAL") and _____, incorporated under the laws of _____, with its principal place of business at _____ ("Lessee").

WHEREAS, TAL has available, on a rental basis, a supply of containers, chassis and other related equipment owned by TAL and other owners and managed by TAL ("Equipment") through a worldwide TAL depot system; and

WHEREAS, Lessee desires or may desire to avail itself of said Equipment.

NOW, THEREFORE, the parties agree that:

**1.    ACCEPTANCE OF EQUIPMENT**

TAL, on its own behalf and on behalf of other owners, from time to time, may lease to Lessee, and Lessee may, from time to time, lease from TAL, Equipment. The right of Lessee to obtain Equipment is, unless otherwise agreed, subject to its availability. To evidence receipt of Equipment by Lessee, at the time of receipt, Lessee or its authorized agent and the authorized TAL depot will execute an equipment interchange on the form prescribed by TAL or on such other form as the parties may agree ("Receipt"). Thereupon, the Equipment covered by the Receipt will become subject to the conditions of this Lease. All Equipment will be deemed to be in good condition except as may be expressly noted on the Receipt signed by Lessee or its authorized agent and the TAL depot. Any third party which receives Equipment on behalf of Lessee will be deemed to have authority on behalf of Lessee to execute a Receipt. Any Equipment picked up by or received by Lessee or a representative of Lessee or coming under the direct or indirect control of Lessee will be subject to the conditions of this Lease.

**2.    RENTAL AND OTHER CHARGES**

Lessee will pay rent to TAL at such rates as are agreed upon at or prior to the receipt of Equipment. Said rates, unless otherwise agreed, will be charged to Lessee beginning on the day of receipt of Equipment and will continue to and including the day the Equipment is taken off lease pursuant to Paragraph 8 hereof. TAL will bill Lessee monthly for rent and other charges which will be deemed additional rent. Lessee will pay TAL invoices in U.S. currency at the address set forth above or as otherwise directed by TAL in full, without deduction for any reason whatsoever. Payment is due within 30 days from date of invoice. Payments overdue will be subject to a service charge equal to the lesser of 2% per month or the highest legal rate. In addition to the payment of rentals, Lessee will pay or reimburse TAL for any and all sales and use taxes, value added taxes, personal property taxes, or other direct taxes levied against or based upon the use, storage, operation or possession by Lessee of the Equipment leased hereunder, or levied against or based upon the amount of rentals paid or to be paid hereunder, or any other taxes levied against or based upon this Lease or the execution, filing, recording or performance thereof. The term "direct taxes" as used herein will include all taxes (except taxes which are based upon or measured by TAL's net income), charges and fees levied, assessed or charged by any taxing authority.

**3.    DEPOT CHARGES**

Lessee will pay to TAL, or to a TAL depot if directed by TAL, any in-and-out, lifting, loading and other charges in connection with the receipt and return of Equipment (including, but not limited to, charges incurred in connection with surveys requested by Lessee).

**4.    MAINTENANCE AND REPAIR OF EQUIPMENT WHILE ON LEASE**

Lessee agrees, at its expense, to maintain Equipment at all times during this Lease in good repair and operating condition and in a safe condition pursuant to the International Convention for Safe Containers, free of any and all liens and encumbrances. All repairs made by Lessee will be in accordance with TAL standards issued from time to time.

**5.    USE OF EQUIPMENT**

Lessee will not make or permit any unlawful use or handling of Equipment. Lessee will comply with all loading limitations prescribed by the manufacturer of Equipment and will prevent excessive impact and concentrated loads. Lessee will not, without TAL's prior written consent, use Equipment for storage or transportation of corrosive substances, hazardous materials, hazardous wastes, high density poorly secured materials, bulk commodities which may corrode, oxidize, severely dent, puncture, contaminate, stain or damage the interior or exterior of Equipment or could result in injury or damage to subsequent users of Equipment or make any other use of Equipment which could result in such injury or damage. Lessee will not, without TAL's prior written consent, make or permit any changes, alterations, or improvements in or to the Equipment or remove therefrom any parts, accessories or attachments. Equipment returned with parts, accessories or attachments missing will continue to be considered as rented Equipment until the missing items are returned or replacement cost is paid or if changes were made to Equipment, until the Equipment has been restored to its condition at time of receipt by Lessee. Lessee will maintain records showing the location of Equipment and will, upon TAL's request, promptly advise TAL in writing of the location of Equipment. Lessee shall use Chassis exclusively to transport goods traveling in interstate or foreign commerce.



