Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Counsel for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                            Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,              Case Nos. 09-78585 (AST)
                                                            09-78584 (AST)
                                                            09-78589 (AST)
                                                            09-78586 (AST)
                                                            09-78587 (AST)
                                                            09-78588 (AST)
                                                            09-78590 (AST)
                        Debtors.
-------------------------------------------------------x  (Jointly Administered)

## SUPPLEMENTAL MEMORANDUM OF LAW OF
## GLOBAL CONTAINER LINES LTD, ET. AL.

# TABLE OF AUTHORITIES

**Cases**

*In the Matter of Executive Technology Data Systems*, 76 B.R. 276, 282 (Bankr. E.D. Mich. 1987) .................................................................................................................... 4,6

*In re Rudaw/Empirical Software Products Ltd.*, 83 B.R. 241, 246 (Bankr. S.D.N.Y. 1988)........4

*In Re Alongi*, 272 B.R. 148, 153 (Bankr. D. Md. 2001)( ............................................................. 6

*Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1048 (4th Cir. 1985)..........................................................................................................................6

*In Re Herr*, 61 B.R. 252, 254 (Bankr. E.D. Pa 1986). ................................................................. 8

*Bessette v. Avco Fin Servs., Inc.*, 230 F.Ed 439 (1st Cir. 200o), cert. denied, 532 U.S. 1048, 121 S.Ct 201, 149 L.Ed. 2d 1018 (2001). ............................................................................... 9

**Statutes**

28 U.S.C. § 157(b)..........................................................................................................................2

28 U.S.C. §§ 1408 and 1409..........................................................................................................2

28 U.S.C. §§ 157 and 1334............................................................................................................2

11 U.S.C. § 1107 (2009).................................................................................................................2

11 U.S.C. § 1108 (2009).................................................................................................................2

11 U.S.C. § 105 (2009)................................................................................................................2,8

11 U.S.C. § 365 (2009)................................................................................................... 1,2,5,7,8,9

11 U.S.C. § 502 (2009)..............................................................................................................2,5,9

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................................................................. 2

II. STATEMENT OF FACTS ........................................................................................ 2

III. ARGUMENT ............................................................................................................. 4

A. As A Matter Of Law, Section 365 Of The Bankruptcy Code Enables The Debtors To Reject The Container Leases Without Incurring Any Ongoing Or Future Payment Obligations Under The Rejected Agreements And Provides The Container Lessors Sole Remedy For The Debtors Breach ............................................................. 4

B. The Court Should Not Allow The Container Lessors To Compel The Debtors Specific Performance Of Their Obligations Under The Rejected Leases To Facilitate The Return Of The Containers ................................................................................. 6

C. The Container Lessors Cannot Cite To A Single Authority For The Proposition That The Debtors Should Use Funds From The Estates To Pay Costs Associated With Non Debtor Property For The Benefit Of Counterparties To Equipment Leases That Have Been Rejected By The Debtors ................................................................................. 7

D. The Container Lessors Equitable Arguments Under Section 105 Of The Bankruptcy Code Must Also Fail Because The Terms Of The Parties Leases And The Express Provisions of Section 502 Of The Bankruptcy Code Provide An Adequate Remedy At Law For The Container Lessors, The Filing Of A Claim Against The Debtors ... 8

IV. CONCLUSION ....................................................................................................... 11

Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Counsel for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                                  Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,                    Case Nos. 09-78585 (AST)
                                                                  09-78584 (AST)
                                                                  09-78589 (AST)
                                                                  09-78586 (AST)
                                                                  09-78587 (AST)
                                                                  09-78588 (AST)
                                                                  09-78590 (AST)
                        Debtors.
------------------------------------------------------x  (Jointly Administered)

## SUPPLEMENTAL MEMORANDUM OF LAW OF
## GLOBAL CONTAINER LINES LTD, ET. AL.

Global Container Lines Ltd., et al., debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Debtors")[1] by their counsel Cullen and Dykman LLP, submit the following supplemental memorandum in support of their position that the Court should not compel the Debtors to expend funds of their estates to pay certain storage costs to enable non debtor third parties (the "Container Lessors")[2] to obtain personal property for the benefit of the Container Lessors because the non debtor property was subject to personal property leases that have been rejected by the Debtors pursuant to Sections 365 (d), (g) and (p) of the United States

---

[1] The Debtors in these chapter 11 cases are: Global Container Lines Limited, Shiptrade, Inc., GCL Shipping Corp, Redstone Shipping Corp., Gilmore Shipping Corp., Global Progress, LLC and Global Prosperity, LLC.

