LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
516. 826.6500
Gary F. Herbst, Esq.
Adam P. Wofse, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,           Case Nos.    09-78585-AST
                                                                                09-78584-AST
                                                                                09-78589-AST
                                                                                09-78586-AST
                                                                                09-78587-AST
                                                                                09-78588-AST
                                                                                09-78590-AST

                                                                            (Jointly Administered)
                                        Debtors.
------------------------------------------------------------x

**RESPONSE AND MEMORANDUM OF LAW OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS CONCERNING DEBTORS' MOTION TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND <u>RESPONSE THERETO OF CONTAINER APPLICATIONS LIMITED</u>**

The Official Committee of Unsecured Creditors, by its proposed counsel, LaMonica Herbst & Maniscalco, LLP hereby submits its response to (a) the Debtor's motion (the "Motion") to reject certain executory contracts and/or unexpired leases, under Sections 105 and 365 of the United States Bankruptcy Code (the "Bankruptcy Code"), and (b) the response of Container Applications Limited ("CAI"), and respectfully represents and alleges as follows:

1.  On November 11, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under the Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

1

2. The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. By Order dated on or about November 13, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

4. On December 29, 2009, the United States Trustee appointed three (3) entities to the Official Committee of Unsecured Creditors (the "Committee"), pursuant to Section 1102(a)(1) of the Bankruptcy Code, to represent the interests of the unsecured creditors of the Debtors' estates. Thereafter, the Committee selected LH&M as counsel to represent the Committee in these Chapter 11 cases, and an application to approve the retention of LH&M as counsel to the Committee is pending.

5. On or about December 7, 2009, the Debtors filed their omnibus Motion to reject certain executory contracts and unexpired leases. Pursuant to the Motion, the Debtors sought to reject certain container leases because (i) the Debtors had determined in their business judgment that the leases were not necessary to the Debtors' reorganization efforts and (ii) the Debtors sought to prevent the accumulation of potential administrative expenses against the Debtors' estates.

6. On January 6, 2010, CAI submitted a supplemental memorandum of law (the "CAI Response") in connection with the Debtors' Motion. CAI, in the CAI Response, asserts that the Debtors should be compelled to pay, in connection with CAI's lease (the "Lease") with the Debtors, CAI's costs associated with obtaining the release of CAI's containers from terminal and port operators based upon a theory that sounds in tort.

## THE POSITION OF THE COMMITTEE CONCERNING
## THE MOTION AND THE OBJECTIONS

7.       The Committee submits that the relief sought by CAI, as asserted in the CAI Response, should be denied. Characterizing the storage and related pre and post petition charges as a tort is misguided. Such an assertion is tantamount to artificially elevating purely pre-petition rejection damages claims to administrative claim status. As for any post-petition charges which may have accrued, CAI will not be able to demonstrate that any benefit was conferred upon the Debtors' estates.

8.       Clearly, the Debtors, in the exercise of their business judgment, have the authority under the Bankruptcy Code, with Court approval, to reject those leases which are deemed burdensome to the Debtors' reorganization and estates.

9.       Upon rejection of such Leases, pursuant to Section 502(g) of the Bankruptcy Code, damages which flow from such rejection are exclusively pre-petition unsecured claims in the case. As cited in the Debtor's memorandum of law, the cases of <u>In re Rudaw</u>, 83 B.R. 241 (Bankr. S.D.N.Y. 1988) and <u>Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.</u>, 756 F.2d 1043 (4th Cir. 1985) are instructive in that the only remedy as a consequence of rejection is for each container lessor to file a pre-petition claim. <u>See also</u>, Sections 365(g), 365 (p) and 502(g) of the Bankruptcy Code.

10.       Further, a Court cannot modify the priority scheme for payment of claims as prescribed by the Bankruptcy Code. Rejection does not alter or transform the substantive rights of the parties to the Lease. To do so, would be to allow such creditors to circumvent the mandates of the Bankruptcy Code, to the detriment of all of the general unsecured creditors. Unequivocally, this is a rejection damages issue, and the Code is abundantly clear how to treat

rejection damages claims in that such claims are afforded general unsecured status. If the Debtors had, in the alternative, assumed such Lease, then the rights of creditors such as CAI would likewise be clear— its claims would be cured.

