CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Counsel for Debtors and Debtors-in-Possession

Hearing Date and Time: February 24, 2010 at 2:00 p.m.
Objection Date and Time: February 18, 2010 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                    Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,      Case Nos. 09-78585 (AST)
                                                    09-78584 (AST)
                                                    09-78589 (AST)
                                                    09-78586 (AST)
                                                    09-78587 (AST)
                                                    09-78588 (AST)
                                                    09-78590 (AST)
                    Debtors.
-----------------------------------------------------------x

**NOTICE OF STIPULATED AND AGREED TO ORDER BETWEEN GLOBAL CONTAINER LINES LTD, KEYBANK NATIONAL ASSOCIATION AND KEY EQUIPMENT FINANCE INC. WITH RESPECT TO (I) MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362 (d) (1) and (2) OR, IN THE ALTERNATIVE, ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §361 AND (II) THE ALLOCATION OF SALE PROCEEDS FROM THE PUBLIC SALE OF THE M/V <u>GLOBAL PRECISION PURSUANT TO 11 U.S.C. 506 (c)</u>**

PLEASE TAKE NOTICE, that pursuant to the Order of the United States Bankruptcy Court dated January 6, 2010 (the "Sale Order"), on February 24, 2010 at 2:00 p.m. (New York City Time) the above referenced debtors shall present for signature to the Honorable Alan S. Trust, United States Bankruptcy Judge a stipulated and agreed to Order (the "Stipulated Order") between the Debtors, Keybank National Association ("KeyBank") and Key Equipment Finance

1

("KEF", and together with KeyBank, "KEY") resolving the parties disputes related to (i) Keybank's motion for relief from the provisions of the automatic stay or, in the alternative, for adequate protection payments from the Debtors dated December 4, 2009 and (ii) the allocation and turnover to KEY of certain sale proceeds received by the Debtors from the public sale of the M/V Global Precision pursuant to the Sale Order. A copy of the Stipulated Order is attached hereto as Exhibit A and additional copies of the document may be obtained from the undersigned counsel upon written request.

PLEASE TAKE FURTHER NOTICE, that any objections to the Stipulated Order, if any, shall be filed as follows: (A) (i) Through the Bankruptcy Court's electronic filing system in accordance with General Order N-182, which may be accessed through the internet at the Bankruptcy Court's website: www.nyeb.uscourts.gov using Netscape Navigator software version 3.0 or higher; (ii) portable document format (PDF) using Adobe Exchange software for conversion; or (B) For parties unable to file electronically, such parties shall file the objection in PDF format on a diskette in an envelope with a case name, case number, type and title of document, document number to which the objection refers, and the file name on the outside of the envelope; or (C) For parties unable to file electronically or use PDF format, those parties shall submit the objection on diskette in either Word, Word Perfect of DLS text (ASCII) format. An objection filed by a party with no legal representation shall comply with section (B) or (C) as set forth in this paragraph.

PLEASE TAKE FURTHER NOTICE that a hard copy of an objection, if any, (a) shall be delivered directly to chambers of the Honorable Alan S. Trust located at 290 Federal Plaza, Courtroom 960, Central Islip, New York, 11722 on or before February 18, 2010 at 4:00 p.m. and (b) shall also be served upon (i) Debtors' counsel, Cullen and Dykman LLP, 100 Quentin

Roosevelt Boulevard, Garden City, New York 11530, Attention: Matthew G. Roseman, Esq.; (ii) the Office of the United States Trustee, 290 Federal Plaza, Central Islip, New York, 11722, Attention: Stan Yang, Esq.; (c) counsel to the National Bank of Pakistan, Watson, Farley & Williams LLP, 1133 Avenue of the Americas, 11th Floor, New York, New York, 10036 , Attn: Alfred E. Yudes, Jr. (d) counsel KEY, 50 Beaver Street, Albany, New York 12207 attn: Paul Levine, Esq. (e) counsel to the Official Committee of Unsecured Creditors, LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793 attn: Adam Wofse, Esq. and (e) filed with the Clerk of the Bankruptcy Court located at 290 Federal Plaza, Courtroom 960, Central Islip, New York, 11722 so as to be received no later than February 18 at 3:00 p.m.

