Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                              Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,        Case Nos. 09-78585 (AST)
                                                      09-78584 (AST)
                                                      09-78589 (AST)
                                                      09-78586 (AST)
                                                      09-78587 (AST)
                                                      09-78588 (AST)
                                                      09-78590 (AST)
                              Debtors.
------------------------------------------------------x   (Jointly Administered)

**DEBTORS' MOTION FOR ORDER (A) APPROVING PUBLIC SALE OF PROPERTY;
(B) APPROVING RETENTION OF BROKER FOR THE PURPOSE OF CONDUCTING
THE PUBLIC SALE; (D) APPROVING SALE PROCEDURES;
AND (D) GRANTING RELATED RELIEF**

TO THE HONORABLE ALAN S. TRUST,
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy

Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), Global Container Lines Ltd., et al., debtors and debtors-in-possession in

the above-captioned bankruptcy cases (the "Debtors")[1], by their attorneys Cullen and Dykman

LLP, submit this motion for an order (i) authorizing the Debtors to conduct a public sale of

certain property free and clear of liens, claims and encumbrances, with such liens, claims and

---

[1] The Debtors in these chapter 11 cases are: Global Container Lines Limited ("Global"), Shiptrade, Inc.
("Shiptrade"), GCL Shipping Corp, Redstone Shipping Corp., Gilmore Shipping Corp., Global Progress, LLC and
Global Prosperity, LLC.

encumbrances to attach to the proceeds of the sale; (ii) authorizing the retention of Vogt and Maguire Shipbroking Ltd. (the "Broker"), an internationally recognized ship broker, as broker for the purposes of conducting the public sale; (iii) approving procedures for the public sale, and (iv) granting related relief, and in connection therewith respectfully allege as follows:

## INTRODUCTION

1.      On November 11, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

2.      The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

4.      On or about December 29, 2009, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases, and the Committee has retained LaMonica Herbst & Maniscalco as its counsel.

## BACKGROUND

5.      The Debtors are full service shipping companies and related entities with shipping services operating in North America, the Mediterranean, the Middle East, East, South, and West Africa, the Persian Gulf, India, Pakistan, Mozambique and major Indian Ocean Islands.  The Debtors perform an extensive array of services in the shipping industry including many projects with governmental and international organizations and peace-keeping missions.  A detailed background of the Debtors' businesses and the reasons for the filing of the bankruptcy cases is

set forth in the Affidavit of Bijan Paksima under Local Bankruptcy Rule 1007-4 submitted on the Petition Date, and is incorporated herein by reference.

6.     One of the Debtors, Global Progress, LLC ("Progress"), is a single asset entity which holds title to the M.V. Global Progress (the "Progress"). Another of the Debtors, Global Prosperity, LLC ("Prosperity"), is also single asset entity which holds title to the M.V. Global Prosperity, (the "Prosperity"; together with the Progress, the "Vessels"). The Vessels are roll on/lift of ROLO Vessels of approximately 10,860 long tons and are currently located in the Indian Ocean.

7.     The National Bank of Pakistan ("NBP") holds first preferred ship mortgages against each of the Vessels with a claim in the aggregate of approximately $13,683,634. Each of the Vessels has an appraised value of $4,000,000 or $8,000,000 in the aggregate. Progress and Prosperity's obligations to NBP are guaranteed by Global and Shiptrade.

8.     Progress and Prosperity are experiencing significant ongoing operating losses due to the collapse of the liner trade. In addition, the Debtors traditionally have performed extensive services under contract to the United Nations. Recently, the United Nations improperly barred the Debtors from participating in U.N. tenders. While the Debtors believe that their services for the United Nations will eventually be restored, the Debtors estimate that as a result of the loss of participation in U.N. tenders, the Debtors will lose $9 million in projected gross income and $1.3 million in projected profits during the first quarter of fiscal year 2010.[2] Additionally, the Vessels lose approximately $10,000 per day when not operating under contracts with the United Nations because the Debtors are required by relevant maritime law to keep the Vessels fueled and to

_____

[2] Contemporaneously with the filing of this Motion, the Debtors have received a request for a proposal from the UN for a potential cargo movement that closes on March 1, 2010. Additionally, the Debtors have again been placed by the UN on their vendor procument list although they have yet to received official notification from the UN regarding their vendor status.

provided food and fresh water to their crews. Furthermore, even after the U.N. tenders have been restored, the Debtors believe that it will be cheaper and easier to charter vessels that are pre-positioned for different cargo movements than to spend significant monies in fuel to position the Vessels for work on various contracts because of the current glut of world wide shipping.

