Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                    Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,      Case Nos. 09-78585 (AST)
                                                    09-78584 (AST)
                                                    09-78589 (AST)
                                                    09-78586 (AST)
                                                    09-78587 (AST)
                                                    09-78588 (AST)
                                                    09-78590 (AST)
                Debtors.
------------------------------------------------------------x

## MOTION OF REORGANIZED DEBTORS TO APPROVE SETTLEMENT AGREEMENT WITH UNITED NATIONS

TO THE HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Rules 2002, 9006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Global Container Lines, LTD (the "Debtors"), by and through their counsel, Cullen and Dykman LLP, hereby move (the "Motion") for an order approving the stipulation (the "Stipulation")[1] between the Debtors and the United Nations (the "UN"). As set forth further herein, the Stipulation resolves a payment dispute between the Debtors and the UN arising out of the Debtors' delivery of UN peacekeeping equipment pursuant to Request for Proposal RFPS-1245 for the "Sea Shipment of Nigerian FPU COE from Door Abuja, Nigeria to

---

[1] A true and accurate copy of the Stipulation is attached hereto as Exhibit A.

Dooer Zaingei and El Geneina Sudan" (the "Contract"). In further support thereof, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U. S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

2. On November 11, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

3. The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

5. On or about December 29, 2009, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases, and the Committee has retained LaMonica Herbst & Maniscalco as its counsel.

6. The Debtors are full service shipping companies and related entities with shipping services operating in North America, the Mediterranean, the Middle East, East, South, and West Africa, the Persian Gulf, India, Pakistan, Mozambique and major Indian Ocean Islands. The Debtors perform an extensive array of services in the shipping industry including many projects with governmental and international organizations and peace-keeping missions. A detailed

background of the Debtors' businesses and the reasons for the filing of the bankruptcy cases is set forth in the Affidavit of Bijan Paksima under Local Bankruptcy Rule 1007-4 submitted on the Petition Date, and is incorporated herein by reference.

7. The UN, a multinational, multilateral global institution, is the Debtors' primary customer for which the Debtors provide, among other things, logistical expertise and ships for cargo movements for UN peacekeeping missions.

8. Prior to the Petition Date, the Debtors and the UN entered into the Contract for the shipment and delivery of Nigerian peacekeepers and their equipment from Nigeria to Sudan.

9. During the cargo movement, the Debtors experienced certain delays because their cargo delivery route was subject to significant security risks due to the armed conflict in the Sudan.

10. On or about February of 2009, the UN informed the Debtors that it was assessing liquidated damages pursuant to the Contract in the amount of $477,754.88 against the Debtors because of the late delivery of the cargo.[2]

11. Subsequently, the Debtors disputed the UN's right to assess liquidated damages because, among other reasons, the Debtors had stated in their original proposal to the UN that they could not provide an absolute guaranty of timely delivery of the cargo because the cargo's ultimate destination was a war zone.

12. After the Petition Date, the Debtors spent a considerable amount of time and effort educating the UN about the chapter 11 process and seeking to resolve the parties' dispute regarding the outstanding sums due and payable to the Debtors under the Contract.

---

[2] The total amount of accounts receivable due and owing the Debtors from the UN is approximately $1.4m, inclusive of the $411,000 in funds set forth in the settlement agreement attached hereto as Exhibit A.

13. Subsequently, the parties entered into certain negotiations and settlement discussions concerning the settlement of the Debtors' claims against the UN under the Contract. In that regard, the parties have reached a settlement agreement that resolves the issues subject to this contested matter without the need for further litigation.

### III. TERMS OF THE STIPULATION

14. Subject to the Court's approval, the Debtors and UN have agreed to resolve their disputes relating the Debtors' claim against the UN under the Contract. Attached hereto as Exhibit A is the Stipulation entered into between the Reorganized Debtors and UN, the major terms of which include the following:[3]

- Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of the Agreement, and subject as provided in Article 3 below, for and in consideration of the sum of Four Hundred Eleven Thousand and Thirty Three US Dollars and Thirty One Cents (USD 411,033.31), GCL expressly agrees and undertakes to release and discharge the United Nations, and its officials, agents, servants, employees, successors, assigns and insurers, from all past, present or future claims, demands, damages, sums of money, actions, rights, causes of action, obligations, and liabilities of every kind or nature which GCL has, claims to have or may hereafter claim to have against the United Nations, arising from, in connection with, or in any way relating to GCL's Claims and the Contract, including without limitation, all claims for direct, indirect, incidental, consequential, punitive or exemplary damages or equitable relief or interest, which GCL ever had, now has or may hereafter have against the United Nations.

