CULLEN AND DYKMAN LLP
Attorneys for Debtor
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq.  (CD 9703)

Counsel for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                    Chapter 11

GLOBAL CONTAINER LINES LIMITED,          Case No. 09-78585 (AST)

                         Debtor.
--------------------------------------------------------x

## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION

DATED AS OF AUGUST 18, 2010

# TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS ...................................................................................1

ARTICLE II       SUMMARY OF PLAN.....................................................................11

ARTICLE III      TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS
                 AND PRIORITY TAX CLAIMS .....................................................11

ARTICLE IV       CLASSIFICATION OF CLAIMS AND INTERESTS ....................13

ARTICLE V        TREATMENT OF CLAIMS AND INTERESTS.............................13

ARTICLE VI       ACCEPTANCE OR REJECTION OF PLAN ..................................15

ARTICLE VII      IMPLEMENTATION OF THE PLAN.............................................15

ARTICLE VIII     CLAIM OBJECTIONS AND DISTRIBUTIONS ...........................18

ARTICLE IX       EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........24

ARTICLE X        EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ...........26

ARTICLE XI       CONDITIONS TO CONFIRMATION AND CONSUMMATION.................29

ARTICLE XII      RETENTION OF JURISDICTION ..................................................30

ARTICLE XIII     ADMINISTRATIVE PROVISIONS ...............................................32

Global Container Lines Limited (the "Debtor"), hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan").

Reference is made to the Disclosure Statement For Plan of Reorganization, dated August 18, 2010 (the "Disclosure Statement"), for a discussion of the Debtor's business, the administration of the Debtor's case and for a summary and analysis of the Plan.

All creditors entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan. Documents referenced in the Plan and/or the Disclosure Statement are also available for review.

## ARTICLE I - DEFINITIONS

The capitalized terms used herein shall have the meanings set forth below. Terms used herein and not otherwise defined shall have the meanings given to them in the Bankruptcy Code or the Bankruptcy Rules unless the context requires otherwise.

**1.1.    Administrative Bar Date** means the date which shall be 30 days after the Confirmation Date, by which proofs of claim or applications for payment of Administrative Claims (other than Fee Claims) arising subsequent to November 10, 2009 and before the Confirmation Date must be filed with the Court, with copies to the parties listed in Section 13.14 of this Plan.

**1.2.    Administrative Claim** means a Claim for a cost or expense of administration of the Chapter 11 Case, other than a Fee Claim, allowable under section 503(b) of the Bankruptcy Code, and referred to in section 507(a)(1) of the Bankruptcy Code, including: (a) the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case of preserving the Estate and operating the business of the Debtor; (b) wages, salaries or commissions for services incurred after the Petition Date; and (c) all fees and charges assessed against the Estate of the Debtor under Chapter 123 of title 28, United States Code.

1.3.    **Affiliated Debtors** means Gilmore Shipping Corp. ("Gilmore"), GCL Shipping

Corp. ("GCL"), Redstone Shipping Corp. ("Redstone"), Global Progress LLC ("Progress"),

Global Prosperity LLC ("Prosperity") and Shiptrade, Inc. ("Shiptrade"), debtors in cases

affiliated with, and jointly administered with, the Debtor's case.  The Affiliated Debtors are not

proponents of this Plan.

1.4.    **Allowed** means, with respect to any Claim, a Claim, subject to Section 8.1 of the

Plan, (i) which is scheduled as undisputed, noncontingent and liquidated in the Schedules, or any

amendment to the Schedules, and as to which no proof of Claim has been timely filed; (ii) as to

which a proof of Claim has been timely filed in a liquidated, non-contingent amount and either

(a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to

the extent allowed) by a Final Order of the Court; (iii) which has been expressly allowed under

the provisions of this Plan; or (iv) which is an Administrative Claim to which no objection has

been asserted by the Debtor, or which has been approved by Final Order of the Court.  An

Allowed Claim:  (x) includes a previously Disputed Claim to the extent such Disputed Claim

becomes Allowed when the context so requires; and (y) shall be net of any valid setoff or

recoupment amount against such Claim based on a valid offset or recoupment right of the

Debtor, which valid setoff or recoupment amount shall be deemed to have been setoff or

recouped in accordance with the provisions of this Plan.  Unless otherwise specified herein or by

order of the Court, Allowed Claims shall not, for any purpose under the Plan, include interest on

such Claims on or after the Petition Date.

1.5.    **Available Cash Flow** means (a) annual income from all sources including

without limitation (i) cash, (ii) proceeds of accounts receivable, (iii) proceeds from claims, sales

of equipment or insurance proceeds, other than Estate Causes of Action, and (iv) insurance

refunds, tax refunds and any other funds received by the Reorganized Debtor to which it is legally entitled, less (b) annual expenses or obligations, including without limitation (i) the Fixed Distribution Amount, (ii) other obligations under the Plan to creditors other than General Unsecured Creditors, (iii) debt service to NBP, and (iv) all operating expenses including without limitation rent, salaries, taxes, utilities, payments to suppliers, vendors and other expenses incurred in the operation of the Reorganized Debtor's business.  Available Cash Flow shall be determined annually at the end of each calendar year.

