Hearing Date and Time: November 17, 2010 at 9:30 a.m.<br>
Objection Date and Time: November 10, 2010 at 4:00 p.m.

CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq. (CD 9703)

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                              Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,          Case Nos.  09-78585 (AST)
                                                                                  09-78584 (AST)
                                                                                  09-78589 (AST)
                                                                                  09-78586 (AST)
                                                                                  09-78587 (AST)
                                                                                  09-78588 (AST)
                                                                                  09-78590 (AST)

                            Debtors.
-----------------------------------------------------------x

   PLEASE TAKE NOTICE that on November 17, 2010 at 9:30 A.M., or as soon thereafter as counsel can be heard, Global Container Lines Ltd., (the "Reorganized Debtors" or "Global"), by and through their proposed undersigned counsel will move (the "Motion") before the Honorable Alan S. Trust, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of New York, located at 290 Federal Plaza, Courtroom 960, Central Islip, New York, 11722 for an Order pursuant to Rules 2002, 9006 and 9016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for an Order Authorizing the Debtor to enter into a Stipulation of Settlement with the United Nations arising out of the delivery of peacekeeping equipment from Senegal to the Sudan.

PLEASE TAKE FURTHER NOTICE, that a copy of the Motion is available for inspection during normal business hours at the office of the Clerk of the United States Bankruptcy Court located at 290 Federal Plaza, Central Islip, New York, 11722, or may be obtained by contacting the undersigned counsel.

PLEASE TAKE FURTHER NOTICE, objections to the Debtors' Motion, if any, shall be filed as follows: (A) (i) through the Bankruptcy Court's electronic filing system in accordance with General Order N-182, which may be accessed through the internet at the Bankruptcy Court's website: www.nyeb.uscourts.gov using Netscape Navigator software version 3.0 or higher; (ii) portable document format (PDF) using Adobe Exchange software for conversion; or (B) for parties unable to file electronically, such parties shall file the objection in PDF format on a diskette in an envelope with a case name, case number, type and title of document, document number to which the objection refers, and the file name on the outside of the envelope; or (C) for parties unable to file electronically or use PDF format, those parties shall submit the objection on diskette in either Word, Word Perfect of DLS text (ASCII) format. An objection filed by a party with no legal representation shall comply with section (B) or (C) as set forth in this paragraph.

PLEASE TAKE FURTHER NOTICE that a hard copy of an objection, if any, (a) shall be delivered directly to chambers of the Honorable Alan S. Trust located at 290 Federal Plaza, Courtroom 960, Central Islip, New York, 11722 on or before November 10, 2010 at 4:00 p.m. and (b) shall also be served upon (i) Debtors' counsel, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, Attention: Matthew G. Roseman, Esq.; Counsel for the Official Committee of Unsecured Creditors, LaMonica, Herbst & Mansicalco, LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793, Attn: Adam P. Wofse, Esq.; (ii) the Office of the United States Trustee, 290 Federal Plaza, Central Islip, New York, 11722,

Attention: Stan Yang, Esq.; (c) counsel to National Bank of Pakistan, Watson, Farley & Williams LLP, 1133 Avenue of the Americas, 11th Floor, New York, New York, 10036, Attn: Alfred E. Yudes, Jr. and (d) filed with the Clerk of the Bankruptcy Court located at 290 Federal Plaza, Courtroom 960, Central Islip, New York, 11722 so as to be received no later than November 10, 2010 at 4:00 p.m.

Dated: Garden City, New York
      October 18, 2010

                           CULLEN AND DYKMAN LLP
                           Counsel for Debtors and Debtors in Possession

               By   /s/ Matthew G. Roseman
                    Matthew G. Roseman (MR 1387)
                    C. Nathan Dee (CD 9703)
                    100 Quentin Roosevelt Boulevard
                    Garden City, New York 11530
                    (516) 296-9106

Proposed Hearing Date and Time: November 17, 2010 at 9:30 a.m.
Proposed Objection Date and Time: November 10, 2010 at 4:00 p.m.

Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq.  (CD 9703)

Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                          Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,            Case Nos.  09-78585 (AST)
                                                           09-78584 (AST)
                                                           09-78589 (AST)
                                                           09-78586 (AST)
                                                           09-78587 (AST)
                                                           09-78588 (AST)
                                                           09-78590 (AST)

                Debtors.
-----------------------------------------------------------x

**MOTION OF REORGANIZED DEBTOR TO APPROVE SETTLEMENT AGREEMENT
WITH UNITED NATIONS**

TO THE HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Rules 2002, 9006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Global Container Lines, Ltd (the "Reorganized Debtor" or "Global"), by and through its counsel, Cullen and Dykman LLP, hereby moves (the "Motion") for an order approving the stipulation (the "Stipulation")[1] between the Global and the United Nations (the "UN"). As set forth further herein, the Stipulation resolves a payment dispute between Global and the UN arising out of Global's delivery of UN peacekeeping equipment from Senegal to the

---

[1] A true and accurate copy of the Stipulation is attached hereto as Exhibit A.

Sudan pursuant to Request for Proposal P-S-14956 for the delivery of Senegalese COE from Dakar, Senegal to UmBaru, Sudan in support of UNAMID" (the "Contract"). In further support thereof, Global respectfully represent as follows:

### I.  JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U. S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.  BACKGROUND

2. On November 11, 2009 (the "Petition Date"), the Global and a number of affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

3. The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. By Order dated November 17, 2009, the Court authorized the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

5. On or about December 29, 2009, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases, and the Committee has retained LaMonica Herbst & Maniscalco as its counsel.

6. On September 15, 2010, after notice and a hearing, the Court entered and order confirming (the "Confirmation Order") Global's Second Amended Plan of Reorganization (the "Plan").

7. Pursuant to the Plan and Confirmation Order, among other things, the Reorganized Debtors have been authorized to recover and liquidate any assets of the Global and/or to file, settle, compromise or litigate objections to any claims asserted against the Debtors.

8. The Debtors were a full service shipping companies and related entities with shipping services operating in North America, the Mediterranean, the Middle East, East, South, and West Africa, the Persian Gulf, India, Pakistan, Mozambique and major Indian Ocean Islands. The Debtors perform an extensive array of services in the shipping industry including many projects with governmental and international organizations and peace-keeping missions. A detailed background of the Debtors' businesses and the reasons for the filing of the bankruptcy cases is set forth in the Affidavit of Bijan Paksima under Local Bankruptcy Rule 1007-4 submitted on the Petition Date, and is incorporated herein by reference.

9. The UN, a multinational, multilateral global institution, is the Debtors' primary customer for which the Debtors provide, among other things, logistical expertise and ships for cargo movements for UN peacekeeping missions.

10. Prior to the Petition Date, the Debtors and the UN entered into the Contract for the shipment and delivery of Senegalese Contingent Owned Equipment in support U.N. aid mission to Door Um Baru, Sudan.

11. During the cargo movement, the Debtors experienced certain delays because their cargo delivery route was subject to significant security risks due to the armed conflict in the Sudan.

12. On or about February of 2009, the UN informed the Debtors that it was assessing liquidated damages pursuant to the Contract in the amount of $793,791.36 against the Debtors because of the late delivery of the cargo.

13. Subsequently, the Debtors disputed the UN's right to assess liquidated damages because, among other reasons, the Debtors had stated in their original proposal to the UN that they could not provide an absolute guaranty of timely delivery of the cargo because the cargo's ultimate destination was a war zone.

14. After the Petition Date, the Debtors spent a considerable amount of time and effort educating the UN about the chapter 11 process and seeking to resolve the parties' dispute regarding the outstanding sums due and payable to the Debtors under the Contract.

15. Representatives of Global also met with UN representatives on three separate occasions attempting to resolve the parties dispute over the amounts due and owing the Reorganized Debtor under the Contract.

16. Subsequently, the parties entered into certain negotiations and settlement discussions concerning the settlement of the Debtors' claims against the UN under the Contract. In that regard, the parties have reached a settlement agreement that resolves the issues subject to this contested matter without the need for further litigation.

