CULLEN AND DYKMAN LLP
Attorneys for Debtors
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq.  (CD 9703)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                              Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,     Case Nos. 09-78585 (AST)
                                                   09-78584 (AST)
                                                   09-78589 (AST)
                                                   09-78586 (AST)
                                                   09-78587 (AST)
                                                   09-78588 (AST)
                                                   09-78590 (AST)

                        Debtors.
--------------------------------------------------------x

**COVER SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330 AND 331**

NAME OF APPLICANT:     Cullen and Dykman LLP

TIME PERIOD:           November 10, 2009 through and including September 17, 2010

ROLE IN THE CASE:      Attorneys for the Debtors, Global Container Lines, Ltd., et al.

| CURRENT APPLICATION PERIOD (5/1/10-9/17/10) | Fees Requested: | $170,598.50 |
| | Expenses Requested: | $ 6,532.42 |
| TOTAL FINAL REQUEST | Fees Requested: | $491,382.50 |
| | Expenses Requested: | $ 27,534.72 |
| PRIOR APPLICATIONS | Fees Requested: | $320,784.00 |
| | Expenses Requested: | $ 21,002.30 |
| | Fees Approved: | $265,704.00 |
| | Expenses Approved: | $ 21,002.30 |
| TOTAL FINAL AWARD REQUESTED: | | $518,917.22 |

This is a _____ interim _____X_____ final fee application.

**Hearing Date: December 15, 2010 at 10:00 a.m.**
**Objection Deadline: December 3, 2010 at 4:00 p.m.**

CULLEN AND DYKMAN LLP
Attorneys for Debtors
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee, Esq.  (CD 9703)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                      Chapter 11

GLOBAL CONTAINER LINES LTD., et al.,          Case Nos.  09-78585 (AST)
                                                                      09-78584 (AST)
                                                                      09-78589 (AST)
                                                                      09-78586 (AST)
                                                                      09-78587 (AST)
                                                                      09-78588 (AST)
                                                                      09-78590 (AST)

                              Debtors.
--------------------------------------------------------x

### SECOND INTERIM AND FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED BY CULLEN AND DYKMAN LLP, COUNSEL FOR THE DEBTORS AND DEBTORS-IN-POSSESSION FOR THE PERIOD FROM MAY 1, 2010 THROUGH AND INCLUDING SEPTEMBER 17, 2010

TO THE HONORABLE ALAN S. TRUST, UNITED STATES BANKRUPTCY JUDGE

Pursuant to 11 U.S.C. Sections 328, 330 and 331 of the United States Bankruptcy Code

(the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and the United States Trustee Guidelines for reviewing applications for

compensation and reimbursement of expenses effective January 30, 1996 (the "Trustee

Guidelines"), Cullen and Dykman LLP ("C&D") counsel to Global Container Lines Ltd. ("GCL"

or "Debtor"), the Reorganized Debtor herein, respectfully submits this second interim and final

application for allowance of compensation and reimbursement of expenses (the "Second Application"). Pursuant to this Second Application, C&D requests allowance and payment of fees in the amount of $170,598.50 and reimbursement of expenses in the amount of $6,532.41 for services rendered and expenses incurred during the period May 1, 2010 through September 17, 2010. C&D also requests approval for fees sought in the First Application and authorization of fees awarded on an interim basis. In support of the Second Application, C&D states as follows:

## PRELIMINARY STATEMENT

1.        During the Second Application Period, C&D has expended considerable amounts of time, effort and resources assisting the Debtor (i) to successfully confirm their Amended Plan of Reorganization dated August 12, 2010; (ii) to negotiate an amendment to the Debtors Fifth Amendatory Agreement with the National Bank of Pakistan ("NBP"); (iii) to negotiate and resolve claim of Key Bank; and (iv) to assist the Debtor in their reinstatement as an authorized vendor of the United Nations.

