**EXHIBIT A**

| 1. Agents - Shipbrokers<br><br>SHIPTRADE INC., NEW YORK USA | "CONLINEBOOKING"<br><br>LINER BOOKING NOTE |
|---|---|
| | 2. Place and date<br>NEW YORK MAY 07, 2009 |
| 3. Carrier<br><br>GLOBAL CONTAINER LINES LIMITED<br>100 QUENTIN ROOSEVELT BLVD.<br>GARDEN CITY, NY 11530 USA | 4. Merchant (see Clause 1)<br>DYNCORP INTERNATIONAL LLP<br>3190 FAIRVIEW PARK DRIVE, SUITE 350<br>FALLS CHURCH, VA 22042 USA |
| 5. Vessel's name<br><br>GLOBAL PROGRESS | 6. Time for shipment (about)<br><br>MAY 25 - 31 |
| 7. Loading port (or so near thereunto as the vessel may safely get and lie always afloat)<br>DURBAN, SOUTH AFRICA | 8. Discharging port<br><br>MOGADISHU, SOMALIA |
| 9. Description of goods<br><br>A PART CARGO OF VEHICLES AND CONTAINERS FOR AMISOM<br>AS PER PACKING LIST ATTACHED | |
| 10. Freight rate (also indicate whether prepayable or payable at destination)<br>USD $950,000 LUMP SUM<br>( SEE SUPPLEMENTAL CLAUSE 16 ) | 11. Demurrage/Detention rate (if agreed)<br>USD $20,000 PER DAY PRO RATA<br>(SEE SUPPLEMENTAL CLAUSE 18) |
| 12. Merchant's representatives at loading port (state full name and address, telegraphic address, telephone and telex)<br>DYNCORP INTERNATIONAL, SOMALIA PEACEKEEPING OPERATIONS, KAMPALA UGANDA,<br>+256 775 239 769 | |
| 13. Special terms, if agreed<br>SEE SUPPLEMENTAL CLAUSES 14 - 22 AS ATTACHED | |

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight and demurrage) by the terms of the Bill of Lading, the terms of which (in full or in exact) are found on the reverse side hereof.

| Signature (Carrier)<br><br>BIJAN PAKSIMA, VICE PRESIDENT | Signature (Merchant)<br><br>Gary A Goodin<br>VICE PRESIDENT, CONTRACTS |
|---|---|

# FULL TERMS OF THE CARRIER'S BILL OF LADING FORM*

**1. Definition.**

"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**

Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**

(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.

When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract. The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.

The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.

(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.

(c) The aggregate liability of Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Additional Clause.

**4. Law and Jurisdiction.**

Disputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, except as provided elsewhere herein.

**5. The Scope of Carriage.**

The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**

The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment.**

The Carrier shall be at liberty to tranship, lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge.

**8. Liability for Pre- and On-Carriage.**

When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**

(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent.

(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.

(c) Loading and discharging may commence without prior notice.

(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.

(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding

any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.

(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**

(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from fourteen days after the date when freight and charges are payable.

(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and repacking packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.

(c) The Merchant shall be liable for any dues, duties, taxes and charges which under any denomination may be levied, inter alia, on the basis of freight, weight of cargo or tonnage of the vessel.

(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.

(e) The Carrier is entitled to use of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**

The Carrier shall have a lien on all cargo for any amount due under this contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**

General Average shall be adjusted, stated and settled in London according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.**

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**

(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.

(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.

(c) Should it appear that epidemics, quarantine, ice; labour troubles, labour obstructions, strikes, lockouts (whether

onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.

(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.

(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**15. Defences and Limits of Liability for the Carrier, Servants and Agents.**

(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.

(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.

(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.

(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**16. Stowage.**

(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.

(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Shipper-Packed Containers, trailers, transportable tanks, flats and pallets.**

(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition could not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.

(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.

(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Return of Containers.**

(a) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.

(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, pallets or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSE**

**U.S. Trade. Period of Responsibility.**

(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.