- 2 -

**6.  COMPLIANCE WITH LAWS**

Lessee will, at its own expense, comply with all laws, regulations or orders of federal, state, foreign and local governments or agencies which in any way affect the Equipment or its use, operation or storage thereof.  Lessee will exercise such responsibilities as would otherwise be TAL's under the International Convention for Safe Containers.  Such responsibilities will be carried out in accordance with TAL's operational procedures in effect from time to time.  Lessee will comply with all requirements of any Customs Convention on Containers, including all obligations of the operator and relating to temporary admission, transport under customs seal, maintenance of records and reporting to governmental and other authorities.  Lessee agrees to hold TAL harmless from any fines, penalties, forfeitures or seizures which may arise from the violation of any such law, rule, regulation or order.

**7.  CASUALTIES**

If Equipment, while rented to Lessee, is damaged beyond repair, lost, stolen, destroyed, or confiscated, Lessee's obligation to pay rental therefor will terminate as of the day TAL receives proof of such occurrence and receipt of the replacement value thereof as determined by TAL.  Lessee acknowledges that it has been advised of TAL's current replacement values.

**8.  RETURN OF EQUIPMENT**

Lessee will return Equipment to the TAL depots which have been agreed to in writing by the parties.  Equipment will be inspected upon its return, and the TAL depot will indicate the condition of Equipment on a Receipt.  Equipment should be returned in the same condition as when obtained by Lessee, normal wear excepted.  Equipment will be taken off hire on the date of return.  Lessee is responsible for all damage to Equipment.  If Equipment is damaged, then Lessee or its authorized agent will be notified of the estimated cost thereof.  Within 5 days of such notification, Lessee or its authorized agent will either (i) approve such estimate or (ii) participate with TAL in a joint examination of the Equipment.  If a joint examination is conducted and the parties are unable to agree upon the extent of the necessary repair work, then TAL will arrange for inspection by a mutually acceptable surveyor approved by a recognized classification society.  The decision of the surveyor will be final and binding.  If, within five working days of receiving the notification of damage, repair authorization is not given by Lessee or its authorized agent or a joint examination is not conducted, then TAL will be entitled forthwith to proceed with such repair work as in its discretion it deems necessary, at Lessee's expense.

**9.  EXCLUSION OF WARRANTIES**

TAL makes no representations or warranties (i) as to the condition of Equipment, (ii) that Equipment meets the requirements or regulations of any country or other political subdivision within which Lessee may use or operate the Equipment, or (iii) as to Equipment's suitability for any purpose.  ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE, ARE HEREBY WAIVED BY LESSEE.

**10.  INDEMNIFICATION**

Lessee agrees to defend at its own expense, and to indemnify and hold harmless TAL, its agents, indemnities and employees, from and against, any and all losses, claims, actions, costs, expenses, fees, damages, fines and liabilities (including reasonable attorneys' fees), however caused and irrespective of whether caused in whole or in part by the negligence of TAL, resulting directly or indirectly in any manner from the lease, operation, use, storage or possession of Equipment by Lessee or the performance of this Lease by Lessee.

**11.  INSURANCE**

Unless waived by TAL in writing, Lessee will, at its own expense, maintain the following minimum amounts of insurance, with insurance companies acceptable to TAL and will furnish TAL with certificates of such insurance.  At TAL's request, Lessee will furnish TAL with copies of each insurance policy with endorsements.

A (1).    All Risks Physical Damage Insurance in an amount equal to the value of all Equipment charged to it while on land, afloat, in transit or at rest anywhere in the world, including particular average and general average.  Such insurance will be endorsed (i) with a Loss Payable Clause in favor of TAL as respects TAL's property and (ii) to name TAL as an Additional insured.

A (2).    Comprehensive General Liability Insurance, including Contractual Liability, against claims for bodily injury or death and property damage in an amount not less than U.S. $5,000,000 per occurrence.  Said insurance will be endorsed to name TAL as an Additional Insured.

A(3).    Automobile Liability Insurance against claims for bodily injury or death and property damage in an amount not less than U.S. $5,000,000 per occurrence.  Said insurance will be endorsed to name TAL as an Additional Insured.

B.    The certificates and policies evidencing the insurance required above will contain a clause providing that (i) the policies will be considered primary as against any other valid insurance coverage, and (ii) 30 days' prior written notice must be given to TAL if the policies are canceled, materially changed or not renewed.