[2] The Container Lessors include, but are not limited to, Textainer Equipment Management ("TEM"), (U.S) Limited TransAmerica Leasing ("TAL"), GESEACO ,Container Applications Limited ("CAI") and Triton Container

1

Bankruptcy Code (the "Bankruptcy Code"). For the reasons set forth below, the Debtors respectfully submit that the Court should not compel the Debtors to make payments to third party depot and port authorities for the benefit of the Container Lessors to facilitate the return of non debtor property because (i) such payments are contrary to the purpose and provisions of Section 365 of the Bankruptcy Code which allows a debtor to reject burdensome leases or executory contracts without incurring any ongoing or future payment obligations after rejection except through the claims process set forth in Section 502 of the Bankruptcy Code (ii) such payments are basically disguised superpriority administrative claims pursuant rejected leases that Debtors have determined, in their business judgment, did not provide any benefit to the Debtors' respective estates.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b).

## II. PROCEDURAL BACKGROUND

1. On November 11, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

2. The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

International Limited.

3. By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

4. On January 29, 2009, the United States Trustee appointed an official committee of unsecured creditors in these cases.

5. On or about December 7, 2009, the Debtors filed their omnibus motion to reject certain executory contracts and unexpired leases dated December 7, 2009 (the "Motion"). Pursuant to the Motion, the Debtors sought to reject certain container leases because (i) the Debtors had determined in their business judgment that the leases were not necessary to the Debtors' reorganization efforts and (ii) the Debtors sought to prevent the accumulation of potential administrative expenses against the Debtors' estates.

6. On December 18, 2009, TAL filed its objection to the Motion (the "TAL Objection"). Pursuant to the TAL Objection, TAL sought, among other things, to compel the Debtors to make payments to foreign terminal and depot owners for any pre-petition and post-petition amounts due and owing the owners from the Debtors to enable TAL to recover its containers without opposition from the owners.

7. On December 18, 2009, Textainer also filed an objection (the "Textainer Objection, and together with the TAL Objection, the "Objections") to the Debtors' Motion seeking substantially the same relief sought by TAL in the TAL Objection.

8. On December 22, 2009, the Court held a hearing on the Motion and the Objections. After hearing oral argument by counsel for TAL, Textainer and the Debtors, the Court directed the parties to file supplemental briefs in support of their respective positions. [3]

### III. Argument

A. **As A Matter Of Law, Section 365 Of The Bankruptcy Code Enables The Debtors To Reject The Container Leases Without Incurring Any Ongoing Or Future Payment Obligations Under The Rejected Agreements And Provides The Container Lessors Sole Remedy For The Debtors' Breach**

The Debtors rejection of the Container Lessor's leases acts as a breach that (i) allows the Debtors to refuse to perform any remaining obligation under the leases that are burdensome and (ii) requires the Container Lessors to file a claim against the Debtors' respective estates for any costs or damages associated with the Debtors' breach of the Container Lessors' personal property leases.