11.     The Debtors' statutory rights to reject a contract or lease cannot be qualified by requirements not set forth in the Bankruptcy Code. In re Ames Dept. Stores, Inc., 306 B.R. 43, 51 (Bankr. S.D.N.Y. 2004). Further, the Debtors cannot be forced to comply with burdensome contractual obligations that may have formed part of the rationale for rejection in the first instance. Id. The Court in Ames held:

> the ability to reject burdensome post-petition obligations is one of the most fundamental rights of a trustee or debtor-in-possession (and thus a creditor body generally) under the Bankruptcy Code. It would frustrate the entire purpose of rejection if, in order to reject and thereby be relieved of a burdensome executory contract, the debtor were required, as a condition to doing so, to comply with one of the very aspects of the agreement that is burdensome." Id. at 52.

12.     Additionally, to obtain administrative expense priority, Section 503(b)(1)(A), requires a showing that the actual and necessary costs and expenses incurred were beneficial to the Debtors' estates. See, NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984). This standard is to be narrowly construed. Ames, 306 B.R. at 54, (citing, Amalgamated Ins. Fund v. McFarlin's Inc., 789 F.2d 98, 101 (2d Cir. 1986)). Because to allow a particular claim administrative priority status necessarily deprives the remaining general unsecured creditor body of its fullest distribution. In re Mammoth Mart, Inc. 536 F.2d 950, 953 (1st Cir. 1976). Even though the rejection itself occurs post-petition, such event does not warrant granting priority treatment for a claim. See, Amalgamated, 789 F.2d at 101. The container lessors have not satisfied their burden to any entitlement to payment of a priority claim. See, Drexel Burnham Lambert Group Inc., 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991).

13. To compel the Debtors to pay these charges in full, post-petition, essentially elevates such pre-petition claims to administrative claim status in contravention of the Bankruptcy Code. CAI cannot circumvent the type of, or priority scheme for, claims established by the Bankruptcy Code. To allow such circumvention would be to the detriment of all general unsecured claimants. Further, the asserted "tort" cited by CAI concerns acts of a debtor's alleged negligence. Here, however, the actions of third party port and/or terminal operators are the reason that CAI may or may not be able to easily retrieve its property.

14. As stated by the Court in Reading Company v. Brown, 391 U.S. 471 (1968), certain torts may rise to the level of actual and necessary costs of administration of an estate. In Reading, a receiver's negligence resulted in a fire to property which resulted in damages. Based upon equitable considerations, the Court held that such charges should be considered actual and necessary to the administration of the case, thus warranting that those charges be paid even if it was to the detriment of the other unsecured creditors. Reading, 391 U.S. at 482-83.

15. Whereas, here, equity would militate in favor of a holding that the charges are not the result of an intentional or unintentional tort, but rather a natural but unfortunate consequence within the international shipping marketplace. Each party should receive the benefit of its bargain. The Lease is an international shipping container lease. The lease parties are intimately familiar with the risks and benefits of international trade associated with such a Lease. Presumably, prices and costs associated with the Lease are set accordingly. In the context of international trade, CAI as a container lessor must know the inherent risks which relate to its property. To shift this burden onto the Debtors' estates, and more precisely, to the general unsecured creditor body, would be inequitable, under a tort theory, or otherwise. The Debtors should be afforded a full and fair opportunity to reorganize so that maximum recovery may be

realized for the unsecured creditors in accordance with the express provisions of the Bankruptcy Code. If Congress had intended otherwise, it would have legislated accordingly.

16. Based upon the foregoing, the relief sought by CAI should be denied. It would be inequitable and in contravention of the letter and spirit of the Bankruptcy Code to allow the desires or needs of CAI to trump the rights of the rest of the general unsecured creditors in these cases.

**WHEREFORE,** the Committee requests that the Court deny the relief sought by CAI, and grant such other and further relief as the Court deems just and proper.

Dated: Wantagh, New York
January 20, 2010

**LaMONICA HERBST & MANISCALCO, LLP**
Proposed Counsel to the Committee

By: /s/ Adam P. Wofse
Adam P. Wofse, Esq.
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500

M:\Documents\Company\Cases\Global Container Lines Ltd et al.,\response container lessors\cmte response CAI.doc