Dated: Garden City, New York
   January 29, 2010

              CULLEN AND DYKMAN LLP
              Attorneys for Reorganized Debtors

         By  /s/C. Nathan Dee
            Matthew G. Roseman (mr1387)
            C. Nathan Dee (CD 9703)
            100 Quentin Roosevelt Boulevard
            Garden City, New York 11530
            (516) 296-9106

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                              Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,                Case Nos. 09-78585 (AST)
                                                              09-78584 (AST)
                                                              09-78589 (AST)
                                                              09-78586 (AST)
                                                              09-78587 (AST)
                                                              09-78588 (AST)
                                                              09-78590 (AST)
                        Debtors.
--------------------------------------------------------------x

**STIPULATED AND AGREED TO ORDER BETWEEN GLOBAL CONTAINER LINES LTD, KEYBANK NATIONAL ASSOCIATION AND KEY EQUIPMENT FINANCE INC. WITH RESPECT TO (I) MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362 (d) (1) and (2) OR, IN THE ALTERNATIVE, ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §361 AND (II) THE ALLOCATION OF SALE PROCEEDS FROM THE PUBLIC SALE OF THE M/V GLOBAL PRECISION PURSUANT TO 11 U.S.C. 506 (c)**

This stipulated and agreed to Order (the "Agreement") is entered into on the 29th day of January, 2010 by and between Global Container Lines Ltd., et al., debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Debtors")[1], Keybank National Association ("KeyBank") and Key Equipment Finance ("KEF", and together with KeyBank, "KEY"):

WHEREAS, on November 11, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court"); and

---

[1] The Debtors in these chapter 11 cases are: Global Container Lines, Ltd ("GCL") , Shiptrade, Inc. ("Shiptrade"), GCL Shipping Corp ("GCLS"), Redstone Shipping Corp., Gilmore Shipping Corp. ("Gilmore"), Global Progress, LLC and Global Prosperity, LLC.

WHEREAS, the Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code; and

WHEREAS, on November 17, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

WHEREAS, prior to the Petition Date, Gilmore had entered into a $5,000,000 loan facility with KeyBank, as amended (the "Key Loan") which was secured by a first preferred security interest on the M/V Global Precision (the "Precision") and which was guaranteed by GCL, GCLS and Shiptrade; and

WHEREAS, on or about November 30, 2009, the Debtors filed their schedules and statement of financial affairs in their respective cases; and

WHEREAS, Gilmore has listed Keybank as a secured creditor on Schedule D of its Schedules holding a disputed claim in the amount of $5,195,000[2] pursuant to the Key Loan; and

WHEREAS, Gilmore has also listed approximately 27 creditors on Schedule D of its Schedules holding secured claims against Gilmore in the aggregate amount of approximately $5,878,000 which amount includes the amounts due and owing KeyBank pursuant to the Key Loan; and

WHEREAS, the Debtors have asserted that the creditors listed on Schedule D of Gilmore's Schedules represent payment obligations to vendors, crew members and port authorities which provided services and supplies to the Precision prior to the Public Sale (defined below); and

---

[2] The Debtors reserve all their rights to dispute the validity, priority and amount of KeyBank's claim against their respective estates.

WHEREAS, KeyBank has reserved all of its rights to contest the validity, amount and priority of any liens asserted against the Precision's sale proceeds and further maintains that the proceeds constitute KeyBank's collateral under the terms of the Key Loan and applicable provisions of the Bankruptcy Code; and

WHEREAS, on December 4, 2009, KeyBank filed its motion for relief from the provisions of the automatic stay or, in the alternative, for adequate protection payments from the Debtors for certain containers and related stevedoring equipment (the "KeyBank Motion") based upon certain loan, security and related financing documents (the "KeyBank Loan Documents") all as further described in the KeyBank Motion; and

WHEREAS, on December 10, 2009, the Debtors filed their motion for authority (i) to conduct a public sale (the "Public Sale") of the Precision and (ii) to retain a broker to conduct the Public Sale; and

WHEREAS, on January 6, 2010, after notice and a hearing held on December 22, 2009, the Court entered an Order (the "Sale Order") authorizing the Debtors to conduct the Public Sale of the Precision to Marianna Shipping Limited (the "Purchaser"); and