9.  Additionally, the Debtors' Vessels need to be reclassified (similar to a vehicle registration) periodically. While reclassification of a ship is pending, the ship is required to remain in dry dock. The Vessels at issue herein will require dry dock in the early spring until the Vessels regain classification. However, as a practical matter, the Debtors are unable to pay the extensive costs necessary to dry dock the Vessels which will cost in excess of $700,000 per Vessel. Absent class certification, the Debtors will lose insurance coverage immediately, resulting in detrimental economic impact upon the estates. Thus, it is imperative that the Vessels be sold prior to the end of March 2010.

10.  Indeed, the Vessels will be offloading cargo in India in late March and will be well situated after such offload to be sold for scrap value at such time. As the Court has been made aware, the scrap metal market is at an all time high and the Debtors are therefore in a position to obtain significant value for the Vessels at this time. Further necessitating the quick sale of the Vessels is that monsoon season in the geographic locations in which the Vessels are located begins in May, which effects the Debtors' ability to sell the Vessels since scrap yards will not take in scrap metal during the monsoon season. Thus, a quick sale of the Vessels is imperative to achieve value for the estates.

11.  Moreover, as a result of the Debtors' pre-petition liquidity crisis, they have been unable to pay all crew members' wages and certain vendors, fuel suppliers and fees owed to port authorities in connection with the Vessels. As a matter of maritime law, these obligations

constitute maritime liens (the "Maritime Liens") which are senior in priority to NBP's lien against the Vessels.

12.     During the course of this bankruptcy case, pursuant to prior order of the Court, the Debtors have paid certain Maritime Lien holders to prevent the imminent arrest and seizure of the Vessels. Failure to pay the remaining Maritime Liens may result in arrest and seizure of the Vessels prior to sale. The Maritime Liens against the Vessels amount to approximately $900,000 in the aggregate subject to their allowance or disallowance by the Court through the claims process.[3]

13.     For the foregoing reasons, and since the Debtors can no longer fund the operation of the Vessels, it is essential that the Debtors be able to immediately sell the Vessels at public sale (the "Public Sale") to achieve the greatest value possible for the estates.

14.     Pursuant to this motion, the Debtors therefore request an Order of the Court (i) authorizing the Debtors to conduct a Public Sale of the Vessels pursuant to the terms and conditions set forth herein free and clear of liens, claims and encumbrances; (ii) authorizing the retention of the Broker for the purpose of conducting the Public Sale; (iii) approving the sale procedures described herein; and (iv) granting related relief.

## RELIEF REQUESTED

**A.     The Public Sale Should Be Approved Under Section 363(b)(1) of the Bankruptcy Code**

15.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course may be by private sale or public sale.

---

[3] The Court has established March 12, 2010 as the general bar date by which all proofs of claims must be filed against the Debtors by any creditors or parties in interest.

16.     The majority of courts have applied a business judgment test, requiring that a "sound business reason" exist to support the Debtors' request to sell estate property other than in the ordinary course of business.  See, e.g., In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Allegheny Int'l, Inc., 117 B.R. 171, 176-77 (W.D. Pa. 1990); In re Stroud Ford, Inc., 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993).  The Courts further require that the Debtors' use of the property be proposed in good faith.  In re Abbots Dairies, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); Lionel, Id.; Allegheny, Id.