- Upon execution of the Agreement, GCL shall promptly notify the Office of the U.S. Trustee, GCL's creditors and all other parties in interest of the Agreement, and once such parties have been given an opportunity to be heard, shall submit the Agreement to the Court for approval as required by the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. GCL shall diligently pursue obtaining the Court's approval and shall keep the United Nations informed of progress in this regard.

- Subject as provided in Article 3 of the Agreement, immediately following the receipt by GCL of the Court order approving the settlement of GCL's Claims in accordance with the Agreement, GCL agrees to execute the Release in the form of Annex A, attached to the Agreement. Unless otherwise agreed in writing by the Parties, such Release, together with a certified copy of the Court order approving the settlement of GCL's Claims in

---

[3] The summary set forth in this Motion is not intended to be a substitute for the terms of the Stipulation, which contains additional terms and provisions, to the extent of any conflict between the terms of this Motion and the terms of the Stipulation, the terms of the Stipulation shall control. Any capitalized terms not otherwise defined herein shall have the same meanings as those ascribed to such terms in the Stipulation.

accordance with the terms of the Agreement, shall be delivered by GCL to the United Nations in exchange for receipt of the payment to be made by the United Nations, as set forth in Article 2.1 below.

- o Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of the Agreement, and subject as provided in Article 3 below, as full and final settlement of GCL's Claims, the United Nations shall pay to GCL the sum of Four Hundred Eleven Thousand and Thirty Three US Dollars and Thirty One Cents (USD 411,033.31) by wire transfer to the account of GLOBAL CONTAINER LINES LIMITED. Unless otherwise agreed in writing by the Parties, such payment shall be made no later than thirty (30) days from the receipt by the United Nations from GCL of a certified copy of the Court order approving the settlement of GCL's Claims in accordance with the terms of the Agreement, together with the Release duly signed and executed by GCL.

- o Upon payment of the sums set forth in Article 2.1 the Agreement, the UN agrees to release and discharge GCL, its affiliates, officials, agents, servants, employees, successors and assigns, from all past, present or future claims, demands, damages, sums of money, actions, rights, causes of action, obligations, and liabilities of any kind or nature, which the UN has, claims to have or may hereafter claim to have against GCL, arising from, in connection with, or in any way relating to the Contract.

### IV.   THE STANDARDS FOR APPROVAL OF THE STIPULATION

15. The Debtors respectfully request that the Court approve the Stipulation. Rule 9019(a), which governs the approval of compromises and settlements, provides, in relevant part: "[A]fter notice and a hearing, the court may approve a compromise or settlement." The Supreme Court has held that approval of a settlement requires a finding that the settlement is fair and equitable. Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968). In exercising its discretion regarding the approval of a compromise, a court will consider several factors in determining whether the compromise is reasonable. These factors include the likelihood of success in the litigation, the complexity and cost of the litigation, and the interests of creditors. See Cossoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599 (2d Cir.), cert. denied, 464 U.S. 822 (1983); Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289, 292 (E.D.N.Y. 1992). At the same time, the bankruptcy court must

bear in mind that "the law favors compromise." Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.), 67 B.R. 378, 383 (C.D. Ill. 1986).

16. In passing upon a proposed settlement "the bankruptcy court does not substitute its judgment for that of the trustee." Depo v. Chase Lincoln First Bank, N.A., 77 B.R. 381, 384 (N.D.N.Y. 1987), aff'd, 863 F.2d 45 (2d Cir. 1988); accord, In re Carla Leather, Inc., 44 B.R. 457 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985). The bankruptcy court is to "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" W.T. Grant Co., 699 F.2d at 608 (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir.), cert. denied, Benson v. Newman, 409 U.S. 1039 (1972)). In passing upon the reasonableness of a proposed compromise, the court "may give weight to the opinions of the Trustee, the parties and their counsel. . . ." In re Bell & Beckwith, 77 B.R. 606, 612 (Bankr. N.D. Ohio), aff'd, 87 B.R. 472 (N.D. Ohio 1987).