     **1.6.**    **Ballot** means the ballot distributed to each eligible claimant by the Balloting Agent, on which ballot such claimant may, _inter alia_, vote for or against the Plan.

     **1.7.**    **Ballot Deadline** means the date and time set by the Court by which the Balloting Agent must receive all Ballots.

     **1.8.**    **Balloting Agent** means Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York, NY  11530.

     **1.9.**    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

     **1.10.**    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and any applicable local rules of the Court as now in effect or hereafter amended.

     **1.11.**    **Bar Date** means March 12, 2010, the date set by the Court as the deadline for filing Claims against the Estate incurred prior to the Petition Date, as established by the Bar Date Order.

     **1.12.**    **Bar Date Order** means that certain order of the Court dated February 5, 2010, establishing the Bar Date.

1.13.    **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.14.    **Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

1.15.    **Chapter 11 Case** means the chapter 11 case of the Debtor pending before the Court.

1.16.    **Claim** means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

1.17.    **Class** means a group of Claims or Interests as described in Articles III and IV of the Plan.

1.18.    **Committee** means the Official Committee of Unsecured Creditors in the Chapter 11 Case, as appointed by the United States Trustee.

1.19.    **Confirmation Date** means the date the Court enters the Confirmation Order on its docket.

1.20.    **Confirmation Hearing** means the hearing by the Court to consider confirmation of the Plan.

1.21.    **Confirmation Order** means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22.    **Court** means the United States Bankruptcy Court for the Eastern District of New York, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

1.23.    **Debtor** means Global.

**1.24.  Disallowed Claim** means a Claim or portion thereof that (i) has been disallowed by a Final Order; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date.

**1.25.  Disclosure Statement** means the Disclosure Statement dated July 9, 2010 that relates to this Plan and which is approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

**1.26.  Disclosure Statement Order** means the order of the Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**1.27.  Disputed Claim** means any Claim or any portion thereof which has not become Allowed, which is not a Disallowed Claim, or against which an objection to the allowance thereof has heretofore been or is hereafter interposed and which has not been allowed by Final Order; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code.  Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is or becomes the subject of an application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, shall be deemed to constitute a Disputed Claim.

**1.28.  Distribution** means the distributions to creditors in accordance with this Plan, or the Cash so distributed.

**1.29.    Distribution Address** means the address set forth in the relevant proof of claim. If no proof of claim is filed in respect to a particular Claim, such defined term means the address set forth in the Debtor's Schedules of Assets and Liabilities.

**1.30.    Distribution Agent** means Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530.

**1.31.    Distribution Reserve** means the reserve to be established, if necessary, by the Distribution Agent on either the Effective Date or on an Unsecured Distribution Date, as the case may be, into which shall be deposited the amount of Cash that would have been distributed under the Plan on such dates to holders of Disputed Claims not yet resolved, and Administrative and Fee Claims not yet Allowed, pending the allowance of such Claims by order of the Court or by agreement of the Debtor. At the end of each calendar year, and after calculating the amount of Available Cash Flow, the funds to be distributed to the Class 3 General Unsecured Creditors shall be placed into the Distribution Reserve pending the occurrence of the Unsecured Distribution Date.  The Distribution Reserve shall be maintained as a separate, segregated account by the Debtor.

**1.32.    Effective Date** means the first Business Day after the date each of the conditions set forth in Section 11.1 hereof has been satisfied or waived by the Debtor.

**1.33.    Estate** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.34.    Estimation Order** means an order or orders of the Court estimating for voting and/or distribution purposes (under either or both section 502(c) of the Bankruptcy Code or Bankruptcy Rule 3018(a)) the aggregate (and if applicable, individual) face amount of Disputed Claims in each relevant Class.  Estimation Order may include, without limitation, the

Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.35.** **Exculpated and Released Parties** means the Debtor, its officers and directors, the Committee and former and current members thereof (but solely in their capacity as such, and specifically excluding any member of the Committee as a vendor of, or in similar relationship to, the Debtor), the Distribution Agent, and any current or former agent, representative, employee benefit plan fiduciary, employee benefit plan administrator, attorney, accountant, financial advisor or other professional of the Debtor, the Committee and members thereof, and the Distribution Agent but only if and to the extent, in each case, that such party served in such capacity on or after the Petition Date, and only in such capacity.

**1.36.** **Fee Claim** means a Claim for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case.

**1.37.** **Fee Claims Bar Date** means a date which shall be 45 days after the Confirmation Date, by which date all applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court.

**1.38.** **Final Order** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or

any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court, could be filed with respect to such order shall not cause such order not to be a Final Order.

    **1.39.** **Fixed Unsecured Distribution** shall mean the following amounts in the respective calendar years:

| Calendar Year | Fixed Distribution Amount |
|---|---|
| December 31, 2010, | $50,000 |
| December 31, 2011 | $50,000 |
| December 31, 2012 | $100,000 |
| December 31, 2013 | $150,000 |
| December 31, 2014 | $250,000 |
| December 31, 2015 | $100,000 |
| December 31, 2016 | $50,000 |

    **1.40.** **General Unsecured Claim** means any Claim that is not: (a) an Administrative, Priority Non-Tax, or Priority Tax Claim; (b) a Secured Claim; (c) a Fee Claim; or (d) a Claim included within any other Class of Claims or Interests.