### III.  TERMS OF THE STIPULATION

17. Subject to the Court's approval, the Debtors and UN have agreed to resolve their disputes relating the Debtors' claim against the UN under the Contract. Attached hereto as Exhibit A is the Stipulation entered into between the Reorganized Debtors and UN, the major terms of which include the following:[2]

- Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of the Agreement, and subject as provided in Article 3 below, for and in consideration of the sum of Three Hundred Forty Five Thousand and Three Hundred Sixty Three US Dollars and Thirty Cents (USD 345,363.30), GCL expressly agrees and undertakes to release and discharge the United Nations, and its officials, agents, servants,

---

[2] The summary set forth in this Motion is not intended to be a substitute for the terms of the Stipulation, which contains additional terms and provisions, to the extent of any conflict between the terms of this Motion and the terms of the Stipulation, the terms of the Stipulation shall control. Any capitalized terms not otherwise defined herein shall have the same meanings as those ascribed to such terms in the Stipulation.

employees, successors, assigns and insurers, from all past, present or future claims, demands, damages, sums of money, actions, rights, causes of action, obligations, and liabilities of every kind or nature which GCL has, claims to have or may hereafter claim to have against the United Nations, arising from, in connection with, or in any way relating to GCL's Claims and the Contract, including without limitation, all claims for direct, indirect, incidental, consequential, punitive or exemplary damages or equitable relief or interest, which GCL ever had, now has or may hereafter have against the United Nations.

- Upon execution of the Agreement, GCL shall promptly notify the Office of the U.S. Trustee, GCL's creditors and all other parties in interest of the Agreement, and once such parties have been given an opportunity to be heard, shall submit the Agreement to the Court for approval as required by the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. GCL shall diligently pursue obtaining the Court's approval and shall keep the United Nations informed of progress in this regard.

- Subject as provided in Article 3 of the Agreement, immediately following the receipt by GCL of the Court order approving the settlement of GCL's Claims in accordance with the Agreement, GCL agrees to execute the Release in the form of Annex A, attached to the Agreement. Unless otherwise agreed in writing by the Parties, such Release, together with a certified copy of the Court order approving the settlement of GCL's Claims in accordance with the terms of the Agreement, shall be delivered by GCL to the United Nations in exchange for receipt of the payment to be made by the United Nations, as set forth in Article 2.1 below.

  o Subject to the approval by the Court of the settlement of GCL's Claims in accordance with the terms of the Agreement, and subject as provided in Article 3 below, as full and final settlement of GCL's Claims, the United Nations shall pay to GCL the sum of Three Hundred Forty Five Thousand and Three Hundred Sixty US Dollars and Thirty Cents (USD 345,363.30) by wire transfer to the account of GLOBAL CONTAINER LINES LIMITED. Unless otherwise agreed in writing by the Parties, such payment shall be made no later than thirty (30) days from the receipt by the United Nations from GCL of a certified copy of the Court order approving the settlement of GCL's Claims in accordance with the terms of the Agreement, together with the Release duly signed and executed by GCL.

  o Upon payment of the sums set forth in Article 2.1 the Agreement, the UN agrees to release and discharge GCL, its affiliates, officials, agents, servants, employees, successors and assigns, from all past, present or future claims, demands, damages, sums of money, actions, rights, causes of action, obligations, and liabilities of any kind or nature, which the UN has, claims to have or may hereafter claim to have against GCL, arising from, in connection with, or in any way relating to the Contract.

5

## IV. THE STANDARDS FOR APPROVAL OF THE STIPULATION

16. The Debtors respectfully request that the Court approve the Stipulation. Rule 9019(a), which governs the approval of compromises and settlements, provides, in relevant part: "[A]fter notice and a hearing, the court may approve a compromise or settlement." The Supreme Court has held that approval of a settlement requires a finding that the settlement is fair and equitable. Protective Committee for Independent Stockholders of TMT Trailer Ferry v.Anderson, 390 U.S. 414, 424 (1968). In exercising its discretion regarding the approval of a compromise, a court will consider several factors in determining whether the compromise is reasonable. These factors include the likelihood of success in the litigation, the complexity and cost of the litigation, and the interests of creditors. See Cossoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599 (2d Cir.), cert. denied, 464 U.S. 822 (1983); Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289, 292 (E.D.N.Y. 1992). At the same time, the bankruptcy court must bear in mind that "the law favors compromise." Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.), 67 B.R. 378, 383 (C.D. Ill. 1986).