2.        On September 17, 2010 the Court entered an Order confirming the Debtors Amended Plan of Reorganization (the "Plan"). The Plan provides for the payment of unsecured creditors 32½% of available cash flow, as defined in the Plan over a five (5) year period. The Debtor estimates that this will result in an approximate 26% return on secured creditors. During these proceedings, the Debtor restructured its business model through the sale of three (3) vessels to which the Global Precision, the Global Progress and Global Prosperity. These sales resulted in combined reduction of secured debt of approximately $10.2 Million and further resulted in a satisfaction of approximately $1 Million of maritime lien claims. Of equal importance from the sale of these vessels was it allowed the Debtor to shift its focus from the business container line

2

services transporting cargo to various ports in Asia, South Asia and the Middle East to providing

transportation and logistical support in United Nations projects.

3.      It is respectfully submitted that C&D's efforts during the Second Application

Period, in particular, and the entire post-petition period in general, have provided a substantial

benefit to the Debtors estate.  Therefore C&D respectfully requests that this application be

approved in its entirety.

## I.      JURISDICTION

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. Section

157 and 1334.  This case is ac ore proceeding pursuant to 28 U.S.C. Section 157(b).  Venue is

proper in this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

## II.      INTRODUCTION

5.      On November 10, 2009 (the "Petition Date"), the GCL and six (6) other related

Debtor entities (collectively the "Consolidated Debtors") commenced their chapter 11 cases by

filing voluntary petitions for relief under chapter 11 of title 11 of the United States Codes, 11

U.S.C. Section 101, *et seq.* (the "Bankruptcy Code").  Initially, the Debtors operated their

businesses and managed their affairs as Debtors-in-Possession pursuant to Sections 1107 and

1108 of the Bankruptcy Code.  The Debtors cases are being jointly administered pursuant to an

Order of this Court dated November 17, 2009.[1]

6.      Pursuant to an Order dated December 28, 2009, the Consolidated Debtors

application to employ C&D as its counsel was approved.  A true and accurate copy of the

Retention Order is annexed hereto as Exhibit "A".  The Court should be advised that C&D

maintains offices at 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, in

---

[1] Pursuant to an Order dated September 29, 2009 the cases of Global Progress LLC and Global Prosperity LLC were dismissed.  Pursuant to Orders dated November 10, 2010, the cases of GCL Shipping Corp. and Redstone Shipping Corp were dismissed.

addition to offices in Manhattan, Brooklyn, New Jersey and Washington, D.C. C&D is a full service law firm with over 135 attorneys and a widely diversified practice with substantial expertise in bankruptcy, real estate, corporate, finance, litigation, labor, employee benefits and tax law. C&D's bankruptcy practice group employs ten (10) full-time attorneys, plus attorneys in other practice disciplines who have substantial bankruptcy and creditor's rights experience.

7.      On December 29, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102 of the Bankruptcy Code. Thereafter, the Committee retained the law firm of LaMonica, Herbst & Maniscalco LLP as attorneys for the Official Committee of Unsecured Creditors by Order dated January 25, 2010.

8.      Pursuant to this Application, C&D request payment of fees in the amount $170,598.50 and reimbursement of expenses in the amount of $6,532.42 for professional services rendered and actual expenses incurred during the period May 1, 2010 through September 17, 2010. Additionally, C&D requests final approval of all fees sought in the First Application Period commencing November 9, 2009 through April 30, 2010 (the "First Application Period").

9.      As set forth in the certification of Matthew G. Roseman dated October 22, 2010 (the "Certification") this Application complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Trustee Guidelines. A true and accurate copy of the certification is attached hereto as Exhibit "B".

10.     The Debtors have filed their monthly operating reports for each month that they have been required to do so. Furthermore, the Debtors have informed C&D that they have paid all of their quarterly fees due and owing to the United States Trustee.

11.     The Court should take notice that the Debtor has sufficient funds on hand and

availability under their Loan Facility with NBP. Debtor has sufficient funds to pay professional fees.