(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

*BIMCO LINER BILL OF LADING

Code Name: "Conlinebill 2000"

Amended January 1950; August 1952; January 1973; July 1974; August 1976; January 1978; November 2000

SUPPLEMENTAL CLAUSES TO CONLINE BOOKING NOTE DATED MAY 07, 2009

### 14. Vessel Description

MV "Global Progress"
Type RO/RO and Container
Year built: 1977
Class Bureau Veritas
IMO Number 7504586
Call Sign C6MQ4
Flag Bahamas
Gross Tonnage (GRT) 19605 Mtons
Net Tonnage (NRT) 6345 Mtons
Length Overall 164.0 Mtrs + Ramp = 180.10 Mtr
Max. Breadth 26.52 Mtrs
Summer Draft 10.80 Mtrs
Deadweight (DWT) 19669 Mtons
Container Capacity 713 TEUs
Bale Capacity 28510 CBM
Ramp Capacity 120 Mtons
Cranes 2 x 25 Mtons + 2 x 40 Mtons
Speed: about 13 knots
All details about, given in good faith without guarantee

### 15. Load/discharge Terms.

Loading terms: Liner in - Carrier will be responsible for stevedoring charges at
Durban

Discharging terms: Free out -- Merchant will be responsible for stevedoring
charges at Mogadishu. Crew to assist in discharging if permitted by local
authorities

### 16. Freight and payment (Also refer to Clause 10. of rider Clauses)

Freight: USD 950,000 lump sum based on packing list attached. Any increases in
cargo volume to be adjusted pro rata accordingly.

Payment terms: 100 percent prepaid on completion of loading in Durban into
Carrier account in New York by wire transfer.

### 17. Dues/taxes   (Also refer to Clause 10. of rider Clauses)

Dues at Durban: Any dues, wharfages, taxes on Vessel for Carrier account
Any dues, taxes, wharfages on cargo for Merchant account

Dues at Mogadishu: All dues, taxes, wharages on Vessel and /or cargo at
Mogadishu for Merchant account

### 18. Detention

USD $20,000 per day pro rata for any delays to Vessel due to cargo non
readiness, documentation  problems, export/import permits, security, and any
other reasons outside control of Carriers

### 19. Insurance

All insurance on Vessel to be for Carriers account.

All insurance on cargo to be for the account of Merchant.

### 20. Security

Merchant  to be responsible for arranging all security, including: Full EU escort
to/from Mogadishu from established RDV -Marines in RHIBs escort from EU to
port, and in port during unloading- military guard in port (mechanized infantry
company of 100+ soldiers, tanks, heavy weapons, etc.) -military and political
intervention during unloading to minimize disruptions - priority berthing (ie,
AMISOM vessels will "jump the queue") -military aboard vessel in port, and
while sailing to meet escort (if desired) -Marine guard if anchoring outside of port
awaiting escort RDV (if desired) -full military and intelligence briefing by
international community and AMISOM partners (EU, US, UN, etc.)

### 21. Authority

The Master of the Vessel retains ultimate authority whether to proceed in to port
or leave port at any time should the security of Vessel, crew or cargo come into
question.