C.    The maintenance of insurance by Lessee will *not* be deemed or construed to limit Lessee's obligations under this Lease, including, but not limited to, obligations under Paragraph 10 hereof.

- 3 -

**12. OWNERSHIP RIGHTS**

Equipment will at all times remain the property of TAL, and Lessee will not acquire any ownership rights, title or interest of any nature in Equipment by virtue of paying rental or other charges hereunder, or complying with or exercising any of TAL's responsibilities under the International Convention for Safe Containers. The transactions covered by this Lease are transactions of leasing only, and not a sale, conditional or otherwise, and the only right acquired by Lessee hereunder is the right to possess and use Equipment leased hereunder so long, and only so long, as Lessee is not in default hereunder.

**13. IDENTIFYING MARKS**

Unless otherwise agreed in writing, Equipment will have TAL serial numbers and other identifying marks affixed which will not be destroyed or altered by Lessee.

**14. ASSIGNMENT AND SUBLEASE**

(a) TAL shall have the absolute right to (i) sell, transfer, delegate, pledge or assign all or any part of its rights, title and interest in the Units and under this Lease, including, without limitation, the Rentals and any other payments due or to become due, (ii) transfer its obligations hereunder, and (iii) transfer or assign the right to make all waivers and agreements, to give all notices, consents and releases, to take all actions upon the occurrence of an Event of Default, or to do any and all other things which TAL is or may be entitled to do under this Lease.

(b) Lessee shall, upon TAL's request, do all acts and things (including without limitation, making any filing or registration with any governmental authority) and execute and deliver all documents (including without limitation, any amendment, novation, acknowledgement of assumption or assignment of this Lease) as may be required by TAL in connection with any sale, transfer, pledge, financing or assignment of the Units or this Lease made by TAL.

(c) Any sale, transfer, assignment, pledge or other conveyance, for security or otherwise, of this Lease by TAL shall be subject to Lessee's rights under this Lease.

**15. TIME IS OF THE ESSENCE**

Time is of the essence of this Lease.

**16. DEFAULT**

If any of the following events occurs and continues:

A.    Lessee fails to pay any sum or sums to be paid hereunder when the same become due; or

B.    Lessee fails to observe or perform any other condition of this Lease in the manner and at the time required herein, and such failure remains unremedied for five days after written notice thereof to Lessee by TAL; or

C.    TAL becomes aware of any fact which causes it to reasonably deem itself insecure; or

D.    Lessee admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors or becomes insolvent or subject to any voluntary or involuntary proceeding relating to bankruptcy, liquidation, insolvency or reorganization or relief to debtors; or Lessee seeks appointment of a receiver or trustee for it or any substantial part of its assets; or Lessee takes any corporate action to authorize any of the actions set forth above; or

E.    The seizure or nationalization of Lessee or a material part of Lessee's assets by any government or any governmental instrumentality; or

F.    A default by a guarantor under the terms of any instrument pursuant to which a third party is guaranteeing the obligations of Lessee hereunder;

then in any such event:

(i) Lessee's rights to possession of all Equipment will terminate and TAL will have the right to take immediate possession of all Equipment, and any damages occasioned by any taking of possession are hereby specifically waived by Lessee;

(ii) If Equipment is on lease for a stated term, the present value of the entire unpaid balance of the rent for the entire term of the lease will forthwith become due and payable. To calculate the present value, the interest rate used shall be the six-month United States Treasury Bill rate as of the date of the applicable lease addenda;

(iii) TAL will have the right to rent Equipment or any portion thereof to such persons and under such terms as TAL may elect and after deducting all costs and expenses incurred in connection therewith, apply any rent received to the rent due from Lessee to TAL hereunder by acceleration or otherwise; and

- 4 -

(iv)   Lessee will pay to TAL all reasonable attorneys' fees and expenses TAL incurred in enforcing its rights hereunder.

The foregoing will *not* be construed to limit any and all other remedies available to TAL for a default or breach of this Lease.

**17.   WAIVERS**

A.   No express or implied waiver by TAL of any default hereunder will in any way be construed to be a waiver of any future or subsequent default of Lessee, or a waiver of any rights of TAL hereunder, or a modification of any of the terms of this Lease or any extension or enlargement of Lessee's rights hereunder.