In that regard, Section 365 of the Bankruptcy Code permits a debtor to refuse to perform an executory obligation if the debtor determines it would be burdensome to do so, and thus 'denies the right of a contracting creditor to require the bankrupt estate to specifically perform the then executory provisions of the contract.'" *In the Matter of Executive Technology Data Systems*, 76 B.R. 276, 282 (Bankr. E.D. Mich. 1987)(citations omitted). Furthermore, a debtor's rejection of an executory contract limits the creditor's claim to damages for breach of contract..." *In re Rudaw/Empirical Software Products Ltd.*, 83 B.R. 241, 246 (Bankr. S.D.N.Y. 1988). As stated on the record at the December 22, 2009 hearing, counsel for the Container Lessors does not dispute the Debtors' exercise of their business judgment to reject the leases. (See Tr. p. 23, lines 13-18). Accordingly, at the hearing the Court authorized the rejection of the leases set forth on amended Exhibit A to the Motion. (See. Tr. p. 40, lines 1-4) and the property subject to the rejected leases is no longer property of the Debtors' estates.

Given existing case law, the Container Lessors cannot seriously dispute that upon the Debtors' rejection of their leases, the Container Lessors could no longer require the Debtors to

---

[3] A true and accurate copy of the transcript of the December 22, 2009 hearing is attached hereto as Exhibit A.

perform any remaining executory provisions under their personal property leases. Those executory obligations would include the return of any containers subject to the rejected leases and/or the payment of any outstanding storage charges to facilitate the return of such containers. In that regard, Section 365 (p) of the Bankruptcy Code provides, in relevant part, that upon the rejection of a personal property lease, the leased property is no longer property of the Debtors' estates and the automatic stay provisions of Section 362 of the Bankruptcy Code no longer apply. See 11 U.S.C. 365 (2009). In effect, upon rejection, the Debtors effectively surrendered the containers subject to the leases to the Container Lessors which are no longer bound by the provisions of the automatic stay. Accordingly, the Debtors are no longer are required to perform any remaining executory obligations under the leases which would include the return of the containers and the payment of any storage charges to facilitate the containers return because the Container Lessors cannot cite to any applicable authority that contravenes the provisions of Section 365(p) of the Bankruptcy Code and allows the Container Lessors to compel the Debtors to pay the costs associated with the return of non debtor property to non debtors after their leases have been rejected by the Debtors.

The Bankruptcy Code provides an adequate remedy at law for the Container Lessors to compensate them for the Debtors breach through the claim process. Section 502 (g) of the Code allows the Container Lessors to file a claim against the Debtors' estates for any damages incurred (i) for the payment of any storage costs to get their containers back from the depots and/or (ii) any costs incurred by the Container Lessors' inability to retrieve their property pursuant to the terms of their respective leases subject to the Debtors' rights to object to such costs. In that regard, Section 502 (g) permits the Container Lessors to file a claim for any damage suffered by virtue of the Debtor rejection of their leases. However, "since the purpose of

Section 365 is to aid a financially troubled debtor, the Container Lessors' claims are converted to a prepetition claim." *Executive Technology Data Systems*, 76 B.R. at 282. In that regard, the Court should recognize that the Container Lessors are seeking to convert a pre-petition unsecured damage claim into a post-petition administrative claim by forcing the Debtors to make post-petition payments to third party depot and port owners to facilitate the return of non debtor property for the benefit of non debtors.

### B. The Court Should Not Allow The Container Lessors To Compel The Debtors Specific Performance Of Their Obligations Under The Rejected Leases To Facilitate The Return Of The Containers

To the extent the Container Lessors are seeking "specific performance" of the Debtors obligations under the rejected leases by forcing them to pay the storage charges to comply with their contractual obligations to return the containers subject to the rejected leases, that argument too must fail. The purpose of rejection is to prevent third parties from having specific performance rights against a debtor's estate. *In Re Alongi*, 272 B.R. 148, 153 (Bankr. D. Md. 2001)(rejection...is designed to preclude third parties from having specific performance rights against the estate on a contract the estate declines to assume)(citations omitted). As a practical matter, the Container Lessors are now seeking specific performance from the Debtors by asking the Court to compel the Debtors to pay the storage charges to enable the Container Lessors to obtain their property from the depot owners. The Container Lessors are effectively seeking to enforce those provisions in the rejected leases that require the Debtors to return the equipment containers subject to the leases by requiring the Debtors to pay the storage charges that will enable the containers to be returned to the Container Lessors. The Court should deny the Container Lessors' request because the Debtors' estates are no longer parties to the rejected leases so there is neither a right of specific performance against the Debtors' Estates nor a right

to recover damages against their estates, apart from the claims process. *See In re Alongi,* 272 B.R. at 154.