WHEREAS, on or about January 14, 2010, the Debtors completed the Public Sale of the Precision to the Purchaser for the sum of approximately $1,501,734[3] (the "Sale Proceeds"); and

WHEREAS, pursuant to the terms of the Sale Order, approximately $373,214 of the Public Sale Proceeds were used to satisfy Gilmore's obligations to certain maritime lien holders for services rendered to the Precision prior to the Public Sale in order to effectuate the sale to the Purchaser thereby reducing Gilmore's Schedule D alleged liabilities; and

WHEREAS, the Debtors have asserted that the additional sum of approximately $244,428.28 ("Reimbursement Costs") is due and owing to the Debtors from the Precision's sale

---

[3] The $1,501,734 of sale proceeds is net of any brokers' commission related to the Public Sale pursuant to the Sale Order.

proceeds to reimburse them for certain costs including, but not limited to, additional crew wages, fresh water, provisions and legal fees incurred by Gilmore in connection with the Public Sale of the Precision for the ultimate benefit of KeyBank and any other secured creditors which had asserted liens against the Precision; and

WHEREAS, the Debtors have asserted that the additional sum of approximately $93,747.71 (the "Insurance Costs") should be recovered by the Debtors from the Precision's Sale Proceeds to provide for the payment of certain engineering professionals, surveyors and insurance policies necessary to maintain the Debtors' insurance policies and to preserve Gilmore's claim under its insurance policy for the total loss of the Precision for the benefit of KeyBank;

WHEREAS, the Debtors have asserted that the sum of $350,000.00 from the Precision's sale proceeds should be placed into a claims reserve until such time as the Court has made a final determination regarding any and all remaining claims asserted against the sales proceeds after proper notice and an opportunity to be heard regarding such claims has been given to all of Gilmore's creditors and parties in interest; and

WHEREAS, KeyBank does not dispute the Debtors' entitlement to recover the Reimbursement Costs and the Insurance Costs from the Sale Proceeds; and

WHEREAS, KeyBank has also reserved all of its rights to dispute the priority, validity and amount of any claims against the Sale Proceeds asserted by any creditor or party in interest except for the Debtors' Reimbursement Costs and Insurance Costs as set forth further herein; and

WHEREAS, the Parties have entered into arms length and good faith negotiations seeking to resolve their respective disputes regarding the ultimate disposition of the Sale Proceeds and have determined and agreed to enter into this Agreement to avoid the uncertainties

and costs of litigation regarding the allocation of the Sale Proceeds and the resolution of other issues respecting KEY's collateral;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, subject to the Court's approval, as follows:

1. The Debtors shall transfer the sum of $440,344.49 (the "Surplus Funds") from the Sale Proceeds to KeyBank within two (2) business days of the entry of a final Order of the Court approving the terms of this Stipulation.

2. The Surplus Funds shall be subject to later disgorgement by KeyBank pursuant to an Order of the Court, should the Court ultimately determine that another creditor or party in interest holds a lien against the Sale Proceeds which is senior to KeyBank's lien in the Surplus Funds.

3. The Debtors shall be paid the Reimbursement Costs from the Sale Proceeds within two (2) business days of the entry of a final order of the Court approving the terms of this Stipulation.

4. The Debtors shall pay the Insurance Costs to the relevant parties from the sale proceeds within two (2) business days of the entry of a final order of the Court approving the terms of this Stipulation.

5. Gilmore shall place the balance of the Sale Proceeds in the amount of $350,000 into a reserve (the "Claims Reserve") for the benefit of any creditors asserting a valid, secured claim against Gilmore pursuant to a lien that is senior to Keybank's lien in the Sale Proceeds. Any creditor asserting such a claim must timely file a valid proof of claim with the Bankruptcy Court by the applicable bar date for Gilmore (the "Gilmore Bar Date"). In the event that a creditor or party in interest timely files a secured claim against Gilmore by the Gilmore Bar Date

that is alleged to be senior to Keybank's Claim in the Sale Proceeds, then Gilmore shall withhold sufficient funds in the Claims Reserve from any further distribution to KeyBank based upon the face amount of the timely filed claim pending the final allowance or disallowance of such a claim by the Bankruptcy Court. If no creditor or party in interest timely files a valid proof of claim asserting a secured claim against Gilmore that is alleged to be senior to KeyBank's secured claim in the Sale Proceeds, then Gilmore shall pay the funds in the Claims Reserve to KeyBank no later than two (2) business days after the Gilmore Bar Date.