17.     Good and sufficient cause exists to approve the Public Sale.  The Debtors submit that a public sale is in the best interest of the estates because, as detailed above, (i) it will enable the Debtors to realize optimal value for the Vessels for their scrap value at a time when the market is at its peak and prior to the monsoon season when market prices for scrap become depressed; (ii) it will reduce the additional costs incurred in connection with reclassification of the Vessels and (iii) it will eliminate the Debtors' operating losses on the Vessels.  A quick sale of the Vessels will also prevent the potential arrest and seizure of the Vessels by holders of Maritime Liens.  The Debtors therefore submit that the business judgment test is satisfied and that cause exists to approve the Public Sale of the Vessels under Section 363(b)(1) of the Bankruptcy Code.

**B.      Retention of Broker**

18.     In order to conduct the Public Sale, it is necessary for the Debtors to retain a specialized ship broker.  To that end, the Debtors seek to retain the Broker, an internationally renowned ship broker, because the Debtors believe that it is in the best interest of their estates to retain the Broker for the purposes of locating possible purchasers for the Vessels and conducting the Public Sale.

19.     The Broker, a well respected and internationally known ship broker, is based in London, England and has many years experience in the sale, purchase, and charter of vessels. In the past, the Broker has sold several vessels on behalf of the Debtors, including the sale of the M.V. Global Precision pursuant to order of this Court dated January 6, 2010. Accordingly, the Broker has a significant amount of experience in the business of marketing and selling vessels in general and also possesses knowledge of the Debtors' vessels in particular through their past business dealings. The Debtors intend to compensate the Broker through the payment of a flat commission of 1.5 percent from the gross proceeds of the sale of each of the Vessels. As set forth in the affidavit of Charlotte Vogt, marketing director for the Broker, annexed hereto as Exhibit "A", the Broker has no interest adverse to the estate and is disinterested within the meaning of Section 101(14) of the Bankruptcy Code.

20.     The Debtors believe that the Broker is well-qualified to locate purchasers for the Vessels and conduct a successful Public Sale, and that the compensation sought by the Broker is fair and reasonable. Given the necessity for the services of the Broker and the immediate need to sell the Vessels, the Debtor believe that the retention of the Broker is necessary, warranted and in the best interests of the estate, and should therefore be approved by the Court.

21.     The Debtors intend to provide notice of the Vessel's proposed public sale to all of their creditors and parties in interest in addition to over 758 owners, demolition cash buyers and brokers who participated and/or were notified of the Debtors' previous sale of the M/V Global Precision. The Debtors submit that such notice is good and sufficient notice of the proposed public sale.

**C.     <u>Approval of Sale Procedures</u>**

22.     The Debtors also request that the Court authorize the following sale procedures in connection with the sale of the Vessels:

a.      The Public Sale will be conducted by the Broker with appropriate opportunity for submissions of bids by telephone or other means agreed to by the Broker, the Debtors and prospective bidders;

b.      The Vessels will be sold on an "as is, where is and how is" basis, without any representation or warranty of any kind by the Debtors;

c.      On the day of the Public Sale, each successful bidder for the Vessels shall tender to the Broker by wire transfer, bank or certified check a deposit in the amount equal to at least 10% of the purchase price of the Vessels (the "Deposit") to be held in an escrow account jointly set up by the Buyers and Sellers;

d.      The balance of the purchase price shall be paid to the Seller's nominated bank account by the successful bidder by wire transfer, bank or certified check within two (2) business days following the Public Sale, at which time the successful purchaser shall also execute any bill of sale or other documents traditionally used to transfer title to a ship as requested by the Debtors and the Broker;

e.      In the event the highest bidder fails to close on the purchase within two (2) business days of the Public Sale, the Debtors may sell to the second highest bidder without further order of the Court and any Deposit made by the highest bidder shall be forfeited to the Debtor's estate;

f.  The successful purchaser will be responsible for the removal of the Vessels from their port locations;

g.  The sale of the Vessels at the Public Sale shall be final and shall not be subject to further bankruptcy court approval;

h.  The Broker may elect to conduct the Public Sale by sealed bid or open bid, and the highest and best offer shall be determined by the Broker in consultation with the Debtors' principals and counsel; and

i.  The Debtor and the Broker shall establish such other terms and conditions of sale at the Public Sale as deemed necessary to the orderly and efficient sale of the Vessels and any such additional conditions shall be announced by the Broker prior to the commencement of the Public Sale.