### V. GROUNDS FOR APPROVAL OF THE STIPULATION

17. The Debtors believe that the value of the Stipulation to the Debtors' respective estates exceeds the lowest level of reasonably expectable litigation results and is fair and equitable and in the best interests of the Estate and its creditors because, among other reasons, the proposed Stipulation is a fair and reasonable resolution of the dispute with UN.

18. Pursuant to the Stipulation, the Debtors have agreed to accept payment of the sum of $411,033.31 in full and final satisfaction of their claim against the UN under the Contract in the amount of $477,754.88.

19. Given that the parties spent time and resources reviewing their respective positions regarding the UN's claim of liquidated damages and the Debtors' defenses to the UN's claim, and since the Stipulation represents a eighty five (85%) percent reduction of the UN's

original liquidated damages claim, the agreement reached by the parties is reasonable under the circumstances herein. Moreover, Court approval of the Stipulation will permit the Debtors to avoid the time, expense and uncertainty of further litigation with respect to their dispute with UN. Among other things, the terms of the Contract would require the Debtors to arbitrate their dispute with the UN which would be an expensive and lengthy process that may not result in a significantly higher return to the Debtors' respective estates than the $411,033.31 set forth in the Stipulation. Therefore, the Debtors believe their decision to enter into the Stipulation represents an exercise of sound business judgment.

20. As the compromise proposed in the Stipulation fairly balances "the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal," it is well within the bounds of this Court's discretion to approve. Myers v. Martin (In re Martin), 91 F.3d 389 (3d Cir. 1996). Therefore, as set forth above, good and sufficient grounds exist for the Court's approval of the Stipulation.

## VI. CONCLUSION

21. Based on the foregoing, the Debtors believe that the Stipulation is well within the range of reasonableness and confers a substantial benefit on the Debtors because it resolves the disputes surrounding their claim against the UN without the need for further litigation. Accordingly, the Debtors respectfully request that this Court approve the Stipulation.

## VII. NOTICE

22. Subject to the approval of the Court, the Debtors shall serve notice of the Motion and proposed Stipulation, on (i) the United States Trustee, (ii) counsel to UN, (iii) the Debtors' top twenty creditors and (iv) all other parties who have either filed a notice of appearance or are entitled to notice pursuant to Fed. R. Bank. P. 2002. The Debtors believe such service provides

sufficient notice in light of the nature of the relief requested and request that the Court approve such notice.

### VIII. NO PRIOR REQUEST

23. No prior request for relief requested in this Motion has been made.

24. Since this Motion presents no novel issue of law and contains a brief discussion of relevant case law, the Debtors respectfully request that the Court waive the requirement of Local Bankruptcy Rule 9013-1(b).

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order:

(i) granting the Motion and approving the Stipulation;

(ii) finding notice of the Motion as proper and sufficient under the circumstances; and

(iii) granting such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
April 2, 2010

                                          CULLEN AND DYKMAN LLP
                                          Attorneys for Debtors

                              By:      /s/ C. Nathan Dee
                                          Matthew G. Roseman (MR 1387)
                                          C. Nathan Dee (CD 9703)
                                          100 Quentin Roosevelt Boulevard
                                          Garden City, New York 11530

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (hereinafter "Agreement") is being made and entered into by:

**GLOBAL CONTAINER LINES LIMITED**, a company established and incorporated in the state of Delaware and with its principal offices located at 100 Quentin Roosevelt Blvd., Garden City, NY 11530, United States of America, (hereinafter "GCL"), currently operating and reorganizing its business under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), together with its past, present and future officers, directors, shareholders, attorneys, insurers, underwriters, agents, servants, representatives, employees, parents, subsidiaries, divisions, affiliates, partners, predecessors and successors in interest, assigns and all other related and affiliated persons, corporations and entities, whether named herein or not;

**AND**

**The United Nations**, an international intergovernmental organization established by its Member States under the Charter of the United Nations signed in San Francisco on 26 June 1945, and with its Headquarters in New York, New York, 10017, United States of America, (hereinafter referred to as the "United Nations").