    **1.41.** **Global** means Global Container Lines Limited.

    **1.42.** **Interest** means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

    **1.43.** **Maritime Lien Claims** means all claims for crew wages, port charges, provisions, supplies and expenses associated with the operation of a shipping vessel.

**1.44.    NBP** means National Bank of Pakistan, holding a first priority security interest in all of the Debtor's assets, as more fully described in the Disclosure Statement.

**1.45.    NBP Secured Claim** means the claim of NBP against the Debtor, secured by a first priority security interest in all of the Debtor's assets, in the amount of $13,777,000 plus interest as of the Petition Date, which has been increased and/or reduced during the pendency of the Chapter 11 Case, and now amounts to $8,959,522, subject to further reduction all as described in the Disclosure Statement, together with an unfunded Letter of Credit obligation of $150,000 (which may or may not be drawn upon in whole or in part before it expires August 31, 2010).

**1.46.    Person** means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, the Committee, Interest holders, holders of Claims, current or former employees of the Debtor, or any other entity.

**1.47.    Petition Date** means November 10, 2009.

**1.48.    Plan** means this Plan of Reorganization, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as may be filed hereafter in accordance with the terms of the Plan, the Bankruptcy Code and other applicable law.

**1.49.    Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; (b) a Priority Tax Claim; or (c) a Fee Claim.

**1.50.    Priority Tax Claim** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.51.    Ratable, Ratably or Ratable Share** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims in such Class, plus (b) Disputed Claims in such Class as of any date of determination.

**1.52.    Reorganized Debtor** means the reorganized Debtor entity from and after the Effective Date.

**1.53.    Schedules or Schedules of Assets and Liabilities** means the Debtor's schedules of assets and liabilities filed with the Court pursuant to sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code, as the same may have been, or may hereafter be, amended.

**1.54.    Secured Claim** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor's interest in property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date.  The defined term Secured Claim includes any Claim that is: (i) subject to an offset right and the holder of such Secured Claim under applicable law; and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.55.    Unclaimed Property** means any Cash unclaimed after 90 days following a Distribution Date as provided in Section 8.5 this Plan.  Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution

Address to mail or deliver such property was available, notwithstanding efforts by the Distribution Agent to locate such address which were reasonable under the circumstances as provided for in the Plan.

**1.56.    United States Trustee** means the Office of the United States Trustee for the Eastern District of New York.

**1.57.    Unsecured Distribution Date** means March 31st of the year following the Effective Date, and each March 31st thereafter for the next succeeding six (6) years. By way of example, if the Effective Date of the Plan occurs in September 2010, the first Unsecured Distribution Date shall be March 31, 2011.

## ARTICLE II - SUMMARY OF PLAN

This Plan calls for the reorganization of the Debtor. The Plan proposes to pay all Administrative, Fee, and Priority Tax and Non-Tax claims in full on the Effective Date, to pay the NBP Secured Claim in accordance with negotiated terms and to pay General Unsecured Claims a percentage of the Debtor's Available Cash Flow for a period of six (6) years together with certain fixed payments.

## ARTICLE III - TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS

Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article IV.

**3.1.    Administrative Claims.** Unless otherwise provided for herein, each holder of an Allowed Administrative Claim shall be paid 100% of the Allowed amount of such Administrative Claim in Cash either in the ordinary course of the Debtor's business, or on or as soon as reasonably practicable after the Effective Date, or upon such other less favorable treatment as may be agreed upon by such holder and the Debtor.

**3.2.    Bar Date for Administrative Claims.  Proofs of claim or applications for payment of Administrative Claims (other than Fee Claims) arising subsequent to November 10, 2009 and before the Confirmation Date must be filed with the Court, with copies to the parties listed in Section 13.14, of this Plan on or before the Administrative Bar Date. Any Person that fails to file such a proof of claim or application with the Court within that time shall be forever barred from asserting such an Administrative Claim including without limitation, against the Debtor, the Reorganized Debtor, the Estate, or their property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover any such Administrative Claim.**

**3.3.    Fee Claims.** Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive 100% of the Allowed amount of such Claim in Cash from operations by agreement with the professionals, or such other less favorable treatment as may be agreed by such holder and the Debtor.

**3.4.    Bar Date for Fee Claims.  All applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court on or before the Fee Claims Bar Date. Any Person or entity that fails to file such application on or before such date shall be forever barred from asserting such a Fee Claim against the Debtor, the Reorganized Debtor, the Estate, or their property, and the holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Fee Claim.**

**3.5.    Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim shall be paid 100% of the Allowed amount of such Claim in Cash on or as soon as reasonably practicable after the Effective Date.  Any claim or demand for penalty relating to any Priority Tax Claim

shall be disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Exculpated and Released Parties, the Debtor's past or present members, directors and officers, or their property. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim may receive such other less favorable treatment as may be agreed upon by the claimant and the Debtor.

## ARTICLE IV - CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject this Plan.

**4.1.    Classes**

| | Class | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | NBP Secured Claim | Impaired | Yes |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Interests | Impaired | No (deemed to reject) |

**4.2.    General Rules of Classification.**  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim has not been paid, released or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. For voting and distribution purposes, a holder of more than one Claim in a Class shall be deemed to have a single Claim in such Class.