17. In passing upon a proposed settlement "the bankruptcy court does not substitute its judgment for that of the trustee." Depo v. Chase Lincoln First Bank, N.A., 77 B.R. 381, 384 (N.D.N.Y. 1987), aff'd, 863 F.2d 45 (2d Cir. 1988); accord, In re Carla Leather, Inc., 44 B.R. 457 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985). The bankruptcy court is to "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" W.T. Grant Co., 699 F.2d at 608 (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir.), cert. denied, Benson v. Newman, 409 U.S. 1039 (1972)). In passing upon the reasonableness of a proposed compromise, the court "may give weight to the opinions of the

Trustee, the parties and their counsel. . . ." In re Bell & Beckwith, 77 B.R. 606, 612 (Bankr. N.D. Ohio), aff'd, 87 B.R. 472 (N.D. Ohio 1987).

V.     GROUNDS FOR APPROVAL OF THE STIPULATION

18.     The Debtors believe that the value of the Stipulation to the Debtors' respective estates exceeds the lowest level of reasonably expectable litigation results and is fair and equitable and in the best interests of the Estate and its creditors because, among other reasons, the proposed Stipulation is a fair and reasonable resolution of the dispute with UN.

19.     Pursuant to the Stipulation, the Debtors have agreed to accept payment of the sum of $345,363.30 in full and final satisfaction of their claim against the UN under the Contract in the amount of $477,754.88.

20.     Given that the parties spent time and resources reviewing their respective positions regarding the UN's claim of liquidated damages and the Debtors' defenses to the UN's claim, and since the Stipulation represents a seventy two (72%) percent reduction of the UN's original liquidated damages claim, the agreement reached by the parties is reasonable under the circumstances herein. Moreover, Court approval of the Stipulation will permit the Debtors to avoid the time, expense and uncertainty of further litigation with respect to their dispute with UN. Among other things, the terms of the Contract would require the Debtors to arbitrate their dispute with the UN which would be an expensive and lengthy process that may not result in a significantly higher return to the Debtors' respective estates than the $345,363.30 set forth in the Stipulation. Therefore, the Debtors believe their decision to enter into the Stipulation represents an exercise of sound business judgment.

21.     As the compromise proposed in the Stipulation fairly balances "the value of the claim that is being compromised against the value to the estate of the acceptance of the

7

compromise proposal," it is well within the bounds of this Court's discretion to approve. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389 (3d Cir. 1996). Therefore, as set forth above, good and sufficient grounds exist for the Court's approval of the Stipulation.

## VI.    CONCLUSION

22. Based on the foregoing, the Debtors believe that the Stipulation is well within the range of reasonableness and confers a substantial benefit on the Debtors because it resolves the disputes surrounding their claim against the UN without the need for further litigation. Accordingly, the Debtors respectfully request that this Court approve the Stipulation.

## VII.    NOTICE

23. Subject to the approval of the Court, the Debtors shall serve notice of the Motion and proposed Stipulation, on (i) the United States Trustee, (ii) counsel to UN, (iii) the Debtors' top twenty creditors and (iv) all other parties who have either filed a notice of appearance or are entitled to notice pursuant to Fed. R. Bank. P. 2002. The Debtors believe such service provides sufficient notice in light of the nature of the relief requested and request that the Court approve such notice.

## VIII.    NO PRIOR REQUEST

24. No prior request for relief requested in this Motion has been made.

25. Since this Motion presents no novel issue of law and contains a brief discussion of relevant case law, the Debtors respectfully request that the Court waive the requirement of Local Bankruptcy Rule 9013-1(b).

**WHEREFORE,** the Debtors respectfully request that the Court enter an Order:

(i)    granting the Motion and approving the Stipulation;

(ii)   finding notice of the Motion as proper and sufficient under the circumstances; and

(iii)  granting such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
October 18, 2010

                                  CULLEN AND DYKMAN LLP
                                  Attorneys for Debtors

                                  By:    /s/ Matthew G. Roseman
                                           Matthew G. Roseman (MR 1387)
                                           C. Nathan Dee (CD 9703)
                                           100 Quentin Roosevelt Boulevard
                                           Garden City, New York 11530