## III.    CASE OVERVIEW

A.    Background of Debtors

12.    Global Container Lines Ltd. ("GCL") was established in 1985 to service the trade between East Africa, the Indian Ocean and the Persian Gulf. GCL offers a wide service for movement of containers, rolling stock, general cargo, project cargo and bulk cargo. At the time of the Debtors filing, the company operated four (4) vessels. However, as will be described herein, three (3) of the vessels were sold during the Application.

13.    On April 25, 2003, GCL formed three (3) U.S. (Delaware subsidiaries, Dover Ship Incorporation, Steward Ship Incorporation and Gallon Shipping Corporation), all of which are currently dormant. GCL later formed two (2) additional U.S. (Delaware subsidiaries, Atlas Shipping Corp. on August 22, 2003 and Redstone Shipping Corp. ("Redstone") on September 29, 2004).

14.    GCL Shipping Corp., an affiliate with common ownership, was formed on March 17, 2005 ("GCLS"). GCLS later formed three (3) subsidiaries Gilmore Shipping Corporation ("Gilmore") on June 24, 2005 and Global Progress LLC ("Progress") and Global Prosperity LLC ("Prosperity") on September 29, 2004. Gilmore, Progress and Prosperity are single asset entities that held title to the M.V. Global Precision, the M.V. Global Progress and the M.V. Prosperity respectively.

15.    Shiptrade, Inc. ("Shiptrade"), GCL, Redstone, Global, Progress and Prosperity are all affiliated entities of GCL.

16.    The Debtors operate services in North America, the Mediterranean, the Middle

East, East, South and West Africa, the Persian Gulf, India, Pakistan, Mozambique, and Major Indian Ocean Islands. The Debtors project teams have extensive specialized experience in multi modal shipment (combination of land, sea and air transportation) including project in humanitarian relief cargo. The Debtors have worked closely on these projects with governmental and international organizations including the United Nations peace keeping missions, the U.S. Military sea lift command, United Nations world food program, United States agency for international development and other humanitarian relief agencies. During the post-petition period, the Debtors have been involved with the U.N. mission in the Darfur region of the Sudan delivering critical supplies and equipment in support of the U.N.'s peace keeping forces in that dangerous part of the world.

17.    Historically, Consolidated Debtors operated profitably; however, in the summer of 2008 the world wide financial collapse severely impacted the Debtor's business. Without warning, in August 2008 demand for container line services disappeared. This disruption linked with the overhead incumbent upon operating and maintaining cargo vessels resulted in significant cash flow problems.

18.    More than a year after the disruption in the world economy the clash flow drains of maintaining the cargo vessels of Global Precision, Global Progress and Global Prosperity resulted in significant cash flow problems. During the fall 2009 various creditors had commenced collection proceedings against the Consolidated Debtors which prompted the Debtors to file petitions for voluntary relief.

B.    Overview of the First Application Period

19.    During the First Application Period, the Consolidated Debtors, with C&D's assistance, negotiated with NBP a Fifth Amendatory Agreement to their pre-petition financing

package whereby NBP advanced $4 Million in post-petition financing ("DIP Facility"). The DIP Facility was utilized to pay certain critical pre-petition liabilities as allowed by Order of this Court and then was expended by the Debtors for working capital purposes.

20.    During the First Application Period, the Debtors and C&D implemented a program for the orderly disposition of assets unnecessary for the continued operations of the Debtors business. In that regard, the Debtors, with C&D's assistance, successfully conducted three (3) public auctions of the vessels Global Precision, Global Prosperity and Global Progress. These sales generated $10,241,772.00 in proceeds for the benefit of the Debtors respective estates. The Debtors and C&D also devoted a substantial amount of time during the Application Period resolving its secured claim with Key Bank National Association ("Key Bank") and Key Bank Equipment Finance ("KEF"), and together with Key Bank ("KEY"). In addition to the sale of the Global Precision which was encumbered by a $5 Million ship mortgage held by Key Bank, various containers and stevedoring equipment was subject to the liens of Key. Pursuant to a stipulation so-ordered by the Court on March 11, 2010, it was agreed that the Debtors would liquidate the equipment subject to Key's liens and retain 20% of the gross proceeds of those liquidation efforts to cover the Debtor's estates expenses incurred in maximizing the value of that personal property.