### 22. Commissions

None. Contract is net of commissions

## April Ship Loading Break Bulk

| Item | Note | # | L | W | H | Cube | wght 1,000kg | Line Cube | Line Wght | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cassions | | 10 | 7.20 | 2.45 | 2.50 | 44.10 | 9.00 | 441.00 | 90.00 | |
| Saml 20' Patrol Truck | | 8 | 5.69 | 2.44 | 2.82 | 39.13 | 5.70 | 313.07 | 45.60 | |
| Saml 50 Logistics Truck | | 3 | 5.82 | 2.45 | 3.20 | 61.31 | 7.50 | 183.93 | 22.50 | |
| Saml 50 Tankers | | 3 | 8.75 | 2.45 | 3.02 | 64.74 | 8.50 | 194.22 | 25.50 | |
| Saml 20 Ambulances | | 1 | 5.69 | 2.44 | 3.00 | 41.63 | 6.00 | 41.63 | 6.00 | |
| Saml 50 Armored Recovery | | 4 | 7.80 | 2.50 | 3.70 | 72.15 | 8.00 | 288.60 | 32.00 | |
| Saml 100 Logistics Truck | | 1 | 10.20 | 2.50 | 3.80 | 96.90 | 13.00 | 96.90 | 13.00 | |
| Revas | | 2 | 6.00 | 2.50 | 2.50 | 37.50 | 7.80 | 75.00 | 15.60 | |
| Rinkrtals | | 9 | 7.30 | 3.20 | 2.69 | 62.84 | 11.50 | 565.55 | 103.50 | |
| | | 113 | | | | | | 3,633.42 | 500.95 | |
| Trailers Cargo | | 10 | 4.60 | 2.40 | 1.70 | 18.77 | 1.10 | 187.68 | 11.00 | Some of these will go in trucks |
| Trailers Water | | 25 | 4.60 | 2.40 | 2.50 | 27.60 | 2.00 | 690.00 | 50.00 | |
| Water Tanks spare | | 25 | 2.15 | 1.55 | 1.28 | 4.27 | 0.09 | 106.64 | 2.25 | |
| Containers 20ft | | 12 | 6.096 | 2.37 | 2.591 | 37.4335 | 7.00 | 449.20 | 84.00 | Average Weight Gross |

ADDENDUM NO. 1 TO CONLINE BOOKING NOTE DATED MAY 07, 2009

**1**. MV "GLOBAL PROGRESS" will not make a direct call at Durban for this cargo.

**2**. First leg from Durban will be carried by MV "THOR GALAXY" as described below:

    - MV THOR GALAXY
    - Built: June 2008
    - Dwat; 13802 dwt on 9.166 m draft ssw
    - Tween deck general cargo ship
    - 2 holds / 2 hatches
    - Hong Kong flag
    - NK class
    - P&I CLUB: Japan PANDI
    - GRT/NRT: 10021/4520
    - LOA: 124.56M
    - Beam: 21.20M
    - Depth: 14.0M
    - Intake Bale: 19621.58  cbm
    - Cranes: 2 x 50 mts cranes placed portside combi upto 100 mts
    - Fully container fitted intake
    - Nominal: 538 TEU // 248 FEU

    - HATCH DIMS
    Weather deck #1: 27.00 m x 15.00 m (single pull type)
    #2: 37.50 m x 15.00 m        ditto

    Tween deck   #1: 34.50 m x 21.50 m (pontoon type, 11 pcs each twn deck)
    #2: 45.75 m x 21.20 m (pontoon type, 13 pcs each twn deck)

    - Railmounted hoist fitted inside hold for handling of
    tweendeck pontoons, which can also be handled by cranes.

    - HOLD DIMS:

    #1 upper hold: 34.50 x 21.20 x 5.0
    #2 upper hold: 45.75 x 21.20 x 5.0
    #1 lower hold: 34.50 x 19.00 x 7.810
    #2 lower hold: 45.75 x 19.00 x 7.810

ETA Durban June 01 weather permitting.

3. Cargo will be transshiped to GLOBAL PROGRESS at either Mombasa or Dar Es Salaam in Carrier's option. Carrier will be responsible for any damage/loss to cargo from transshipment Movements.

ETA Transhipment point June 06/07 weather permitting.

4. GLOBAL PROGRESS will then make a direct call to Mogadishu.

All other terms/conditions of the booking note remain in force and unchanged.

5/26/0⁹

-----------------------------
Signature (Carrier)                                      Signature (Merchant)

**EXHIBIT B**

# Bijan Paksima

| | |
|---|---|
| **From:** | Bijan Paksima |
| **Sent:** | Saturday, June 13, 2009 1:44 PM |
| **To:** | Capt. Leszek Grodkiewicz; Kazem Paksima |
| **Subject:** | Fw: G.Progress - Urgent |

Best Regards,
Bijan Paksima


----- Original Message -----
From: Bijan Paksima
To: 'Christian.Bock@dyn-intl.com' <Christian.Bock@dyn-intl.com>
Cc: Ali David Paksima; 'Christine.Cissa@dyn-intl.com' <Christine.Cissa@dyn-intl.com>
Sent: Sat Jun 13 12:56:28 2009
Subject: Re: G.Progress - Urgent


Christian,

Please do utmost to allow the Vessel to sail immediately to avoid any security/safety
issues.