B.   If Lessee is owned, directly or indirectly, in whole or in part, by any country or sovereign or is an authority or agency of any country or sovereign, then Lessee hereby waives any and all rights and immunities, including, without limitation, any immunities from prejudgment seizure, arrest or attachment it may have under the Foreign Sovereign Immunities Act of 1976 (28 USC §1602, et seq.) as amended or any similar type statute, law, rule or regulation of any country or sovereign.

**18.   LIENS**

If Lessee is an ocean carrier, then TAL and Lessee agree that the primary and paramount purpose of the lease of Equipment hereunder is to enable Lessee to offer international ocean carriage of containerized cargo aboard vessels owned, chartered or operated by Lessee and that such leased Equipment is essential and necessary for that service.  The parties further agree that this Lease is a maritime contract, that Equipment is furnished by TAL to vessels owned, chartered or operated by Lessee for the completion of voyages thereon, and that any Equipment furnished to Lessee hereunder is also furnished to any vessel on which the Equipment is used.  TAL is expressly relying upon the credit of the vessels, even if final delivery to the vessels is effected by Lessee.  TAL appoints Lessee as its agent to effect delivery of Equipment to the vessels.  TAL reserves and Lessee recognizes and grants to TAL an express maritime lien against said vessels and their pending freight, to secure all Lessee's obligations to TAL under this Lease.  In addition, and not in limitation of all other remedies in this Lease, TAL may execute its maritime lien on vessels owned, chartered or operated by Lessee by appropriate process in any court of any country having general admiralty and maritime jurisdiction.

**19.   FINANCIAL REPORTS**

A.   Lessee will furnish to TAL as soon as available and in any event within 45 days after the end of every quarter, Lessee's balance sheet, income statement and statement of cash flows.  Lessee will furnish to TAL as soon as available and, in any event, within 120 days after the end of each fiscal year Lessee's audited annual financial statements.

B.   All Financial Accounts and reports shall be in the English language, prepared in accordance with generally accepted accounting principles consistently applied and in the case of audited statements, certified by independent public accountants.

**20.   TERMINATION**

Unless otherwise agreed in writing, either party may terminate this Lease at any time by serving 30 days' written notice on the other party at the address written above. In the event of termination, Lessee will return all Equipment to mutually agreed upon TAL depots or absent such agreement, to the places designated by TAL.  Lessee will pay to TAL the agreed rental for Equipment, and all other conditions of this Lease will continue in effect, until all Equipment has been returned to and accepted by TAL.  Such termination will not, however, relieve Lessee from any liabilities and obligations incurred under this Lease prior to such return.  This right of termination, however, will not apply to any Equipment which Lessee has received pursuant to a written agreement or addendum to this Lease (i) which obligates Lessee to pay rental for a stated period of time, or (ii) which contains a stated term.

**21.   JURISDICTION**

TAL and Lessee hereby agree that any claim or controversy, directly or indirectly arising out of or relating to this Lease, may be litigated in the state or federal courts located in the counties of Westchester or New York in the State of New York, USA, and TAL and Lessee hereby consent to be subject to the jurisdiction of such courts.  TAL and Lessee agree to waive any objection to the venue of such courts and not to assert any defense of forum non conveniens.   TAL and Lessee agree that service of process upon the other may be made by mailing a copy (by registered or certified mail postage prepaid, or by a recognized courier service, cost prepaid), addressed to the respondent at the address shown above or by telecopier sent to the respondent's telecopier number.  If service is by mail, service will be complete seven days after such process has been mailed to the respondent.  If service is by courier service or telecopier, service will be complete when such process is actually received.  Nothing herein will affect the right of either party to serve legal process in any other manner permitted by law or affect the right of either party to bring any action or proceeding against the other party or its property in the courts of any other jurisdiction.  The laws of the State of New York, USA, will govern this Lease except that TAL and Lessee agree that the United Nation's Convention on the Sale of Goods shall not apply to this Lease.



- 5 -

**22. SUBORDINATION**

This Lease is executed by TAL in respect of the Equipment and is made subordinate to any chattel, mortgage, pledge, security agreement, conditional sales contract, lease or like agreement applicable to the Equipment to which TAL is bound.

**23. SEVERABILITY**

If, upon judicial interpretation or construction, any provision of this Lease is determined to be prohibited or limited by law, such provision will be ineffective to the extent of such prohibition or limitation, without invalidating the remaining provisions of this Lease. To this end, the provisions of this Lease are severable.