Additionally, specific performance is not an allowable measure of damages for breach of a contract under the Bankruptcy Code. As stated by the *Lubrizol* court, even though Section 365 of the Bankruptcy Code treats rejection as a breach, the legislative history of 365 (g) of the Bankruptcy Code makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1048 (4th Cir. 1985). "Allowing specific performance would obviously undercut the core purpose of rejection under Section 365 (a), and that consequence cannot therefore be read into congressional intent." *Id.*[4] Therefore, the Container Lessors' attempt to compel the Debtors specific performance of any payment obligations related to their leases, including, the payment of any storage charges, must be denied.

### C. The Container Lessors Cannot Cite To A Single Authority For The Proposition That The Debtors Should Use Funds From The Estates To Pay Costs Associated With Non Debtor Property For The Benefit Of Counterparties To Equipment Leases That Have Been Rejected By The Debtors

The Container Lessors' argument that the Court should compel the Debtors to pay the storage costs necessary to obtain the release of the Container Lessors' property subject to the rejected leases lacks merit. They have not cited to a single legal authority that holds a debtor should use funds of the estate to pay the costs associated with the return of non debtor property subject to a personal property lease after its rejection by the debtor. As matter of law under Section 365 (p) of the Bankruptcy Code, and as admitted by TAL's counsel at the hearing (See Tr. p. 29, 30, lines 24 and 25 and 1-6), the containers subject to those leases are no longer

---

[4] Because the rejected agreement in *Lubrizol* was an intellectual property agreement, the case was effectively overruled by the enactment of section 365(n). The enactment of section 365(n) does not detract from the *Lubrizol* court's analysis, however, and since the lease at issue here did not deal with intellectual property, this ruling remains

7

property of the Debtors' estates because the Debtors have rejected the leases. Accordingly, the Court should not force the Debtors to expend funds of their estates to obtain the release of non debtor property for the benefit of non debtor parties especially considering the Debtors have surrendered their rights, if any, to the containers pursuant to Section 365 (p) of the Bankruptcy Code absent controlling case law that compels such a result.

In that regard, the facts and legal principles at issue in the *In Re Herr* case cited by TAL in the TAL Objection are inapposite to the facts and legal principles at issue in the instant matter. *In Re Herr*, 61 B.R. 252, 254 (Bankr. E.D. Pa 1986). In *Herr*, the Court held that a landlord was entitled to an administrative expense claim because the trustee failed to surrender certain real property until several months after court had granted the trustee's motion to reject. *In re Herr*, 61 B.R. at 252. In the instant matter, the Debtors have not sought to retain the containers subject to TAL's and Textainer's lease agreements post rejection. Accordingly, unlike the estate representatives' actions in *Herr*, the Debtors have not retained any property of Container Lessors that has provided a benefit to the Debtors that could be used by those entities to justify the expenditure of property of the Debtors' estates to pay storage charges for the ultimate benefit of non debtor parties, the Container Lessors.

### D.   Any Additional Equitable Arguments Under Section 105 Of The Bankruptcy Code Must Also Fail Because The Terms Of The Parties Leases And The Express Provisions of Section 502 Of The Bankruptcy Code Provide An Adequate Remedy At Law For The Container Lessors, The Filing Of A Claim Against The Debtors

At the hearing, the Container Lessors also raised an equitable argument to justify their attempt to force the Debtors to expend funds to obtain the return of non debtor property for the benefit of the Container Lessors. (See. Tr. p. 31, lines 7-9). That argument must also fail. Section 105 of the Bankruptcy Code grants the Court broad equitable powers to preserve a

---

applicable in the case at bar like in *Ducane*.

party's rights provided for under another section of the Bankruptcy Code as long as the Court's exercise of its equitable powers does not alter other substantive rights under the Bankruptcy Code. See *Bessette v. Avco Fin Servs., Inc.*, 230 F.Ed 439 (1st Cir. 200o), cert. denied, 532 U.S. 1048, 121 S.Ct 201, 149 L.Ed. 2d 1018 (2001).