6. With respect to that part of the KeyBank Motion that requests relief from the automatic stay for KEF to pursue claims to the proceeds of sale of the ship Global Patriot in the Courts of South Africa, as Ordered by the Bankruptcy Court on December 22, 2009, the Motion is granted.

7. With respect to that portion of the KeyBank Motion that requests relief from the automatic stay for KeyBank to pursue claims with respect to insurance coverage arising from events concerning the Precision and the right to receive payment of insurance recoveries resulting there from, subject to the Debtors' rights, if any, to assert a claim against a portion of the insurance proceeds and KeyBank's rights to object to any such claim, the Motion is granted.

8. With respect to that portion of the KeyBank Motion that requests relief from the automatic stay or, in the alternative, adequate protection with respect to KeyBank's security interest in certain containers and stevedoring equipment more particularly set forth in exhibits to the KeyBank Motion, the Debtors and KeyBank agree to the terms of settlement[4] set forth inSchedule "A" attached hereto.

---

[4] Since the terms of this Stipulation are subject to Court approval, the Debtors shall make their monthly payments for January, 2010 and February, 2010 in accordance with Schedule A in the amount of $11,960.21 each beginning on March 1, 2010.

1/29/2010 3:18:20 PM v5

9. This Agreement is subject to the approval of the Court and shall be of no force and effect unless and until approved by the Court.

10. Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Agreement.

11. This Agreement constitutes the complete and exclusive agreement of the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, oral or written, between the Parties with respect to such subject matter.

12. Subject to an order of the Court approving this Agreement, this Agreement shall be binding upon and inure to the benefit of the Parties, and their respective administrators, representatives, officers, directors, employees, affiliates, successors and assigns.

13. This Agreement may only be modified by a writing signed by the Parties.

14. This Agreement shall be governed by and construed in accordance with the substantive law of the state of New York or the otherwise applicable law as set forth in the KeyBank Loan Documents, and shall have the force and effect of an instrument executed and delivered under seal under the law of the state of New York.

15. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument. This Agreement may be executed by facsimile.

[THIS SPACE INTENTIONALLY LEFT BLANK]

16. The Court shall retain jurisdiction to hear any matters or resolve any disputes arising under or in connection with this Agreement.

By: /s/ Matthew G. Roseman

Matthew G. Roseman, Esq.
C/Nathan Dee, Esq. (CD9703)
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

By: /s/ Paul A. Levine

Paul A. Levine, Esq.
LEMERY GREISLER LLC
Attorneys for KeyBank National
Association and Key Equipment
Finance Inc.
50 Beaver Street
Albany, New York 12207
(518) 433-8800

## SCHEDULE "A"

**KeyBank's Secured Claim against Global Container Lines Limited:** Gilmore delivered to KeyBank its Amended and Restated Promissory Note dated May 14, 2009 in the original principal amount of $5,000,000.00 (the "Restated Note"). Among other collateral, the Restated Note was guaranteed by written guarantees of GLC Shipping Corp., Global Container Lines Limited ("GCL") dated October 12, 2007 and Shiptrade, Inc. dated May 14, 2009 (the "Guaranty"). The Restated Note was further secured by a Security Agreement dated May 14, 2009 delivered by Global Container Lines Limited pursuant to which it granted to KeyBank a security interest in specific personal property collateral in the nature of identified shipping containers and stevedoring equipment (the "Security Agreement" and "Collateral"). The security interest granted to KeyBank by Global Container Lines Limited was duly perfected by the filing of a UCC-1 financing statement in the Office of the Delaware Department of State on May 15, 2009. Global is a Delaware corporation.