23.  The Debtors intend, through the Broker, to provide notice of the Public Sale to the parties most likely to have an interest in the acquiring the Vessels. Those parties shall include all of the Debtors' creditors and parties in interest and over 758 owners, demolition cash buyers and brokers who participated and/or were notified of the Debtors' previous sale of the M/V Global Precision. The Broker has been in the business of selling shipping vessels of this nature for many years and is fully familiar with the entities which would likely be interested in acquiring the Vessels. The sale procedures provide a reasonable means of ensuring a fair sale process and that the Vessels will be sold for the highest and best offer available. Accordingly, the Debtors request that the Court approve the bidding procedures set forth herein.

**D.      Sale Free and Clear of Liens, Claims and Encumbrances**

24.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtors also request authority to sell the Vessels free and clear of all liens, claims and encumbrances with any and all such liens, claims and encumbrances to attach to the proceeds of the sale of the Vessels.

25.     Section 363(f) of the Bankruptcy Code permits the sale of assets free and clear of liens, claim and encumbrances with any such liens, claims and encumbrances attaching to the proceeds of the sale.  Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

26.     As set forth above, NBP has first preferred ship mortgage liens against the Vessels in the amount of approximately $13,638,624 in the aggregate.  In addition, there remain unpaid Maritime Liens against the Vessels in the collective amount of approximately $900,000 that are senior to NBP's liens but subject to the claims adjudication process.  Thus, the proceeds of sale would be distributed first to the Broker for its commissions, then to pay the holders of valid Maritime Liens against the Vessel after the completion of the claims adjudication process (unless the satisfaction of such a claim is necessary to facilitate the Public Sale of the Vessels because of the imminent threat of arrest and seizure of the Vessels) with the remaining proceeds being paid to NBP in reduction of its secured claims against Prosperity and Progress.

**E.     <u>Additional Relief</u>**

27.     Section 363(m) of the Bankruptcy Code provides that the "reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased the property in good faith...." 11 U.S.C. §363(m).

28.     The sale contemplated herein will occur as the result of a public sale after solicitation of bids and an opportunity for competitive bidding.  Accordingly, the Debtors request that the Court determine the successful purchaser at the sale to be acting in good faith and entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

29.     Finally, due to the exigent circumstances for the relief sought herein, the Debtors request that the Court waive the ten (10) day stay provisions of Bankruptcy Rule 6004(h).

### REQUEST FOR ENTRY OF ORDER TO SHOW CAUSE

30.     As set forth above, it is imperative that the sale of the Vessels be approved on an expedited basis.  The Debtors are hemorrhaging cash and an immediate sale of the Vessels is necessary to prevent irreparable harm to the estates.  The longer that the Maritime Liens against the Vessels remain unpaid, the better the chance that the Vessels will be arrested and seized.  In addition, the scrap metal market is at an all-time high and the Vessels will not be able to be sold for scrap value once the monsoon season starts.  Indeed, both of the Vessels will be well situated to be sold for scrap value once they offload their cargo in India in late March.  For all these reasons, an expedited sale of the Vessels will maximize the value of the Vessels to the Debtors' estates.

31.     Accordingly, the Debtors request that the Court sign the Order attached hereto as Exhibit B scheduling an expedited hearing on this motion on March 10, 2010.

## NOTICE

32.     Copies of this Motion and the request for entry of an Order shall be served via facsimile or electronic mail on (i) the United States Trustee, (ii) all parties who have requested notice and service of pleadings in the Debtors' cases, (iii) counsel to the Creditor's Committee, (iv) counsel to NBP and (v) Progress' and Prosperity's twenty largest creditors.  Pursuant to Rule 2002(a)(2), if the Scheduling Order is entered, it is the Debtors' intention to serve the Motion and the signed Order upon any entities required by the Court therein.  The Debtors request that the Court find the proposed notice and service of the motion to be good and sufficient service given the exigent circumstances set forth herein.