GCL and the United Nations are hereinafter individually referred to as a "Party" and collectively as "the Parties".

## WITNESSETH

**WHEREAS**, on 10 September 2008, the United Nations issued a Request for Proposal RFPS-1245 for the "Sea Shipment of Nigerian FPU COE from Door Abuja, Nigeria to Door Zalingei and El Geneina Sudan" (hereinafter referred to as the "RFP");

**WHEREAS**, GCL submitted its proposal on 18 September 2008 (hereinafter the "Proposal"), and on 22 September 2008, the United Nations advised GCL that it would be awarded the contract (hereinafter "Notice of Award") subject to GCL's acceptance of the terms and conditions of the purchase order to be issued by the United Nations subsequently;

**WHEREAS**, on 21 October 2008 the United Nations issued a Purchase Order for the shipment of the COE (hereinafter referred to as the "Purchase Order");

**WHEREAS**, the RFP, the Proposal, the Notice of Award, the Purchase Order, and the United Nations General Conditions of Contract are hereinafter referred to collectively as the "Contract";

**WHEREAS**, on 26 February 2009, the United Nations informed GCL that it was exercising its right under the Contract to apply liquidated damages to its payment of invoices submitted by GCL;

**WHEREAS**, GCL subsequently asserted a claim for reimbursement by the United Nations of amounts withheld by the United Nations and the payment of detention charges and additional handling charges incurred by GCL (hereinafter referred to as "GCL's Claims");

**WHEREAS**, the Parties wish to resolve and to fully and finally settle all claims arising from, in connection with or in any way relating to, directly or indirectly, the Contract and all other issues in connection with or in any way relating to the foregoing as well as all manner of claims, liabilities, obligations, actions or proceedings of any nature, whether by way of indemnity or otherwise, which have been, could have been, or could be asserted by one Party against the other Party or brought in any arbitration or other legal proceedings, arising out of, related to or in connection with the Contract, and all other issues in connection with or in any way relating to the foregoing of any nature whatsoever, known or unknown, fixed or contingent, including all claims for incidental, consequential, punitive or exemplary damages or equitable relief arising out of any of the foregoing which one Party has now or may have against the other Party;

**WHEREAS**, on 10 November 2009, GCL filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (hereinafter "the Court);

**WHEREAS**, in accordance with the relevant provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, any compromise or settlement entered into by GCL is subject to the approval of the Court after proper notice of such compromise or settlement has been given and an opportunity to be heard has been provided to the Office of the U.S. Trustee, GCL's creditors and all other parties in interest;

**NOW THEREFORE**, for good and valuable consideration, without any admission of liability by either Party, the Parties hereto agree, as follows:

1. **Undertakings of GCL**

1.1 Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of this Agreement, and subject as provided in Article 3 below, for and in consideration of the sum of Four Hundred Eleven Thousand and Thirty Three US Dollars and Thirty One Cents (USD 411,033.31), GCL expressly agrees and undertakes to release and discharge the United Nations, and its officials, agents, servants, employees, successors, assigns and insurers, from all past, present or future claims, demands, damages, sums of money, actions, rights, causes of action, obligations, and liabilities of every kind or nature which GCL has, claims to have or may hereafter claim to have against the United Nations, arising from, in connection with, or in any way relating to GCL's Claims and the Contract, including without limitation, all claims for direct, indirect, incidental, consequential, punitive or exemplary damages or equitable relief or

interest, which GCL ever had, now has or may hereafter have against the United Nations.

1.2 Upon execution of this Agreement, GCL shall promptly notify the Office of the U.S. Trustee, GCL's creditors and all other parties in interest of this Agreement, and once such parties have been given an opportunity to be heard, shall submit the Agreement to the Court for approval as required by the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. GCL shall diligently pursue obtaining the Court's approval and shall keep the United Nations informed of progress in this regard.