## ARTICLE V - TREATMENT OF CLAIMS AND INTERESTS

**5.1.    Priority Non-Tax Claims (Class 1).**  Each holder of an Allowed Priority Non-Tax Claim shall receive Cash in the full amount of its Allowed Claim, on or as soon as

13

reasonably practicable after the Effective Date, or such less favorable treatment as the Debtor

and the holder of such Allowed Priority Non-Tax Claim may agree upon.

    **5.2.    NBP Secured Claim (Class 2).**  Class 2 consists of the NBP Secured Claim in the

outstanding principal amount of $8,959,522 subject to further reduction as described above.

Commencing on or about July 1, 2010 as soon as practical and continuing through December 31,

2010, NBP shall be paid interest only at the current prime rate plus 1.75% per annum on the

outstanding principal balance of the NBP Secured Claim.  For the period of January 1, 2011

through June 30, 2011, NBP shall be paid interest only at the current prime rate of 2.5% per

annum on the outstanding principal balance of the NBP Secured Claim.  Beginning July 31.

2011, and ending on October 31, 2013, NBP shall receive 28 equal monthly installments of

principal, together with interest on the outstanding principal balance of the NBP Secured Claim

at the current prime rate plus 3.5%.  In addition, NBP shall be paid a restructuring fee by the

Debtor of $250,000 on June 30, 2014, June 30, 2015 and June 30, 2016. The restructuring fee for

each individual calendar year shall be made only after the Debtor has made its required payments

to the Class 3-General Unsecured Claims pursuant to Section 5.3 below.

    **5.3.    General Unsecured Claims (Class 3).**  On each Unsecured Distribution Date,

each holder of an Allowed General Unsecured Claim shall receive its Ratable share of (a) the

Fixed Unsecured Distribution attributable to the preceding calendar year and (b) 32.5% of

Available Cash Flow for the preceding calendar year, up to 100% of the Allowed amount of such

Claims.  As an additional Distribution, holders of General Unsecured Claims will receive their

Ratable share of recoveries from Estate Causes of Action as discussed in Section (V)(H) of the

Disclosure Statement  The holder of an Allowed Class 3 Claim may receive such less favorable

treatment as the Debtor and the holder of such General Unsecured Claim may agree upon.

**5.4.    Interests (Class 4).**  Holders of Interests in the Debtor shall receive no distribution of any kind under the Plan on account of such Interests.  As of the Effective Date, all Interests in the Debtor shall be deemed cancelled.

## ARTICLE VI - ACCEPTANCE OR REJECTION OF PLAN

**6.1.    Voting of Claims.**  Each holder of an Allowed Claim in Classes 2 and 3 shall be entitled to vote to accept or reject this Plan.

**6.2.    Acceptance by a Class.**  Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one-half in number of the holders, of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**6.3.    Presumed Acceptance of Plan.**  Pursuant to section 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a plan is conclusively presumed to accept a plan. Accordingly, under this Plan, Class 1 is unimpaired and is conclusively presumed to accept the Plan.

**6.4.    Presumed Rejection of Plan.**  In accordance with section 1126(g) of the Bankruptcy Code, any Class that is to receive no distribution under a plan is conclusively presumed to reject a plan.  Accordingly, Class 4 is conclusively presumed to reject this Plan and the votes of Interest holders will not be solicited.

## ARTICLE VII - IMPLEMENTATION OF THE PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of the Plan.

### 7.1.    Funding of the Plan.

(a)    **Source of Distributions.**  The payments required under the Plan shall be made from the Debtor's operations, cash flow and any other funds received by the Debtor.  As set forth in the Disclosure Statement, the Debtor anticipates that Allowed Administrative Claims will be paid in the ordinary course of business or will be *de minimis* claims for United States Trustee Fees, which Claims will be paid in full on the Effective Date.  As shown on the Debtor's cash flow projections for the years 2010 through 2016 (the "Cash Flow Projections") annexed as Exhibit A to the Disclosure Statement, the Debtor will have sufficient cash on hand in order to pay those Administrative Claims at that time.  As also set forth in the Disclosure Statement, the Debtor believes that Allowed Fee Claims will amount to $350,000, which will be paid from operations by agreement of the professionals.  Payments upon the NBP Secured Claim and General Unsecured Claims are to be paid from cash flow as set in the Cash Flow Projections.  The Debtor's income projections are based upon its reinstatement to the U.N. Vendor Database and the resumption of the Debtor's participation in U.N. tenders.  As set forth in the Disclosure Statement, the Debtor has been reinstated by the U.N. as a Level 1 vendor and has been assured by the U.N. Vendor Review Committee that upon Confirmation of the Plan, reinstatement as a Level 4 vendor will be effectuated immediately.

(b)    **No Segregation of Funds.**  Notwithstanding any contrary provision contained herein, the Distribution Agent may, but shall not be obligated to, physically segregate and maintain separate accounts for the Distribution to different creditor Classes.  Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Distribution Agent to determine available Cash and amounts to be paid to parties in interest through and including the end of each calendar year.

(c)    **Estate Causes of Action**.  Estate Causes of Action will be pursued by the Committee in its sole and absolute discretion.  Any and all net proceeds recovered from the pursuit of Estate Causes of Action shall be distributed by Committee counsel to holders of Allowed General Unsecured Claims at such time as all Estate Causes of Action have been completely liquidated.