21.    During the First Application Period, C&D devoted a significant amount of time addressing the claims, concerns and objections of Sea Castle Container Leasing LLC, Textainer Equipment Management U.S. Ltd., Tal International Container Corp. and Container Applications Limited (collectively the "Container Lessors").

22.    During the First Application Period, the Container Lessors objected to the Debtors emergency applications for debtor-in-possession financing and use of cash collateral.

Ultimately, these objections were overruled and the Fifth Amendatory Agreement by which the Debtors were authorized to use cash collateral and NBP provided an additional post-petition loan facility of $4 Million was approved.

23.    The Debtors also expended significant amounts of time in addressing the motions of the Container Lessors seeking adequate protection, surrender of containers and payment of post-petition expenses. Additionally, C&D was required to address objections interposed in opposition to the Debtor's omnibus motion authorizing the rejection of certain container leases dated December 7, 2009.

24.    Ultimately, the Debtor's were successful in rejecting the Container Leases and prevailed on the issue as whether the Debtor's would be required to pay storage charges incurred in connection with the storing and locating of the leasing companies containers at any ports or depots around the world.

25.    The Debtors, with C&D's assistance was able to negotiate the resolution of a dispute with the United Nations concerning certain accounts receivable. Additionally, the Debtors have been meeting with the U.S. Mission to the Untied Nations concerning the current vendor classification and the manner in which the Debtor's are being treated by the procurement division of the United Nations. In this regard, C&D has participated in extensive meetings with the U.S. Mission to the United Nations in efforts to resolve ongoing issues with the United Nations.

26.    The Debtors, with C&D's input and assistance, were also able to negotiate the consensual treatment of the Debtors general unsecured creditors as set forth in agreement between the Debtors and Creditors Committee. Pursuant to that Agreement, the Creditors Committee has agreed to support the Debtors contemplated plan of reorganization.

27.    C&D performed numerous other tasks during the First Application Period including, but not limited to, receiving authority to pay critical vendors, establishing bar dates for both general unsecured creditors and maritime lien claimants, filing of omnibus claims objections regarding claims filed against the various Debtors estates and continued negotiations with NBP concerning a Sixth Amendatory Agreement and post-confirmation financing.

28.    During the First Application Period, C&D continued to perform those services required for the orderly administration of these cases.  Such services have included: preparation filing of fee applications for compensation and coordination of filing fee applications for the estates other professionals; preparation filing of periodic reports and consultation with various creditors, the Office of the United States Trustee and other parties-in-interest.

29.    By Order dated June 25, 2010 the Court approved the First Interim Fee Applications for the retained professionals in the amount of the carve out of $400,000.  These funds were divided pari-parsu between the retained professionals.  C&D's First Interim Application for allowance of compensation is incorporated by reference herein and it is respectfully requested that the remainder of the fees sought in that application, in the amount of $55,080.00, be approved.

C.    Overview of the Second Application Period

30.    During the Second Application Period, the Debtor negotiated an amendment with NBP to the Fifth Amendatory Agreement to their financing package which became effective post-confirmation.  This Amended and Restated Agreement provided for the financing of non UN receivables along with modifications to the timing in which funds could be advanced.

31.    Additionally, during the Second Application Period, the Debtor and C&D negotiated a final resolution with Key Bank regarding the treatment of their secured claim.  This

agreement was commemorated in a Stipulation So-Ordered by this Court on September 15, 2010.

32.    During the Second Application Period, C&D devoted a significant amount of time addressing GCL's status as an authorized vendor with the United Nations.  Shortly after filing Chapter 11, the United Nations disbarred the Debtor and prevented GCL from participating in the UN contract tenders through the efforts of Debtors management and C&D, GCL was reinstated as a level 1 vendor and has since been returned to level 5 status, a rating the Debtor held prior to the bankruptcy proceeding.  Moreover, since confirmation of the Debtor's Plan, GCL has been awarded in excess of $6 Million in the UN contracts.