We will have no choice but to hold Dyn International responsible for all delays, costs and
consequences.

Best Regards,
Bijan Paksima


----- Original Message -----
From: Bock, Christian <Christian.Bock@dyn-intl.com>
To: Bijan Paksima
Cc: Ali David Paksima; Cissa, Christine <Christine.Cissa@dyn-intl.com>
Sent: Sat Jun 13 11:22:02 2009
Subject: RE: G.Progress - Urgent

Bijan,

All port fees as quoted by the port to our agent have been paid.  The problem is that the
port is trying to extort an additional $20K for services which were not requested, not
performed, and unknowingly added to our bill.  We've just confirmed this info from our
agent and the Force Commander.  We are working to have the vessel released while we
discuss this extortion with the Port.  The Force Commander is personally speaking with the
Port Manager.

You know Mog Port as well as I, and this is another attempt at illegal rent seeking by
port's personnel.  We are working the issue now.

I will revert as soon as we have another update.

Cheers,

Christian

-----Original Message-----
From: Bijan Paksima [mailto:bpaksima@gogcl.com]
Sent: Saturday, June 13, 2009 4:24 PM
To: Bock, Christian
Cc: Ali David Paksima
Subject: G.Progress - Urgent

1

Christian,

Port control advised Master that Vessel cannot sail due to non payment of port dues (by Dyn). Please sort this out urgently.

Best Regards,
Bijan Paksima
----------------------------------------------------------------
This message may contain DynCorp International Privileged/Proprietary information. If this email is not intended for you, and you are not responsible for the delivery of this email message to the addressee, do not keep, copy or deliver this email message to anyone. Please destroy this email in its entirety and notify the sender by reply email. Your cooperation is appreciated.
----------------------------------------------------------------

<u>**EXHIBIT C**</u>



**Global Container Lines**

Global Container Lines Limited

100 Quentin Roosevelt Boulevard, Garden City, NY 11530, USA
TEL +1 (516) 222 0707  FAX +1 (516) 222 0377  E-MAIL admin@gogcl.com  WEB www.gogcl.com

July 9, 2009

DynCorp International LLP
3190 Fairview Park Drive, Suite 350
Falls Church, VA 22042  USA
Attention: Mr. Christian Bock
Attention: Ms. Christine Cissa

**Subject: Shipment from Durban to Mogadishu per MV "Thor Galaxy" / "Global Progress" - Booking Note Dated May 07, 2009**

Dear Mr. Bock and Ms. Cissa:

We refer to subject Booking Note and correspondence of June 13th and 14th, 2009 with respect to delay in sailing of MV "Global Progress" from Mogadishu due to Dyn International's failure in obtaining timely port clearance for the vessel. As per supplemental clause 18 of the referenced booking note, Dyn International's failure to obtain port clearance timely to enable the vessel to sail from Mogadishu constitutes detention which is to be calculated at the rate of US $ 20,000 per day pro rata.

As per attached Statement of Fact, Vessel completed discharge operations on June 12th at 20:00 hours local time and was ready to sail at 23:10 local time. Port clearance and permission to sail was not received until 23:10 hours local time on June 13th, meaning that vessel was on detention for exactly 24 hours.

Please find attached, our Invoice # 00-09-0170 in the amount of $20,000 for detention charges. Please process for prompt payment.

Regards,

Bijan Paksima
Global Container Lines Limited

**Bijan Paksima**

**From:**    Bijan Paksima
**Sent:**    Sunday, June 14, 2009 9:05 AM
**To:**    'Bock, Christian'
**Cc:**    Ali David Paksima
**Subject:** G.Progress V - 9502 Statement of fact.

Christian,

Below is statement of facts from the Master of GLOBAL PROGRESS.
We will calculate the time lost and detention charges in due course.