**24. FORCE MAJEURE**

TAL will be free from liability for failing to perform hereunder due to acts of God, war, labor difficulties, fire or other causes beyond its control.

**25. CONSEQUENTIAL DAMAGES**

Under no circumstances will TAL be liable hereunder for any lost profits or for special, consequential or exemplary damages, even if TAL has been advised of the possibility of such damages.

**26. WAIVER OF SECTIONS 2A-508 THROUGH 2A-522 OF THE UNIFORM COMMERCIAL CODE**

Lessee hereby waives all of its rights as a lessee under Sections 2A-508 through 2A-522 of the Uniform Commercial Code.

**27. AMENDMENTS**

This Lease, and any addenda or schedules thereto, constitute the entire agreement between the parties pertaining to the Equipment and the related subject matter. No agreements, representations, or understandings not specifically contained in this Lease will be binding upon the parties. Except as expressly provided for in this Lease, the terms, covenants, conditions and other provisions of this Lease may be changed, amended, or modified only by a written instrument that specifically purports to do so and is signed by both parties.

Lessee Initials _____.

**28. JOINT AND SEVERAL LIABILITY**

If there is more than one Lessee, each Lessee shall be jointly and severally liable for the obligations of "Lessee" under this Lease. TAL may suspend this Lease or declare this Lease to be in default if a controversy or dispute should arise between such Lessees which, in the opinion of TAL, may materially impair the performance of the terms of this Lease by such Lessees; and in such event, the remedies provided in Paragraph 16. shall apply.

**29. EFFECTIVE DATE**

This Lease will become binding upon the parties upon its acceptance and execution by TAL at its office set forth above.

**30. PARAGRAPH HEADINGS**

The paragraph headings in this Lease are for convenience only and will not be deemed to alter or affect any provision hereof.

**IN WITNESS WHEREOF**, the parties have caused this Lease to be signed by their duly authorized officers this 1st day of _____, 2009.

ACCEPTED AT PURCHASE, NEW YORK, USA,
**TAL INTERNATIONAL CONTAINER CORPORATION**

By:_____     By:_____

_____     _____
(Type name and title of signing officer)          (Type name and title of signing officer)

Rec.#
S:\contracts\contain\mla.doc

January 1, 2009

Gentlemen:

This letter is to clarify TAL's policy concerning the lessee's responsibility when a unit of equipment on lease is lost, destroyed or returned damaged beyond repair.

Our standard Master Lease Agreement states that the lessee is responsible for the replacement value (i.e., depreciated stated value or stated value) as determined by TAL.

The lessee will be charged a sum based upon stated values attached and as amended, from time to time, normally on January 1st each year.

| | Circumstances | Charge |
|---|---|---|
| A) | Lost, Stolen or Destroyed Through <u>Documented Accident</u> | Depreciated Stated Value |

A documented accident is one where TAL is supplied with a police report, ship's log, etc. or other acceptable documentation.

| B) | Undocumented Losses and Avoidable Risks | Stated Value |
|---|---|---|

Risks are avoidable when TAL equipment has suffered a loss (a) in an area of war or civil strife, or (b) in an area where, in the opinion of TAL, the control and safety of the equipment was not reasonably maintained.

### <u>POLICY REGARDING EQUIPMENT RETURNED DAMAGED BEYOND REPAIR</u>

The lessee will be charged the repair cost up to a maximum charge based upon stated values attached amended from time to time, normally on January 1st each year.

| Equipment Status | Charge |
|---|---|
| Returned to TAL Depot Damaged Beyond Repair | Depreciated Stated Value |

### <u>EQUIPMENT VALUES</u>

Stated Value is the average cost, by type, incurred to acquire and place new equipment in our fleet.

Depreciated Stated Value is the Stated Value of the lost equipment depreciated to not less than 50 percent of the Stated Value.
a. Equipment, with the exception of Chassis and Tanks, will be depreciated at 5 percent per annum.
b. Chassis and Tank equipment will be depreciated at 4 percent per annum.

<u>STATED VALUES and DEPRECIATED STATED VALUES FOR 2009 ARE ATTACHED TO THIS LETTER</u>

TAL recognizes that losses are regrettable, generally unpredictable and work to no one's advantage. TAL feels that the above system for settling a loss is fair. It distinguishes between those losses which are wholly fortuitous and those that are avoidable. We trust that you concur.

Yours truly,
TAL International Container Corporation