In the instant matter, Sections 365 (d) (g) and (p) and 502 (g) of the Bankruptcy Code govern the parties substantive rights regarding the Debtors performance of their contractual obligations to the Container Lessors and the Container Lessors' sole remedy for the Debtors' breach of the personal property leases upon rejection. 11 U.S.C. §§ 365 and 502 (2009). As set forth above, Section 365 of the Bankruptcy Code provides that the Debtors have no future or specific performance obligations under a personal property lease that has been rejected pursuant to the Debtors' business judgment. 11 U.S.C. § 365 (2009). Those future performance obligations would include the payment of any storage costs to the depot owners post rejection that were required to obtain the return of the Container Lessors' property for the benefit of the Container Lessors.

Section 502 (g) of the Bankruptcy Code provides the Container Lessors with an adequate remedy at law, a claim against the Debtors for damages, for any costs incurred by the Container Lessors when retrieving their property from the storage depots and/or port locations where the containers are currently being stored. See 11 U.S.C. § 502 (g) (2009). Accordingly, Container Lessors remedy under applicable statutory authority is not to compel the Debtors to use estate funds to obtain non debtor property for the benefit of non debtors; rather, the Container lessors can file a claim against the Debtors estates for any damages incurred as a result of the Debtors decision not to perform any future obligations related to the rejected leases, including the payment of storage costs, subject to the Debtors right to object to such claims pursuant to the

terms of the Bankruptcy Code.

The various Container Lessors' own documents anticipated that the Debtors may be unable to return all of their equipment containers because the leases provided for such a contingency with damage clause. In that regard, counsel to the various Container Lessors did not deny at the December 22, 2009 hearing that their own documents include damage provisions that will enable the Container Lessors' to quantify their claims against the Debtors. Accordingly, the Court should decline to exercise its equitable powers under Section 105 of the Bankruptcy Code for the benefit of sophisticated, non debtor parties who understood the inherent risks of entering into a business relationship with an international shipping company as evidenced by the plain, express terms of the contractually bargained for damages provisions of their respective leases.

Finally, any equitable argument requires the Court to balance the equities which clearly favor the Debtors over the Container Lessors in the instant matter. The Debtors owe approximately $765,000[5] in storage charges to the various depot owners and port authorities where the Container Lessors' non debtor property is currently stored. Accordingly, the Court should balance the equity of compelling the Debtors expenditure of estate funds in the amount of approximately $765,000 to enable sophisticated non debtor parties to obtain non debtor property when such parties have already provided contractual mechanisms for quantifying their claims against the Debtor in their respective leases when the Container Lessors were to obtain the return of their personal property against the Debtors need to conserve scarce estate resources for the benefit of all their creditors.

---

[5] Pursuant to the Court's direction at the December 22, 2009 hearing, the Debtors shall provide the Container Lessors with copies of all invoices, bills and statements of accounts which they have received from the various third party depot owners and port authorities contemporaneously with the filing of this memorandum of law. The figure of $765,000 was calculated based upon the invoices provided to the Debtors by the various third parties and the Debtors reserve all of their rights to dispute the validity of such charges pursuant to the claims process at a later date.

## Conclusion

For all the reasons set forth herein, the Court should deny the Container Lessors' request to compel the Debtors to use funds of the Debtors' estates for the payment of the costs associated with obtaining the return of non debtor property for the benefit of non debtor parties and to the detriment of the Debtors respective estates.

Dated: Garden City, New York
January 6, 2010

                                        CULLEN AND DYKMAN LLP
                                        Counsel to Debtors and Debtors in Possession

                              By       /s/ C. Nathan Dee
                                        Matthew G. Roseman (MR1387)
                                        C. Nathan Dee (CD 9703)
                                        100 Quentin Roosevelt Boulevard
                                        Garden City, New York 11530
                                        (516) 357-3700