**Terms of Settlement with Respect to Claim:** With respect to its obligations to KeyBank under its Guaranty and Security Agreement, GCL shall pay to KeyBank a total of $875,000.00 (the "Collateral Repayment Amount"). The Collateral Repayment Amount shall be paid as follows: (i) interest shall accrue on the unpaid principal balance of the Collateral Repayment Amount at 4% per annum; (ii) GCL shall pay interest only for one year commencing effective December 1, 2009 with monthly payments of $2,916.67 commencing January 1, 2010 and continuing on the 1st of every month thereafter through and including December 1, 2010; (iii) commencing January 1, 2011 the Collateral Repayment Amount, with interest, shall be paid in equal monthly installments of $11,960.21 in accordance with the amortization schedule attached hereto; (iv) the terms set forth herein shall be incorporated in Debtors' Plan of

Reorganization; (v) KeyBank reserves its rights to file an unsecured deficiency claim or claims as appropriate; and (vi) KeyBank reserves its rights and remedies in the event of a default hereunder.

## $11,960.21

Monthly Principal & Interest

**Amortization Schedule**

| Month | Interest | Principal | Balance |
|---|---|---|---|
| Jan, 2011 | $2,916.67 | $9,043.54 | $865,956.46 |
| Feb, 2011 | $2,886.52 | $9,073.68 | $856,882.78 |
| Mar, 2011 | $2,856.28 | $9,103.93 | $847,778.85 |
| Apr, 2011 | $2,825.93 | $9,134.28 | $838,644.57 |
| May, 2011 | $2,795.48 | $9,164.72 | $829,479.85 |
| Jun, 2011 | $2,764.93 | $9,195.27 | $820,284.58 |
| Jul, 2011 | $2,734.28 | $9,225.92 | $811,058.65 |
| Aug, 2011 | $2,703.53 | $9,256.68 | $801,801.97 |
| Sep, 2011 | $2,672.67 | $9,287.53 | $792,514.44 |
| Oct, 2011 | $2,641.71 | $9,318.49 | $783,195.95 |
| Nov, 2011 | $2,610.65 | $9,349.55 | $773,846.40 |
| Dec, 2011 | $2,579.49 | $9,380.72 | $764,465.68 |
| Jan, 2012 | $2,548.22 | $9,411.99 | $755,053.70 |
| Feb, 2012 | $2,516.85 | $9,443.36 | $745,610.34 |
| Mar, 2012 | $2,485.37 | $9,474.84 | $736,135.50 |
| Apr, 2012 | $2,453.78 | $9,506.42 | $726,629.08 |
| May, 2012 | $2,422.10 | $9,538.11 | $717,090.97 |
| Jun, 2012 | $2,390.30 | $9,569.90 | $707,521.07 |
| Jul, 2012 | $2,358.40 | $9,601.80 | $697,919.26 |
| Aug, 2012 | $2,326.40 | $9,633.81 | $688,285.46 |
| Sep, 2012 | $2,294.28 | $9,665.92 | $678,619.54 |
| Oct, 2012 | $2,262.07 | $9,698.14 | $668,921.39 |
| Nov, 2012 | $2,229.74 | $9,730.47 | $659,190.93 |