## CONCLUSION

33.     Based on the foregoing, it is respectfully submitted that cause exists to authorize the Debtors to conduct a Public Sale of the Vessels on an expedited basis, to approve the bidding procedures set forth herein and to approve the retention of the Broker for the purpose of conducting the Public Sale.

34.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request that the Court grant the relief set forth herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
February 22, 2010

CULLEN AND DYKMAN LLP
Counsel to the Debtors

By _____
Matthew G. Roseman (MR1387)
C. Nathan Dee (CD 9703)
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

**EXHIBIT A**



Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                          Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,            Case Nos. 09-78585 (AST)
                                                          09-78584 (AST)
                                                          09-78589 (AST)
                                                          09-78586 (AST)
                                                          09-78587 (AST)
                                                          09-78588 (AST)
                                                          09-78590 (AST)
                              Debtors.
-------------------------------------------------------x   (Jointly Administered)

## AFFIDAVIT OF CHARLOTTE VOGT IN SUPPORT
## OF RETENTION OF SHIP BROKER

Charlotte Vogt, being duly sworn, deposes and says:

1.      I am the Managing Director of Vogt and Maguire Shipbroking Ltd. ("Vogt"), a ship

broker with offices at 20 St. Dunstan's Hill, London, EC3R 8HL.

2.      I make this affidavit in support of the retention of Vogt as ship broker in connection

with the sale of the M.V. Global Progress (the "Progress"), owned by Global Progress, LLC, and of

the M.V. Global Prosperity (the "Prosperity" and together with the Progress, the "Vessels") owned

by Global Prosperity, LLC, two of the Debtors herein pursuant to the Debtors' sale motion dated

February 22nd, 2010 (the "Motion").

3.      The Vessels are Roll On/Lift Off (Ro/Lo) with an LDT of approximately 10,788 long

tons. Given the current state of the worldwide shipping market, in my opinion the Vessels highest value will be realized through their public sale for scrap value. In that regard, I believe that the Debtors need to complete the sale of the Vessels at their earliest opportunity because the imminent monsoon season will most likely have a depressing effect upon the price of scrap in the area where the Vessels will eventually be sold.

4.    As part of Vogt's duties as broker, Vogt shall use its expertise and international business contacts to market the vessels to potential purchasers including owners, demolition cash buyers and other brokers to help publicize the sale. In that regard, Vogt intends to provide notice of the public sale of the Vessel to over 755 owners, demolition cash buyers and brokers who previously participated in the public sale of the M/V Global Precision. Vogt shall also coordinate all efforts by buyers to inspect the Ships in the ports at which they are now or will soon be located and maintain a database of all offers received by the Debtors for the Ships and of all parties who conduct inspections of the vessels. Vogt, with input from the Debtors principals and their professionals, shall conduct a public sale of the Ships and consult the Debtors regarding the highest and best offers received by Vogt for the vessels.

5.    As compensation for Vogt's services, Vogt has agreed to accept a flat fee commission of 1.5 percent from the gross proceeds of the sale of the Ships.

6.    I hereby state that an associated company, Vogt & Maguire Ltd has in the normal course of its business as port agents provided services to Global Container Lines Ltd.

7.    Vogt does not represent, nor is it represented by, any other authorized professional specifically in connection with this case.