1.3 Subject as provided in Article 3 below, immediately following the receipt by GCL of the Court order approving the settlement of GCL's Claims in accordance with this Agreement, GCL agrees to execute the Release in the form of Annex A, attached hereto. Unless otherwise agreed in writing by the Parties, such Release, together with a certified copy of the Court order approving the settlement of GCL's Claims in accordance with the terms of this Agreement, shall be delivered by GCL to the United Nations in exchange for receipt of the payment to be made by the United Nations, as set forth in Article 2.1 below.

2. **Undertakings of the United Nations**

2.1 Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of this Agreement, and subject as provided in Article 3 below, as full and final settlement of GCL's Claims, the United Nations shall pay to GCL the sum of Four Hundred Eleven Thousand and Thirty Three US Dollars and Thirty One Cents (USD 411,033.31) by wire transfer to the account of GLOBAL CONTAINER LINES LIMITED, acting for and on behalf of GCL, at NATIONAL BANK OF PAKISTAN,
Unless otherwise agreed in writing by the Parties, such payment shall be made no later than thirty (30) days from the receipt by the United Nations from GCL of a certified copy of the Court order approving the settlement of GCL's Claims in accordance with the terms of this Agreement, together with the Release duly signed and executed by GCL.

2.2 Upon payment of the sums set forth in Article 2.1 above, the UN agrees to release and discharge GCL, its affiliates, officials, agents, servants, employees, successors and assigns, from all past, present or future claims, demands, damages, sums of money, actions, rights, causes of action, obligations, and liabilities of any kind or nature, which the UN has, claims to have or may hereafter claim to have against GCL, arising from, in connection with, or in any way relating to the Contract.

3. **Duration**

This Agreement shall become null and void in the event that: (i) the Court has not approved the settlement of GCL's Claims in accordance with the terms of this Agreement; or (ii) the United Nations has not received from GCL within 6 months from

signature of this Agreement a certified copy of the Court order approving the settlement of GCL's Claims in accordance with the terms of this Agreement.

## 4. Confidentiality

4.1  Except as required by the relevant provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, GCL and its attorneys, and all persons or entities acting by, through, under or in concert with GCL, or any of them, or any other person acting on their behalf, shall not, subsequent to the signing of this Agreement, make any statements, whether in writing or orally, or release to any third party any document or statement which in any way refer to actions, inactions, statements or conduct of any kind by the United Nations, including its officials, employees, agents or attorneys, in connection with this Agreement, GCL's Claims or the negotiations by the Parties resulting in this Agreement. Except as ordered by the Court or any other court of competent jurisdiction, and provided that GCL shall afford the United Nations with the opportunity to assert the privileges and immunities of the United Nations in respect of any such order before complying therewith, GCL and its attorneys, or any of them or any other person acting on GCL's behalf, shall not provide or allow to be provided a copy of this Agreement or any part thereof to any person or entity.

4.2  The United Nations shall not, subsequent to the signing of this Agreement, make any statements, whether in writing or orally, which in any way refer to actions, inactions, statements or conduct of any kind by GCL and its officials, employees, agents or attorneys, in connection with this Agreement, except that the United Nations and its attorneys may make objective statements of fact regarding the matters referred to above to the extent that such statements are necessary to comply with the requests for information from its internal or subsidiary organs, funds or programmes or other organizations of the United Nations system including, but not limited to, the United Nations General Assembly.

## 5. Miscellaneous

5.1  If any provision of this Agreement is invalid, illegal or unenforceable, the balance of this Agreement shall remain in full force and effect, and if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances. In the event this Agreement is rendered null and void, whatever claims, rights or obligations the Parties had prior to the execution of this Agreement shall continue.

5.2  This Agreement and any negotiations with respect thereto are not and shall not be construed as, or deemed to be, admissions or concessions by either Party of any liability or wrongdoing whatsoever.

5.3  This Agreement supersedes all prior agreements, understandings, representations, letters and negotiations between the Parties concerning GCL's Claims and may be modified or amended only by a written document executed by the Parties.

5.4  The waiver by one Party of any breach of this Agreement shall not be deemed a waiver of any other prior or subsequent breach of this Agreement. No waiver of any right under this Agreement shall be effective unless it is in writing and signed by the Party waiving such right.