7.2.    **Exemption from Certain Transfer Taxes.**  Provided that this Plan is confirmed, pursuant to section 1146(a) of the Bankruptcy Code:  (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, the Plan or the sale of any assets of the Debtor, including any deeds, bills of sale or assignments executed in connection with or in contemplation of the Plan, shall not be subject to any stamp tax or similar tax, to the fullest extent provided for under section 1146(a) of the Bankruptcy Code.

7.3.    **Withdrawal of the Plan.**  The Debtor reserves the right to revoke and withdraw or to modify the Plan in accordance with Section 13.1 hereof at any time up to the Effective Date.  If the Debtor revokes or withdraws the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or its Estate or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur.

7.4.    **Cramdown.**  The Debtor is seeking confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class voting against the Plan.

**7.5.    Preservation of Insurance Policies.**  Nothing in the Plan, including any releases, diminishes or impairs the enforceability of any insurance policies that may cover any claim by or against the Debtor, the Estate or any other Person.

**7.6.    No Distribution on Disputed Claims.**  Notwithstanding anything to the contrary in this Plan, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant if, at any time before an otherwise applicable Distribution is issued, (a) the Debtor has taken action to recover on any cause of action or defense against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), or (b) an objection to such Claim has been made, until such cause of action, defense or Claim objection is resolved by Final Order or agreement of the Debtor.  In that event, any pro rata distribution to which the holder of such Claim is entitled as if that Claim had been allowed in full shall be placed into the Distribution Reserve pending resolution of the cause of action, defense or objection.

## ARTICLE VIII - CLAIM OBJECTIONS AND DISTRIBUTIONS

**8.1.    Objections to and Estimation of Claims.**  From and after the Effective Date, the Reorganized Debtor will attempt to resolve consensually any disputes regarding the amount of any Claim.  From and after the Effective Date, the Reorganized Debtor shall have the right to object to the allowance of any Claim, and either may file with the Court any other appropriate motion or adversary proceeding with respect thereto.  All Claim objections may be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle, withdraw, or resolve by any other method approved by the Court (including, without limitation, methods previously approved by the Court during the Chapter 11 Case), any objections to any Claim.  All Claim objections shall be filed within 120 days of the Effective Date.  This deadline

to object to Claims can be further extended for two (2) additional periods of 90 days each by filing a notice with the Court.

In addition, the Reorganized Debtor may, at any time, request that the Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Claim that is contingent or unliquidated, regardless of whether the Debtor or Reorganized Debtor has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated Claim, the estimate will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

**8.2.    Claims Filed After Objection Deadline.**  In addition to objections with respect to late filed Claims, any Claim filed after any applicable Bar Date shall, unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court. Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of the Debtor. Any newly filed Claim filed after any applicable Bar Date

shall, unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.

**8.3.    No Recourse to Debtor, Distribution Agent and Others.**  Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in reserve to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no Claim holder shall have recourse to the Debtor, the Reorganized Debtor, the Distribution Agent, the Committee and its former and current members, or any of their respective past or present professionals, or their successors or assigns, or the holder of any other Claim, or any of their respective property.  THUS, THE COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**8.4.    Transmittal of Distributions and Notices.**

(a)    Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by that Person or his authorized agent. Absent any of the foregoing, the address set forth in the Schedules for that Person may be used. Property distributed in accordance with this section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.  Notwithstanding anything in this Plan to the contrary, the Distribution Agent shall have no obligation to attempt to

locate any Person who is or becomes entitled to receive any Distribution under the Plan with regard to any undeliverable or uncashed Distributions.

(b)      A holder of a Claim or Interest may designate a different address for notices and Distributions by notifying the Debtor and the Distribution Agent of that address in writing.  Any change of address of a party entitled to receive Distributions hereunder must be provided by registered mail in order to be effective.  Such notification shall be effective upon receipt.

(c)      If any Distribution to a holder of a Claim is returned as undeliverable (e.g., "forwarding time expired, "addressee unknown", etc.), no further Distributions to such holder shall be made unless and until the Distribution Agent is timely notified within the time limits set forth in Section 8.5 of the Plan, in writing, of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest.

    **8.5.    Unclaimed Property.**  If any Distribution remains unclaimed for a period of 90 days after the relevant Distribution Date to the holder of an Allowed Claim entitled thereto, the Distribution shall constitute Unclaimed Property and the holder shall no longer be entitled to such Distribution.  All such property shall be retained by the Distribution Agent for distribution pursuant to the terms of the Plan, subject, however, to the Distribution Agent's sole discretion to distribute Unclaimed Property to holders entitled thereto if such holders are subsequently located.

    **8.6.    Withholding Taxes and Expenses of Distribution.**  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Distribution Agent

shall be authorized to withhold Distribution on such Claims until the requisite information is received. If such information is not received within 90 days after the relevant Distribution Date, the provisions of the immediately preceding Section 8.5 shall apply. In addition, all Distributions under the Plan shall be net of the actual and reasonable costs of making such Distributions and of any allocable fees or other charges relating thereto.

**8.7. Disputed Payment.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Distribution Agent, in lieu of making such Distribution to such Person, may make such Distribution into an escrow account until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

**8.8. Setoffs and Recoupment.** Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, the Debtor or Reorganized Debtor may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to effect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Debtor or Reorganized Debtor, nor any provision of this Plan shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder. To the extent the Debtor or Reorganized Debtor fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to such creditor pursuant to the Plan, the

Debtor or Reorganized Debtor, if successful in asserting such claim, shall be entitled to full recovery against such creditor. The Debtor or Reorganized Debtor may seek periodic Court approval for any such setoffs or recoupments.

**8.9. Miscellaneous Distribution Provisions.**

(a) **Method of Cash Distributions.** Any Cash payment to be made by the Distribution Agent pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Distribution Agent, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(b) **Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(c) **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value in excess of the allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim shall be allowed nor Distribution made to the extent that it is for post-petition or post-Confirmation interest.

(d) **Minimum Distributions.** If a Distribution to be made to a given holder of an Allowed Claim would be $50.00 or less, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such holder. Any unclaimed Distributions shall be retained by the Distribution Agent for Distribution pursuant to the terms of the Plan.

(e) **Disposition of Excess Funds.** If, after 90 days following the final Distribution Date, any Unclaimed Property remains, or Cash of inconsequential value to the Estate remains in the possession or under the control of the Reorganized Debtor or the Distribution Agent, and the Distribution Agent has satisfied and discharged all the expenses

intended to be paid on behalf of the Estate, the Distribution Agent shall, with the approval of the

Committee, either apply remaining Cash or Unclaimed Property for further Distribution Ratably

in accordance with the Plan or abandon such funds in a commercially reasonable manner,

including to a charitable organization.

## ARTICLE IX - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1.    Rejection of Executory Contracts and Unexpired Leases.**  Except as otherwise

provided herein, on the Confirmation Date, but subject to the occurrence of the Effective Date,

all prepetition executory contracts and unexpired leases of the Estate not previously assumed or

rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy Code, except

(a) any executory contract or unexpired lease that is the subject of a separate motion to assume,

assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry

of the Confirmation Order; or (b) any executory contract or unexpired lease which shall have

expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto

shall not constitute an admission that any such contracts or leases are in fact executory contracts

or unexpired leases or that the Debtor had any liability thereunder. The Confirmation Order shall

constitute an order of the Court approving the rejections described herein, pursuant to

section 365 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence

of the Effective Date. Notwithstanding anything in this Plan to the contrary, no executory

contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this

Article IX if the Effective Date fails to occur for any reason.

**9.2.    United Nations and Briarcliff Contracts.**  Notwithstanding anything herein to

the contrary, no contracts between the Debtor and the United Nations or any of its organizations

or administrative arms, which the Debtor believes do not constitute executory contracts, shall be

deemed rejected under the Plan.  Any such contracts shall neither be assumed nor rejected in the

Debtor's case, but shall continue to be performed in accordance with its terms until terminated in accordance with the provisions thereof. The Debtor's current bareboat charter agreement with Briarcliff Ltd expires on August 24, 2010; however, the Debtor and Briarcliff have agreed to a series of one month renewals and/or extensions of the current charter agreement beginning on August 24, 2010 and ending on or about October 24, 2010 to enable the Debtor to fulfill its contractual obligations to the U.N.  Each separate one month renewal and/or extension of the bare boat charter agreement shall be considered a separate and distinct executory contract for that particular month that has been assumed pursuant to Section 365 of the Bankruptcy Code.

**9.3.    Claims Relating to Rejected Pre-Petition Executory Contracts and Unexpired Leases.**  Any Claim for damages arising by reason of the rejection of any pre-petition executory contract or unexpired lease hereunder must be filed on or before thirty (30) days following the Confirmation Date, and upon the failure of any entity to file such claim on or before such date, such entity shall be forever barred from asserting a claim on account of the rejection of such contract or unexpired lease, but shall nevertheless be bound by the provisions of the Plan.  Nothing in this Section 9.3 will extend any prior Bar Date set by prior order of the Bankruptcy Court.

There shall be no restriction on the rights of the Debtor or Reorganized Debtor to object to any Claims relating to the rejection of executory contracts or unexpired leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

Any Allowed Claims arising from the rejection of an executory contract or unexpired lease rejected pursuant to the provisions of Section 9.1 will constitute a Class 3 General Unsecured Claim.

## ARTICLE X - EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**10.1.    Surrender of Securities and Cancellation of Existing Securities and/or Related Agreements.**

(a)    **Surrender of Securities.** Each holder of any Claim against or Interest in the Debtor shall, to the extent not already done and to the extent applicable, surrender to the Debtor any original note, instrument, certificate, certificated security or other item evidencing such Claim, and provide copies of any supporting agreement or other document.  No Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until such holder surrenders such items to the Debtor, or demonstrates the non-availability of such items to the satisfaction of the Debtor, including requiring such holder to post a lost instrument or other indemnity bond, among other things, to hold the Debtor or Reorganized Debtor harmless in respect of such instrument or other item described above and any Distributions made in respect thereof.  Any such holder that fails to surrender such items described above or satisfactorily explain their non-availability to the Debtor or Reorganized Debtor within ninety (90) days of the Distribution Date, or such later date as the Debtor or Reorganized Debtor may designate, shall be deemed to have no further Claim against the Debtor, Reorganized Debtor, the Estate or their property in respect of such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property.  Notwithstanding the immediately preceding sentence, any such holder of a Disputed Claim shall not be required to surrender such items until the time such Claim is allowed or disallowed.

(b)    **Cancellation of Existing Securities and/or Related Agreements.** Except for purposes of evidencing a right to distributions under this Plan or otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing (i) any Claims

or rights of any holder of a Claim against or Interest in the Debtor and (ii) any options or

warrants to purchase Interests, obligating the Debtor to issue, transfer or sell Interests or any

other capital stock of the Debtor, shall be deemed canceled and terminated and of no further

force or effect.

**10.2.    Issuance of New Securities in Reorganized Debtor; Officers and Directors.**

On the Effective Date, 100% of the issued and outstanding stock of the Reorganized

Debtor shall be issued in the following percentages: Kazem Paksima- 44%; Ali Paksima- 44%;

and Hormoz Shayegan- 12%.  The issuance of securities by the Reorganized Debtor is

authorized without further act or action under applicable law, regulation, order or rule.  The

Confirmation Order shall provide that the issuance of the securities in the Reorganized Debtor

shall be exempt from the registration requirements of the Securities Act of 1933, as amended, in

accordance with section 1145 of the Bankruptcy Code.

On the Effective Date, all old Interests in the Debtor shall be cancelled and extinguished

and the holders thereof shall have no rights and such instruments shall evidence no rights.

From and after the Effective Date, the officers and directors of the Reorganized Debtor

shall consist of the following officers and directors who served the Debtor prior to the Petition

Date:

> Kazem Paksima – President, Director
>
> Ali Paksima – Executive Vice President, Director
>
> Hormoz Shayegan – Secretary, Director

**10.3.    Injunction and Exculpation.**

(a)      **Injunction.  The Confirmation Order will provide, among other**

**things, that all Persons who have held, hold or may hold Claims against or Interests in the**

Debtor are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from (a) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claim or Interests, (b) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against the Debtor or Reorganized Debtor on account of such Claim or Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, Reorganized Debtor or against the property or interests in the property of the Debtor or Reorganized Debtor on account of any such Claim or Interests, (d) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (e) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (f) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.  Such injunction shall extend to the successors of the Debtor (including, without limitation, the Reorganized Debtor entity) and their respective property and interests in property.

(b)    Exculpation.  The Exculpated and Released Parties, any property of or professionals retained by such parties who provided services to the Estate during this Chapter 11 Case and all direct or indirect predecessors-in-interest to any of the foregoing Persons, will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Estate, including but not limited to (i) the commencement and administration of the Chapter 11 Case, (ii) the

operation of the Debtor during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 Case or in connection with the Plan; or (v) any Distributions made pursuant to the Plan. Nothing in this section shall (i) be construed as a release of such Person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this paragraph or any claims against such Person under chapter 5 of the Bankruptcy Code, or (ii) limit the liability of the Debtor's or Committee's professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

(c)    **Direct Claims.**  Except as specifically set forth in this Plan, this Plan shall in no manner act or be construed to waive, release or enjoin any direct, non-derivative claims or actions held by a non-Debtor against any third party including, without limitation, any Exculpated and Released Party based upon any act or occurrence, or failure to act, taking place prior to the Petition Date.

## ARTICLE XI - CONDITIONS TO CONFIRMATION AND CONSUMMATION

**11.1.    Conditions to Effective Date/Consummation.**  This Plan may not be consummated, and the Effective Date shall not occur, unless and until the Confirmation Order shall have become a Final Order.

**11.2.    Effect of Nonoccurrence of the Conditions to Consummation.**  If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or waived by the Debtor within 30 days after the Confirmation Date, or such later date as shall be agreed by the Debtor, the Confirmation Order may be vacated by the Court.  If the Confirmation

Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or Interests in, the Debtor.

## ARTICLE XII - RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Court shall retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    To determine the allowability, classification, or priority of Claims upon objection by the Debtor and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

(b)    To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person;

(c)    To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate ;

(d)    To determine any and all applications for allowance of Fee Claims;

(e)    To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(f)    To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

(g)    To determine all Estate Causes of Action, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case;

(h)    To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purpose;

(i)    To issue orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

(j)    To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(k)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(l)    To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(m)    To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

(n)     To resolve any disputes concerning any release of a Person hereunder whether or not such Person is one of the Debtor or the injunction against acts, employment of process or actions against such Person;

(o)     To approve any Distributions, or objections thereto, under the Plan;

(p)     To approve any Claims settlement entered into or offset exercised by the Debtors or Reorganized Debtor;

(q)     To enter a Final Order closing the Chapter 11 Case;

(r)     To adjudicate all matters relating to the recovery of all assets of the Debtor and property of the Debtor's estate or of the Reorganized Debtor including, but not limited to, any amounts due and owing the Debtor or Reorganized Debtor (i) by the UN pursuant to the Debtor's various UN contracts, (ii)  by Friends (PVT) LTD and (iii) by Dyncorp International; and

(s)     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

## ARTICLE XIII - ADMINISTRATIVE PROVISIONS

### 13.1.  Amendments.

(a)     **Pre-Confirmation Amendment.** The Debtor  may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)     **Post-Confirmation Amendment Not Requiring Resolicitation.** After the entry of the Confirmation Order, the Plan may be modified to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Court approval for such

32

modification is obtained, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims or Interests under the Plan.

        (c)      **Post-Confirmation/Pre-consummation Amendment Requiring Resolicitation.**  After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, provided that:  (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount of Allowed Claims in Classes entitled to vote upon the Plan; and (iv) the Debtor complies with the provisions of the Bankruptcy Code, including section 1125 of the Bankruptcy Code, with respect to the Plan as modified.

       **13.2.**   **The Role of the Committee and Retention of Professionals.**  The Committee shall survive the Effective Date and shall continue in existence until entry of the Final Decree, or such other date as the Court may order, after notice and a hearing, for all purposes permitted under the Bankruptcy Code.   The Committee shall continue to retain its current attorneys from and after the Effective Date. The Committee shall be entitled to appoint an individual to act as the creditor's representative (the "Creditor Representative").  The Creditor Representative shall monitor the Reorganized Debtors' implementation of the Plan on behalf of the Debtor's general unsecured creditors and shall have the right to inspect the Reorganized Debtor's books and records at reasonable times during normal business hours. The Reorganized Debtor's operating budget post-Effective Date shall be subject to the review of the Creditor Representative, on

fourteen (14) business days notice.  In the event of any objection to the Reorganized Debtor's budgets, the Creditor Representative shall have the right to seek Bankruptcy Court intervention.

**13.3.    Post-Effective Date Expenses.**  After the Effective Date, the reasonable cost of the Distribution Agent, its professionals and accountants, the Creditor Representative, Committee's counsel and accountants shall be paid by the Reorganized Debtors from the Debtor's operations.  Any request for payment by any of the aforementioned parties shall be in the form of a detailed invoice that shall be served upon the Office of the United States Trustee, the Creditor Representative, the Distribution Agent, NBP and the Debtor and may be paid at any time after fifteen (15) days after service of such an invoice; provided further, that if the Office of the United States Trustee, the Creditor Representative, the Distribution Agent, NBP and the Debtor notifies the party seeking payment of any objection to such payment, then the undisputed portion may be paid and the disputed portion shall be withheld until the parties resolve the objection or upon an order of the Bankruptcy Court.  However, the payment for any costs and fees incurred by the Creditor's Representative, Committee's counsel and accountants related to the Estate Causes of Action shall be made solely from the proceeds of the Estate Causes of Action

**13.4.    Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**13.5.    Governing Law.**  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

**13.6.    Courts of Competent Jurisdiction.**  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.7.    Effectuating Documents and Further Transactions.**  The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan.

**13.8.    Cramdown.**  The Debtor requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed not to have accepted this Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Debtor reserves the right to (i) request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code and (ii) to modify this Plan to the extent, if any, that confirmation of this Plan under section 1129(b) of the Bankruptcy Code requires modification.

**13.9.    Confirmation Order and Plan Control.**  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan.

**13.10.    Severability.**  In the event that the Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it

valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.11. Fractional Distribution.**  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar.

**13.12. Rules of Construction.**

(a)    **Undefined Terms.**  Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

(b)    **Miscellaneous Rules.**  (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise; (ii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (iii) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date; (iv) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (v) whenever the Plan provides that a

payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after" such date.

**13.13.  Extension of Dates; Consent.**  To the extent any provision or definition of the Plan provides for an act or event to take place on a certain date, such date may be extended upon the written consent of the Debtor or the Reorganized Debtor.  Any provision of the Plan which is conditioned upon, or subject to the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

**13.14.  Notices.**  All notices or requests in connection with the Plan shall be in writing and deemed to have been given five Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission, addressed to:

    (a)    if to the Debtor or Reorganized Debtor:

> Global Container Lines Limited
> c/o Cullen and Dykman LLP
> 100 Quentin Roosevelt Blvd.
> Garden City, New York 11530
> Attn:  Matthew G. Roseman, Esq.
>        Nathan Dee, Esq.

    (b)    if to the Distribution Agent:

> Cullen and Dykman LLP
> 100 Quentin Roosevelt Blvd.
> Garden City, New York 11530
> Attn:  Matthew G. Roseman, Esq.
>        Nathan Dee, Esq.

    (c)    if to the Committee:

> LaMonica, Herbst & Maniscalco LLP
> 3305 Jerusalem Avenue
> Wantagh, New York  11793
> Attn: Gary Herbst, Esq.
>       Adam Wofse, Esq.

**13.15. Post-Confirmation Date Service List - Persons Entitled to Notice.** From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Court and served upon the Persons listed in Section 13.14 of the Plan.

**13.16. Notice of Entry of Confirmation Order.** Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Court, without attaching said order, is mailed to those Persons who had filed a notice of appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

**13.17. No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

DATED: August 18, 2010

GLOBAL CONTAINER LINES LIMITED

By: _____/s/ Kazem Paksima_____
    Kazem Paksima, President

CULLEN AND DYKMAN LLP
Attorneys for the Debtor

By: _____/s/ C. Nathan Dee, Esq._____
Matthew G. Roseman, Esq. (MR-1387)
C. Nathan Dee, Esq. (CD-9703)
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516)357-3700