33.    Additionally, the Debtor, with C&D's assistance, was able to negotiate the resolution of a dispute with the United Nations concerning a long outstanding accounts receivable.  Through these efforts we were able to settle a dispute involving the transportation of the Senegalese contingent of peacekeepers to the Gothalo Region of Sudan.  This settlement resulted in a 72% recovery of $345,000.

34.    Most significantly, during the Second Application Period C&D with the Debtors input and assistance, filed a Plan of Reorganization and Disclosure Statement.  These documents were the end result of significant negotiations had between the Debtor and the Creditors Committee.  Subsequent to filing the Plan and Disclosure Statement, we were able to resolve certain concerns and informal objections raised by various creditor constituents.

35.    By Order dated August 19, 2010, the Debtors Disclosure Statement for the Debtors Amended Plan of Reorganization was approved and both were solicited.  C&D and the Debtor spent a significant amount of time preparing for confirmation of the Amended Plan of Reorganization and on September 15, 2010 the Plan was confirmed.

36.    C&D performed numerous other tasks during the Second Application Period

included, but not limited to, objections to proofs of claims, negotiating the resolutions to disputed claims, continued coordination with NBP concerning post-confirmation of financing and general administrative work.

37.     Lastly, during the Second Application Period, C&D has continued to perform all services required for the orderly administration of these cases.  Such services are being included: preparation and filing of periodic reports, consultation with various creditors, the Office of the United States Trustee and Debtors management.

D.     Summary of Services Rendered

38.     As more fully described herein, C&D has provided substantial legal services to the Debtors during the Second Application Period.  .  Pursuant to the Trustee Guidelines, a summary of the total time expended and amount of compensation sought for each of the seven (7) project categories as attached hereto as Exhibit "C".  Exhibit "D" attached hereto contains the name and applicable billing rate for each professional person who rendered services to the Debtor along with a summary of the total hours billed and total amount of billing for each professional. Attached hereto as Exhibits "E" through "L" are detailed computer generated summaries of the time expended by each professional and the services rendered by C&D as counsel to the Debtor in each category during the Second Application Period.  Indicated below are each category and that work was performed in and the compensation sought by C&D for services performed on the Debtor's behalf in each category:

a.     Services relating to operation in chapter 11 administration -- $15,965.50

b.     Debtor-in-Possession financing issues -- $7,494.00

c.     Asset Disposition of Sale -- $8,120.40

d.     Resolution of Creditor Issues -- $1,365.50

e.      Claims Objection/Resolution -- $31,629.00

f.      Plan and Disclosure Statement -- $34,654.00

g.      Retention/Professional Compensation -- $5,682.50

h.      Prepare For/Attend Hearing -- $20,730.00

39.     During the Second Application Period, C&D has expended a total of 385.70 hours

in this matter for total request of compensation of $170,598.50 at its usual and customary hourly

rates. The average hourly rate incurred was $442.30. During the Second Application Period

C&D has incurred expenses totaling $6,532.42. Attached hereto as Exhibit "M" is a summary of

the expenses incurred for which reimbursement is sought. C&D does not charge for incoming

faxes. Instead C&D charges $1.00 per page for outgoing faxes, which C&D believes covers the

expenses associated with facsimile usage. Copying charges are assessed $.10 per copy.

Reimbursement for those costs, as well as other disbursements in this case, is sought in

accordance with the applicable local rules, except that reimbursement for meals is sought were

such expenses were incurred only as a direct consequence of the time constraints of the case.

40.     C&D has set forth below a narrative of the legal services provided to the Debtor

in order to inform the Court of the legal services rendered to the Debtor by C&D during the

Second Application Period. The summary of services performed by C&D is only intended to

highlight the general categories of services provided by C&D on the Debtor's behalf. It is not

intended to set forth each and every item of professional services that C&D performed for the

Debtor. All of the services for which compensation sought herein were performed for, or on

behalf of, the Debtor.

## CATEGORY 1
## SERVICES RELATING TO OPERATIONS IN CHAPTER 11 ADMINISTRATION
## (EXHIBIT "E")

41.     The first category of services rendered by C&D relates to those services required

to the Debtors business operations and general case administration.

42.     In that regard, C&D performed extensive services relating to the Debtor's

operations including meetings with the Debtor's principals and officers to ensure the

preservation of estate assets and to address operational concerns.  C&D also assisted the

Debtor's officers in preparation for meetings with the Creditors Committee and to reply

document requests made by the Committee's financial professionals.

43.     C&D also responded to inquiries and concerns of various contractors, vendors,

maritime lien holders as well as the myriad of other issues that arose within the day to day

operations of the Debtors business.

44.     Other services rendered by C&D in this first category of services include:

- Contact with the Office of the United States Trustee regarding the required form of operating reports;
- Advising Debtors management and employees regarding Debtors rights and responsibilities as Debtors-in-Possession including interpreting court orders, operational issues and general business issues;
- Participating in telephone conferences and other communications with counsel to Creditors Committee and generally responding to the comments and concerns of the Creditors Committee and its professionals;
- Participating in meetings and internal conferences and discussions related to case management and pending issues regarding the Debtors case;
- Participating in meetings and phone conferences with representatives of the United Nations and with the Untied States Mission concerning the Debtors status;
- Assisting the Debtor and Debtors financial professionals, in the preparation of the Debtors monthly operating reports and related operational issues.

45.     In rendering services relating to this category, C&D attorneys expended 36.5

hours for requested compensation at their customary and usually hourly rates of $15,965.50.

C&D's blended hourly rate for services rendered in this category is 437.41.

## CATEGORY 2
## SERVICES RELATED TO DEBTOR-IN-POSSESSION FINANCING ISSUES
## ("EXHIBIT F")

46.    A second category of services relates to the Debtors ongoing relationship with the

National Bank of Pakistan.  During the Second Application Period, C&D spent significant

amount of time and effort in meetings, telephone conferences and in drafting correspondence to

NBP and the Debtor's management and financial professionals to ensure that the Debtors had

sufficient working capital to continue running the Debtors business operations and to ensure that

the Debtors ongoing projects could continue uninterrupted by fiscal concerns.

47.    Services rendered by C&D in the second category of services include the

following:

- Participating in meetings, telephone conferences and other
communications with Debtors management and financial professionals
regarding the Debtors rights and responsibilities as Debtor-in-Possession
under the terms of the Fifth Amendatory Agreement, final financing, cash
management and cash collateral issues; and

- Participating in meetings, telephone conferences and other
communications with counsel to NBP regarding the modification and
amendment to the Fifth Amendatory Agreement and generally responding
to the comments and concerns of NBP and its professionals regarding the
Debtors business operations, finances and progress and status of the
Debtors case.

48.    Rendering services relating to this category, C&D attorneys expended 15.6 hours

for requested compensation at their customary and usual hourly rates of $7,494.00.  C&D's

blended hourly rate for services rendered in this category is $480.38.

## CATEGORY 3
## SERVICES RELATING TO ASSET DISPOSITION OR SALES
## (EXHIBIT "G")

49.     The third category of services relates to communications and work spent in

answering inquiries from creditors regarding the application of funds received from the sale of

three (3) vessels.

50.     C&D attorneys expended 7.7 hours for requested compensation at their customary

usual hourly rates of $3,120.50.  C&D's blended hourly rate for services rendered in this

category is $405.25.

## CATEGORY 4
## SERVICES RELATING TO RESOLUTION OF CREDITOR ISSUES
## (EXHIBIT "H")

51.     The fourth category of services relates to resolution of creditor issues,

accordingly, C&D devoted substantial time and effort to resolve various issues with the Debtors

maritime creditors, critical vendors and landlord.

52.     In rendering services relating tot his category, C&D attorneys expended 3.1 hours

for requested compensation at their customary and usually hourly rate of $1,365.00.  C&D's

blended hourly rate for services rendered in this category is $440.48.

## CATEGORY 5
## SERVICES RELATING TO CLAIMS OBJECTIONS/RESOLUTIONS
## (EXHIBIT "I")

53.     The fifth category of services relates to C&D's efforts towards evaluating,

objecting to and resolving disputed claims.

54.     During the Second Application Period, the Debtors continue to review more than

three hundred (300) claims filed against the Debtors estates.  The Debtors extensive review of

these claims is necessary  because, among other things, the extensive negotiations with the

Creditors Committee regarding the terms of a consensual plan of reorganization requires the Debtors to provide accurate information regarding the universe of claims asserted against the Debtors.

55.     C&D prepared and prosecuted numerous objections to claims regarding certain claims, priority and/or amounts.

56.     Services rendered by C&D to the Debtors in this category include:

- Preparing and prosecuting six (6) omnibus claims objection motions;

- Negotiating and drafting settlement with Key Bank to resolve their secured claim;

- Negotiate the resolution to the claim of the United States Department of Agriculture.

57.     In rendering services relating to this category, C&D attorneys expended 71.6 hours for requested compensation at their customary and usually hourly rates of $31,829. C&D's blended hourly rates for services rendered in this category was $441.74.

### CATEGORY 6
### SERVICES RELATING TO PLAN AND DISCLOSURE STATEMENT
### (EXHIBIT "J")

58.     For services rendered by C&D in this category relate to the Debtors efforts to develop a consensual plan of reorganization and related disclosure statement. C&D services in this category include meetings with the Official Committee of Unsecured Creditors and negotiating the terms upon which the general unsecured creditors claims would be treated under the Debtors plan. Additionally, C&D attorneys met with Debtors management and financial professionals to prepare and revise projections utilized in the plan negotiation process.

59.     C&D attorneys also negotiated with secured creditors regarding treatment of their claims under the Plan.

60.     Most significantly C&D drafted and revised pursuant to comments from both the

Creditors Committee, interested parties, secured creditors counsel and management a plan of

reorganization and disclosure statement.

61.     During the Application Period, C&D provided the following services to the

Debtors in this category:

- Researched, analyzed and outlined a proposed plan of reorganization addressing the various claims and constituencies of the Debtor;

- Participated with management and its financial professionals in the creation of financial projections utilized in the negotiation with the Official Committee of Unsecured Creditors and the National Bank of Pakistan;

- Participated in numerous negotiation sessions with the Creditors Committee and its counsel and the Debtors principals regarding the terms of the Debtors plan of reorganization;

- Drafted and revised the Debtors plan of reorganization and disclosure statement;

- Negotiated and drafted the terms of a consensual Confirmation Order as well as the Order approving the sufficiency of the disclosure statement.

62.     In rendering services relating to this category, C&D attorneys expended 196 hours

for requested compensation at their customary and usually hourly rates of $84,654.  C&D's

blended hourly rate for services rendered in this category is $431.90.

## CATEGORY 7
## SERVICES RELATING TO RETENTION/PROFESSIONAL COMPENSATION
## ("EXHIBIT K")

63.     The seventh category of services provided by C&D relates to the application for

professional compensation in the Debtors  bankruptcy proceeding.  During the Second

Application Period, C&D performed services for the Debtors in this category including the

following:

- Coordinating with the professionals for the filing and service of notice of the first interim fee application;

- Receiving and responding to limited objection to interim fee application by NBP;

- Prepare Order approving fee application and negotiate allocations of the carve out available to pay interim fees.

64.    In rendering services relating to this category, C&D attorneys expended 12.1 hours for requested compensation at their hourly rate of $5,682.50.  C&D's blended hourly rate for services rendered in this category is $469.62.

**CATEGORY 12**
**SERVICES RELATING TO PREPARATION FOR/ATTEND HEARING**
**(EXHIBIT "L")**

65.    The twelfth category of services relates to C&D's preparing for and attending hearings on the various matters related to this case.

66.    C&D is required to prepare for and attend numerous hearings on behalf of the Debtor in this case.  In that regard, the number of hearings were contested matters that required C&D to prepare extensively for oral argument on its various motions, and for the hearing for approval of the disclosure statement and confirmation of the plan of reorganization.  C&D worked extensively with the Debtors officers and principals to prepare for the hearings before the Court, including extension preparation for the hearing on confirmation of the Debtors Amended Plan of Reorganization.

67.    In that regard, C&D was required:

- To prepare for regular scheduled status conferences before the Court;

- Debtors motion to approve Disclosure Statement;

- Debtors motion to dismiss certain cases;

- To prepare for the claims objection motions; and

- To prepare for, attend and conduction confirmation hearing.

68.    In rendering services relating to this category, C&D attorneys expended 43.2 hours for requested compensation at their customary and usually hourly rates of $20,730. C&D's blended hourly rate for services rendered in this category is $479.86.

## STANDARDS FOR RELIEF

1.    C&D submits that the compensation for the services rendered and reimbursement of expenses incurred is reasonable based on: (i) the time and labor required; (ii) the complexity of the legal questions presented; (iii) the skill required to perform the legal services; (iv) the customary compensation for bankruptcy professionals in New York; and (v) the experience and ability of the attorneys providing services.  With respect to each of these standards, C&D submits that the compensation requested is reasonable and appropriate.

2.    Section 330(a) of the Bankruptcy Code provides for the compensation of reasonable necessary services rendered by professionals "based on the time, the nature, the extent and the value of such services, and the costs of comparable services . . ." 11 U.S.C. Section 330.

3.    It is respectfully submitted that the complexity of the legal issues presented and the skill necessary to address those issues by C&D were considerable.  The legal issues confronted by C&D during the initial stages of this case included (i) the Debtors ability to secure continued use of cash collateral and garner approval of Debtor-in-Possession financing over the objections of various creditors; (ii) the negotiations of the DIP Loan Facility with NBP; (iii) the sale of three (3) vessels which were located in ports located in Africa and the Middle East; (iv) the negotiation of a proposed plan of reorganization; and (v) multiple issues involving admiralty law and in dealing with the United Nations.

69.    The amount requested by C&D is well within the range of customary compensation awarded to other bankruptcy professionals with similar experience in the Eastern District of New York.  The hourly rates charged by C&D are comparable to those charged by and paid to other professionals with similar experience and other cases of similar complexity with the Eastern District of New York.

## CONCLUSION

70.    It is respectfully submitted for services provided by C&D that provided substantial value to the Debtors estate and those services have been performed and provided in a cost effective matter.  C&D has worked diligently over the course of this case to confirm a plan of reorganization.  It is respectfully submitted that the confirmation of a plan of reorganization in approximately eleven (11) months is a significant accomplishment.

WHEREFORE, C&D respectfully moves this Court for an Order: (i) approving C&D's interim fees for the Second Application Period in the amount of $170,598.00 and reimbursement of expenses in the amount of $6,532.42 in connection with this Second Interim Application; (ii) authorizing the Debtors payment of such sums to C&D in the ordinary course of business within five (5) business days of entry of an Order approving this application; (iii) approving all fees sought in the First Interim Application that were not approved previously; (iv) approving final compensation for professional services rendered in the final amount of $491,382.50 and reimbursement of expenses incurred in the final amount of $27,534.72 for the period of

November 9, 2009 through September 17, 2010; and (v) granting such other and further relief as

this Court deems just and proper.

Dated: Garden City, New York
       November 11, 2010

                              CULLEN AND DYKMAN LLP
                              Counsel for Debtors


                     By      /s/ Matthew G. Roseman
                              Matthew G. Roseman (MR1387)
                              C. Nathan Dee (CD 9703)
                              100 Quentin Roosevelt Boulevard
                              Garden City, New York 11530
                              (516) 296-9106