## S T A T E M E N T  O F  F A C T.

**12.06.2009.**

### m/v Global Progress.                                    Port Mogadishu.

13.30 lt Arrived  p/station.Informed « Port Control »,asked pilot.
14.30 lt P.O.B.
14.55 lt Make fast tug's.
15.10 lt First line ashore.
15.20 lt All fast.
15.30 lt Pilot off.
15.50 lt Lower down the ramp.
15.55 lt Commenced discharge VHCLS from w/deck.
17.00 lt Completed discharge VHCLS from w/deck.
         Commenced discharge CNTRS from w/deck.
17.50 lt Completed discharge CNTRS.
         Commenced discharge waters drums from shelterdeck.
20.00 lt Completed cargo operations.
23.05 lt Closed the ramp.
23.10 lt Awaiting pilot.

**13.06.2009.**

05.15 lt P.O.B.(two pilots and two security on board).
05.40 lt Make fast
tugs.
05.45 lt Single up.
05.50 lt Clear of berth. Various courses and speed proceeding
         to anchorage.
06.30 lt Dropped port anchor,4 shackles in water in psn: lat 02 00.8 N  long 045 21.1 E.
         Pilots off, two security on board. M.E. 15 min notice.
08.00 lt Asked port manager to deliver Port Clearance.
12.00 lt The same psn. Again asked Port Control and Manager to deliver Clearance.
         Promised after one hour.
16.00 lt The same psn. Awaiting Clearance.
20.00 lt The same psn, waiting Clearance.
23.10 lt  Received  Clearance. Heave up anchor.
24.00 lt Under escort F732 proceeding to Mumbai.

Brgds
Master.


Best Regards,
Bijan Paksima

 **Global Container Lines Limited**

**Global Container Lines**

100 Quentin Roosevelt Boulevard, Garden City, NY 11530, USA
TEL +1 (516) 222 0707 FAX +1 (516) 222 0377 E-Mail admin@gogcl.com

# Invoice

| Invoice No | Date |
|------------|------|
| 00-09-0170 | 07/09/2009 |

DynCorp International
3190 Fairview Park Drive, Suite 350
Falls Church,
Virginia  U.S.A.

Tel: 571-722-0210                          Fax: 571-722-0252

| Vessel / Voyage | Sailing Date | LDD/DIS | Remarks |
|-----------------|--------------|---------|---------|
| Thor Galaxy&Global Progress V/9502 | 06/02/2009 | ZADUR/SOMGQ | |

| Description | Amount |
|-------------|--------|
| Booking Note Dated May 7, 2009 between GCL and DynCorp International - Shipment from Durban to Mogadishu per MV "Thor Galaxy" / "Global Progress"<br><br>Detention Charges at Port Mogadishu awaiting port clearance and permission to sail<br>=================================================<br>From:  June 12, 2009  23:10 hours<br>To  :  June 13, 2009  23:10 hours<br><br>Time on Detention = 1 day<br><br>1 day @ US $20,000 per ;day = $20,000 | 20,000.00 |
| **Total US $** | 20,000.00 |

*Amount In Words*
US Dollars Twenty Thousand Only

For Global Container Lines Limited

*Please wire transfer free of charges to:*
JPMorgan Chase
1985 Marcus Avenue, Floor 1st
New Hyde Park, NY 11042
ABA: 021000021

*For Credit To:*
Global Container Lines Limited
Account No: 893032972

## EXHIBIT D

## Hormoz Shayegan

| | |
|---|---|
| **From:** | Hormoz Shayegan |
| **Sent:** | Tuesday, March 09, 2010 4:12 PM |
| **To:** | 'christian.bock@dyn-int.com'; 'christine.cissa@dyn-int.com' |
| **Cc:** | Bijan Paksima |
| **Subject:** | m.v. "Thor Galaxy"/m.v. "Global Progress" - Durban to Mogadishu, Booking Note Dated May 7, 2009 (CORRECTION - Detention Dates) |

CORRECTION (Detention Dates)
==========================

Date:    March 8, 2010

To:    DynCorp International LLP

Attn.    Mr. Christian Bock/Ms. Christine Cissa

Subject: Booking Note dated May 7, 2009
        m.v. Thor Galaxy"/"Global Progress"
        Invoice No. 00-0170 dated 07/09/2009
        Detention Charges at Port Mogadishu June 12-June 13, 2009
        (per Statement of Facts dated June 14, 2009 and
        Clause 18 of the Booking Note dated 05/07/2009)
        -----------------------------------------------------------------

This refers to the captioned matter and the various correspondence including our emails of June 13, 2009 and letter of July 9, 2009 (and its attachments) regarding the detention charges of $20,000 the payment of which appears to have escaped your attention.

We now demand payment of the outstanding and overdue detention amount of $20,000 without further delay. As a gesture of goodwill, we are prepared to waive interest for late payment of these charges provided we receive the full payment of the detention amount by Monday March 16, 2010.

Will appreciate your confirmation by return.

Regards

Hormoz Shayegan
Global Container Lines Limited

1

EXHIBIT E

## Hormoz Shayegan

| | |
|---|---|
| **From:** | Hormoz Shayegan |
| **Sent:** | Monday, March 15, 2010 4:41 PM |
| **To:** | 'christine.cissa@dyn-int.com' |
| **Cc:** | 'michael.story@dyn-intl.com'; 'Donohue, Keith'; 'christian.bock@dyn-int.com'; Akin, Robert A |
| **Subject:** | m.v. "Thor Galaxy"/m.v. "Global Progress" - Durban to Mogadishu, Booking Note Dated May 7, 2009 - FOR IMMEDIATE ATTENTION PLEASE |

**Attachments:**    DynCorp International.pdf



DynCorp
ternational.pdf (77

March 15, 2010

DynCorp International LLP
Attn. Contract Administrator-in-charge

Please find attached our letter of March 15, 2010 and its attached documents which are self explanatory.  We are forwarding this message to you as Mr. Christian Bock and Ms. Christine Cissa do not appear to be currently employed with DynCorp International.

Regards

Hormoz Shayegan
Global Container Lines Limited



100 Quentin Roosevelt Boulevard, Garden City, NY 11530, USA

+1 (516) 222 0707    +1 (516) 222 0377    admin@gogcl.com    www.gogcl.com

FAX 1 571 722 0252
FAX 1 972 871-6771

March 15, 2010

DynCorp International
3190 Fairview Park Drive
Suite 350
Falls Church, VA 22042

Attn. Contract Administrator

Dear Madame/Sir,

**Booking Note Dated May 7, 2009**
**m.v. "THOR GALAXY"/"m.v. GLOBAL PROGRESS"**
**Invoice No. 000170 Dated 07/09/2009**
**Detention Charges at Port Mogadishu June 12-June 13, 2009**

Please find attached our email of March 8, 2010 – and our letter of July 9, 2009 and its attachments – regarding outstanding and overdue detention charges of $20,000.

We will appreciate your immediate payment of the outstanding amount of $20,000. As advised in our email of March 8, 2010, we are prepared to waive interest on late payment of the invoice upon your prompt payment.

Truly yours

Hormoz Shayegan
Director
Global Container Lines Limited
Tel. (516) 408-7705 (direct)
Email: hshayegan@gogcl.com

## Hormoz Shayegan

| | |
|---|---|
| **From:** | Hormoz Shayegan |
| **Sent:** | Tuesday, March 09, 2010 4:12 PM |
| **To:** | 'christian.bock@dyn-int.com'; 'christine.cissa@dyn-int.com' |
| **Cc:** | Bijan Paksima |
| **Subject:** | m.v. "Thor Galaxy"/m.v. "Global Progress" - Durban to Mogadishu, Booking Note Dated May 7, 2009 (CORRECTION - Detention Dates) |

CORRECTION (Detention Dates)
========================

Date:    March 8, 2010

To:      DynCorp International LLP

Attn.    Mr. Christian Bock/Ms. Christine Cissa

Subject: Booking Note dated May 7, 2009
         m.v. Thor Galaxy"/"Global Progress"
         Invoice No. 00-0170 dated 07/09/2009
         Detention Charges at Port Mogadishu June 12-June 13, 2009
         (per Statement of Facts dated June 14, 2009 and
         Clause 18 of the Booking Note dated 05/07/2009)
         ---------------------------------------------------------------

This refers to the captioned matter and the various correspondence including our emails of June 13, 2009 and letter of July 9, 2009 (and its attachments) regarding the detention charges of $20,000 the payment of which appears to have escaped your attention.

We now demand payment of the outstanding and overdue detention amount of $20,000 without further delay. As a gesture of goodwill, we are prepared to waive interest for late payment of these charges provided we receive the full payment of the detention amount by Monday March 16, 2010.

Will appreciate your confirmation by return.

Regards

Hormoz Shayegan
Global Container Lines Limited

1



100 Quentin Roosevelt Boulevard, Garden City, NY 11530, USA
+1 (516) 222 0707    +1 (516) 222 0377    admin@gogcl.com    www.gogcl.com

July 9, 2009

DynCorp International LLP
3190 Fairview Park Drive, Suite 350
Falls Church, VA 22042  USA
Attention: Mr. Christian Bock
Attention: Ms. Christine Cissa

**Subject: Shipment from Durban to Mogadishu per MV "Thor Galaxy" / "Global Progress" - Booking Note Dated May 07, 2009**

Dear Mr. Bock and Ms. Cissa:

We refer to subject Booking Note and correspondence of June 13th and 14th, 2009 with respect to delay in sailing of MV "Global Progress" from Mogadishu due to Dyn International's failure in obtaining timely port clearance for the vessel. As per supplemental clause 18 of the referenced booking note, Dyn International's failure to obtain port clearance timely to enable the vessel to sail from Mogadishu constitutes detention which is to be calculated at the rate of US $ 20,000 per day pro rata.

As per attached Statement of Fact, Vessel completed discharge operations on June 12th at 20:00 hours local time and was ready to sail at 23:10 local time. Port clearance and permission to sail was not received until 23:10 hours local time on June 13th, meaning that vessel was on detention for exactly 24 hours.

Please find attached, our Invoice # 00-09-0170 in the amount of $20,000 for detention charges. Please process for prompt payment.

Regards,

Bijan Paksima
Global Container Lines Limited

## Bijan Paksima

From:    Bijan Paksima
Sent:    Sunday, June 14, 2009 9:05 AM
To:      'Bock, Christian'
Cc:      Ali David Paksima
Subject: G.Progress V - 9502 Statement of fact.

Christian,

Below is statement of facts from the Master of GLOBAL PROGRESS.
We will calculate the time lost and detention charges in due course.

## S T A T E M E N T  O F  F A C T.

**12.06.2009.**

     **m/v Global Progress.**           **Port Mogadishu.**

13.30 lt Arrived  p/station.Informed « Port Control »,asked pilot.
14.30 lt P.O.B.
14.55 lt Make fast tug's.
15.10 lt First line ashore.
15.20 lt All fast.
15.30 lt Pilot off.
15.50 lt Lower down the ramp.
15.55 lt Commenced discharge VHCLS from w/deck.
17.00 lt Completed discharge VHCLS from w/deck.
      Commenced discharge CNTRS from w/deck.
17.50 lt Completed discharge CNTRS.
      Commenced discharge waters drums from shelterdeck.
20.00 lt Completed cargo operations.
23.05 lt Closed the ramp.
23.10 lt Awaiting pilot.

**13.06.2009.**

05.15 lt P.O.B.(two pilots and two security on board).
05.40 lt Make fast
tugs.
05.45 lt Single up.
05.50 lt Clear of berth. Various courses and speed proceeding
      to anchorage.
06.30 lt Dropped port anchor,4 shackles in water in psn: lat 02 00.8 N  long 045 21.1 E.
      Pilots off, two security on board. M.E. 15 min notice.
08.00 lt Asked port manager to deliver Port Clearance.
12.00 lt The same psn. Again asked Port Control and Manager to deliver Clearance.
      Promised after one hour.
16.00 lt The same psn. Awaiting Clearance.
20.00 lt The same psn, waiting Clearance.
23.10 lt  Received  Clearance. Heave up anchor.
24.00 lt Under escort F732 proceeding to Mumbai.

Brgds
Master.


Best Regards,
Bijan Paksima



**Global Container Lines Limited**

**Global Container Lines**

100 Quentin Roosevelt Boulevard, Garden City, NY 11530, USA
TEL +1 (516) 222 0707  FAX +1 (516) 222 0377  E-Mail admin@gogcl.com

# Invoice

| Invoice No | Date |
|---|---|
| 00-09-0170 | 07/09/2009 |

DynCorp International
3190 Fairview Park Drive, Suite 350
Falls Church,
Virginia  U.S.A.

# ORIGINAL

Tel: 571-722-0210                          Fax:571-722-0252

| Vessel / Voyage | Sailing Date | LDD/DIS | Remarks |
|---|---|---|---|
| Thor Galaxy&Global Progress V/9502 | 06/02/2009 | ZADUR/SOMGQ | |

| Description | Amount |
|---|---|
| Booking Note Dated May 7, 2009 between GCL and DynCorp International - Shipment from Durban to Mogadishu per MV "Thor Galaxy" / "Global Progress"<br><br>Detention Charges at Port Mogadishu awaiting port clearance and permission to sail<br>======================================================<br>From:  June 12, 2009  23:10 hours<br>To  :  June 13, 2009  23:10 hours<br><br>Time on Detention = 1 day<br><br>1 day @ US $20,000 per ;day = $20,000 | 20,000.00 |
| Total US $ | 20,000.00 |

**Amount In Words**
US Dollars Twenty Thousand Only

For Global Container Lines Limited

<u>Please wire transfer free of charges to:</u>
JPMorgan Chase
1985 Marcus Avenue, Floor 1st
New Hyde Park, NY 11042
ABA: 021000021

<u>For Credit To:</u>
Global Container Lines Limited
Account No: 893032972



EXHIBIT F

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Daniel Schnerman
3110 Fairview Plane.
Suite 350
Falls Church, VA 22042
Attn: Christine Cissa
Humphrey

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Blondell Beard          ☐ Agent
                          ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
Blondell Beard              04/22/10

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7006 3450 0000 0623 3988

PS Form 3811, February 2004     Domestic Return Receipt      102595-02-M-1540

# CULLENandDYKMANLLP

Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3700 • Facsimile (516) 357-3792

C. Nathan Dee
Partner
Direct Dial: (516) 357-3817
ndee@cullenanddykman.com

April 20, 2010

<u>**Via Certified Mail, Return Receipt Requested**</u>

DynCorp International
3190 Fairview Park Drive
Suite 350
Falls Church, Virginia 22042

Attn: Ms. Christine Cissa Rumphrey,

RE:    Invoice No.: 00-09-0170 dated July 9, 2009
<u>Detention Charges at Port Mogadishu June 12-13, 2009</u>

Dear Madam:

Reference is made to the Booking Note dated May 7, 2009 between Global Container Lines and DynCorp International – Shipment from Durban to Mogadishu per MV "Thor Galaxy"/"Global Progress" (the "Booking Note"). Pursuant to Paragraph 18 of the supplemental clauses to the Booking Note, Invoice No. 00-09-0170 dated July 9, 2009 was issued to DynCorp International for detention charges incurred, in the amount of $20,000.00. plus interest at the rate of 8% per annum for a total aggregate amount due and owing of $21,254.63.[1]

Demand is hereby made for payment in full of the $21,254.63 within seven (7) days of your receipt of this letter. If payment in full is not made within seven (7) days of your receipt of this letter, this matter will be brought to the attention of the United States Bankruptcy Court for the Eastern District.

DynCorp International has no legal defense to this outstanding debt. Please be advised that we do not waive our right to pursue any of our rights and remedies with respect to the outstanding payment, if not received within (7) days of your receipt of this letter.

---

[1] Global Container Lines, Ltd reserves all of its rights to assert additional interest charges against DynCorp International.

*Founded 1850*

BROOKLYN          LONG ISLAND          MANHATTAN          WASHINGTON, D.C.          NEW JERSEY

*CULLENandDYKMANLLP*

Please be guided accordingly.

Very truly yours,

C. Nathan Dee

cc: Hormoz Shayegan
    Mr. Charles Harvey
    Mr. Jeff Rodriguez