| | | | |
|---|---|---|---|
| Dec, 2012 | $2,197.30 | $9,762.90 | $649,428.02 |
| Jan, 2013 | $2,164.76 | $9,795.45 | $639,632.58 |
| Feb, 2013 | $2,132.11 | $9,828.10 | $629,804.48 |
| Mar, 2013 | $2,099.35 | $9,860.86 | $619,943.63 |
| Apr, 2013 | $2,066.48 | $9,893.73 | $610,049.90 |
| May, 2013 | $2,033.50 | $9,926.71 | $600,123.19 |
| Jun, 2013 | $2,000.41 | $9,959.79 | $590,163.40 |
| Jul, 2013 | $1,967.21 | $9,992.99 | $580,170.40 |
| Aug, 2013 | $1,933.90 | $10,026.30 | $570,144.10 |
| Sep, 2013 | $1,900.48 | $10,059.73 | $560,084.37 |
| Oct, 2013 | $1,866.95 | $10,093.26 | $549,991.12 |
| Nov, 2013 | $1,833.30 | $10,126.90 | $539,864.21 |
| Dec, 2013 | $1,799.55 | $10,160.66 | $529,703.56 |
| Jan, 2014 | $1,765.68 | $10,194.53 | $519,509.03 |
| Feb, 2014 | $1,731.70 | $10,228.51 | $509,280.52 |
| Mar, 2014 | $1,697.60 | $10,262.60 | $499,017.92 |
| Apr, 2014 | $1,663.39 | $10,296.81 | $488,721.10 |
| May, 2014 | $1,629.07 | $10,331.14 | $478,389.97 |
| Jun, 2014 | $1,594.63 | $10,365.57 | $468,024.40 |
| Jul, 2014 | $1,560.08 | $10,400.12 | $457,624.27 |
| Aug, 2014 | $1,525.41 | $10,434.79 | $447,189.48 |
| Sep, 2014 | $1,490.63 | $10,469.57 | $436,719.91 |
| Oct, 2014 | $1,455.73 | $10,504.47 | $426,215.43 |
| Nov, 2014 | $1,420.72 | $10,539.49 | $415,675.95 |
| Dec, 2014 | $1,385.59 | $10,574.62 | $405,101.33 |
| Jan, 2015 | $1,350.34 | $10,609.87 | $394,491.46 |
| Feb, 2015 | $1,314.97 | $10,645.23 | $383,846.23 |
| Mar, 2015 | $1,279.49 | $10,680.72 | $373,165.51 |
| Apr, 2015 | $1,243.89 | $10,716.32 | $362,449.19 |
| May, 2015 | $1,208.16 | $10,752.04 | $351,697.15 |
| Jun, 2015 | $1,172.32 | $10,787.88 | $340,909.26 |
| Jul, 2015 | $1,136.36 | $10,823.84 | $330,085.42 |

| | | | |
|---|---:|---:|---:|
| Aug, 2015 | $1,100.28 | $10,859.92 | $319,225.50 |
| Sep, 2015 | $1,064.09 | $10,896.12 | $308,329.38 |
| Oct, 2015 | $1,027.76 | $10,932.44 | $297,396.94 |
| Nov, 2015 | $991.32 | $10,968.88 | $286,428.06 |
| Dec, 2015 | $954.76 | $11,005.45 | $275,422.61 |
| Jan, 2016 | $918.08 | $11,042.13 | $264,380.48 |
| Feb, 2016 | $881.27 | $11,078.94 | $253,301.55 |
| Mar, 2016 | $844.34 | $11,115.87 | $242,185.68 |
| Apr, 2016 | $807.29 | $11,152.92 | $231,032.76 |
| May, 2016 | $770.11 | $11,190.10 | $219,842.66 |
| Jun, 2016 | $732.81 | $11,227.40 | $208,615.27 |
| Jul, 2016 | $695.38 | $11,264.82 | $197,350.44 |
| Aug, 2016 | $657.83 | $11,302.37 | $186,048.07 |
| Sep, 2016 | $620.16 | $11,340.05 | $174,708.03 |
| Oct, 2016 | $582.36 | $11,377.85 | $163,330.18 |
| Nov, 2016 | $544.43 | $11,415.77 | $151,914.41 |
| Dec, 2016 | $506.38 | $11,453.82 | $140,460.59 |
| Jan, 2017 | $468.20 | $11,492.00 | $128,968.58 |
| Feb, 2017 | $429.90 | $11,530.31 | $117,438.27 |
| Mar, 2017 | $391.46 | $11,568.74 | $105,869.53 |
| Apr, 2017 | $352.90 | $11,607.31 | $94,262.22 |
| May, 2017 | $314.21 | $11,646.00 | $82,616.22 |
| Jun, 2017 | $275.39 | $11,684.82 | $70,931.41 |
| Jul, 2017 | $236.44 | $11,723.77 | $59,207.64 |
| Aug, 2017 | $197.36 | $11,762.85 | $47,444.79 |
| Sep, 2017 | $158.15 | $11,802.06 | $35,642.73 |
| Oct, 2017 | $118.81 | $11,841.40 | $23,801.34 |
| Nov, 2017 | $79.34 | $11,880.87 | $11,920.47 |
| Dec, 2017 | $39.73 | $11,920.47 | $0.00 |