## [THIS SPACE INTENTIONALLY LEFT BLANK]

Charlotte Vogt

**[add in London form notary]**

England & Wales
City of London

Subscribed and sworn to before me at London, England, this 22nd day of
February, 2010:-

Notary Public, London, England
(Nigel P. Ready)
My Commission expires with life

**EXHIBIT B**

Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                              Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,      Case Nos. 09-78585 (AST)
                                                    09-78584 (AST)
                                                    09-78589 (AST)
                                                    09-78586 (AST)
                                                    09-78587 (AST)
                                                    09-78588 (AST)
                                                    09-78590 (AST)
                         Debtors.
--------------------------------------------------------x   (Jointly Administered)

**ORDER TO SHOW CAUSE REQUESTING AN EMERGENCY HEARING ON
MOTION (I) APPROVING AUCTIONSALE OF PROPERTY; (II) APPROVING
RETENTION OF BROKERFOR THE PURPOSE OF CONDUCTING THE AUCTION
SALE;(III) APPROVING SALE PROCEDURES; AND (IV) GRANTING RELATED
RELIEF**

Upon the Motion (the "Sale Motion") dated February 22, 2010 of Global Container

Lines, Ltd., et al., debtors and debtors-in-possession herein (the "Debtors") for an order (i)

approving the public sale of property; (ii) approving retention of a broker for the purpose of

conducting the public sale; (iii) approving sale procedures; and (iv) granting related relief, and

the affirmation of C. Nathan Dee, Esq also dated February 22, 2010 in support of the Motion and

this Order attached hereto as Exhibit 1, and upon the request in the Sale Motion for an

emergency hearing on the relief requested in the Sale Motion, and after due deliberation and

sufficient cause therefore, it is

**ORDERED**, that the Sale Motion will be heard on _____; and it is further

**ORDERED**, that by _____ the Debtors must serve a copy of this Order, as well as a copy of the Sale Motion, by email or facsimile, upon the following parties:

- Office of the United States Trustee for the Eastern District of New York;

- Any party that has filed a request for service of pleadings with this Court;

- Any party against whom relief is sought;

- Any party asserting a lien upon any of Global Prosperity, LLC and Global Progress, LLC's respective assets; and

- Any Creditors Committee and its Counsel and

by via first class mail on _____ upon each of the Debtors' twenty largest unsecured creditors; and it is further

**ORDERED**, that objections, if any, to the relief requested in the Sale Motion shall (i) be in writing; (ii) set forth a factual and legal basis for the objection; (iii) comply with the Federal Rules of Bankruptcy Procedure; and (iv) be filed with the Court (with one [1] copy to Chambers) and be served upon counsel for the Debtors, Matthew G. Roseman, Esq., Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, not later than _____ _____; and it is further

**ORDERED**, that Debtors shall also file a certificate of service with the Clerk of the United States Bankruptcy Court, Eastern District of New York, by _____.

Dated: February ____, 2010
      Central Islip, New York

_____
Alan S. Trust
United States Bankruptcy Judge

# **EXHIBIT 1**

CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)
Bonnie Pollack, Esq. (BP 3711)

Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                                Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,          Case Nos. 09-78585 (AST)
                                                                                 09-78584 (AST)
                                                                                 09-78589 (AST)
                                                                                 09-78586 (AST)
                                                                                 09-78587 (AST)
                                                                                 09-78588 (AST)
                                                                                 09-78590 (AST)
                                          Debtors.
--------------------------------------------------------x

## LOCAL RULE 9077-1 AFFIRMATION

C. Nathan Dee, under the penalties of perjury affirms as follows:

1.      I am a partner in the firm of Cullen and Dykman LLP, counsel to the Debtors and

Debtors-in-Possession as such am fully familiar with the facts and circumstances herein.

2.      I submit this affirmation of extigent circumstances in support of the Motion dated

February 22, 2010 seeking an Order (A) approving the public sale of property; (B) approving

retention of broker for the purpose of conducting the public sale; (C) approving sale procedures;

and (D) granting related relief (the "Motion").

3.      Pursuant to the Motion, the Debtors seek a hearing date of March 10, 2010

because of their immediate need to sell two vessels, the M.V. Global Progress (the "Progress")

and M.V. Global Precision, (the Precision and together with Progress, the "Vessels") in order to

prevent further operating losses for the Vessels.

4.    The Court has already scheduled a hearing on the proposed March 10, 2010 hearing date in these cases on a motion by the Debtors to extend their exclusive period to file a plan of reorganization and related disclosure statement.

5.    Pursuant to the Motion, two of the Debtors, Global Progress, LLC ("Progress") and Global Precision, LLC ("Precision") are seeking to sell the Vessels on an emergency basis.

6.    Progress and Prosperity are experiencing significant ongoing operating losses due to the collapse of the liner trade. In addition, the Debtors traditionally have performed extensive services under contract to the United Nations. Recently, the United Nations improperly barred the Debtors from participating in U.N. tenders. While the Debtors believe that their services for the United Nations will eventually be restored, the Debtors estimate that as a result of the loss of participation in U.N. tenders, the Debtors will lose $9 million in projected gross income and $1.3 million in projected profits during the first quarter of fiscal year 2010. Additionally, the Vessels lose approximately $10,000 per day when not operating under contracts with the United Nations because the Debtors are required by relevant maritime law to keep the Vessels fueled and to provided food and fresh water to their crews. Furthermore, even after the U.N. tenders have been restored, the Debtors believe that it will be cheaper and easier to charter vessels that are pre-positioned for different cargo movements than to spend significant monies in fuel to position the Vessels for work on various contracts because of the current glut of world wide shipping.

7.    Additionally, the Debtors' Vessels need to be reclassified (similar to a vehicle registration) periodically. While reclassification of a ship is pending, the ship is required to be drydocked for upgrades. However, as a practical matter, the Debtors are unable to pay the extensive costs necessary to dry dock the Vessels which will cost in excess of $1,000,000 per

Vessel. Thus, it is imperative that the Vessels be sold prior to the end of March 2010 because (i) the Debtors are enduring daily operating losses for each of the Vessels when they are not working on UN projects and (ii) the costs of dry docking the Vessels for their mandatory recertification cannot be justified in the Debtors business judgment given the current state of the worldwide shipping market and the age of the Vessels. As the Court has been made aware, the scrap metal market is at an all time high and the Debtors are therefore in a position to obtain significant value for the Vessels at this time. Further justification for the timely sale of the Vessels is that monsoon season in the geographic locations in which the Vessels are located begins in May, which effects the Debtors' ability to sell the Vessels since scrap yards will not take in scrap metal during the monsoon season. Thus, a quick sale of the Vessels is imperative to achieve value for the estates before the scrap prices become depressed.

8.       Moreover, as a result of the Debtors' pre-petition liquidity crisis, they have accrued certain pre-petition crew members' wages and certain vendors, fuel suppliers and fees owed to port authorities in connection with the Vessels in the ordinary course operation of the Vessels. As a matter of maritime law, these obligations constitute maritime liens (the "Maritime Liens") which are senior in priority to NBP's lien against the Vessels.

9.       During the course of this bankruptcy case, pursuant to a prior order of the Court, the Debtors have paid certain Maritime Lien holders to prevent the imminent arrest and seizure of the Vessels. The Maritime Liens against the Vessels amount to approximately $900,000 in the aggregate subject to allowance or disallowance by the Court through the claims adjudication process.[1]

---

[1] The Court has set March 12, 2010 as the bar date for all creditors and parties in interest to file proofs of claim against the Debtors.

10.    Given the foregoing, it is imperative that the sale of the Vessels be approved on an expedited basis.  The Debtors are hemorrhaging cash and an immediate sale of the Vessels is necessary to prevent irreparable harm to the estates.  In addition, the scrap metal market is at an all-time high and the Vessels will not be able to be sold for scrap value once the monsoon season starts.  The Progress is well situated to be sold for scrap value once it offloads its cargo in India in late March.  Finally, a holder of a Maritime Lien may arrest one or both of the Vessels which would cause irreparable harm to the Debtors' estates.  For all these reasons, an expedited sale of the Vessels will maximize the value of the Vessels to the Debtors' estates.

11.    Accordingly, it is respectfully requested that the Court enter an Order scheduling an expedited hearing on this Motion.

Dated: Garden City, New York
          February 22, 2010

By _____
          C. Nathan Dee (CD9703)