5.5  This Agreement shall be binding upon, and inure to the benefit of, the Parties and their respective agents, executors, heirs, successors, assigns and insurers.

5.6  This Agreement is executed in two [2] counterparts, each of which will be deemed an original, but all of which constitute one and the same instrument.

5.7  Nothing in or relating to this Agreement shall be deemed a waiver, express or implied, of any of the privileges and immunities of the United Nations, including its subsidiary organs.

5.8  Each Party shall bear the costs of its own attorneys as well as all other costs it incurred with respect to this Agreement.

5.9  Evidence of the negotiations for settlement of GCL's Claims will be inadmissible in the event of any arbitration in relation to GCL's Claims.

5.10 Upon making the payment referred to in Article 2.1 above, GCL's Claims shall be deemed withdrawn with prejudice in its entirety.

5.11 Any notice, waiver, or other communication given or made to any Party in connection with this Agreement shall be deemed to have been received if it is made in writing and sent by facsimile and confirmed by international courier with proof of receipt to the following addresses and addressees:

For GLOBAL CONTAINER LINES LIMITED

Attention: Ali Paksima
Title: Executive Vice President
Address: 100 Quentin Roosevelt Blvd. Garden City, NY 11530
Facsimile Number: +1-516-222-0377
Telephone Number: +1-516-745-6077

For the United Nations

Attention: Mr. Paul Buades
Title: Director, Procurement Division, OCSS/DM
Address: 380 Madison Avenue, New York, NY 10017, USA
Facsimile Number: +1-212-963-6225
Telephone Number: +1-212-963-9858

5.12 GCL represents and warrants that, having filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Court, it has remained in possession of its business and has the authority the continue

operating its business, including entering into this Agreement, while under the Court's protection.

5.13 Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of this Agreement, GCL represents and warrants that it has obtained all corporate and/or any and all other necessary approvals and consents necessary to enter into and perform this Agreement, and that the signatory hereof on its behalf holds the office as indicated under his/her signature and has been duly authorized to enter into and sign this Agreement and the Release.

5.14 The United Nations represents and warrants that it has obtained all necessary approvals and consents necessary to enter into and perform this Agreement, and that the signatory hereof on its behalf holds the office as indicated under his/her signature and has been duly authorized to enter into and sign this Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) indicated below.

GLOBAL CONTAINER LINES LIMITED:

By: *Ali Taksima*

Title *Exec. Vice President*

Date: *March 30th 2010*

The United Nations:

By: *[signature]*

Paul Buades, Director

Procurement Division, OCSS/DM

Date: 31 / 3 / 2010

# ANNEX

# RELEASE BY CLAIMANT

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned, [NAME], acting on behalf of and duly authorized to represent GLOBAL CONTAINER LINES LIMITED (hereinafter referred to as the "Releaser"), its successors, assigns, and all persons or entities acting by, through, under or in concert with them, hereby releases and forever waives and discharges the United Nations and its officials, employees and agents (hereinafter referred to as the "Releasee"), from any and all manner of claims, liabilities, obligations, actions or proceedings of every kind or nature, whether by way of indemnity or otherwise, including GCL's Claims referred to in the Settlement and Release Agreement to which this Release is an Annex, which have been, could have been, or could be asserted against the Releasee or brought in any arbitration or other tribunal, arising out of, related to or in connection with or in any way relating to, directly or indirectly, the Contract and all other issues in connection with or in any way relating to the foregoing, as referred to in the Settlement and Release Agreement to which this Release is an Annex, of any nature whatsoever, known or unknown, fixed or contingent, including all claims for incidental, consequential, punitive or exemplary damages or equitable relief arising out of any of the foregoing which the Releaser has now or may have against the Releasee in connection with or in any way relating to, directly or indirectly, the Contract and all other issues in connection with or in any way relating to the foregoing, as referred to in the Settlement and Release Agreement to which this Release is an Annex.

**IN WITNESS WHEREOF**, the undersigned [NAME], on behalf of GLOBAL CONTAINER LINES LIMITED, has duly executed this Release this 30TH day of MARCH 2010.

_Ali Paksima_ _[signature]_

[Name]

_Exec. Vice President_

[Title]

GLOBAL CONTAINER LINES LIMITED

Notary: